## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE HON. PAULINE NEWMAN,
Circuit Judge
United States Court of Appeals
for the Federal Circuit
717 Madison Place, NW
Washington, DC 20005,

*Plaintiff*,

v.

CIVIL CASE NO. 23-cv-1334

THE HON. KIMBERLY A. MOORE,
in her official capacities as
Chief Judge of the United States Court of Appeals
for the Federal Circuit,
Chair of the Judicial Council of the Federal Circuit,
and
Chair of the Special Committee of the Judicial Council of the
Federal Circuit,
717 Madison Place, NW
Washington, DC 20005,

THE HON. SHARON PROST,
in her official capacity as
Member of the Special Committee of the Judicial Council of
the Federal Circuit,
717 Madison Place, NW
Washington, DC 20005,

THE HON. RICHARD G. TARANTO,
in his official capacity as
Member of the Special Committee of the Judicial Council of
the Federal Circuit,
717 Madison Place, NW
Washington, DC 20005,

and

THE JUDICIAL COUNCIL OF THE FEDERAL CIRCUIT
AND ALL MEMBERS THEREOF,
in their official capacities,
717 Madison Place, NW
Washington, DC 20005,

*Defendants.*

## INTRODUCTION

Plaintiff, The Honorable Pauline Newman, brings this action for declaratory and injunctive relief against Defendants The Hon. Kimberly A. Moore, in her official capacities as Chief Judge of the United States Court of Appeals for the Federal Circuit, Chair of the Judicial Council of the Federal Circuit, and Chair of the Special Committee of the Judicial Council of the Federal Circuit, The Hon. Sharon Prost, in her official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit, The Hon. Richard G. Taranto, in his official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit, and the Judicial Council of the Federal Circuit.  As grounds therefor, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

3.  Plaintiff Pauline Newman is a Presidentially-appointed, Senate-confirmed federal Circuit Judge of the United States Court of Appeals for the Federal Circuit ("Federal Circuit").

4.  Defendant Kimberly A. Moore serves as Chief Judge of the Federal Circuit and, in that capacity, is chair of the Federal Circuit's Judicial Council. Chief Judge Moore became the Chief Judge of the Federal Circuit pursuant to operation of law, 28 U.S.C. § 45(a), on May 22, 2021. In addition to these roles, Chief Judge Moore chairs a "special committee" investigating the complaint against Judge Newman—a complaint which Chief Judge Moore herself initiated. Chief Judge Moore is being sued in her official capacities as Chief Judge of the United States Court of Appeals for the Federal Circuit, Chair of the Judicial Council of the Federal Circuit, and Chair of the Special Committee of the Judicial Council of the Federal Circuit.

5.  Defendant Sharon Prost serves as Circuit Judge of the Federal Circuit and was appointed by Chief Judge Moore to be one of the members of the special committee investigating the complaint against Judge Newman. Judge Prost is being sued in her official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit.

6.  Defendant Richard G. Taranto serves as Circuit Judge of the Federal Circuit and was appointed by Chief Judge Moore to be one of the members of the special committee investigating the complaint against Judge Newman. Judge Taranto is being sued in his official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit.

7.  Defendant Judicial Council of the Federal Circuit ("Judicial Council") is the administrative body of the U.S. Court of Appeals for the Federal Circuit and consists of all active-duty judges of that Court. The Judicial Council is responsible for, *inter alia*, receiving and reviewing reports by special committees charged with investigating complaints of judicial misconduct

and/or disability filed under the Judicial Conduct and Disability Act of 1980, 28 U.S.C.
§§ 351-64 ("the Act"). The Judicial Council derives its authority from §§ 332 and 352-54 of
the Act and Rules 18-20 of the Rules for Judicial-Conduct and Judicial-Disability Proceedings.

8. The Judicial Council is unique among all circuit judicial councils because unlike the other
circuit judicial councils which consist of a rotating mixture of circuit and district judges, the
Judicial Council of the Federal Circuit consists exclusively of the judges of the Federal Circuit
who serve as members of the Judicial Council throughout their tenure on that Court.

## STATEMENT OF FACTS

9. Judge Newman was the first-ever judge appointed directly to the Federal Circuit by President
Ronald Reagan on January 30, 1984.  She was confirmed to the seat less than a month later by
a voice vote.  She received her commission as a Circuit Judge on February 28, 1984.

10. Since 1984, Judge Newman continued to faithfully, diligently, and meticulously exercise the
duties of her office, to recognition and acclaim.  In 2018, she was named "one of the 50 most
influential people in the IP world" by Managing IP Magazine.

11. At all relevant times, Judge Newman has been and is in sound physical and mental health.  She
has authored majority and dissenting opinions in the whole range of cases before her Court,
has voted on petitions for rehearing *en banc*, and has joined in the *en banc* decisions of the
Court.

12. In the course of her continuing service as an active-status Circuit Judge, Judge Newman has
authored hundreds of majority, concurring, and dissenting opinions.  Often, Judge Newman's
dissenting opinions are adopted by the Supreme Court in its frequent reversals of the Federal
Circuit.

13. At all relevant times, Judge Newman has been willing and able to fully participate in the work of the Court and, consistent with the Court's internal practice and procedures for active-status judges, has requested to be assigned to the regular panel sittings of the Court.

14. In early March 2023, Chief Judge Moore met with Judge Newman for about 45 minutes and attempted to coax Judge Newman into retirement. Judge Newman declined Judge Moore's entreaties.

15. On or about March 17, 2023, Chief Judge Moore drafted an order in which she, pursuant to Rule 5 of the Rules of Judicial Conduct and Judicial Disability Proceedings ("Conduct Rules"), "identified a complaint" against Judge Newman alleging that there is a "probable cause to believe that Judge Newman 'has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts' an/or 'is unable to discharge all the duties of office by reason of mental or physical disability.'"

16. Chief Judge Moore offered not to "docket" the complaint were Judge Newman to agree to an "informal resolution" consisting of retiring from the Court. When Judge Newman declined to do so, on or about March 24, 2023, Chief Judge Moore "docketed" the Order ("March 24 Order") and began the formal investigative process under Rule 11 of the Conduct Rules.

17. The March 24 Order, which served as the basis for launching the disciplinary process and purportedly contained "probable cause to believe that Judge Newman 'has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts' and/or 'is unable to discharge all the duties of office by reason of mental or physical disability,'" is riddled with errors. For example, the March 24 Order alleges that "[i]n the summer of 2021, Judge Newman, at the age of 94, was hospitalized after suffering a heart attack and having to undergo coronary stent surgery." During the period (June 2021 through September 2021)

when Chief Judge Moore claims that Judge Newman suffered a heart attack, Judge Newman sat on ten panels and issued at least eight (including majority, concurring, and dissenting) opinions. Had Judge Newman suffered a heart attack, it would be extremely unusual for anyone, let alone a 94-year-old person, to serve throughout that period without skipping a beat (so to speak). Besides which, even were the allegation true, having coronary artery disease is simply irrelevant to one's ability to be able to carry out judicial functions.

18. Even more problematic (as these facts were readily available to Chief Judge Moore upon even a cursory inspection) is the allegation in the March 24 Order that "[b]ecause [of] those health issues, [Judge Newman's] sittings were reduced compared to her colleagues." To the contrary, in the summer of 2021, Judge Newman was a member of *ten* different panels of the Court—more than any other colleague but two.

19. Upon the issuance of the March 24 Order, Chief Judge Moore appointed a special committee consisting of herself, Circuit Judge Sharon Prost, and Circuit Judge Richard G. Taranto. Chief Judge Moore selected herself to chair the special committee to investigate her own complaint.

20. Before any evidence was taken, hearings held, or reports written, Chief Judge Moore unconstitutionally and unilaterally removed Circuit Judge Newman from all future sittings of the Court. In an email sent on April 5, 2023, and CC'ed to all judges of the Court, Chief Judge Moore confirmed that Judge Newman, though an active-status member of the Court, "will not be assigned any new cases until these [disciplinary] proceedings are resolved." Chief Judge Moore stated that this was a unanimous decision of Judge Newman's colleagues. No legal basis or precedent for such an action or decision has ever been provided.

21. Judge Newman has not been assigned to sit on any panels of the Court for the May, June, and July 2023 sittings, despite repeatedly requesting such assignments.

22. On or about April 6, 2023, Chief Judge Moore issued a new and virtually unprecedented order ("April 6 Order") expanding the scope of the special committee's investigation into Judge Newman's alleged "disability" and "misconduct" to include the questions of internal operations of Judge Newman's chambers.

23. On April 7, 2023, the special committee issued an order ("April 7 Order") demanding that Judge Newman submit to neurological and neuropsychological examinations before physicians of the special committee's choosing.  The order was based in part on the special committee's alleged "direct observations of Judge Newman's behavior."  The April 7 Order afforded Judge Newman, who at that time was still not represented by counsel, a mere *three days* to comply with the request.  Contrary to the Commentary to Rule 13 of the Conduct Rules, no attempt to "enter into an agreement with [Judge Newman] as to the scope and use that may be made of the examination results" was made.  The April 7 Order did not specify either the scope of the requested examination nor any limits on the use of examination results.

24. On April 13, 2023, Chief Judge Moore, claiming that the failure to respond to the unreasonably short three-day deadline set forth in the April 7 Order constituted "sufficient cause to believe that Judge Newman [engaged in] additional misconduct," issued an order ("April 13 Order") further expanding the scope of investigation.

25. On April 17, 2023, the special committee entered yet another order, this time demanding that Judge Newman share private medical records regarding medical events identified in the March 24 Order.  The special committee once again set an unreasonably short response deadline of *four days*.  Furthermore, because the events to which this order referred (*i.e.*, "heart attack" and "coronary stents"), even if they had transpired, are not relevant to any questions pending

before the special committee or the Judicial Council, these requests constitute a baseless invasion into Judge Newman's constitutionally and statutorily protected privacy interests.

26. On April 19, 2023, Chief Judge Moore unilaterally reassigned Judge Newman's judicial assistant/paralegal to another office. Chief Judge Moore refused to permit Judge Newman to hire a replacement judicial assistant, thus leaving her office short-staffed. This has greatly impaired Judge Newman's ability to accomplish her judicial duties such as processing her opinions, answering phone calls and emails from her colleagues and the like. To date, Chief Judge Moore refuses to authorize a search for a new judicial assistant.

27. On the same date, Chief Judge Moore unilaterally reassigned one of Judge Newman's law clerks to the chambers of another Judge. Given the strained relationship that developed between Judge Newman and this law clerk, Judge Newman responded by email that terminating that law clerk's employment in her chambers was "appropriate." She, however, did not consent to the law clerk being reassigned to another chambers. Chief Judge Moore has refused to authorize Judge Newman to hire a replacement law clerk, even though Judge Newman remains an active judge of the Federal Circuit, and is statutorily entitled to four law clerks and a judicial assistant.

28. On April 20, 2023, Chief Judge Moore issued a new order once again expanding the scope of investigation, this time to cover matters concerning the internal workings of Judge Newman's chambers. The complaint alleged, *inter alia*, that Judge Newman's refusal to assign her own law clerk to another judge's chambers—a highly unusual, if not unprecedented practice— likely constituted misconduct.

29. On April 21, Judge Newman, now represented by the undersigned counsel, sent a letter to Chief Judge Moore and the remaining members of the special committee requesting immediate

restoration of Judge Newman to the hearing calendar as well as a transfer of the identified complaint to a different Judicial Council as contemplated by Rule 26 of Conduct Rules.  Judge Newman explained that basic norms of due process cannot permit the same individuals to be accusers, witnesses, rapporteurs, and adjudicators of a complaint against her.

30. The letter to Chief Judge Moore cited opinions of leading judicial ethics experts who have unequivocally stated that in these circumstances transfer to another circuit's judicial council is necessary.

31. The letter to Chief Judge Moore and other members of the special committee reiterated that Judge Newman "will not fail to cooperate with any investigation that is conducted consistent with the limits that the Constitution, the Judicial Disability Act of 1980, and the Rules for Judicial Conduct and Judicial Disability Proceedings place on such investigations."

32. At and around the time the undersigned counsel sent the letter to Chief Judge Moore, the story about the investigation and the surrounding events began to be reported in the press, academic, and legal community.  In response to these reports, the Judicial Council confirmed the existence of an investigation into Judge Newman and published the March 24 Order (in a redacted form) and the April 13 Order on the Federal Circuit's website.

33. On May 3, 2023, the special committee issued two orders.  The first order ("Gag Order") was in effect a gag order threatening Judge Newman and her counsel with sanctions should any of them publicize the ongoing investigation.  The order intimated that even if Judge Newman were to agree to disclose the materials pursuant to Rule 23(b)(7) of the Conduct Rules, Chief Judge Moore would withhold her consent for the same.

34. Commentary to Rule 23 states that "[o]nce the subject judge has consented to the disclosure of confidential materials related to a complaint, the chief judge ordinarily will refuse consent *only*

to the extent necessary to protect the confidentiality interests of the complainant or of witnesses." (emphasis added).  Thus, threats to withhold consent to release information even with Judge Newman's agreement are contrary to the process contemplated by the Conduct Rules.

35. The second order issued on May 3, 2023 ("May 3 Order") by the special committee denied the request for transfer, without addressing the manifest due process concerns.  The May 3 Order again ordered Judge Newman to submit to neurological and neuropsychological examinations before physicians of the special committee's choosing.  The Order also rejected Judge Newman's suggestions that she and the special committee "enter into an agreement … as to the scope and use that may be made of the examination results."  Finally, the May 3 Order again required Judge Newman to surrender medical records including for events that have never occurred.  The May 3 Order threatened Judge Newman with expanding the scope of investigation unless she indicated her consent to the examination by 9:00 am on May 10, 2023.

36. Though there is no emergency with respect to any investigative proceeding, except to restore an active member of the federal judiciary who has been unlawfully deprived from hearing cases this month (and for the next two months unless and until the calendar is altered), the May 3 Order afforded Judge Newman merely seven days to respond.  In contrast, the Federal Rules of Appellate Procedure afford ten days for any party to respond to any motion and the Federal Rules of Civil Procedure permit fourteen days for a response.  While investigations into judicial misconduct or disability are not governed by the Federal Rules of Appellate Procedure or Rules of Civil Procedure, both of those documents serve as a useful reference for what the guarantee of due process entails.  The undue haste with which the special committee is proceeding is indicative of the denial of due process.

37. Judge Newman does not, in principle, object to undergoing a medical evaluation, if there is a sufficient and sound scientific basis for requesting the same; however, she objects to not being able to select or even participate in the selection of a medical professional to examine her, and to having no input into the scope of the medical investigation.  The special committee's refusal to even engage in the process of attempting to define the scope of the examination and selection of a qualified professional, as well as its demand to submit to the examination on an expedited basis, are contrary to the requirements of the Conduct Rules and the guarantees of due process.

38. If and when the special committee proceeds to a hearing as contemplated by Rules 14(b) and 15(c), Judge Newman intends to call, and compel witness testimony from each member of the Judicial Council as is her right under the aforementioned rules.

39. While the special committee has been pursuing its investigation, Judge Newman has issued several opinions in previous cases, even though Chief Judge Moore's actions interfered with the normal operations of Judge Newman's chambers.  Thus, on March 22, 2023, Judge Newman wrote an eighteen-page opinion for the Court in *Military-Veterans Advocacy, Inc. v. Sec'y of Veterans Affairs*, ___ F.4th ___, No. 20-1537 (Fed. Cir. 2023).  On March 6, 2023, Judge Newman delivered a seven-page dissenting opinion in *May v. McDonough*, ___ F.4th ___, No. 22-1803 (Fed. Cir. 2023).  On March 31, 2023, Judge Newman filed a four-page dissenting opinion from the Court's opinion in *Roku Inc. v. Univ. Elecs., Inc.*, ___ F.4th ___, No. 22-1058 (Fed. Cir. 2023), and on April 6, 2023, Judge Newman filed a fifteen-page dissenting opinion in *SAS Inst. v. World Programming Ltd.*, ___ F.4th ___, No. 21-1542 (Fed. Cir. 2023).  These opinions have been praised by the various members of the bar, and nothing therein even hints at any mental disability.

40. Judge Newman has also continued to participate in *en banc* decisions of the Court with no indication of any mental or physical disability. Thus, she joined the *en banc* portion of the opinion in *Moore v. United States*, ___ F.4th ___, No. 22-1475 (Fed. Cir. 2023). Judge Newman also participated in the poll to take up the matter *en banc*. There appears to have been no objections to this participation by any members of the Federal Circuit bench or bar.

41. As recently as late 2022 or early 2023, Chief Judge Moore effusively praised Judge Newman's abilities and insight, writing in the American Intellectual Property Association Quarterly Journal that "Among patent practitioners, Judge Newman is particularly well-known for her insightful dissents, which have often been vindicated by the Supreme Court." Chief Judge Moore then listed several cases where the Supreme Court, in reversing the Federal Circuit, "adopt[ed] essentially the reasoning of Judge Newman's dissent."

42. An empirical study, attached hereto as Exhibit A, shows that in "the three-year period of January 1, 2020 to December 31, 2022," Judge Newman's deviation from the average productivity and timeliness among the active judges of the Federal Circuit was not statistically significant. These data also show that there has been no difference in Judge Newman's timeliness or productivity between 2020 and late 2022. This is noteworthy because Chief Judge Moore's original "identification of the complaint" is predicated in large part on Judge Newman's alleged lack of sufficient output as compared to her colleagues. The empirical data stand in sharp contrast to these false allegations.

## CLAIMS FOR RELIEF

### Count I: Improper Removal, Violation of Separation of Powers

43. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

44. The Constitution provides that "Judges, both of the supreme and inferior Courts, shall hold

their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." U.S. Const. art. III, § 1.   The Constitution also provides that "[t]he House of Representatives … shall have the sole Power of Impeachment," and that "[t]he Senate shall have the sole Power to try all Impeachments."   U.S. Const. art. I, §§ 2, 3.   In light of these provisions, no executive or judicial agency or body may exercise, in form or in substance, the impeachment power reserved by the Constitution to the House and Senate.   Nor may any executive or judicial agency or body be delegated—or arrogate to itself—the impeachment power which the Constitution reserves to the House and Senate.

45. Defendants' orders and threats constitute an attempt to remove Plaintiff from office—and already have unlawfully removed her from hearing cases—without impeachment and in violation of the Constitution, in substance if not form, by, *inter alia*, (a) refusing to assign Plaintiff any new cases and threatening to forbid the assignment of new cases to her; (b) removing, without Plaintiff's consent, judicial staff Plaintiff is statutorily authorized to retain and refusing authorization to hire replacement staff; (c) interfering with Plaintiff's abilities to administer her own chambers; (d) ordering Plaintiff to undergo an involuntary mental health examination without a sufficient basis or legal authority for doing so, by physicians unknown to and unapproved by Plaintiff, as set forth in this Complaint; and (e) ordering that the scope of the investigation into Plaintiff's conduct be expanded, merely because Plaintiff requires time to properly evaluate and answer special committee requests.

46. Plaintiff has been and will continue to be irreparably harmed unless and until (a) Defendants' orders excluding Plaintiff from regular duties of an Article III judge and their threats to continue with such exclusion are declared to be unconstitutional and enjoined; and (b)

Defendants are enjoined from requiring Plaintiff to refrain from publicizing the proceedings against her and publicly defending herself from the outrageous complaint lodged against her.

47. Plaintiff has no adequate remedy at law.

### Count II: *Ultra Vires* – Improper Removal, Violation of Separation of Powers

48. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

49. To the extent that the Judicial Disability Act of 1980 is constitutional, it authorizes the Judicial Council, upon *conclusion* of a special committee's investigation and receipt of a report from such a committee, to "order[] that, on a temporary basis for a time certain, no further cases be assigned to the judge whose conduct is the subject of a complaint." 28 U.S.C. § 354(a)(2)(A)(i). Neither the Act nor the Conduct Rules authorize either a Chief Judge acting alone, nor a judicial council of any circuit, to issue any orders or directives which have an effect of precluding an active Article III judge from being assigned cases in regular order while an investigation is still underway. "Sentence first—verdict afterwards" is a notorious and textbook example of deprivation of due process known even to children's literature.

50. Defendants' orders excluding Plaintiff from regular duties of an Article III judge and threats to continue with such exclusion constitute an attempt to remove Plaintiff from office, without impeachment and in violation of the Constitution, in substance if not form, by, *inter alia*, (a) refusing to assign Plaintiff any new cases and threatening to forbid the assignment of new cases to her; (b) removing, without Plaintiff's consent, judicial staff Plaintiff is statutorily authorized to retain and refusing authorization to hire replacement staff; (c) ordering Plaintiff to undergo an involuntary mental health examination without a sufficient basis or legal authority for doing so, by physicians unknown to and unapproved by Plaintiff, as set forth in this Complaint; (d) interfering with Plaintiff's abilities to administer her own chambers; and

(e) ordering that the scope of the investigation into Plaintiff's conduct be expanded, merely because Plaintiff requires time to properly evaluate and answer special committee requests.

51. Plaintiff has been and will continue to be irreparably harmed unless and until (a) Defendants' orders excluding Plaintiff from regular duties of an Article III judge and their threats to continue with such exclusion are declared to be contrary to statutory law and enjoined; and (b) Defendants are enjoined from requiring Plaintiff to refrain from publicizing the proceedings against her and publicly defending herself from the outrageous complaint lodged against her.

52. Plaintiff has no adequate remedy at law.

### Count III: Fifth Amendment – As Applied Due Process of Law Violation

53. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

54. Defendants' continued investigation into Plaintiff's conduct violates the fundamental principles of due process because the special committee is composed of witnesses to Plaintiff's alleged disability. The March 24 Order and May 3 Order specifically reference, as basis for the beginning and continuing investigation the "personal observations" of the special committee members and other members of the Judicial Council. It has been established for centuries that one cannot serve as a "judge in his own cause." Permitting the Judicial Council and its special committee to continue the disciplinary proceedings against Plaintiff in a case where all members of the Judicial Council are actual or potential witnesses violates Plaintiff's Fifth Amendment right to due process of law.

55. Plaintiff has been and will continue to be irreparably harmed unless and until Defendants' violation of her Fifth Amendment right to due process of law is declared unconstitutional and Defendants are enjoined from continuing their investigation into Plaintiff, except

insofar as any actions are required to transfer this matter to a judicial council of another circuit.

56. Plaintiff has no adequate remedy at law.

## Count IV: First Amendment Violation – Unlawful Prior Restraint

57. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

58. The First Amendment guarantees to everyone, including federal judges, freedom of speech and generally prohibits prior restraint on speech.  U.S. Const. am. I; *Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1259 (2022).  It is well settled that "gag orders" are prior restraints under the First Amendment, *Alexander v. United States*, 509 U.S. 544, 550 (1993).  They thus bear "a heavy presumption against [their] constitutional validity," *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963), and are subject to strict scrutiny, *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

59. The Gag Order forbids Plaintiff or her attorneys from engaging in any speech that would in any way publicize the ongoing disciplinary proceedings against Plaintiff, thus imposing a prior restraint.  Such orders cannot be justified even in judicial proceedings unless there is a likelihood that "publicity, unchecked, would so distort the views of potential jurors that [they could not] fulfill their sworn duty to render a just verdict exclusively on the evidence … ."  *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 569 (1976).  Because there is no danger that judicial officers with life tenure would be so influenced by any amount of publicity as to be unable to discharge their duties, the Gag Order cannot survive strict scrutiny and thus violates the First Amendment.

60. Plaintiff has been and will continue to be irreparably harmed unless and until Defendants' Gag Order is declared to be unconstitutional as in violation of her First Amendment right to

free speech and Defendants are enjoined from requiring Plaintiff to refrain from publicizing the proceedings against her and publicly defending herself from the outrageous complaint lodged against her.

61. Plaintiff has no adequate remedy at law.

## Count V: *Ultra Vires* – Unlawful Prior Restraint

62. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

63. The Conduct Rules, to the extent they are themselves constitutional, permit a judge who is subject to disciplinary proceedings, with consent of the relevant Chief Judge, to publicly disclose all matters related to such proceedings except insofar as "the confidentiality interests of the complainant or of witnesses" are at issue.  *See* Commentary to Rule 23.

64. Plaintiff has consented to such a disclosure; however, the Gag Order states that Chief Judge Moore is under no obligation to do so, despite the Commentary to the relevant rule stating that "[o]nce the subject judge has consented to the disclosure of confidential materials related to a complaint, the chief judge ordinarily will refuse consent *only* to the extent necessary to protect the confidentiality interests of the complainant or of witnesses."

65. Defendant Chief Judge Moore's refusal to consent to the disclosure of the materials relevant to the disciplinary process against Plaintiff, except insofar as "the confidentiality interests of the complainant or of witnesses" is contrary to the Conduct Rules and *ultra vires*.

66. Plaintiff has been and will continue to be irreparably harmed unless and until Defendants' Gag Order is declared to be *ultra vires* as in violation of her rights under the Conduct Rules and Defendants are enjoined from requiring Plaintiff to refrain from publicizing the proceedings against her and publicly defending herself from the outrageous complaint lodged against her.

67. Plaintiff has no adequate remedy at law.

**Count VI: Fifth Amendment – Unconstitutional Vagueness of the Act's Disability Provision**

68. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

69. Plaintiff has liberty and property interests in the outcome of any misconduct or disability proceeding against her.  She also has liberty and property interests in not being subjected to an involuntary medical or psychiatric examination and further liberty and property interests in not being stigmatized as having committed misconduct and having her mental health questioned, as well as having her status as an Article III judge altered by ordering her to undergo a compelled medical or psychiatric evaluation by physicians not chosen by her and who are unknown to her.  Under the Fifth Amendment to the United States Constitution, Plaintiff cannot be deprived of her liberty and property interests without due process of law.

70. Plaintiff further has liberty and property interests in her private medical records, and those interests may not be invaded by requiring her to surrender these same records to an investigative authority absent due process of law.

71. The Act is unconstitutionally vague and violates the Due Process Clause of the Fifth Amendment because, *inter alia*, it fails to provide adequate notice of what constitutes a mental disability that renders a judge "unable to discharge all the duties of office."  It also is unconstitutionally vague and violates the Due Process Clause because it lacks minimal enforcement guidelines identifying when an Article III judge may be subject to a disability investigation, and, accordingly, when an Article III judge may be disciplined for objecting in good faith to undergoing a compelled medical or psychiatric examination or surrendering private medical records as part of an investigation into whether she suffers from a disability rendering her unable to discharge her duties.

72. Defendants' enforcement of the Act's unconstitutionally vague disability provisions against Plaintiff has caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until the Act is declared unconstitutional and Defendants are enjoined from a) enforcing any orders excluding Plaintiff from regular duties of an Article III judge; (b) requiring Plaintiff to refrain from publicizing the proceedings against her and publicly defending herself from the outrageous complaint lodged against her; and c) requiring Plaintiff to undergo a compelled medical or psychiatric examination and/or surrendering private medical records and disciplining Plaintiff for objecting in good faith to these demands.

73. Plaintiff has no adequate remedy at law.

### Count VII: *Ultra Vires*, Unconstitutional Examinations

74. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

75.  Neither the Act nor the U.S. Constitution authorizes compelling an Article III judge to undergo a medical or psychiatric examination or to surrender to any investigative authority her private medical records in furtherance of an investigation into whether the judge suffers from a mental or physical disability that renders her unable to discharge all the duties of office.

76. As Defendants have neither statutory nor constitutional power to compel Plaintiff to undergo an involuntary medical or psychiatric examination, or to compel Plaintiff to surrender her private medical records, the imposition of these requirements on Plaintiff are *ultra vires* and unconstitutional, as is disciplining Plaintiff for objecting to the same.

77. Defendants' *ultra vires* and unconstitutional acts have caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until they are declared unconstitutional and Defendants are enjoined from requiring Plaintiff to undergo a compelled

medical or psychiatric examination and/or surrendering private medical records and disciplining Plaintiff for objecting in good faith to these demands.

78. Plaintiff has no adequate remedy at law.

## Count VIII: Fifth Amendment – Unconstitutional Vagueness of the Act's Investigative Authority

79. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

80. The Act is unconstitutionally vague to the extent it purports to authorize compelled medical or psychiatric examinations of Article III judges or demands from special committees for Article III judges to surrender their private medical records. Section 353(c) of the Act, which authorizes a special committee to conduct an investigation "as extensive as it considers necessary," lacks minimal enforcement guidelines identifying the circumstances under which an Article III judge may be compelled to undergo a medical or psychiatric examination or surrender her private medical records. It vests virtually complete discretion in the hands of a special committee to determine when the compliance with such demands may be compelled. Consequently, the Act violates the due process protections of the Fifth Amendment and impermissibly intrudes on judicial independence.

81. Defendants' enforcement of the Act's unconstitutionally vague investigative provision against Plaintiff has caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until the Act is declared unconstitutional and Defendants are enjoined from requiring Plaintiff to undergo a compelled medical or psychiatric examination and/or surrendering private medical records and disciplining Plaintiff for objecting in good faith to these demands.

82. Plaintiff has no adequate remedy at law.

## **Count IX: Fourth Amendment – Unconstitutional Search**

83. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

84.  Plaintiff enjoys the right to be secure in her person and effects against unreasonable search and seizures, as guaranteed by the Fourth Amendment to the U.S. Constitution.

85. A compelled medical or psychiatric examination constitutes a search and seizure for purposes of the Fourth Amendment and therefore must satisfy minimum standards of constitutional reasonableness to be lawful.

86. The Act violates the Fourth Amendment to the extent it authorizes a compelled medical or psychiatric examination of an Article III judge without a warrant based on probable cause and issued by a neutral judicial official or a demonstration of constitutional reasonableness.

87. Defendants' enforcement of the unconstitutional Act against Plaintiff has caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until the Act is declared unconstitutional and Defendants are enjoined from requiring Plaintiff to undergo a compelled medical or psychiatric examination and disciplining Plaintiff for objecting in good faith to these demands.

88. Plaintiff has no adequate remedy at law.

## **Count X: Fourth Amendment – Unconstitutional Search**

89. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

90. Plaintiff enjoys the right to be secure in her person and effects against unreasonable search and seizures, as guaranteed by the Fourth Amendment to the U.S. Constitution.

91. A compelled surrender of private medical records constitutes a search and seizure for purposes of the Fourth Amendment and therefore must satisfy minimum standards of constitutional reasonableness to be lawful.

92. The Act violates the Fourth Amendment to the extent it authorizes a compelled surrender of medical records belonging to an Article III judge without a warrant based on probable cause and issued by a neutral judicial official or a demonstration of constitutional reasonableness.

93. Defendants' enforcement of the unconstitutional Act against Plaintiff has caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until the Act is declared unconstitutional and Defendants are enjoined from requiring Plaintiff to surrender her private medical records and disciplining Plaintiff for objecting in good faith to these demands.

94. Plaintiff has no adequate remedy at law.

## Count XI: Fourth Amendment – As Applied Challenge

95. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

96. Defendants lack either a warrant issued on probable cause by a neutral judicial official or a constitutionally reasonable basis for requiring Plaintiff to submit to an involuntary medical or psychiatric examination.  Accordingly, compelling Plaintiff to undergo an involuntary medical or psychiatric examination violates Plaintiff's Fourth Amendment rights.

97. Defendants' enforcement of the unconstitutional Act against Plaintiff has caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until the Act is declared unconstitutional and Defendants are enjoined from requiring Plaintiff to undergo a compelled medical or psychiatric examination and disciplining Plaintiff for objecting in good faith to these demands.

98. Plaintiff has no adequate remedy at law.

## Count XII: Fourth Amendment – As Applied Challenge

99. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

100.    Defendants lack either a warrant issued on probable cause by a neutral judicial official or a constitutionally reasonable basis for requiring Plaintiff to surrender her private medical records none of which bear on her fitness to continue serving as an Article III judge. Accordingly, compelling Plaintiff to surrender her private medical records violates Plaintiff's Fourth Amendment rights.

101.    Plaintiff has been and will continue to be irreparably harmed unless and until Defendants' violation of her Fourth Amendment rights is declared unconstitutional and Defendants are enjoined from requiring Plaintiff to surrender her private medical records and disciplining Plaintiff for objecting in good faith to these demands.

102.    Plaintiff has no adequate remedy at law.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully requests that the Court: (1) declare the Act to be unconstitutional, either in whole or in part and enjoin Defendants from enforcing the Act to the extent it is unconstitutional; (2) declare any continued proceedings against Plaintiff by the Judicial Council of the Federal Circuit to be unconstitutional as violative of due process of law and enjoin Defendants from continuing any such proceedings, except to the extent necessary to transfer the matter to a judicial council of another circuit; (3) order the termination of any further investigation of Plaintiff by the Judicial Council of the Federal Circuit; (4) declare any decisions by any and all Defendants authorizing a limitation of Plaintiff's docket or other special restrictions on her actions as a federal judge, including, but not limited to the reduction in statutorily authorized number of staff to be unconstitutional and/or not in accordance with the law, and enjoin Defendants from continuing any such actions; (5) declare any orders precluding Plaintiff from publicizing or otherwise speaking about the ongoing disciplinary proceedings to be unconstitutional and/or not

in accordance with the law and enjoin Defendants from enforcing the foregoing unconstitutional orders; (6) declare any orders of the special committee requiring Plaintiff to undergo a compelled medical or psychiatric examination and/or disciplining Plaintiff for objecting in good faith to these demands to be unconstitutional and enjoin Defendants from enforcing the foregoing unconstitutional orders; (7) declare any orders of the special committee requiring Plaintiff to surrender her private medical records and/or disciplining Plaintiff for objecting in good faith to these demands to be unconstitutional and enjoin Defendants from enforcing the foregoing unconstitutional orders; (8) award Plaintiff reasonable attorneys' fees and costs; and (9) grant Plaintiff such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of any triable issues.

May 10, 2023

Respectfully submitted,

/s/  John J. Vecchione

JOHN J. VECCHIONE (DC Bar No. 431764)
Senior Litigation Counsel
GREGORY DOLIN, *Pro Hac Vice Forthcoming*
Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210
john.vecchione@ncla.legal

# EXHIBIT A



PRODUCT    LAW FIRMS    COMPANIES    ABOUT US    RESOURCES    BLOG    CONTACT   LOGIN

# Blog

## Legal Analytics Sheds Light on Recent Judicial Conflict in the Federal Circuit

By Elaine Chow | May 3rd, 2023 | Analytics Articles, Legal Trends

On March 24, 2023, Kimberly Moore, chief judge of the Court of Appeals for the Federal Circuit, issued an order identifying a complaint under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351–364, against Pauline Newman, who has been a Federal Circuit judge since 1984. In the order, Judge Moore stated that she had found probable cause to believe that Judge Newman "has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts" and/or "is unable to discharge all the duties of office by reason of mental or physical disability." According to Chief Judge Moore, "[j]udges and staff have reported extensive delays in the processing and resolution of cases" by Judge Newman despite a reduction in her workload in 2021 and 2022. A second order issued by Chief Judge Moore on April 13, 2023 concluded that "there is sufficient cause to believe that Judge Newman has failed to cooperate constituting additional misconduct."

Lex Machina examined Federal Circuit data for the three-year period of January 1, 2020 to December 31, 2022, focusing on the 10 judges who were on active status during the entire time period. If a judge was a panelist on an appeal, then that case and its outcome are attributed to that judge; as a result, a case can be attributed to more than one judge. These panels may also include Judges Cunningham (appointed 2021) and Stark (appointed 2022), Judge O'Malley, who retired in March 2022, Judge Wallach, who went on senior status in May 2021, and Judges Bryson, Clevenger, Linn, Mayer, Plager, Schall, who are on senior status.

According to Lex Machina's data, Judge Newman has been a panelist on the fewest number of cases terminated during the time period at 436 cases, and terminated cases on which she was a panelist have the longest median time to termination at 424 days. Median time to termination means that half of the cases terminated in less than the median number of days, and half of the cases terminated in more than the median number of days.

However, among all active judges, none of the judges who were panelists on appeals cases that were terminated during the time period had a median time to termination of less than a year.

| Judge | Number of Appeals Cases Terminated (1/1/20 – 12/31/22) | Median Time to Termination in Days (1/1/20 – 12/31/22) |
|---|---|---|
| Chen | 520 | 388 |
| Dyk | 557 | 400 |
| Hughes | 496 | 415 |
| Lourie | 580 | 405 |
| Moore | 490 | 390 |
| Newman | 436 | 424 |
| Probst | 584 | 407 |

**SUBSCRIBE TO BLOG**

**RECENT POSTS**

› Legal Analytics Sheds Light on Recent Judicial Conflict in the Federal Circuit

› Webcast on the 2023 Antitrust Litigation Report

› Lex Machina Releases its 2023 Antitrust Litigation Report

› Legal Analytics Reveals Shifting Patent Caseloads in the Western District of Texas

**CATEGORIES**

› Analytics Articles

› COVID-19

› Legal Trends

› Products

› Reports

| Reyna | 577 | 422 |
| Stoll | 510 | 420 |
| Taranto | 583 | 401 |

In fact, for these 10 active judges, the median time to termination during the time period was 404 days for 2,248 appeals cases. As shown in the box plot below, the maximum number of days to termination for appeals cases during the time period, excluding outliers, was 827 days. A more detailed explanation of box plots and outliers as used in Lex Machina can be found here.



When Judge Newman was not a panelist, the median time to termination during the time period was 400 days for 1,812 appeals cases. The box plot below shows that the maximum number of days to termination for appeals cases during the time period, excluding outliers, was 790 days.



When the data is broken down by year, Judge Newman has the second fewest number of cases terminated in 2020 after Judge Hughes, and the fewest number of cases terminated in 2021 and 2022, although in 2022 she had 145 terminated cases compared to Chief Judge Moore's 146 cases. For cases in which Judge Newman was a panelist, the median time to termination was the highest among her colleagues in 2022 at 441 days. Judge Prost had the second longest median time to termination at 429 days. In 2020 and 2021, Judge Newman did not have the longest median time to termination compared to her colleagues.

Lex Machina's data indicates that even in individual years during the time period, the median time to termination for the active federal circuit judges is still more than a year (except for Chief Judge Moore, who in 2021 had a median time to termination of 364 days).

Analyzing the data can provide a more detailed, nuanced, and clear understanding of judicial performance. Lex Machina will continue to monitor the judge analytics of the parties involved as the inter-judicial conflict in the Federal Circuit continues to develop.

Share This Story!

Product:
Legal Analytics Platform
Quick Tools
How We're Different
Federal Practice Areas
State Courts
All Areas of Coverage

Business Type:
Law Firms
Companies
Consultants
Public Interest

About Us
News & Events
Resource Library
Careers
Blog

Lex Machina
1010 Doyle Street, Suite 200
Menlo Park, CA 94025
Phone: 1-650-390-9500

REQUEST A LIVE DEMO



**Lex Machina is a LexisNexis Company** | **Privacy Policy** | **Cookie Policy** | **Terms of Use** |
© 2015-2022



We use cookies to help provide and enhance our service and tailor content and advertisements. By continuing or closing this message you agree to the use of cookies. Disable them/read more

CLOSE

# EXHIBIT B

# United States Court of Appeals for the Federal Circuit

## ~~UNDER SEAL (NON-PUBLIC ORDER)~~

---

## IN RE COMPLAINT NO. 23-90015

---

Before MOORE, *Chief Judge.*

### ORDER

Pursuant to Rule 5 of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, I identify a judicial complaint against Judge Pauline Newman under the Judicial Conduct and Disability Act.  I do so having found probable cause to believe that Judge Newman "has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts" and/or "is unable to discharge all the duties of office by reason of mental or physical disability."  28 U.S.C. § 351(a).

In the summer of 2021, Judge Newman, at the age of 94, was ███████ ████████ and having to ███████████ .  Because those health issues rendered Judge Newman unable to discharge the duties of an active circuit judge, Judge Newman agreed to being taken off motion panels, which are a routine responsibility of all active judges and her sittings were reduced compared to her colleagues.  While Judge Newman was able to recover to the point of being able to again participate at oral argument, on ████ , 2022, Judge Newman fainted following an argument and was unable to walk without assistance.  Following that event, Judge Newman agreed to further reduction in sittings.

Approved for public release by the Judicial Council for the Federal Circuit on April 14, 2023.  Refer to the court's website for additional information.

IN RE COMPLAINT NO 23-90015                                        2

Despite these reductions in workload, judges and staff have brought to my attention concerns about Judge Newman's inability to perform the work of an active judge based on their personal experience. Judges and staff have reported extensive delays in the processing and resolution of cases. Concerns have also been raised that Judge Newman may suffer from impairment of cognitive abilities (i.e., attention, focus, confusion and memory) that render Judge Newman unable to function effectively in discharging case-related and administrative duties. It has been stated that Judge Newman routinely makes statements in open court and during deliberative proceedings that demonstrate a clear lack of awareness over the issues in the cases. These concerns were communicated directly to Judge Newman by several judges on March 7, 2023. On March 9, 2023, another judge met with Judge Newman to articulate concerns and urged her to consider senior status. [That judge] reported that she became angry and ended the meeting. That judge followed up with an email to Judge Newman and myself detailing ▮ concerns on March 14, 2023. Judge Newman did not respond. Several other judges have reported to me that they sought to meet with Judge Newman to express their concerns, but she has not responded to their calls or emails.

After concluding that the information provided me constituted reasonable grounds for inquiry into whether Judge Newman has engaged in misconduct or has a disability, I conducted a limited inquiry and was informed of the following additional information:

- From June 2022 to the present, Judge Newman participated in only 60 cases whereas the average active judge participated in 116. Judge Newman's case participation during this period was approximately 3.5 standard deviations below the mean.

IN RE COMPLAINT NO 23-90015

- From October 2020 to September 2021, the average total number of majority opinions authored by active judges (who were present during that period) was 39.5. Judge Newman authored 9 opinions. The next closest judge authored 34 opinions. During this period, the average time between assignment of a case to an authoring judge and issuance of the opinion was 70 days. Judge Newman's average time after assignment to issuance of an opinion was 249 days.

- From October 2021 to the present, Judge Newman authored only 8 majority opinions whereas the average active judge on the court during this same time authored 51. The next closest judge authored 42. During this period the average time between assignment of a case to an authoring judge and issuance of the opinion was 60 days. Judge Newman's average time after assignment to issuance of an opinion was 199 days.

- Our court rules require judges to vote on other judges' opinions within 5 business days and suggest "voting be given priority in each chambers over other matters." Federal Circuit Clerical Procedures #3, ¶ 7. It has been reported by judges and court staff that Judge Newman frequently takes 30 days or more to vote on colleagues' opinions.

- Despite the reduction in Judge Newman's caseload since at least ███ 2022, her time to issuance has not improved. For example, as of September 30, 2022, Judge Newman had only three cases pending, all of which were older than 90 days. One of those cases ███████ was not circulated until ███ 2023, 452 days after submission. It was reported that the opinion had to be substantially rewritten by her panel members prior to its issuance. The other two

██████████████████ ultimately were reassigned to other judges after extremely lengthy delays.

There have also been a number of cases which had to be reassigned after lengthy delays:

- Judge Newman assigned herself ████████████ ████████████, a pro se submitted case, on ████████ ████, 2020.  The case was reassigned to ████████████ on ████████, 2022, after it had been pending for 624 days.  After reassignment to ████████████, the case was resolved [within one month].

- Judge Newman assigned herself ████████████ ████████████, an argued case, on █████, 2020.  The case was reassigned to ████████ on █████ ██, 2021, after it had been pending for 380 days.

- Judge Newman assigned herself ████████████ ████████████, a pro se submitted case, on ████████ ██, 2022.  The case was reassigned to ████████ on ████████████, 2023, after it had been pending 374 days.  After reassignment to ████████████, the case was resolved in just three days.

- Judge Newman assigned herself ████████████ ████████████████, a pro se submitted case, on ██ ██, 2020.  The case was reassigned to ████████████ ██ on ████████, 2021, after it had been pending for 302 days.  After reassignment to ████████████, the case was resolved in a couple of weeks.

- Judge Newman assigned herself ████████████ ████████████, an argued case, on ████████████, 2022.  The case was reassigned to ████████████ ██ on ████████, 2022, after it had been pending

IN RE COMPLAINT NO 23-90015

269 days.  After reassignment, the case was resolved [within three months].

- Judge Newman assigned herself ███████ ███████, a pro se submitted case, on ███████████, 2022.  The case was reassigned to ███████ on ███████, 2023, after it had been pending 126 days.  After reassignment, the case was resolved [within two months].

I have also been made aware of allegations that Judge Newman has exhibited inappropriate behavior in managing staff by permitting one of her law clerks to exhibit unprofessional and inappropriate behavior which has been reported to Judge Newman.  On Monday, March 6, 2023, one of her staff reported that Judge Newman also disclosed sensitive medical information about ███████████ to her staff.

Based on the above-identified information, I conclude that there is probable cause to believe that Judge Newman's health has left her without the capacity to perform the work of an active judge and that her habitual delays are prejudicial to the efficient administration of justice.  *See* Judicial-Conduct Rule 4(b)(2) and Commentary (indicating that habitual delay in a significant number of cases may constitute cognizable misconduct).

I have attempted to see whether a satisfactory informal resolution could be reached to resolve these concerns.  I met with Judge Newman for approximately 45 minutes where I outlined the concerns about her inability to perform the work of an active judge and the concerns which had been expressed about her mental fitness.  She refused to consider senior status saying that she was the only person who cared about the patent system and innovation policy.  She acknowledged only that she was slow in resolving cases.  Despite half of the active judges of the court having

IN RE COMPLAINT NO 23-90015                                    6

expressed their concerns to Judge Newman or trying to express their concerns, Judge Newman appears unwilling to participate in any informal resolution.  I provided Judge Newman with a copy of this order on March 17, 2023 and informed her that it would not be docketed until March 24, 2023 so that she would have an opportunity to review it.  I again requested that we attempt to resolve these concerns by informal resolution.  She refused to meet with me and has not responded to my repeated attempts to discuss informal resolution.

In summary, the accumulation of these concerns, having been expressed to me by judges and court staff, give me probable cause to identify a complaint against Judge Newman regarding disability and misconduct to begin the review process provided in Rule 11 of the Rules for Judicial-Conduct and Judicial-Disability Proceedings.

IT IS SO ORDERED.


_3/24/2023_
         Date

/s/ Kimberly A. Moore
Kimberly A. Moore
Chief Judge

# EXHIBIT C

# United States Court of Appeals
# for the Federal Circuit

~~UNDER SEAL (NON-PUBLIC ORDER)~~

---

## IN RE COMPLAINT NO. 23-90015

---

Before MOORE, *Chief Judge.*

### ORDER

By order of March 24, 2023, a special committee composed of Chief Judge Moore, Judge Prost, and Judge Taranto (the Committee) was appointed to investigate and report its findings and recommendations with respect to a complaint identified against Judge Newman to the judicial council.

On April 7, 2023, the Committee issued an order which concluded that based upon its investigation and direct observations of Judge Newman's behavior, there is a reasonable basis to conclude she might suffer a disability that interferes with her ability to perform the responsibilities of her office. The Committee retained an expert who recommended that Judge Newman undergo medical testing and evaluation. The Committee found that such an examination is warranted to facilitate the Committee's investigation. An opportunity to consult with the expert was provided to Judge Newman. The Committee requested that Judge Newman inform the Committee by April 11, 2023 whether she would comply and make herself available for the needed examination to secure expedited medical appointments. The Order further informed Judge Newman that "[f]ailure to respond to this order by 3:00 pm on April 11, 2023, will be deemed failure to comply." And further

Approved for public release by the Judicial Council for the Federal Circuit on April 14, 2023. Refer to the court's website for additional information.

IN RE COMPLAINT NO 23-90015                                    2

that failure to comply without good cause shown may result
in the Committee seeking to expand the scope of the inves-
tigation to include an inquiry into whether the subject
judge's non-cooperation constitutes misconduct under Rule
4(a)(5) of the Rules for Judicial Conduct and Judicial Disa-
bility Proceedings. Judge Newman failed to respond to the
Committee's order.

Judge Newman has also refused to accept service of or-
ders issued under Rule 15(a)(1)(b), stating that she "was
not interested in receiving any documents" regarding this
matter. She likewise instructed the mailroom at her resi-
dence to refuse to accept the orders. The Committee has
referred these refusals to be included in the investigation
regarding Judge Newman's failure to cooperate.

Pursuant to Rule 13(a) of the Rules for Judicial Con-
duct and Judicial Disability Proceedings, the Committee
has requested that the scope of the investigation be ex-
panded to investigate whether Judge Newman has failed
to cooperate in violation of the Rules. *See* Rule 4(a)(5) of
the Rules for Judicial Conduct and Judicial Disability Pro-
ceedings ("Cognizable misconduct includes refusing, with-
out good cause shown, to cooperate in the investigation of
a complaint or enforcement of a decision rendered under
these Rules").

Based on this information, I conclude there is sufficient
cause to believe that Judge Newman has failed to cooperate
constituting additional misconduct. I accordingly expand
the scope of the investigation to include an investigation
into this newly identified matter. Pursuant to Rule
15(a)(1)(B), a copy of this email will be mailed to Judge
Newman.


IT IS SO ORDERED.

IN RE COMPLAINT NO 23-90015

_4/13/2023_
_____
**Date**

**/s/ Kimberly A. Moore**
Kimberly A. Moore
Chief Judge

# EXHIBIT D

# Proposed Exhibit Under Seal

# EXHIBIT E

# Proposed Exhibit Under Seal

# EXHIBIT F

# Proposed Exhibit Under Seal

# EXHIBIT G

# Proposed Exhibit Under Seal

# EXHIBIT H

# Proposed Exhibit Under Seal

# EXHIBIT I

# Proposed Exhibit Under Seal

# EXHIBIT J

# Proposed Exhibit Under Seal