**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE HON. PAULINE NEWMAN,<br>Circuit Judge<br>United States Court of Appeals for the Federal Circuit<br>717 Madison Place, NW<br>Washington, DC 20005,<br><br>                                        *Plaintiff*,<br><br>          v.<br><br>THE HON. KIMBERLY A. MOORE,<br>in her official capacities as<br>Chief Judge of the U.S. Court of Appeals for the Federal Circuit,<br>Chair of the Judicial Council of the Federal Circuit, and<br>Chair of the Special Committee of the Judicial Council of the<br>Federal Circuit,<br>717 Madison Place, NW<br>Washington, DC 20005,<br><br>THE HON. SHARON PROST,<br>in her official capacity as<br>Member of the Special Committee of the Judicial Council of the<br>Federal Circuit,<br>717 Madison Place, NW<br>Washington, DC 20005,<br><br>THE HON. RICHARD G. TARANTO,<br>in his official capacity as<br>Member of the Special Committee of the Judicial Council of the<br>Federal Circuit,<br>717 Madison Place, NW<br>Washington, DC 20005,<br><br>and<br><br>THE JUDICIAL COUNCIL OF THE FEDERAL CIRCUIT,<br>717 Madison Place, NW<br>Washington, DC 20005,<br><br>                                        *Defendants*. | NO. 1:23-CV-01334-CRC<br><br>FIRST AMENDED COMPLAINT |

## INTRODUCTION

Plaintiff, The Honorable Pauline Newman, brings this action for declaratory and injunctive relief against Defendants The Hon. Kimberly A. Moore, in her official capacities as Chief Judge of the

United States Court of Appeals for the Federal Circuit, Chair of the Judicial Council of the Federal Circuit, and Chair of the Special Committee of the Judicial Council of the Federal Circuit, The Hon. Sharon Prost, in her official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit, The Hon. Richard G. Taranto, in his official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit, and the Judicial Council of the Federal Circuit.  As grounds therefor, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

3. Plaintiff Pauline Newman is a Presidentially-appointed, Senate-confirmed active federal Circuit Judge of the United States Court of Appeals for the Federal Circuit ("Federal Circuit").

4. Defendant Kimberly A. Moore serves as Chief Judge of the Federal Circuit and, in that capacity, is chair of the Federal Circuit's Judicial Council. Chief Judge Moore became the Chief Judge of the Federal Circuit pursuant to operation of law, 28 U.S.C. § 45(a), on May 22, 2021.  In addition to these roles, Chief Judge Moore chairs a "Special Committee" investigating the complaint against Judge Newman—a complaint which Chief Judge Moore herself initiated under Rule 5 of the Rules of Judicial Conduct and Judicial Disability Proceedings ("Conduct Rules").  Chief Judge Moore is being sued in her official capacities as Chief Judge of the United States Court of Appeals for the Federal Circuit, Chair of the Judicial Council of the Federal Circuit, and Chair of the Special Committee of the Judicial Council of the Federal Circuit.

5.  Defendant Sharon Prost serves as Circuit Judge of the Federal Circuit and was appointed by Chief Judge Moore to be one of the members of the Special Committee investigating the complaint

against Judge Newman.  Judge Prost is being sued in her official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit.

6. Defendant Richard G. Taranto serves as Circuit Judge of the Federal Circuit and was appointed by Chief Judge Moore to be one of the members of the Special Committee investigating the complaint against Judge Newman.  Judge Taranto is being sued in his official capacity as Member of the Special Committee of the Judicial Council of the Federal Circuit.

7. Defendant Judicial Council of the Federal Circuit ("Judicial Council") is the administrative body of the U.S. Court of Appeals for the Federal Circuit and consists of all active-duty judges of that Court.  The Judicial Council is responsible for, *inter alia*, receiving and reviewing reports by Special Committees charged with investigating complaints of judicial misconduct and/or disability filed under the Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 351-64 ("the Act"). The Judicial Council derives its authority from §§ 332 and 352-54 of the Act and Rules 18-20 of the Rules for Judicial-Conduct and Judicial-Disability Proceedings.

8. The Judicial Council is unique among all circuit judicial councils because unlike the other circuit judicial councils which consist of a rotating mixture of circuit and district judges, the Judicial Council of the Federal Circuit consists exclusively of the active judges of the Federal Circuit who serve as members of the Judicial Council throughout their tenure on that Court.

9. By statute, the Federal Circuit is required to adopt "a procedure for the rotation of judges from panel to panel to ensure that all of the judges sit on a representative cross section of the cases." 28 U.S.C. § 46(b).

## STATEMENT OF FACTS

10. Judge Newman was the first-ever judge appointed directly to the Federal Circuit, by President Ronald Reagan on January 30, 1984.  She was confirmed to the seat less than a month later by a voice vote.  She received her commission as a Circuit Judge on February 28, 1984.

3

11. Since 1984, Judge Newman has continued to faithfully, diligently, and meticulously exercise the duties of her office, to recognition and acclaim.  In 2018, she was named "one of the 50 most influential people in the IP world" by Managing IP Magazine.

12. At all relevant times, Judge Newman has been and is in sound physical and mental health.  She has authored majority and dissenting opinions in the whole range of cases before her Court, has voted on petitions for rehearing *en banc*, and has joined in the *en banc* decisions of the Court.

13. In the course of her continuing service as an active-status Circuit Judge, Judge Newman has authored hundreds of majority, concurring, and dissenting opinions.  Judge Newman's dissenting opinions are often adopted by the Supreme Court in its frequent reversals of the Federal Circuit.

14. At all relevant times, Judge Newman has been willing and able to fully participate in the work of the Court and, consistent with the Court's internal practice and procedures for active-status judges, she has requested and expected to be assigned to the regular panel sittings of the Court.

15. Judge Newman's medical records reveal no disability, condition, or set of conditions, physical or mental, that would prevent her from carrying out the duties of an Article III judge.

16. A recent examination by Ted L. Rothstein, MD—a qualified neurologist and a full Professor of Neurology and Rehabilitation Medicine at the George Washington University School of Medicine & Health Sciences—revealed no significant cognitive deficits and led that expert to conclude that Judge Newman's "cognitive function is sufficient to continue her participation in her court's proceedings."  Exh. Y (filed under seal).

17. In early March 2023, Chief Judge Moore met with Judge Newman and attempted to convince Judge Newman to retire.  Judge Newman declined Judge Moore's entreaties.

18. On or about March 17, 2023, Chief Judge Moore drafted an order in which she, pursuant to Rule 5 of the Conduct Rules, "identified a complaint" against Judge Newman alleging that there is a "probable cause to believe that Judge Newman 'has engaged in conduct prejudicial to the effective

and expeditious administration of the business of the courts' and/or 'is unable to discharge all the duties of office by reason of mental or physical disability.'"  Exh. A.

19. The March 24 Order alleged that Chief Judge Moore offered not to "docket" the complaint were Judge Newman to agree to an "informal resolution" consisting of retiring from the Court.  When Judge Newman declined to submit to this intimidation tactic on or about March 24, 2023, Chief Judge Moore "docketed" the Order ("March 24 Order") and began the formal investigative process under Rule 11 of the Conduct Rules.  Exh. A at 5-6.

20. The March 24 Order, which served as the basis for launching the disciplinary process and purportedly contained "probable cause to believe that Judge Newman 'has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts' and/or 'is unable to discharge all the duties of office by reason of mental or physical disability,'" Exh. A at 1, is riddled with errors.  For example, the March 24 Order alleges that "[i]n the summer of 2021, Judge Newman, at the age of 94, was hospitalized after suffering a heart attack and having to undergo coronary stent surgery."  *Id.*  During the period (June 2021 through September 2021) when Chief Judge Moore claims that Judge Newman supposedly suffered a heart attack, Judge Newman sat on ten panels and issued at least eight (including majority, concurring, and dissenting) opinions.  Had Judge Newman suffered a heart attack, it would be extremely unusual for anyone, let alone a 94-year-old person, to serve throughout that period without skipping a beat (so to speak).  Besides which, even were the allegation true, having coronary artery disease is simply irrelevant to one's ability to be able to carry out judicial functions.

21. Judge Newman's medical records evince no history of any heart attacks or coronary artery stents.

22. Even more problematic (as these facts were readily available to Chief Judge Moore upon even a cursory inspection) is the allegation in the March 24 Order that "[b]ecause [of] those health issues, [Judge Newman's] sittings were reduced compared to her colleagues."  Exh. A at 1.  To the

contrary, in the summer of 2021, Judge Newman was a member of *ten* different panels of the Court—more than any other colleague but two.

23. Upon the issuance of the March 24 Order, Chief Judge Moore appointed a Special Committee consisting of herself, Circuit Judge Sharon Prost, and Circuit Judge Richard G. Taranto. Chief Judge Moore selected herself to chair the Special Committee to investigate the complaint that she herself "identified" and that as the complaint itself asserts, is predicated, at least in part, on statements by other Federal Circuit judges.

24. Before any evidence was taken, hearings held, or reports written, Chief Judge Moore and/or other Defendants unconstitutionally and unilaterally removed Circuit Judge Newman from all future sittings of the Court. In an email sent on April 5, 2023, and CC'ed to all judges of the Court, Chief Judge Moore confirmed that Judge Newman, though an active-status member of the Court, "will not be assigned any new cases until these [disciplinary] proceedings are resolved." Exh. B at 4. Chief Judge Moore stated that this was a unanimous decision of Judge Newman's colleagues. *Id.* No legal basis or precedent for such an action or decision had been provided until June 5, 2023, at which point the justification for the pre-investigatory suspension changed. *See infra*, ¶¶ 54-**Error! Reference source not found.**. To the extent that the suspension was a disciplinary measure, the action directly contradicted the Disability Act and Conduct Rules. *See* 28 U.S.C. §§ 353(c), 354(a)(2)(A)(i), Conduct Rules, R. 20(a), (b)(1)(D); *see also* 25(e), cmt. (noting that the Disability "Act[] allow[s] a subject judge to continue to decide cases and to continue to exercise the powers of chief circuit or district judge.").

25. Judge Newman has not been assigned to sit on any panels of the Court, starting with the April 2023 sitting, despite repeatedly requesting such assignments. The Defendants have indicated that they do not intend to assign Judge Newman to any panels in the foreseeable future. *See* Exh. O.

26. On or about April 6, 2023, Chief Judge Moore issued a new and virtually unprecedented order ("April 6 Order") expanding the scope of the Special Committee's investigation into Judge Newman's alleged "disability" and "misconduct" to include the questions of internal operations of Judge Newman's chambers.  Exh. B.

27. On April 7, 2023, the Special Committee issued an order ("April 7 Order") demanding that Judge Newman submit to neurological and neuropsychological examinations before physicians of the Special Committee's choosing.  The order was based in part on the Special Committee's alleged "direct observations of Judge Newman's behavior."  The April 7 Order afforded Judge Newman, who at that time was still not represented by counsel, a mere *three days* to comply with the request. Contrary to the Commentary to Rule 13 of the Conduct Rules, no attempt was made to "enter into an agreement with [Judge Newman] as to the scope and use that may be made of the examination results[.]"  The April 7 Order did not specify the scope of the requested examination, nor any limits on the use of examination results.  Exh. C.

28. On April 13, 2023, Chief Judge Moore, claiming that the failure to respond to the unreasonably short three-day deadline set forth in the April 7 Order constituted "sufficient cause to believe that Judge Newman [engaged in] additional misconduct," issued an order ("April 13 Order") further expanding the scope of investigation.  Exh. D.

29. On April 17, 2023, the Special Committee entered yet another order, this time demanding that Judge Newman share private medical records regarding medical events alleged in the March 24 Order.  The Special Committee once again set an unreasonably short response deadline of *four days*.  Exh. E.  Furthermore, the events this order alleged (*i.e.*, "heart attack" and "coronary stents") never transpired.  Even if they had, as they are not relevant to any questions pending before the Special Committee or the Judicial Council, these requests constitute a baseless invasion into Judge Newman's constitutionally and statutorily protected privacy interests.

30. On April 19, 2023, Chief Judge Moore unilaterally reassigned Judge Newman's judicial assistant/paralegal to another office.  *See* Exh. V.  For a significant period of time, Defendants refused to permit Judge Newman to hire a replacement judicial assistant, thus leaving her office short-staffed, until at the earliest, June 14, 2023, when Judge Newman was able to obtain a temporary replacement.  These delays in replacing her judicial assistant have greatly impaired Judge Newman's ability to accomplish her judicial duties such as processing her opinions, answering phone calls and emails from her colleagues and the like.

31. On the same date, Chief Judge Moore unilaterally reassigned one of Judge Newman's law clerks to the chambers of another judge.  *See* Exh. V.  Given this law clerk's earlier request made to Judge Newman to seek alternative employment, Judge Newman responded by email that terminating that law clerk's employment in her chambers was "appropriate."  She, however, did not consent to the law clerk's being reassigned to another judge's chambers within the Federal Circuit. Defendants have refused to authorize Judge Newman to hire a replacement law clerk, even though Judge Newman remains an active judge of the Federal Circuit, and she is statutorily entitled to four law clerks and a judicial assistant.

32. On April 20, 2023, Chief Judge Moore issued a new order once again expanding the scope of investigation, this time to cover matters concerning the internal workings of Judge Newman's chambers.  The complaint alleged, *inter alia*, that Judge Newman's refusal to assign her own law clerk to another judge's chambers—a highly unusual, if not unprecedented practice—likely constituted misconduct.  Exh. F.

33. On April 21, 2023, Judge Newman, now represented by the undersigned counsel, sent a letter to Chief Judge Moore and the remaining members of the Special Committee requesting immediate restoration of Judge Newman to the hearing calendar as well as a transfer of the identified complaint to a different Judicial Council as contemplated by Rule 26 of the Conduct Rules.  Judge

Newman explained that basic norms of due process cannot permit the same individuals to be accusers, witnesses, rapporteurs, and adjudicators of a complaint against her.  Exh. Q.

34. The letter to Chief Judge Moore cited opinions of leading judicial ethics experts who have unequivocally stated that in these circumstances transfer to another circuit's judicial council is necessary.  Exh. Q.

35. The letter to Chief Judge Moore and other members of the Special Committee reiterated that Judge Newman "will not fail to cooperate with any investigation that is conducted consistent with the limits that the Constitution, the Judicial Disability Act of 1980, and the Rules for Judicial Conduct and Judicial Disability Proceedings place on such investigations."  Exh. Q at 2.

36. At and around the time the undersigned counsel sent the letter to Chief Judge Moore, the story about the investigation and the surrounding events began to be reported in the press, academic, and legal community.  In response to these reports, the Judicial Council confirmed the existence of an investigation into Judge Newman and published the March 24 Order (in a redacted form) and the April 13 Order on the Federal Circuit's website.

37. On May 3, 2023, the Special Committee issued two orders.  Exhs. G; H.  The first order ("Gag Order") was in effect a gag order threatening Judge Newman and her counsel with sanctions should any of them publicize the ongoing investigation.  Exh. G.  The order intimated that even if Judge Newman were to agree to disclose the materials pursuant to Rule 23(b)(7) of the Conduct Rules, Chief Judge Moore would withhold her consent for the same, *see id.* at 3, despite commentary to Rule 23 stating that "[o]nce the subject judge has consented to the disclosure of confidential materials related to a complaint, the chief judge ordinarily will refuse consent *only* to the extent necessary to protect the confidentiality interests of the complainant or of witnesses." (emphasis added).

38. The second order issued on May 3, 2023 ("May 3 Order") by the Special Committee denied the request for transfer, without addressing the manifest due process concerns raised therein.  Exh. H.  The May 3 Order again ordered Judge Newman to submit to neurological and neuropsychological examinations before physicians of the Special Committee's choosing.  *Id.*  The Order also rejected Judge Newman's suggestions that she and the Special Committee "enter into an agreement … as to the scope and use that may be made of the examination results."  *Id.* at 7-8.  Finally, the May 3 Order again required Judge Newman to surrender medical records including records that do not exist for events that have never occurred.  *Id.* at 9.  The May 3 Order threatened Judge Newman with further expanding the scope of investigation unless she indicated her consent to the examination by 9:00 am on May 10, 2023.  *Id.* at 13-14.

39. The Special Committee's May 3 Order, together with a concurrently issued Judicial Council Order, denied Judge Newman's request to have the matter transferred to another circuit.  Exhs. H; I.

40. Though there was (and is) no emergency with respect to any investigative proceeding, except to restore an active member of the federal judiciary who has been unlawfully deprived from hearing cases for months (with no end in sight), the May 3 Order afforded Judge Newman merely seven days to respond.  Exh. H at 13-14.  In contrast, the Federal Rules of Appellate Procedure afford ten days for any party to respond to any motion, and the Federal Rules of Civil Procedure permit fourteen days for a response.  While investigations into judicial misconduct or disability are not governed by the Federal Rules of Appellate Procedure or Rules of Civil Procedure, both of those documents serve as a useful reference for what the guarantee of due process entails.  The undue haste with which the Special Committee is proceeding is indicative of the denial of due process.

41. The Special Committee attempted to justify its extraordinarily short deadlines by citations to S. Rep. No. 96-362 for the proposition that judicial complaints should be resolved within 90 days.  *See* Exh. K at 24; Exh. L at 3.  However, because Senate Report 96-362 accompanied an earlier

version of the Disability Act that Congress rejected, *see* H. Rep. 96-1313 at 4; Arthur D. Hellman,

*An Unfinished Dialogue: Congress, the Judiciary, and the Rules for Federal Judicial Misconduct Proceedings*, 32

Geo. J. Legal Ethics 341, 352-54 (2019), it cannot possibly justify the Special Committee's actions.

42. As indicated in several letters to the Special Committee, Judge Newman does not, in principle, object to undergoing a medical evaluation, if there is a sufficient and sound scientific basis for requesting the same; however, she objects to not being able to select or even participate in the selection of a medical professional to examine her, to not having any input into the scope of the medical investigation, and to submitting the results of these evaluations to a body that cannot, consistent with due process requirements, adjudicate the matter. *See, e.g.*, Exh. Q at 2; Exh. R at 4-5; Exh. T at 3. The Special Committee's refusal to even engage in a cooperative process to reach agreement as to the selection of practitioners, as well "as to the scope and use that may be made of the examination results," combined with its demand that Judge Newman submit to the examination on an expedited basis, contravene the requirements of the Conduct Rules and the guarantees of due process.

43. If and when the Special Committee proceeds to a hearing as contemplated by Rules 14(b) and 15(c), Judge Newman intends to call, and compel witness testimony from, each Federal Circuit judge (and hence each Judicial Council member), as is her right under the aforementioned rules.

44. On May 9, 2023, Judge Newman responded to the Special Committee. Exh. R. The May 9 Letter objected to the Special Committee's Gag Order on First Amendment grounds and, as an alternative, formally requested the public release of various orders and letters pursuant to Rule 23(b)(7) of the Conduct Rules. The letter also objected to the request for medical records on the basis that the committee did not (and is unlikely to be able to) explain the relevance of the requested records or the scope of their use. On similar grounds, Judge Newman objected to the request for medical testing. At the same time, Judge Newman indicated that she may be willing

to discuss the request with the Special Committee in a cooperative manner as contemplated by the commentary to Rule 13(a) which instructs "the Special Committee [to] enter into an agreement with the subject judge as to the scope and use that may be made of the examination results." *Id.* at 4. The May 9 Letter renewed the request for the matter be transferred to the judicial council of another circuit, once again explaining that since Chief Judge Moore was in effect a complainant in this matter and that since all of Judge Newman's colleagues are potential witnesses to her ability to competently carry out her judicial duties, it is inappropriate for any of them to also serve as adjudicators. *Id.* at 5-6. Finally, the May 9 Letter reiterated Judge Newman's demand to be immediately restored to the case assignment calendar. *Id.* at 6.

45. In response to the May 9 Letter, on May 16, 2023, the Special Committee issued two new orders. Exhs. J; K. In the first order, though it rejected Judge Newman's First Amendment arguments, the Special Committee agreed to grant Judge Newman's request made under Rule 23(b)(7), to disclose (with appropriate redactions) all prior orders entered in this matter. Exh. J. Additionally, the Order clarified that the prior gag order "imposed no restriction on discussion of those orders or other aspects of the proceeding that were already public, as long as no other confidential information is disclosed in such a discussion," and that "[t]o the extent Judge Newman and her counsel wish to publicly discuss aspects of this proceeding that have already been made public, the [May 3] Confidentiality Order placed no restriction on them." *Id.* at 3.

46. Nevertheless, the Special Committee instructed "Judge Newman and her counsel [that they] remain bound by Rule 23 and the [May 3] Confidentiality Order with regard to information not publicly disclosed by the Court such as future orders and filings." Exh. J at 12.

47. In the second order issued the same day (May 16), the Special Committee reiterated the request for medical records, medical testing, and a video-taped interview, and for the first time it explained the relevance and the scope of its demands. Exh. K. Nevertheless, the Special Committee again

rejected Judge Newman's requests to at the very least participate in the selection of providers or negotiations as to the type and scope of testing. *Id.* at 20-21. The Special Committee also did not explain on what basis the selected medical providers were chosen, nor delineate their qualifications to evaluate Judge Newman's mental health. The Special Committee once again denied the request for a transfer and entirely ignored Judge Newman's due process objection to the Judicial Council's suspension of her pending the outcome of the investigation. *Id.* at 26. The Special Committee set a deadline of 9:00 am on May 23, 2023, to respond to its requests. *Id.* at 25.

48. Also, on May 16, 2023, Judge Newman appealed her interlocutory suspension to the Committee on Judicial Conduct and Disability. Exh. U. Judge Newman provided this Committee with copies of prior Judicial Council Orders.

49. On May 24, 2023, the Committee on Judicial Conduct and Disability found that it has no jurisdiction over an "interim order" that "suspend[ed] [Judge Newman] from being assigned any cases *while the complaint is being investigated and adjudicated*." Exh. P.

50. On May 20, 2023, Judge Newman responded to the May 16 Orders seeking an extension of time until June 8, 2023. Exh. S. In support of the request, lead counsel for Judge Newman explained that he was out of the country and visiting Israel until June 1, 2023, in order to attend to family and religious obligations. On May 22, 2023, the Special Committee denied the requested extension of time, and instead reset the deadline to 9:00 am on May 26, 2023—a date that coincided with the Jewish festival of Shavuot ("Feast of Weeks.") Exh. L. As a result, and in order to avoid a conflict with religious obligations, Judge Newman's counsel was forced to respond a day earlier, by May 25, 2023 (Israeli time). Exh. T.

51. In the May 25 letter, Judge Newman responded to the Special Committee's May 16 Order, declining the requests but offering

to undergo necessary testing, provide necessary records, and meet with a Special Committee *provided that she is immediately restored to her rights and duties as a judge and further provided that this matter is promptly transferred to a judicial council of another circuit*, which is unmarred by the prior unlawful decisions and which is willing to "work[] or operat[e] *together*" with Judge Newman, including on selecting medical providers and setting the appropriate parameters of any examination.

Exh. T at 3 (emphasis in original).

52. The following day, "the Committee … requested that the scope of the investigation be expanded to investigate whether Judge Newman has failed to cooperate in violation of the Rules and whether her failure to cooperate constitutes misconduct."  In an order issued the same day, Chief Judge Moore granted the Committee's request and once again expanded the investigation.  Exh. M.

53. Less than a week later, on June 1, 2023, the Committee issued a new order apparently *narrowing* the scope of its investigation.  Exh. N.  The new order stated that "[i]n light of the practical constraints that Judge Newman's [alleged] refusal to cooperate places on the Committee's ability to proceed" it will not, "at this time" pursue the allegations regarding Judge Newman's mental or physical disability.  Instead, the Committee announced that its "investigation will focus on the question whether Judge Newman's refusal to cooperate with the Committee's investigation constitutes misconduct," *id.* at 2, 3.  The June 1 Order directed Judge Newman to, by July 5, 2023, "submit a brief limited to addressing the question whether [her] refusal to undergo examinations, to provide medical records, and to sit for an interview with the Committee … constitute [*sic*] misconduct and the appropriate remedy if the Committee were to make a finding of misconduct …."  *Id.* at 6.  The Committee scheduled oral argument on the matter for July 13, 2023.  *Id.*

54. Despite repeated attempts by Judge Newman to be restored to the regular rotation of judges assigned to hear cases, and several letters pointing out that neither the Disability Act nor the Conduct Rules (to the extent they are constitutional) authorize a suspension of a judge *prior* to the

completion of all of the procedures outlined in these documents, the Judicial Council, on June 5, 2023, issued an order reaffirming its decision to keep Judge Newman from hearing cases. Exh. O.

55. Bizarrely, the June 5 Order changes the rationale underlying the Judicial Council's actions, yet this hasty attempt to fix errors in Defendants' ill-conceived scheme to remove Judge Newman also fails to rectify the problem. First, the Judicial Council's June 5 Order was issued unlawfully, as Judge Newman, who is a member of the Judicial Council, was not even notified of any meeting of the Judicial Council, much less invited to participate. (The same is true about the alleged meeting of the Judicial Council on March 8, 2023). *See* R. 25(e), cmt. (noting that a judge is not disqualified from membership on the judicial council when there is a complaint pending against her, except insofar as the work of the council involves consideration of the complaint itself).

56. Second, the statements in the Order alleging that Judge Newman's case backlog exceeded the circuit-wide, agreed-upon deadlines are verifiably false.

57. Third, the justifications given for the suspension in the June 5 Order directly contradict Chief Judge Moore's email of April 5, 2023, which explained that the suspension is being imposed not as a result of any delays, but "pending the results of the investigation into potential disability/misconduct." *See supra* ¶ 24.

58. The June 5 Order claims that the initial decision to suspend Judge Newman from hearing cases was made on March 8, 2023, or *more than two weeks prior to* the docketing of the first complaint against Judge Newman (and more than a week prior to Chief Judge Moore's advising Judge Newman that she intended to take this course of action). *Compare* Exh. A at 6, *with* Exh. O at 1. There are several problems with this new claim. First, not only was Judge Newman not invited to participate in the March 8 Judicial Council meeting, but no copy of such an order was ever sent to Judge Newman. Judge Newman's request for the minutes of this meeting has gone unanswered.

59. Second, the order avers that "the Judicial Council *met* to consider concerns raised about Judge Newman's mental fitness by court staff and Judge Newman's abnormally large backlog in cases and her apparent inability to issue opinions in a timely fashion." Exh. O at 1 (emphasis added). However, no notice of such a meeting was ever provided to Judge Newman who is a member of the Judicial Council. *See* R. 25 (e), cmt.  The minutes of this meeting were not provided to Judge Newman.

60. Third, the June 5 Order falsely alleges that Judge Newman was precluded from sitting during the April 2023 session of the Court because at the time of case assignments (which occurred on February 6, 2023), Judge Newman's "backlog had placed her in violation of Federal Circuit Clerical Procedures #3, ¶ 15." Exh. O at 2.  In fact, on February 6, 2023, Judge Newman had *zero* cases that were subject to the rule.

61. Clerical Procedures #3, ¶ 15 reads: "Any judge who has (1) four or more opinion assignments over six months old, or (2) two or more opinion assignments over a year old (i.e., in which a draft has not been circulated to the panel for more than six months in four or more cases, or in more than one year in two or more cases after submission) will not be assigned to hear additional cases until the judge has reduced the number of such opinion assignments below (1) four over six months, or (2) two over a year," and "applies to all cases barring exceptional circumstances." Exh. W at 5-6.

62. The rule further gives examples of "exceptional circumstances" including a situation where a "panel … decide[s] to hold or stay a case pending en banc or Supreme Court disposition of another matter." Exh. W at 6, n.*.  The rule is explicit that "[i]n such circumstances, the requirements of [the rule] do not apply." *Id.*

63. On February 6, 2023, when the paneling memo for the April sitting was circulating, it is true that two cases on Judge Newman's docket were pending for over one year; however, neither was

16

subject to the requirements of Clerical Procedures #3, ¶ 15.  *Military-Veterans Advocacy, Inc. v. Sec'y of Veterans Affairs*, No. 20-1537 (reported at 63 F.4th 935 (Fed. Cir. 2023)), which at that point had been pending for 424 days, was stayed pending Congress's consideration of the <u>Sergeant First Class Heath Robinson Honoring our Promise to Address Comprehensive Toxics Act of 2022</u>, Pub. L. 117-168, 136 Stat. 1759 (codified at 38 U.S.C. §§ 1116 and 1710) (signed Aug. 10, 2022 and effective Oct. 1, 2022).  Because the case was stayed pending further developments in the law, it was not subject to Clerical Procedures #3, ¶ 15.  In fact, the Court requested additional briefing on the impact the newly enacted statute had on the litigation.  *See* 63 F.4th at 943.  The supplemental briefs were filed on September 14, 2022.  The case was resolved on March 22, 2023, roughly six months after the filing of supplemental briefs.

64. The second case that had been pending for more than a year was *SAS Inst. v. World Programming Ltd.*, No. 21-1542 (reported at 64 F.4th 1319 (Fed. Cir. 2023)).  The oral argument on that case was had on January 3, 2022.  However, Judge Newman was a *dissenting* judge on that case and thus had to wait for the panel to circulate the majority opinion prior to being able to draft her dissent.  The majority opinion by Judge Jimmy V. Reyna circulated on October 14, 2022, and the opinion was published on April 6, 2023, *i.e.*, within six months of Judge Reyna's circulating his draft.  In other words, Judge Newman took *three fewer* months to draft her dissent than Judge Reyna took to draft his opinion.

65. No other cases that were over a year old remained with Judge Newman, and only one case that was over six months old was among the cases assigned to her.  Thus, despite the bald assertions contained in the June 5 Order, Judge Newman was *not* "in violation of Federal Circuit Clerical Procedures #3, ¶ 15."

66. These facts were easily ascertainable by the Defendants, yet they instead created a false record and communicated it to the public.

67. Finally, the June 5 Order stated that it "conclude[d] upon *de novo* consideration that Judge Newman is not expeditiously carrying out the work of the Court, that assigning her new cases will only further interfere with expeditious execution of the work of the Court, and that an order precluding Judge Newman from new case assignments is warranted." Exh. O at 4. The Judicial Council asserted that Judge Newman has a "continued backlog of cases, and [an] inability to clear th[at] backlog." *Id.* at 1. Not only does the "continued backlog" justification radically differ from the prior "ongoing disciplinary proceedings" justification for Judge Newman's suspension, but it is also factually false.

68. At the time the order was issued, Judge Newman remained responsible for only nine cases, only one of which was over six months old, and some of which were or are expected to be separate opinions (concurrences and/or dissents). This number is lower than that of several other judges on the Court, yet Judge Newman remains the only judge suspended from the Court's work. As before, Judge Newman, though a member of the Judicial Council, *see* R. 25(e), cmt., was not notified of its meeting (if one ever took place) or the proposal, nor was she given an opportunity to speak or vote on this matter.

69. No end date for this suspension is listed in the Order. The Council asserted that 28 U.S.C. § 332(d)(1) authorizes it to impose such a restriction on Judge Newman's duties and further maintained that the order "is not a censure but rather a decision made for the effective and expeditious administration of the business of the court." Exh. O at 5. This assurance stands in sharp contrast to Chief Judge Moore's email of April 5, 2023, which states unequivocally that Judge Newman was suspended "pending the results of the investigation into potential disability/misconduct" and further states that suspension will not be lifted "until the[] [disciplinary] proceedings are resolved." Exh. B at 4.

70. Judge Newman has been removed from hearing cases for an indefinite period, which is not a permissible penalty even following an investigation.  Additionally, in an order issued on June 1, 2023, Defendants have indicated that they contemplate continued suspension of Judge Newman from "the duties of [her judicial] Office."  *See* Exh. N at 4.

71. The June 5 Order indicates that Defendants believe they have authority to suspend and may continue their suspension of Judge Newman *even in the absence of any finding of misconduct*.  *See* Exh. O at 5.

72. While the Special Committee has been pursuing its investigation(s) premised on a changing set of rationales, Judge Newman has written several opinions in previous cases, even though Chief Judge Moore's actions have interfered with the normal operations of Judge Newman's chambers.  Thus, on March 22, 2023, Judge Newman issued an eighteen-page opinion for the Court in *Military-Veterans Advocacy, Inc. v. Sec'y of Veterans Affairs*, 63 F.4th 935 (Fed. Cir. 2023).  On March 6, 2023, Judge Newman delivered a seven-page dissenting opinion in *May v. McDonough*, 61 F.4th 963 (Fed. Cir. 2023).  On March 31, 2023, Judge Newman filed a four-page dissenting opinion from the Court's opinion in *Roku Inc. v. Univ. Elecs., Inc.*, 63 F.4th 1319 (Fed. Cir. 2023), and on April 6, 2023, Judge Newman filed a fifteen-page dissenting opinion in *SAS Inst. v. World Programming Ltd.*, 64 F.4th 1319 (Fed. Cir. 2023).  Finally, on June 6, 2023, June Newman filed a twelve-page dissenting opinion in *Dep't of Transport. v. Eagle Peak Rock & Paving, Inc.*, No. 21-1837, ___ F.4th ___, 2023 WL 3829625 (Fed. Cir. 2023).  These opinions have been praised by various members of the bar, and nothing in them even hints at any mental disability.  *See, e.g.*, Andrew Michaels, *Judge Newman's Recent Dissents Show She Is Fit For Service*, Law360.com (June 6, 2023).

73. Judge Newman has also continued to participate in *en banc* decisions of the Court with no indication of any mental or physical disability.  Thus, she joined the *en banc* portion of the opinion in *Moore v. United States*, 66 F.4th 991 (Fed. Cir. 2023).  Judge Newman also participated in the poll

to take up the matter *en banc.*  There appear to have been no objections lodged to her participation by any members of the Federal Circuit bench or bar.

74. As recently as late 2022 or early 2023, Chief Judge Moore effusively praised Judge Newman's abilities and insight, writing in the American Intellectual Property Association Quarterly Journal that "Among patent practitioners, Judge Newman is particularly well-known for her insightful dissents, which have often been vindicated by the Supreme Court."  Chief Judge Moore then listed several cases where the Supreme Court, in reversing the Federal Circuit, "adopt[ed] essentially the reasoning of Judge Newman's dissent."  Kimberly A. Moore, *Anniversaries and Observations*, 50 AIPLA Q. J. 521, 524-25 (2022).

75. One empirical study shows that in "the three-year period of January 1, 2020 to December 31, 2022," Judge Newman's deviation from the average productivity and timeliness among the active judges of the Federal Circuit was not statistically significant.  These data also show that there has been no difference in Judge Newman's timeliness or productivity between 2020 and late 2022. Exh. X.

76. Another, more comprehensive empirical dataset shows that from October 1, 2021 to December 31, 2022, Judge Newman authored 25 opinions (including majority, concurring, and dissenting ones), whereas, in the same time period, Judge Raymond Chen authored only 20 opinions.  That dataset also shows that over the same time period, when counted from the time of filing of the appeal to its disposition, cases in which Judge Newman authored majority opinions were pending, on average, for 486 days.  At the same time, cases assigned to Judge Sharon Prost were pending for 509 days, Judge Todd Hughes for 543 days, and Judge Chen for 549 days.  *See* Ron D. Katznelson, Ph.D., *Is There a Campaign to Silence Dissent at the Federal Circuit?* at 18, *available at* https://ssrn.com/abstract=4489143.

77. These empirical studies are noteworthy because Chief Judge Moore predicated her original "identification of the complaint" in large part on Judge Newman's alleged lack of sufficient output as compared to her colleagues.  The empirical data stand in sharp contrast to these false allegations.

78. This empirical study also reveals that given Judge Newman's high rate of dissent, removing her from the Federal Circuit bench and replacing her with a judge whose rate of dissent is in line with the Circuit's average, would reduce the workload of an average Federal Circuit judge by more than 5%.  Katznelson, *supra* at 34-35.  So, Judge Newman's colleagues on the Federal Circuit have a personal interest in the outcome of disciplinary proceedings against her.

79. On information and belief, the ongoing proceedings before the Judicial Council of the Federal Circuit, have undermined the ability of judges and clerks to work together in a cooperative fashion, and have undermined the public confidence in that Court and judiciary as a whole.

## CLAIMS FOR RELIEF

### Count I: Improper Removal, Violation of Separation of Powers

80. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

81. The Constitution provides that "Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." U.S. Const. art. III, § 1.   The Constitution also provides that "[t]he House of Representatives … shall have the sole Power of Impeachment," and that "[t]he Senate shall have the sole Power to try all Impeachments."   U.S. Const. art. I, §§ 2, 3.   In light of these provisions, no executive or judicial agency or body may exercise, in form or in substance, the impeachment power reserved by the Constitution to the House and Senate.   Nor may any executive or judicial agency or body be delegated—or arrogate to itself—the impeachment power which the Constitution reserves to the House and Senate.

82. Defendants' orders and threats constitute an attempt to remove Plaintiff from office unlawfully—and already have removed her unlawfully from hearing cases—without impeachment and in violation of the Constitution, in substance if not form, by, *inter alia*, (a) refusing to assign Plaintiff any new cases and threatening to forbid the assignment of new cases to her; (b) removing, without Plaintiff's consent, judicial staff Plaintiff is statutorily authorized to retain and refusing authorization to hire replacement staff; (c) interfering with Plaintiff's abilities to administer her own chambers; (d) ordering Plaintiff to undergo an involuntary mental health examination without a sufficient basis or legal authority for doing so, by physicians unknown to and unapproved by Plaintiff, as set forth in this Complaint; and (e) ordering that the scope of the investigation into Plaintiff's conduct be expanded, merely because Plaintiff requires time to properly evaluate and answer Special Committee requests.

83. Plaintiff has been and will continue to be irreparably harmed unless and until (a) Defendants' orders excluding Plaintiff from regular duties of an Article III judge and their threats to continue with such exclusion are declared to be contrary to statutory law and enjoined; (b) Plaintiff is immediately restored to the case argument calendar as a fully-fledged active judge; and (c) Defendants are enjoined from continuing the investigation into Judge Newman except insofar as any actions are required to transfer this matter to a judicial council of another circuit.

84. Plaintiff has no adequate remedy at law.

### Count II: *Ultra Vires* – Improper Removal, Violation of Separation of Powers

85. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

86. To the extent that the Judicial Disability Act of 1980 is constitutional, it authorizes the Judicial Council, upon *conclusion* of a Special Committee's investigation and receipt of a report from such a committee, to "order[] that, on a temporary basis for a time certain, no further cases be assigned to the judge whose conduct is the subject of a complaint." 28 U.S.C. § 354(a)(2)(A)(i). Neither

the Act nor the Conduct Rules authorize either a Chief Judge acting alone, nor a judicial council of any circuit acting in concert, to issue any orders or directives which preclude an active Article III judge from being assigned cases in regular order while an investigation is still underway. "Sentence first—verdict afterwards" is a notorious and textbook example of deprivation of due process known even to children's literature.

87. Defendants' orders excluding Plaintiff from regular duties of an Article III judge, and their threats to continue with such exclusion, constitute an unlawful attempt to remove Plaintiff from office, without impeachment and in violation of the Constitution, in substance if not form, by, *inter alia*, (a) refusing to assign Plaintiff any new cases and threatening to forbid the assignment of new cases to her; (b) removing, without Plaintiff's consent, judicial staff Plaintiff is statutorily authorized to retain and refusing authorization to hire replacement staff; (c) ordering Plaintiff to undergo an involuntary mental health examination without a sufficient basis or legal authority for doing so, by physicians unknown to and unapproved by Plaintiff, as set forth in this Complaint; (d) interfering with Plaintiff's abilities to administer her own chambers; and (e) ordering that the scope of the investigation into Plaintiff's conduct be expanded, merely because Plaintiff requires time to properly evaluate and answer Special Committee requests.

88. Plaintiff has been and will continue to be irreparably harmed unless and until (a) Defendants' orders excluding Plaintiff from regular duties of an Article III judge and their threats to continue with such exclusion are declared to be contrary to statutory law and enjoined; (b) Plaintiff is immediately restored to the case argument calendar as a fully-fledged active judge; and (c) Defendants are enjoined from continuing the investigation into Judge Newman except insofar as any actions are required to transfer this matter to a judicial council of another circuit.

89. Plaintiff has no adequate remedy at law.

### Count III: *Ultra Vires* – Improper Removal, Violation of Separation of Powers

90. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

91. Nothing in Section 332(d)(1) authorizes the Judicial Council of the Federal Circuit, acting without so much as any notice to much less input from one of its members, to indefinitely suspend Judge Newman from her duties as an Article III judge or to reduce her staff as an "administrative" rather than "punitive" measure.

92. Defendants' orders excluding Plaintiff from regular duties of an Article III judge, and their threats to continue with such exclusion, constitute an attempt to remove Plaintiff from office, without impeachment and in violation of the Constitution, in substance if not form, by, *inter alia*, (a) refusing to assign Plaintiff any new cases and threatening to forbid the assignment of new cases to her; (b) removing, without Plaintiff's consent, judicial staff Plaintiff is statutorily authorized to retain and refusing authorization to hire replacement staff; (c) ordering Plaintiff to undergo an involuntary mental health examination without a sufficient basis or legal authority for doing so, by physicians unknown to and unapproved by Plaintiff, as set forth in this Complaint; (d) interfering with Plaintiff's abilities to administer her own chambers; and (e) ordering that the scope of the investigation into Plaintiff's conduct be expanded, merely because Plaintiff requires time to properly evaluate and answer Special Committee requests.

93. Plaintiff has been and will continue to be irreparably harmed unless and until (a) Defendants' orders excluding Plaintiff from regular duties of an Article III judge and their threats to continue with such exclusion are declared to be contrary to statutory law and enjoined; (b) Plaintiff is immediately restored to the case argument calendar as a fully-fledged active judge and (c) Defendants are enjoined from continuing the investigation into Judge Newman, except insofar as any actions are required to transfer this matter to a judicial council of another circuit.

94. Plaintiff has no adequate remedy at law.

**Count IV: Fifth Amendment – As Applied Due Process of Law Violation**

95. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

96. Defendants' continued investigation into Plaintiff's conduct violates the fundamental principles of due process because the Special Committee is composed of complainants about and witnesses to Plaintiff's alleged disability.  Furthermore, because the outcome of these proceedings may affect the total amount of work done by other Federal Circuit judges, all members of the Federal Circuit have a personal interest in the outcome of these proceedings.  The March 24 and May 3 Orders specifically reference, as a basis for beginning and continuing the investigation, the "personal observations" of the Special Committee members and other members of the Judicial Council. Empirical studies suggest that the work of an average Federal Circuit judge would be reduced by 9% if Judge Newman were replaced with a less dissent-prone judge.

97. It has been established for centuries that one cannot serve as a "judge in his own cause." *See Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).  Permitting the Judicial Council and its Special Committee to continue the disciplinary proceedings against Plaintiff in a case where all members of the Judicial Council are either complainants, actual or potential witnesses, interested parties, or all of the above, violates Plaintiff's Fifth Amendment right to due process of law.

98. Plaintiff has been and will continue to be irreparably harmed unless and until Defendants' violations of her Fifth Amendment right to due process of law are declared unconstitutional and Defendants are enjoined from continuing their investigation into Plaintiff, except insofar as any actions are required to transfer this matter to a judicial council of another circuit.

99. Plaintiff has no adequate remedy at law.

**Count V: Fifth Amendment – Unconstitutional Vagueness of the Act's Disability Provision**

100.    Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

101.    Plaintiff has liberty and property interests in the outcome of any misconduct or disability proceeding against her.  She also has liberty and property interests in not being subjected to an

involuntary medical or psychiatric examination and further liberty and property interests in not being stigmatized as having committed misconduct and having her mental health questioned, as well as having her status as an Article III judge altered, by ordering her to undergo a compelled medical or psychiatric evaluation by physicians not chosen by her and who are unknown to her. Under the Fifth Amendment to the United States Constitution, Plaintiff cannot be deprived of her liberty and property interests without due process of law.

102.    Plaintiff further has liberty and property interests in her private medical records, which may not be invaded by requiring her to surrender these same records to an investigative authority as a condition of maintaining her status as an active Article III judge.

103.    The Act is unconstitutionally vague and violates the Due Process Clause of the Fifth Amendment because, *inter alia*, it fails to provide adequate notice of what constitutes a mental disability that renders a judge "unable to discharge all the duties of office."   It also is unconstitutionally vague and violates the Due Process Clause because it lacks minimal enforcement guidelines identifying when an Article III judge may be subject to a disability investigation, and, accordingly, when an Article III judge may be disciplined for objecting in good faith to undergoing a compelled medical or psychiatric examination or surrendering private medical records as part of an investigation into whether she suffers from a disability rendering her unable to discharge her duties.

104.    Defendants' enforcement of the Act's unconstitutionally vague disability provisions against Plaintiff has caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until the Act is declared unconstitutional and Defendants are enjoined from (a) enforcing any orders excluding Plaintiff from regular duties of an Article III judge; (b) continuing the investigation into Judge Newman except insofar as any actions are required to transfer this matter to a judicial council of another circuit; and (c) requiring Plaintiff to undergo a compelled

medical or psychiatric examination and/or surrendering private medical records and from disciplining Plaintiff for objecting in good faith to these demands.

105.    Plaintiff has no adequate remedy at law.

### Count VI: *Ultra Vires*, Unconstitutional Examinations

106.    Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

107.    Neither the Act nor the U.S. Constitution authorizes compelling an Article III judge to undergo a medical or psychiatric examination or to surrender to any investigative authority her private medical records in furtherance of an investigation into whether the judge suffers from a mental or physical disability that renders her unable to discharge all the duties of office.

108.    As Defendants have neither statutory nor constitutional power to compel Plaintiff to undergo an involuntary medical or psychiatric examination, or to compel Plaintiff to surrender her private medical records, the imposition of these requirements on Plaintiff are *ultra vires* and unconstitutional, as is disciplining Plaintiff for objecting to the same.

109.    Defendants' *ultra vires* and unconstitutional acts have caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until they are declared unconstitutional and Defendants are enjoined from requiring Plaintiff to undergo a compelled medical or psychiatric examination and/or surrendering private medical records and from disciplining Plaintiff for objecting in good faith to these demands.

110.    Plaintiff has no adequate remedy at law.

### Count VII: Fifth Amendment – Unconstitutional Vagueness of the Act's Investigative Authority

111.    Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

112.    The Act is unconstitutionally vague to the extent it purports to authorize compelled medical or psychiatric examinations of Article III judges or demands from Special Committees for

Article III judges to surrender their private medical records.  Section 353(c) of the Act, which authorizes a Special Committee to conduct an investigation "as extensive as it considers necessary," lacks minimal enforcement guidelines identifying the circumstances under which an Article III judge may be compelled to undergo a mandatory medical or psychiatric examination or surrender her private medical records.  It vests virtually complete discretion in the hands of a Special Committee to determine when compliance with such demands may be compelled.  Consequently, the Act violates the due process protections of the Fifth Amendment and impermissibly intrudes on judicial independence which is guaranteed by Article III of the Constitution.

113.   Defendants' enforcement of the Act's unconstitutionally vague investigative provision against Plaintiff has caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until the Act is declared unconstitutional and Defendants are enjoined from requiring Plaintiff to undergo a compelled medical or psychiatric examination and/or surrendering private medical records and from disciplining Plaintiff for objecting in good faith to these demands.

114.   Plaintiff has no adequate remedy at law.

### Count VIII: Fourth Amendment – Unconstitutional Search

115.   Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

116.   Plaintiff enjoys the right to be secure in her person and effects against unreasonable search and seizures, as guaranteed by the Fourth Amendment to the U.S. Constitution.

117.   A compelled medical or psychiatric examination constitutes a search and seizure for purposes of the Fourth Amendment and therefore must satisfy minimum standards of constitutional reasonableness to be lawful.

118.    The Act violates the Fourth Amendment to the extent it authorizes a compelled medical or psychiatric examination of an Article III judge without a warrant based on probable cause and issued by a neutral judicial official or a demonstration of constitutional reasonableness.

119.    Defendants' enforcement of the unconstitutional Act against Plaintiff has caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until the Act is declared unconstitutional and Defendants are enjoined from requiring Plaintiff to undergo a compelled medical or psychiatric examination and from disciplining Plaintiff for objecting in good faith to these demands.

120.    Plaintiff has no adequate remedy at law.

### Count IX: Fourth Amendment – Unconstitutional Search

121.    Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

122.    Plaintiff enjoys the right to be secure in her person and effects against unreasonable search and seizures, as guaranteed by the Fourth Amendment to the U.S. Constitution.

123.    A compelled surrender of private medical records constitutes a search and seizure for purposes of the Fourth Amendment and therefore must satisfy minimum standards of constitutional reasonableness to be lawful.

124.    The Act violates the Fourth Amendment to the extent it authorizes a compelled surrender of medical records belonging to an Article III judge without a warrant based on probable cause and issued by a neutral judicial official or a demonstration of constitutional reasonableness.

125.    Defendants' enforcement of the unconstitutional Act against Plaintiff has caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until the Act is declared unconstitutional and Defendants are enjoined from requiring Plaintiff to surrender her private medical records and from disciplining Plaintiff for objecting in good faith to these demands.

126.    Plaintiff has no adequate remedy at law.

### Count X: Fourth Amendment – As Applied Challenge

127.    Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

128.    Defendants lack either a warrant issued on probable cause by a neutral judicial official or a constitutionally reasonable basis for requiring Plaintiff to submit to an involuntary medical or psychiatric examination.  Accordingly, compelling Plaintiff to undergo an involuntary medical or psychiatric examination violates Plaintiff's Fourth Amendment rights.

129.    Defendants' enforcement of the unconstitutional Act against Plaintiff has caused Plaintiff irreparable harm and will continue to cause Plaintiff irreparable harm unless and until the Act is declared unconstitutional and Defendants are enjoined from requiring Plaintiff to undergo a compelled medical or psychiatric examination and from disciplining Plaintiff for objecting in good faith to these demands.

130.    Plaintiff has no adequate remedy at law.

### Count XI: Fourth Amendment – As Applied Challenge

131.    Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

132.    Defendants lack either a warrant issued on probable cause by a neutral judicial official or a constitutionally reasonable basis for requiring Plaintiff to surrender her private medical records none of which bear on her fitness to continue serving as an Article III judge.  Accordingly, compelling Plaintiff to surrender her private medical records violates Plaintiff's Fourth Amendment rights.

133.    Plaintiff has been and will continue to be irreparably harmed unless and until Defendants' violation of her Fourth Amendment rights is declared unconstitutional and Defendants are enjoined from requiring Plaintiff to surrender her private medical records and from disciplining Plaintiff for objecting in good faith to these demands.

134.    Plaintiff has no adequate remedy at law.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully requests that the Court: (1) declare the Act to be unconstitutional, either in whole or in part and enjoin Defendants from enforcing the Act to the extent it is unconstitutional; (2) declare any continued proceedings against Plaintiff by the Judicial Council of the Federal Circuit to be unconstitutional as violative of due process of law and enjoin Defendants from continuing any such proceedings, except to the extent necessary to transfer the matter to a judicial council of another circuit; (3) order that Judge Newman's ability and authority to hear cases be immediately restored; (4) order the termination of any further investigation of Plaintiff by the Judicial Council of the Federal Circuit, except insofar as necessary to transfer the matter to the judicial council of another circuit; (5) declare any decisions by any and all Defendants authorizing a limitation of Plaintiff's docket or other special restrictions on her actions as a federal judge, including, but not limited to the reduction in statutorily authorized number of staff to be unconstitutional and/or not in accordance with the law, and enjoin Defendants from continuing any such actions; (6) declare any orders of the Special Committee requiring Plaintiff to undergo a compelled medical or psychiatric examination and/or disciplining Plaintiff for objecting in good faith to these demands to be unconstitutional and enjoin Defendants from enforcing the foregoing unconstitutional orders; (7) declare any orders of the Special Committee requiring Plaintiff to surrender her private medical records and/or disciplining Plaintiff for objecting in good faith to these demands to be unconstitutional and enjoin Defendants from enforcing the foregoing unconstitutional orders; (8) award Plaintiff reasonable attorneys' fees and costs; and (9) grant Plaintiff such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of any triable issues.

June 27, 2023

Respectfully submitted,

/s/ *John J. Vecchione*

JOHN J. VECCHIONE (DC Bar No. 431764)
Senior Litigation Counsel

/s/ *Gregory Dolin\**

GREGORY DOLIN, MD
Senior Litigation Counsel

NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
Telephone: (202) 869-5210
Facsimile: (202) 869-5238
john.vecchione@ncla.legal

*\*Admission Application Pending*

*Counsel for Plaintiff*