# Exhibit A

# United States Court of Appeals for the Federal Circuit

## ~~UNDER SEAL (NON-PUBLIC ORDER)~~

_____

### IN RE COMPLAINT NO. 23-90015

_____

Before MOORE, *Chief Judge.*

### ORDER

Pursuant to Rule 5 of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, I identify a judicial complaint against Judge Pauline Newman under the Judicial Conduct and Disability Act. I do so having found probable cause to believe that Judge Newman "has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts" and/or "is unable to discharge all the duties of office by reason of mental or physical disability." 28 U.S.C. § 351(a).

In the summer of 2021, Judge Newman, at the age of 94, was ███████████ ████████████ and having to ██████████████████. Because those health issues rendered Judge Newman unable to discharge the duties of an active circuit judge, Judge Newman agreed to being taken off motion panels, which are a routine responsibility of all active judges and her sittings were reduced compared to her colleagues. While Judge Newman was able to recover to the point of being able to again participate at oral argument, on ████, 2022, Judge Newman fainted following an argument and was unable to walk without assistance. Following that event, Judge Newman agreed to further reduction in sittings.

Approved for public release by the Judicial Council for the Federal Circuit on April 14, 2023. Refer to the court's website for additional information.

Despite these reductions in workload, judges and staff have brought to my attention concerns about Judge Newman's inability to perform the work of an active judge based on their personal experience. Judges and staff have reported extensive delays in the processing and resolution of cases. Concerns have also been raised that Judge Newman may suffer from impairment of cognitive abilities (i.e., attention, focus, confusion and memory) that render Judge Newman unable to function effectively in discharging case-related and administrative duties. It has been stated that Judge Newman routinely makes statements in open court and during deliberative proceedings that demonstrate a clear lack of awareness over the issues in the cases. These concerns were communicated directly to Judge Newman by several judges on March 7, 2023. On March 9, 2023, another judge met with Judge Newman to articulate concerns and urged her to consider senior status. [That judge] reported that she became angry and ended the meeting. That judge followed up with an email to Judge Newman and myself detailing ■ concerns on March 14, 2023. Judge Newman did not respond. Several other judges have reported to me that they sought to meet with Judge Newman to express their concerns, but she has not responded to their calls or emails.

After concluding that the information provided me constituted reasonable grounds for inquiry into whether Judge Newman has engaged in misconduct or has a disability, I conducted a limited inquiry and was informed of the following additional information:

- From June 2022 to the present, Judge Newman participated in only 60 cases whereas the average active judge participated in 116. Judge Newman's case participation during this period was approximately 3.5 standard deviations below the mean.

IN RE COMPLAINT NO 23-90015

- From October 2020 to September 2021, the average total number of majority opinions authored by active judges (who were present during that period) was 39.5. Judge Newman authored 9 opinions. The next closest judge authored 34 opinions. During this period, the average time between assignment of a case to an authoring judge and issuance of the opinion was 70 days. Judge Newman's average time after assignment to issuance of an opinion was 249 days.

- From October 2021 to the present, Judge Newman authored only 8 majority opinions whereas the average active judge on the court during this same time authored 51. The next closest judge authored 42. During this period the average time between assignment of a case to an authoring judge and issuance of the opinion was 60 days. Judge Newman's average time after assignment to issuance of an opinion was 199 days.

- Our court rules require judges to vote on other judges' opinions within 5 business days and suggest "voting be given priority in each chambers over other matters." Federal Circuit Clerical Procedures #3, ¶ 7. It has been reported by judges and court staff that Judge Newman frequently takes 30 days or more to vote on colleagues' opinions.

- Despite the reduction in Judge Newman's caseload since at least ███ 2022, her time to issuance has not improved. For example, as of September 30, 2022, Judge Newman had only three cases pending, all of which were older than 90 days. One of those cases ███ was not circulated until ███ 2023, 452 days after submission. It was reported that the opinion had to be substantially rewritten by her panel members prior to its issuance. The other two

IN RE COMPLAINT NO 23-90015                                    4

███████████████ ultimately were reassigned to other judges after extremely lengthy delays.

  There have also been a number of cases which had to be reassigned after lengthy delays:

- Judge Newman assigned herself ████████████ ████████████, a pro se submitted case, on ████████ ████, 2020.  The case was reassigned to ████████████ on ████████, 2022, after it had been pending for 624 days.  After reassignment to ████████████, the case was resolved [within one month].

- Judge Newman assigned herself ████████████ ████████████, an argued case, on ████████, 2020.  The case was reassigned to ████████████ on ████ ███, 2021, after it had been pending for 380 days.

- Judge Newman assigned herself ████████████ ████████████, a pro se submitted case, on ████████ ███, 2022.  The case was reassigned to ████████████ on ████████████, 2023, after it had been pending 374 days.  After reassignment to ████████████, the case was resolved in just three days.

- Judge Newman assigned herself ████████████ ████████████, a pro se submitted case, on ████ ███, 2020.  The case was reassigned to ████████████ ███ on ████████████, 2021, after it had been pending for 302 days.  After reassignment to ████████████, the case was resolved in a couple of weeks.

- Judge Newman assigned herself ████████████ ████████████, an argued case, on ████████████, 2022.  The case was reassigned to ████████████ ███ on ████████████, 2022, after it had been pending

IN RE COMPLAINT NO 23-90015

269 days.  After reassignment, the case was resolved [within three months].

- Judge Newman assigned herself ██████████ ████████, a pro se submitted case, on ██████████, 2022.  The case was reassigned to ██████████ on ██████████, 2023, after it had been pending 126 days.  After reassignment, the case was resolved [within two months].

I have also been made aware of allegations that Judge Newman has exhibited inappropriate behavior in managing staff by permitting one of her law clerks to exhibit unprofessional and inappropriate behavior which has been reported to Judge Newman.  On Monday, March 6, 2023, one of her staff reported that Judge Newman also disclosed sensitive medical information about ██████████ to her staff.

Based on the above-identified information, I conclude that there is probable cause to believe that Judge Newman's health has left her without the capacity to perform the work of an active judge and that her habitual delays are prejudicial to the efficient administration of justice. *See* Judicial-Conduct Rule 4(b)(2) and Commentary (indicating that habitual delay in a significant number of cases may constitute cognizable misconduct).

I have attempted to see whether a satisfactory informal resolution could be reached to resolve these concerns.  I met with Judge Newman for approximately 45 minutes where I outlined the concerns about her inability to perform the work of an active judge and the concerns which had been expressed about her mental fitness.  She refused to consider senior status saying that she was the only person who cared about the patent system and innovation policy.  She acknowledged only that she was slow in resolving cases.  Despite half of the active judges of the court having

IN RE COMPLAINT NO 23-90015                                    6

expressed their concerns to Judge Newman or trying to ex-
press their concerns, Judge Newman appears unwilling to
participate in any informal resolution.  I provided Judge
Newman with a copy of this order on March 17, 2023 and
informed her that it would not be docketed until March 24,
2023 so that she would have an opportunity to review it.  I
again requested that we attempt to resolve these concerns
by informal resolution.  She refused to meet with me and
has not responded to my repeated attempts to discuss in-
formal resolution.

In summary, the accumulation of these concerns, hav-
ing been expressed to me by judges and court staff, give me
probable cause to identify a complaint against Judge New-
man regarding disability and misconduct to begin the re-
view process provided in Rule 11 of the Rules for Judicial-
Conduct and Judicial-Disability Proceedings.

IT IS SO ORDERED.


_3/24/2023_                          /s/ Kimberly A. Moore
      Date                           Kimberly A. Moore
                                     Chief Judge

# Exhibit B

# United States Court of Appeals for the Federal Circuit

## ~~UNDER SEAL (NON-PUBLIC ORDER)~~

_____

## IN RE COMPLAINT NO. 23-90015

_____

Before MOORE, *Chief Judge.*

## ORDER

By order of March 24, 2023, a special committee composed of myself, as presiding officer, Judge Prost, and Judge Taranto (the Committee) was appointed to investigate and report its findings and recommendations with respect to a complaint identified against Judge Newman. Pursuant to Rule 13(a) of the Rules for Judicial Conduct and Judicial Disability Proceedings, the Committee has received newly discovered information. Because I find there is sufficient cause to believe that the new matter constitutes potential misconduct under the Rules, I have determined it is necessary to expand the scope of the investigation to include this new matter.

### I.

The new information arises out of an employment dispute between Judge Newman's [chambers staff member] and her [employee] ▮▮▮▮▮▮▮▮ On April 4, 2023, [Newman chambers staff member] came to me in my capacity as Chief Judge seeking informal resolution of a workplace dispute. In particular, [Newman Chambers staff member] complained that [employee] was contacting him outside of regular workplace hours to perform work-related tasks as well as what he viewed as

IN RE COMPLAINT NO 23-90015                                    2

tasks that were not part of his job duties.   After
discussing the matter with [Newman chambers staff
member], I sent an email to Judge Newman that
same day under the subject "[employee]" to make
sure Judge Newman was aware of the dispute and to
work with her to attempt to resolve the issue
informally:

> **From:** Chief Judge Kimberly A. Moore
> **Sent:** Tuesday, April 4, 2023 5:37 PM
> **To:** Judge Pauline Newman
> ███████████████████████████
> **Subject:** [employee]
>
> Judge Newman,
>
> A concern by a member of your staff has been
> brought to my attention.  I understand that
> your [employee] ████████████ has been
> contacting your [staff member] in the middle
> of the night to perform some work-related and
> some personal tasks for her.  I further
> understand that he has let [employee] know
> that he does not wish to be contacted outside
> of business hours except by you in the case of
> an emergency.  It is not clear to me how much
> you know about these inappropriate contacts
> so I am calling them to your attention as
> [employee's] supervisor to ensure that this
> uncomfortable situation does not continue.
> Can you please confirm receipt of this
> message?

   Judge Newman did not send a confirmation email.  She
did, however, send an email the following day to all judges

IN RE COMPLAINT NO 23-90015

and chambers staff on the court about not being assigned a
sitting on the June 2023 calendar:

**From:** Judge Pauline Newman
███████████████████████████████████
**Sent:** Wednesday, April 5, 2023 3:46 PM
**To:** Chief Judge Kimberly A. Moore
████████████████████████
**Cc:** -All Judges ████████████████████████████
**Subject:** June Calendar

To Chief Judge Moore,

Yesterday's notice of the June appeal paneling
again excludes me from the entire June hear-
ing calendar, despite my request.  Please cor-
rect this action...

I responded by sending two emails.  The first was the
following email, addressed only to Judge Newman and the
Judicial Council, with regard to the June sitting:

**From:** Chief Judge Kimberly A. Moore
**Sent:** Wednesday, April 5, 2023 4:05 PM
**To:** Judge Pauline Newman
██████████████████████████████
**Cc:** Judge Sharon Prost ████████████████████████;
Judge Richard G. Taranto
██████████████████████; Judge Todd Hughes
██████████████████; Judge Timothy B. Dyk
███████████; Judge Kara Stoll
██████████████; Judge Alan D. Lourie
██████████████████; Judge Tiffany P.

IN RE COMPLAINT NO 23-90015                                    4

Cunningham █████████████████████████████;
Judge Raymond Chen ████████████████████████;
Judge Jimmie Reyna ██████████████████████;
Leonard P. Stark ████████████████████
**Subject:** RE: June Calendar

Judge Newman,

I am not certain why you would send this
email to all law clerks and court staff.  Given
the sensitive nature of the issues involved, I
am sending this response only to the members
of the court's judicial council.  You have al-
ready been informed that the judicial council
voted unanimously not to assign you to sit on
any new cases pending the results of the in-
vestigation into potential disability/miscon-
duct identified in the order which you have
been given.  As you know, consistent with the
rules, a special committee was appointed and
that investigation is ongoing.  To be clear, you
will not be assigned any new cases until these
proceedings are resolved.

The following second email was sent only to Judge
Newman about the employment dispute matter under
the subject line "[employee]":

**From:** Chief Judge Kimberly A. Moore
**Sent:** Wednesday, April 5, 2023 4:12:37 PM
**To:** Judge Pauline Newman
████████████████████████████
**Subject:** RE: [employee]

Judge Newman,

IN RE COMPLAINT NO 23-90015

>Since I received an email from you a few minutes ago, I know you are on email. Yet, you did not acknowledge receiving the below email which identifies an EDR matter related to inappropriate conduct by one of your staff towards another [Newman chambers] staff member.  Please let me know that you will address the alleged inappropriate conduct by [employee], otherwise I need to do so.  I have been advised that I should make certain that you appreciate that [Newman chambers staff member] should suffer no adverse consequences for having come forward.

This court's Employment Dispute Resolution Plan require that "[a]ll individuals involved in the processes under this Plan must protect the confidentiality of the allegations of wrongful conduct" and that "[i]nformation will be shared only to the extent necessary and only with those whose involvement is necessary to address the situation." Despite those requirements, and my clear attempts to maintain confidentiality of the dispute resolution, Judge Newman proceeded to send an email, under the subject "[employee]," to the court's "All Judges" list—which includes all judges, chambers staff, and other judicial employees (95 individuals in all).  Judge Newman's email included in full my two emails under the subject "[employee]" immediately after her new message:

**From:** Judge Pauline Newman

██████████████████████

**Sent:** Wednesday, April 5, 2023 7:19:29 PM
**To:** Chief Judge Kimberly A. Moore

██████████████████████

**Cc:** -All Judges ████████████████████

**Subject:** Re: [employee]

Judge Moore,

Since you have not responded to my request, I assume you refuse to restore my service as a judge of the court.  This is more significant than a phone call to a member of my chambers staff.

Judge Newman

Sent from my iPhone

[Including the above-quoted emails of April 5, 2023, at 4:12 PM, and of April 4, 2023, at 5:37 PM]

## II.

Judicial misconduct is defined as "conduct prejudicial to the effective and expeditious administration of the business of the courts."  28 U.S.C. § 351(a).  Misconduct includes, but is not limited to, "treating . . . judicial employees . . . in a demonstrably egregious and hostile manner"; "creating a hostile work environment for judicial employees"; and retaliating against complainants, witnesses, judicial employees, or others for participating in this complaint process, or for reporting or disclosing judicial misconduct or disability."  Rule 4(a)(2)(B) and (C), and 4(a)(4).

In addition, the Code of Conduct for United States Judges ("the Code"), which is instructive in determining whether a judge's conduct constitutes judicial misconduct, provides that: (1)  "[a] judge should respect and comply with the law and should act at all times in a manner that promotes  public  confidence  in  the  integrity  and

IN RE COMPLAINT NO 23-90015

impartiality of the judiciary," Canon 2A of the Code; (2) "[a] judge should diligently discharge administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court personnel," Canon 3B(1); and (3) "[a] judge should practice civility, by being patient, dignified, respectful, and courteous, in dealings with court personnel, including chambers staff. A judge should not engage in any form of harassment of court personnel. A judge should not retaliate against those who report misconduct. A judge should hold court personnel under the judge's direction to similar standards," Canon 3B(4).

Based on this information, I conclude there is sufficient cause to believe that Judge Newman's disclosure of a confidential employment dispute matter and statements made in regard to that matter may constitute additional misconduct and may also be relevant to the matters already under investigation identified in the March 24, 2023 order identifying a complaint related to inappropriate behavior, inappropriate disclosure of confidential or sensitive information, and concerns about mental fitness to perform the work of an active judge. I accordingly expand the scope of the investigation to include an investigation into this newly-identified matter. Pursuant to Rule 15(a)(1)(B), the clerk shall transmit a copy of this order to Judge Newman.

IT IS SO ORDERED.

_4/6/23_
Date

/s/ Kimberly A. Moore
Kimberly A. Moore
Chief Judge

# Exhibit C

# United States Court of Appeals
# for the Federal Circuit

**UNDER SEAL (NON-PUBLIC ORDER)**

---

**IN RE COMPLAINT NO. 23-90015**

---

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges.*

PER CURIAM.

## ORDER

By order of March 24, 2023, a special committee composed of Chief Judge Moore, Judge Prost, and Judge Taranto (the Committee) was appointed to investigate and report its findings and recommendations with respect to a complaint identified against Judge Newman raising, inter alia, a concern that she has a mental or physical disability that renders her unable to discharge the duties of her office.

Based on its investigation and direct observations of Judge Newman's behavior, the Committee has determined that there is a reasonable basis to conclude she might suffer a disability that interferes with her ability to perform the responsibilities of her office.  The Committee has retained ████████████████████ to assist the Committee in this matter.  He has recommended that Judge Newman undergo a neurological examination and a complete neuro-psychological battery of tests to determine whether she suffers from a disability, and if so, its nature and extent.   The Committee finds such examination is

IN RE COMPLAINT NO 23-90015

warranted to facilitate the Committee's investigation of the Complaint because there is a reasonable basis to believe such an examination is necessary. *See* Rule 13 of the Rules for Judicial Conduct and Judicial-Disability Proceedings ███ ████ has identified a qualified neurologist, ████ ████, who is willing to perform the necessary neurological testing on an expedited basis, and a qualified neuropsychologist, ████████, who is willing to conduct the neuropsychological testing on an expedited basis. Specific dates to be arranged. ██████ is also available to speak to Judge Newman to answer any questions about the nature of the examination and testing. He may be reached at ████████. The Court will retain and bear all costs associated with the required testing.

Accordingly,

IT IS ORDERED THAT:

(1)     Judge Newman is directed to undergo the above-identified examination and testing.

(2)     Given the willingness of the physicians to handle this matter on an expedited basis and the need to retain the physicians and allocate funds, a prompt response is necessary to secure the appointments. Judge Newman is therefore directed to inform the Committee by 3:00 pm on April 11, 2023 whether she will comply with this Order and make herself available for the above needed examinations and tests.

(3)     Refusal to comply with this Order without good cause shown may result in the Committee seeking to expand the scope of the investigation to include an inquiry into   whether   the   subject   judge's   non-cooperation

IN RE COMPLAINT NO 23-90015

constitutes misconduct under Rule 4(a)(5) of the Rules for Judicial Conduct and Judicial-Disability Proceedings. Failure to respond to this order by 3:00 pm on April 11, 2023 will be deemed failure to comply.

# Exhibit D

# United States Court of Appeals
# for the Federal Circuit

~~UNDER SEAL (NON-PUBLIC ORDER)~~

---

## IN RE COMPLAINT NO. 23-90015

---

Before MOORE, *Chief Judge.*

### ORDER

By order of March 24, 2023, a special committee composed of Chief Judge Moore, Judge Prost, and Judge Taranto (the Committee) was appointed to investigate and report its findings and recommendations with respect to a complaint identified against Judge Newman to the judicial council.

On April 7, 2023, the Committee issued an order which concluded that based upon its investigation and direct observations of Judge Newman's behavior, there is a reasonable basis to conclude she might suffer a disability that interferes with her ability to perform the responsibilities of her office. The Committee retained an expert who recommended that Judge Newman undergo medical testing and evaluation. The Committee found that such an examination is warranted to facilitate the Committee's investigation. An opportunity to consult with the expert was provided to Judge Newman. The Committee requested that Judge Newman inform the Committee by April 11, 2023 whether she would comply and make herself available for the needed examination to secure expedited medical appointments. The Order further informed Judge Newman that "[f]ailure to respond to this order by 3:00 pm on April 11, 2023, will be deemed failure to comply." And further

Approved for public release by the Judicial Council for the Federal Circuit on April 14, 2023. Refer to the court's website for additional information.

IN RE COMPLAINT NO 23-90015                                    2

that failure to comply without good cause shown may result in the Committee seeking to expand the scope of the investigation to include an inquiry into whether the subject judge's non-cooperation constitutes misconduct under Rule 4(a)(5) of the Rules for Judicial Conduct and Judicial Disability Proceedings. Judge Newman failed to respond to the Committee's order.

Judge Newman has also refused to accept service of orders issued under Rule 15(a)(1)(b), stating that she "was not interested in receiving any documents" regarding this matter. She likewise instructed the mailroom at her residence to refuse to accept the orders. The Committee has referred these refusals to be included in the investigation regarding Judge Newman's failure to cooperate.

Pursuant to Rule 13(a) of the Rules for Judicial Conduct and Judicial Disability Proceedings, the Committee has requested that the scope of the investigation be expanded to investigate whether Judge Newman has failed to cooperate in violation of the Rules. *See* Rule 4(a)(5) of the Rules for Judicial Conduct and Judicial Disability Proceedings ("Cognizable misconduct includes refusing, without good cause shown, to cooperate in the investigation of a complaint or enforcement of a decision rendered under these Rules").

Based on this information, I conclude there is sufficient cause to believe that Judge Newman has failed to cooperate constituting additional misconduct. I accordingly expand the scope of the investigation to include an investigation into this newly identified matter. Pursuant to Rule 15(a)(1)(B), a copy of this email will be mailed to Judge Newman.

IT IS SO ORDERED.

IN RE COMPLAINT NO 23-90015

4/13/2023
_____
**Date**

/s/ Kimberly A. Moore
Kimberly A. Moore
Chief Judge

# Exhibit E

# United States Court of Appeals for the Federal Circuit

**UNDER SEAL (NON-PUBLIC ORDER)**

————————————————

**IN RE COMPLAINT NO. 23-90015**

————————————————

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges*.

PER CURIAM.

## ORDER

By order of March 24, 2023, a special committee composed of Chief Judge Moore, Judge Prost and Judge Taranto (the Committee) was appointed to investigate and report its findings and recommendations with respect to a complaint identified against Judge Newman raising, inter alia, a concern that she has a mental or physical disability that renders her unable to discharge the duties of her office. Judge Newman has refused to comply with the Committee's order to undergo examination and testing in the order dated April 7, 2023.

To obtain information the Committee believes important to its fulfillment of its responsibilities, the Committee, by the present Order, requires that Judge Newman provide hospital records, medical, psychiatric or psychological, and other health-professional records that relate to the incidents of 2021 and 2022 described in the second paragraph of the Order dated March 24, 2023. These include records of treatment as well as consultation about those

incidents, whether from a time contemporaneous with the incidents or later.

The Committee also requires production of hospital records and medical, psychiatric or psychological, or other health-professional records of any treatment or consultation in the last two years regarding attention, focus, confusion, memory loss, fatigue or stamina.

Separate from the foregoing records requirement, the Committee also requests that Judge Newman sit down with the Committee for a video-taped interview.

The Committee proposes Judge Newman provide such medical records by May 5, 2023 (subject to an extension for good cause) and that Judge Newman be interviewed by the Committee thereafter at a mutually agreeable time and date.

Accordingly,

IT IS ORDERED THAT:

By 9:00 am Friday, April 21, 2023, Judge Newman is directed to (1) inform the Committee in writing (email response is acceptable) as to whether (a) she will provide the Committee with the identified medical information; and (b) she will consent to the proposed interview or (2) provide good cause why an extension of time is needed to respond to this Order. Refusal to comply with this Order without good cause shown may result in the Committee seeking to expand the scope of the investigation to include inquiry into whether the subject judge's non-cooperation constitutes misconduct under Rule 4(a)(5) of the Rules for Judicial Conduct and Judicial-Disability Proceedings. Failure to respond by 9:00 am April 21, 2023 will be deemed failure to comply and be treated by the Committee as a refusal to cooperate. So ordered April 17, 2023.

# Exhibit F

# United States Court of Appeals for the Federal Circuit

## ~~UNDER SEAL (NON-PUBLIC ORDER)~~

---

### IN RE COMPLAINT NO. 23-90015

---

Before MOORE, *Chief Judge.*

## ORDER

By order of March 24, 2023, a special committee composed of Chief Judge Moore, Judge Prost, and Judge Taranto (the Committee) was appointed to investigate and report its findings and recommendations with respect to a complaint identified against Judge Newman. Pursuant to Rule 13(a) of the Rules for Judicial Conduct and Disability Proceedings, the Committee has received new information regarding additional acts of potential misconduct that it has referred to me. Because there is sufficient cause to believe that these new matters constitute misconduct under the Rules and may also be relevant to existing investigations into Judge Newman's mental fitness, it is necessary and appropriate to expand the scope of the investigation to include these new matters.

### I

The first new matter relates to Judge Newman's alleged conduct toward her [chambers staff member], ████ ████ (her [chambers staff member]). On Monday, March 6, 2023, [the Newman chambers staff member] reported to me that Judge Newman had disclosed sensitive medical information about another judge to her staff. Following [Newman chambers staff member]'s report, I spoke with

IN RE COMPLAINT NO 23-90015

Judge Newman and her staff to ensure they understood Judge Newman's disclosure was inappropriate and that they should not disclose the confidential information to anyone else.

The Committee has been informed that, following my conversation with Judge Newman and her staff, Judge Newman allegedly took retaliatory action against [her chambers staff member] in response to his protected disclosures. Judge Newman instructed her staff to no longer include [her chambers staff member] in chambers' communications, including work-related emails. Judge Newman also altered the scope of [her chambers staff member]'s duties. For example, the Committee has been informed that prior to Judge Newman's directive, [her chambers staff member] was regularly included on all chambers-related communications and that reviewing those communications was a routine part of his job responsibilities. It has been reported that Judge Newman's actions negatively and materially impacted the nature and scope of his work.

The Committee has also been made aware of additional potential acts of retaliation. [Judge Newman's chambers staff member] contacted ████████████, the Court's Director of Workplace Relations, seeking informal resolution of a workplace dispute regarding his complaint that ███████████, Judge Newman's [employee], was inappropriately contacting him outside of regular business hours to perform work-related and personal tasks. As detailed in the April 6, 2023 Order, I emailed Judge Newman on April 4, 2023 to inform her of [her chambers staff member]'s concerns, to ensure Judge Newman would take appropriate action to address those concerns, and to remind her that [her chambers staff

IN RE COMPLAINT NO 23-90015

member] should suffer no adverse consequences for having come forward.  To date, I have not received a response from Judge Newman confirming she has taken any steps to address [her chambers staff member]'s concerns.  In fact, as detailed in the April 6, 2023 Order, Judge Newman's only response was an email to 95 court employees disclosing [her chambers staff member]'s confidential complaint in which she stated her concerns about her own case assignments were more significant than [her chambers staff member]'s complaint.

Due to Judge Newman's failure to take corrective actions, I spoke to [Judge Newman's employee] about [her chambers staff member]'s concerns on April 10, 2023.  [The Court's Director of Workplace Relations] also participated in that conversation.  [Judge Newman's employee] asked to record the conversation, which we allowed. [Judge Newman's employee] claimed that she had not been informed about the EDR matter.  We explained to her the concerns about late night calls and text messages and asked if she would agree to refrain from calls and texts to [the chambers staff member] outside of business hours (8-6).  [The Court's Director of Workplace Relations] explained to her that emails related to work could be sent at any time.  During the conversation, [Judge Newman's employee] refused to agree to refrain from calling and texting [the chambers staff member] outside of business hours and requested more time to consider whether she would cease to call and text him outside of business hours.  I asked [Judge Newman's employee] if she would at least agree, while she was considering the matter, to refrain from contacting [the chambers staff member] in the middle of the night for a short period. She refused to agree to even that short-term resolution.  Judge Newman is aware of these EDR concerns and to date,

IN RE COMPLAINT NO 23-90015

[Judge Newman's employee] has refused to agree not to contact [the chambers staff member] outside of normal business hours.

On April 13, 2023, [Judge Newman's chambers staff member] filed a formal request for Assisted Resolution with [the Court's Director of Workplace Relations] concerning his claims that he had suffered abusive conduct and retaliation for his protected disclosures. [Judge Newman's chambers staff member] sought interim relief in the form of an alternative work arrangement while those claims were being investigated. After reviewing [Judge Newman's chambers staff member]'s request, and in consultation with [the Court's Director of Workplace Relations], I found it appropriate to grant [Judge Newman's chambers staff member]'s request for interim relief as permitted by the Court's Employment Dispute Resolution (EDR) Plan. Accordingly, I ordered that [Judge Newman's chambers staff member]'s workstation be moved outside of Judge Newman's chambers until further notice and that Judge Newman's staff should not contact [Judge Newman's chambers staff member] outside of business hours. The interim relief did not prevent Judge Newman from contacting [her staff member] at any time for any matter. I also informed Judge Newman that, apart from relocation of his workstation, [Judge Newman's chambers staff member] would continue to perform his current job duties. I informed Judge Newman of the interim relief via email on April 14, 2023, as shown below:

IN RE COMPLAINT NO 23-90015

[The Court's Director of Workplace Relations] followed up by email to Judge Newman on April 18, 2023, indicating that she was available to assist in resolving this matter and would welcome the opportunity to speak with Judge Newman about [her chambers staff member]'s concerns. Judge Newman did not respond to either email.

To date, Judge Newman has not responded to the Court's Director of Workplace Relations ▮▮▮▮▮▮ or to the Chief Judge about either the April 13, 2023 EDR matter or the separate EDR matter discussed in the April 6, 2023 Order. Our EDR policy requires that "[a]ll Judges, Employing Offices, and Employees have a responsibility to



From: Chief Judge Kimberly A. Moore ▮▮▮▮▮▮▮▮
Sent: Friday, April 14, 2023 2:30 PM
To: Judge Pauline Newman ▮▮▮▮▮▮▮▮
Cc: ▮▮
Subject: EDR MATTER

Judge Newman,

Our Director of Workplace Relations, ▮▮▮▮▮▮ has received a request for Assisted Resolution from ▮▮▮▮▮ that pertains to claims that include abusive conduct and retaliation for protected disclosures. Pursuant to the Employment Dispute Resolution Plan (attached), ▮▮ has requested interim relief, in the form of an alternative work arrangement while these allegations are being investigated. Based on the information currently available to me, I find it appropriate to grant interim relief as follows: until further notice, ▮▮ workstation will be moved outside of chambers. He will continue to perform his current job duties. However, any communication from employees of Judge Newman's chambers other than Judge Newman should be made to ▮▮ only during regular business hours and only via the court's email system or Microsoft Teams. I hope that you will work with the court team as they investigate and attempt to resolve these issues. Please remember that this request and all information related to it should be treated as confidential. You may not even share it with your staff except to tell them about the new manner in which to contact ▮▮

Chief Judge Kimberly Moore

The Honorable Kimberly A. Moore
Chief Judge
U.S. Court of Appeals for the Federal Circuit

5

IN RE COMPLAINT NO 23-90015

promote workplace civility, prevent harassament or abusive conduct, and to take appropriate action upon receipt of reliable information indicating a likelihood of wrongful conduct under th[e] Plan."   No cooperation from Judge Newman or [Judge Newman's employee] on either matter has occurred.  The information provided to the Committee suggests Judge Newman has not taken any steps to fulfill her duty to resolve [her chambers staff member]'s concerns.

On April 19, 2023, the Committee was informed that at 9:30 am, directly contrary to the interim relief [Judge Newman's chambers staff member] requested and ordered pursuant to the EDR process, Judge Newman demanded [her chamebrs staff member] return to his workstation in her chambers by 11:00 am and that if he failed to do so she would construe his failure as an immediate resignation.

The Committee has also been informed that Judge Newman has made inappropriate and unprofessional statements to other court staff regarding [her chambers staff member].  Specifically, on April 18, 2023, Judge Newman expressed frustation over [her chambers staff member] answering the chambers phone lines including her phone line, which had at all times been part of his normal job duties.  She then informed the IT Staff of her intention to have [her chambers staff member] removed from the building and arrested.  Judge Newman ended the conversation by threatening litigation at the Supreme Court and suggesting that all of this would be on the front page of the Washington Post.

Based on the information presented to the Committee, there is probable cause to believe that Judge Newman's retaliatory statements and conduct toward and about [her chambers staff member]—including (1) taking

IN RE COMPLAINT NO 23-90015

retaliatory action in response to [her chambers staff member]'s protected disclosures; (2) failing to personally cooperate, or to ensure [Judge Newman's employee]'s cooperation, in resolving [her chambers staff member]'s EDR matter; (3) threatening to have [her chambers staff member] removed and arrested; and (4) demanding that [her chambers staff member] return to chambers in contravention of the ordered interim relief—have negatively and materially impacted the nature and scope of [Judge Newman's chambers staff member]'s employment and may constitute misconduct. This information may also be relevant to the Committee's existing investigation into Judge Newman's mental fitness.

## II

The second new matter brought to the Committee's attention relates to Judge Newman's alleged conduct toward one of her law clerks (Law Clerk). It has been reported to the Committee that after the Judicial Conduct and Disability proceeding against Judge Newman was initiated, Judge Newman tasked her law clerks to work on her defense. Law Clerk communicated to Judge Newman that Law Clerk was uncomfortable participating in her defense because it is a personal matter outside the scope of a clerk's duties. Law Clerk informed the Committee that Law Clerk felt it was necessary to telework to avoid the stress and drama in Judge Newman's chambers.

Law Clerk informed the Committee of the following: He had previously been made aware of the EDR matter involving [Judge Newman's chambers staff member]. On April 18, 2023, Judge Newman required Law Clerk to participate in an in-person meeting. After learning that the meeting was about [Judge Newman's chambers staff member], Law Clerk asked not to participate in the meeting and to be loaned to

7

IN RE COMPLAINT NO 23-90015

another chambers. Law Clerk reported that Judge Newman declined and required his participation. During Judge Newman's discussion of [her chambers staff member], Law Clerk again requested to be reassigned to work with a different judge because working in Judge Newman's chambers was impairing Law Clerk's ability to complete case-related work and was harmful to Law Clerk's ████████ Judge Newman indicated that she would not loan him to another judge because the optics would be damaging to her. Judge Newman informed Law Clerk that his only options were to stay or resign.

Based on the information presented to the Committee, there is probable cause to believe that Judge Newman's has engaged in conduct prejudicial to the effective and expedidious administration of the business of the courts. This information may also be relevant to the Committee's existing investigation into Judge Newman's mental fitness.

III

The third new matter relates to Judge Newman's alleged conduct towards the Court's IT Department. The IT staff informed the Committee of the following: On April 17, 2023, Judge Newman called the IT Department and accused the Court of deleting her emails and files and monitoring and hacking her computer. She further expressed concern about her phone and that the court was interfering with the mail at her personal residence. When asked to provide more details related to these allegations so that the IT staff could assist in ascertaining whether any electronic devices were compromised, Judge Newman refused because she believed the Court was responsible. IT staff reported that Judge Newman sounded annoyed, agitated, paranoid and upset. Staff further reported that her communications were nonsensical because there was

8

IN RE COMPLAINT NO 23-90015

no basis for the allegations.  Judge Newman then made vague threats of litigation.  Staff described her as being in attack mode.

The IT staff reported to the Committee that the following events occurred on April 18, 2023:

Judge Newman's staff contacted the IT Department concerned that something was wrong with Judge Newman's phone system.  The only thing determined to be wrong with the phone system was that the volume was turned down on Judge Newman's phone.  After the volume was turned up, the IT staff called Judge Newman to ensure that she could hear the phone ring.  She answered and was able to hear the staff.  During that conversation, Judge Newman informed the IT staff that they still needed to fix the phone systems.  She then informed the IT staff about her frustration with [her chambers staff member] who was answering the chambers' phones, a regular part of his job. She told the staff that she was going to have [her chambers staff member] removed from the building and arrested. She ended the conversation by threatening litigation at the Supreme Court and suggesting that all of this would be on the front page of the Washington Post.  Staff described the call as bizarre and unnecessarily hostile toward [Judge Newman's chambers staff member].

Based on the information presented to the Committee, there is probable cause to believe that Judge Newman has engaged in misconduct and may suffer an impairment of cognitive abilities that renders her unable to function effectively in discharging her duties.

IV

Judicial misconduct is defined as "conduct prejudicial to the effective and expeditious administration

9

IN RE COMPLAINT NO 23-90015

of the business of the courts."    28 U.S.C. § 351(a). Misconduct includes, but is not limited to, "treating . . . judicial employees . . . in a demonstrably egregious and hostile manner," "creating a hostile work environment for judicial employees," retaliating against an employee for exercising his rights under the Court's EDR plan, and "for reporting or disclosing judicial misconduct."    Rules 4(a)(2)(B) and (C), and 4(a)(4).

In addition, the Code of Conduct for United States Judges (the Code), which is instructive in determining whether a judge's conduct constitutes judicial misconduct, provides that: (1) "[a] judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," Canon 2A of the Code; (2) "[a] judge should diligently discharge administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court personnel," Canon 3B(1); and (3) "[a] judge should practice civility, by being patient, dignified, respectful, and courteous in dealing with court personnel, including chambers staff.  A judge should not engage in any form of harassment of court personnel.  A judge should not retaliate against those who report misconduct.  A judge should hold court personnel under the judge's direction to similar standards," Canon 3B(4).

Based on the information communicated to the Committee by the above mentioned individuals, there is probable cause to believe that Judge Newman's alleged retaliatory, unprofessional, and abusive behavior towards her own and other court staff may constitute additional misconduct and may also be relevant to matters already

IN RE COMPLAINT NO 23-90015

under investigation identified in previous orders, including but not limited to concerns about Judge Newman's mental fitness to discharge the duties of her office.  Pursuant to Rules 5, 11, and 13(a), the scope of the investigation is hereby expanded to include an investigation into the newly-identified matters described herein.  The clerk shall transmit a copy of this order to Judge Newman.  *See* Rule 15(a)(1)(B).

IT IS SO ORDERED.


4/24/23
Date

/s/ Kimberly A. Moore
Kimberly A. Moore
Chief Judge

11

# Exhibit G

# United States Court of Appeals for the Federal Circuit

## ~~UNDER SEAL (NON-PUBLIC ORDER)~~

---

### IN RE COMPLAINT NO. 23-90015

---

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges.*

PER CURIAM.

## ORDER

By order of March 24, 2023, a special committee composed of Chief Judge Moore, Judge Prost, and Judge Taranto (the Committee) was appointed to investigate and report its findings and recommendations with respect to a complaint identified against Judge Newman raising, inter alia, a concern that she may have a mental or physical disability that renders her unable to discharge the duties of her office.

The Committee issues this Order to remind the participants in this proceeding—including Judge Newman and her counsel—of the confidentiality obligations imposed both by the terms of the Judicial Conduct and Disability Act of 1980 (the Act) and by the Rules for Judicial-Conduct and Judicial-Disability Proceedings (the Rules).

The Act states in unambiguous terms that, with certain exceptions not applicable here, "all papers, documents, and records of proceedings related to investigations conducted under this chapter shall be confidential and shall not be disclosed *by any person*." 28 U.S.C. § 360(a)

(emphasis added). This extends to filings made by Judge Newman or her counsel as well as orders of the Committee. Indeed, the Act draws a critical distinction between the investigative stages of a proceeding and decisions ultimately issued by the Judicial Council or the Judicial Conference, which must be made public. *See id.* § 360(b).

The Rules reflect the same requirement of confidentiality. Rule 23(b) unambiguously states that "[t]he consideration of a complaint by a chief judge, a special committee, a judicial council or the Committee on Judicial Conduct and Disability is confidential" and that "[i]nformation about this consideration must not be publicly disclosed by any judge or judicial employee." Rule 23(b)(1). That is why the Committee's prior orders in this matter were prominently marked "UNDER SEAL (NON-PUBLIC ORDER)."

These confidentiality requirements do not exist solely to protect the judge subject to a complaint. Instead, Rule 23 makes it express that "[c]onfidentiality under these Rules is intended to protect the fairness and thoroughness of the process by which a complaint is filed or initiated, investigated . . ., and ultimately resolved." Rule 23(a). In particular, confidentiality protections exist, among other reasons, to protect the identity of witnesses and to ensure that a thorough investigation may be conducted without potential witnesses being intimidated by efforts to try the matter in the press while an inquiry is still underway. Accordingly, the commentary to the Rules makes clear that the confidentiality obligation "includes subject judges." Commentary on Rule 23.

Similarly, in keeping with the broader goals served by the confidentiality requirements, the Rules do not permit a subject judge any unilateral right to disclose aspects of an investigation under the Rules. Instead, Rule 23(b)(9) permits a subject judge solely to acknowledge publicly that he or she is the judge referred to in documents made public

IN RE COMPLAINT NO 23-90015

under Rule 24 *after a final decision in a matter has been entered*.   And Rule 23(b)(7) permits disclosure of information where both the subject judge and the chief judge consent in writing.   The chief judge is not required to consent to any such disclosure and must ensure, as appropriate, that the identity of witnesses is protected and that the integrity of an ongoing investigative process is not otherwise compromised by piecemeal releases of information in the midst of the investigation.

The Committee intends that this reminder of confidentiality obligations will ensure that this investigation may proceed expeditiously and confidentially as provided under both the Act and the Rules.

Earlier in this proceeding there have been lapses in adherence to the confidentiality provisions in Act and the Rules.   On April 21, 2023, counsel for Judge Newman publicly released a letter that was itself a filing in this proceeding (and hence part of the Committee's consideration of this matter that should remain confidential) and that disclosed the details of at least one prior order of the Committee that was not public.   *See* April 21, 2023 Letter from Mark Chenowith to The Hon. Kimberly A. Moore, Chief Judge, United States Court of Appeals for the Federal Circuit, at 2.

Prior to that letter, other information that was subject to the confidentiality provisions outlined above was also released to the press.   That release prompted the Judicial Council to take action pursuant to Rule 23(b)(1) and Rule 23(b)(8) to release certain materials pertaining to this proceeding.   Rule 23(b)(1) provides that a Judicial Council "may disclose the existence of a proceeding under these Rules when necessary or appropriate to maintain public confidence in the judiciary's ability to redress misconduct or disability," and Rule 23(b)(8) provides that a Judicial Council "may authorize disclosure of information about the

3

IN RE COMPLAINT NO 23-90015

consideration of a complaint, including the papers, documents, and transcripts relating to the investigation, to the extent that disclosure is justified by special circumstances and is not prohibited by the Act." The commentary to Rule 23(b)(8) explains that, "where a complainant or other person has publicly released information regarding the existence of a complaint proceeding," the Judicial Council may release materials "in the interest of assuring the public that the judiciary is acting effectively and expeditiously in addressing the relevant complaint proceeding." Commentary to Rule 23(b)(8).

The Judicial Council should not repeatedly be placed in the position of needing to address "special circumstances" created by improper public releases of information in violation of the Act and the Rules—thereby forcing further piecemeal, official releases of information about this proceeding and undermining the entire structure of confidentiality the Act and the Rules are intended to establish. Going forward, the Committee expects that, with this reminder of the confidentiality obligations imposed by the Act and the Rules, there will not be further releases of information relating to the Committee's consideration of the complaint identified against Judge Newman in violation of the Act or the Rules.

Accordingly,

IT IS ORDERED THAT:

(1) In accordance with 28 U.S.C. § 360(a) and Rule 23(b)(1), Judge Newman and her counsel shall refrain from publicly disclosing information about the Committee's ongoing consideration of and investigation into the complaint identified against Judge Newman;

(2) Failure by Judge Newman to comply with this Order or the Rules may result in the Committee seeking to

4

IN RE COMPLAINT NO 23-90015

expand the scope of the investigation to include an inquiry into whether Judge Newman's violation of this Order or Rule 23(b) constitutes misconduct under Rule 4(a)(5); and

(3) Violation of this Order or Rule 23 by counsel may result in an appropriate sanction.


SO ORDERED: May 3, 2023.

# Exhibit H

# United States Court of Appeals for the Federal Circuit

## ~~UNDER SEAL (NON-PUBLIC ORDER)~~

_____

## IN RE COMPLAINT NO. 23-90015

_____

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges.*

PER CURIAM.

## ORDER

By order of March 24, 2023, a special committee composed of Chief Judge Moore, Judge Prost, and Judge Taranto (the Committee) was appointed to investigate and report its findings and recommendations with respect to a complaint identified against Judge Newman raising, inter alia, a concern that she has a mental or physical disability that renders her unable to discharge the duties of her office. Despite repeated requests and orders, Judge Newman has thus far not cooperated with the Committee's investigation.

In particular, in orders dated April 7, 2023 and April 17, 2023, the Committee ordered Judge Newman to undergo medical evaluation and testing to determine whether she suffers from a disability and ordered her to provide medical records. Judge Newman did not comply with those orders. In a recent letter, however, Judge Newman's counsel has indicated that Judge Newman may now be willing to cooperate. *See* April 21, 2023 Letter from Mark Chenowith to The Hon. Kimberly A. Moore, Chief Judge,

IN RE COMPLAINT NO 23-90015

United States Court of Appeals for the Federal Circuit, at 2 (hereinafter "Letter Motion").  Accordingly, in the hope that Judge Newman will now cooperate with its investigation, the Committee is reissuing its orders regarding medical evaluation and testing and medical records and establishing new deadlines for compliance.

In addition, counsel for Judge Newman has asked that the Chief Judge or the Committee request that the Chief Justice of the United States transfer this matter to another circuit.  As explained below, that request is denied at this time without prejudice to refiling after Judge Newman has complied with the Committee's orders concerning medical evaluation and testing and medical records.

## I.   Required Medical Testing and Medical Records

### A.  Background

On April 7, 2023, the Committee issued an Order requesting that Judge Newman inform the Committee by April 11, 2023 whether she would make herself available for ordered medical evaluation and testing (to be conducted at a later date).  The April 7 Order informed Judge Newman that her failure to respond by that deadline would be deemed failure to comply and that her failure to comply without good cause shown could result in an expansion of the scope of the investigation to include whether her non-cooperation amounted to misconduct.  Judge Newman never responded.  At the Committee's request, the Chief Judge, on April 13, 2023, expanded the investigation to include the failure to respond.

On April 17, 2023, the Committee issued an Order requiring that Judge Newman provide certain medical information to the Committee "by May 5, 2023 (subject to an extension for good cause)" and also that she sit for an interview with the Committee "thereafter at a mutually agreeable time and date."  The April 17 Order asked that

2

IN RE COMPLAINT NO 23-90015

Judge Newman, by 9:00 am April 21, 2023, "(1) inform the Committee in writing (email response is acceptable) as to whether (a) she will provide the Committee with the identified medical information; and (b) she will consent to the proposed interview or (2) provide good cause why an extension of time is needed to respond to this Order." The Order stated that "[f]ailure to respond by 9:00 am April 21, 2023 will be deemed failure to comply and be treated by the Committee as a refusal to cooperate." Again, Judge Newman failed to respond.

Notwithstanding Judge Newman's prior refusals to cooperate, her counsel indicated on April 21, 2023 that Judge Newman is now prepared to cooperate. Thus, the Committee issues this new Order.

## B. Medical Testing

Since the Committee originally issued an order on April 7, 2023 requiring that Judge Newman undergo medical evaluation and testing, the Committee's investigation has developed further information that reinforces the Committee's conclusion that such evaluation and testing are necessary. Based on its investigation to date, the Committee has determined that there is a reasonable basis to conclude that Judge Newman might suffer a disability that interferes with her ability to perform the responsibilities of her office. This investigation has included more than a dozen interviews with court staff and discussions with Dr. ██████████, MD, whom the Committee retained to assist in this matter. These form the basis for the Committee's conclusion that there is a reasonable basis for the required testing and evaluations recommended by Dr. ███ ██ in order to determine whether Judge Newman has a disability that renders her unable to perform the functions and duties of her office.

Court staff, including some of Judge Newman's own chambers staff, have reported that over the course of the

3

last year the Judge has experienced significant mental deterioration including memory loss, lack of focus, confusion, and the inability to understand and execute simple tasks she was once capable of completing. Court staff members have reported to the Committee that Judge Newman frequently claims that her email and computer are being hacked and at times that her phones are being bugged and that her complaints to Information Technology have increased from once or twice a week to almost daily or every other day. They describe her demeanor in these encounters as agitated and paranoid and the conversations themselves as bizarre and nonsensical. In each instance, Information Technology staff found no evidence to support Judge Newman's concerns. Staff reported that in the past Judge Newman claimed that it was bloggers and the media who were out to get her and bring her down who were hacking and bugging her devices. More recently, staff report that she is claiming that it is the court itself hacking and bugging her devices.

Staff reported that Judge Newman now routinely forgets how to do simple tasks that she never previously had difficulty doing, such as logging into our court system or network, remembering where she put court material, and bringing her briefs and case materials to court on court days. Staff reported that Judge Newman has trouble recalling events and information just days after they occur and at times seems lost and confused. Staff reported that they have to assist her over and over with the same tasks which she seems unable to remember from one day to the next—tasks which she had previously performed independently for years without any difficulty. One staff member stated, "Though it is difficult to say this, I believe Judge Newman is simply losing it mentally."

One staff member relayed an instance recently in which Judge Newman indicated that she was not required to comply with a court rule which required circulating

votes on opinions within 5 days. This rule was unanimously adopted by the court (including a vote by Judge Newman) in March 2018. The staffer claimed that Judge Newman recently said that she did not have to comply with this rule because Chief Judge Markey told her she could take 30 days to vote. Chief Judge Markey has been dead for almost 17 years and has not been a member of the court for 32 years.

Judge Newman's sharing of the contents of a confidential Employment Dispute Resolution (EDR) matter to 95 court staffers also raises concerns about her ability to remember or understand important confidentiality requirements and to manage the administration of her chambers.

Two of Judge Newman's chambers staff ended their employment in her chambers on April 19, 2023. Recent emails sent by Judge Newman related to these events suggest potential confusion or memory loss. For example, on April 19, 2023, an email was sent to Judge Newman and her chambers staff indicating that one of her [chambers staff] resigned effective that day and did not wish to be contacted by any member of the chambers including the Judge. Judge Newman acknowledged receiving the email and indicated it was "appropriate" and that his separation from her chambers should be expeditiously processed. Yet eight days later, on April 27, 2023, Judge Newman sent an email to all judges indicating that she had not "released" the [staff member] and that his continued service at the court in another chambers was "in violation of my right to [staff] services."

There was a nearly identical exchange about her former [staff member]. As the April 20 Order in this matter detailed, Judge Newman's [staff member] alleges that Judge Newman threatened to terminate him on the morning of April 19, 2023 for seeking relief under the court's EDR program. Multiple staff members reported that on

5

IN RE COMPLAINT NO 23-90015

April 18, 2023 Judge Newman stated her intention to have him forcibly removed from the building and arrested. *See* April 20 Order.  In light of these events, an email was sent to Judge Newman and her chambers staff on April 19, 2023 informing them that the [staff member] was no longer a member of the Newman chambers and that he wished for there to be no further communication to him by any member of the Newman chambers including the judge herself. Yet again, on April 27, 2023, Judge Newman sent an email to all judges stating: "I never released my [staff member][] from my chambers staff.  His movement to your staff, without consultation with me, violates his confidentiality and other obligations to me."

Judge Newman has a[n employee] in her chambers who was unwilling to provide any testimony about Judge Newman's ability to perform the duties of her job. In fact, the [employee] exercised her Fifth Amendment right to remain silent to avoid incriminating herself.  For example, "Q. We understand that you are her [employee]. Can you tell us about that role and what your responsibilities are?  A. I am going to invoke my right under the Fifth Amendment to avoid self-incrimination." She likewise asserted the Fifth Amendment in response to questions about whether she has prepared any bench memos or draft opinions in the last year and whether she is currently working on any pending cases at the court. She further invoked the Fifth Amendment when asked about her perceptions of Judge Newman's ability to carry out her job.

6

The Committee's consultant, Dr. ██████████, has recommended that Judge Newman undergo a neurological evaluation and a complete neuropsychological battery of tests to determine whether she suffers from a disability, and if so, its nature and extent.

These reports of memory loss, confusion, and an increasing inability at times to perform simple, routine tasks necessary to carry out her duties as a judge, combined with Dr. ██████ recommendation and Judge Newman's backlog and delays in the processing of cases and circulation of opinions compared to her colleagues, *see* March 24 Order, have caused the Committee to conclude that the recommended medical testing and exams are necessary to determine if Judge Newman has a disability. The Committee finds there is a reasonable basis to conclude that such evaluation and testing is necessary to facilitate the Committee's consideration of whether Judge Newman suffers a disability that prevents her from performing her duties as a judge. *See* Rule 13(a) of the Rules for Judicial Conduct and Judicial-Disability Proceedings (Rules). To be clear, the Committee has made no fact findings at this time regarding the allegations reported herein, but rather finds that these allegations individually and collectively give the Committee a reasonable basis to order the identified medical exams and testing. *See* Rule 13(a).

Judge Newman's counsel suggested by letter dated April 21, 2023, that they may wish to "engage in negotiation as to the scope of the requests as provided by the Commentary to Rule 13." The statute, rules, and commentary delegate to the Committee the authority to order the testing it deems necessary. Section 353(c) authorizes the Committee to "conduct an investigation as extensive as it considers necessary." 28 U.S.C. § 353(c). The Rules reinforce that "the special committee should take steps to determine the full scope of the potential [] disability." Rule 13(a). Commentary to Rule 13 expressly recognizes the

IN RE COMPLAINT NO 23-90015

Committee's authority under the statute and rules to order the medical testing it deems necessary in order to ascertain the nature and scope of the potential disability.  Rule 13 cmt.  Finally, the Rules authorize the Committee to "determine the appropriate extent and methods of its investigation in light of the allegations." Rule 13(a).  Based on reports from court staff identified herein and consistent with the recommendation of Dr. ███████, the Committee has concluded that the above identified testing and evaluations are necessary.

Dr. ███████ has identified a qualified neurologist, Dr. ████████████, who is willing to perform the necessary neurological testing on an expedited basis, and a qualified neuropsychologist, Dr. █████████████, who is willing to conduct the neuropsychological testing on an expedited basis.  Dr. ███████ and Dr. ████████ shall be provided with any material from the Committee and from Judge Newman that they deem appropriate and necessary to perform the tests and evaluations deemed necessary to ascertain the nature and scope of any potential disability.

A judge's sound mental health is essential to her fulfillment of all judicial duties.  Judges must fairly, justly, and expeditiously resolve the cases before them.  Litigants are entitled to sound-minded judges capable of fully executing the responsibilities of their job.  Judges also must be capable of managing the administration of their chambers to effectively carry out their duties.  Public confidence in the judiciary depends critically on the fitness of judges who adjudicate their cases.  Given the importance of these concepts and the seriousness of the allegations made by court staff, the Committee believes it imperative that the required evaluation and testing be performed on an expedited basis.

## C. Medical Records

In addition, the Committee, by the present Order, requires that Judge Newman provide hospital records, medical, psychiatric or psychological, and other health-professional records that relate to the incidents of 2021 and 2022 described in the second paragraph of the Order dated March 24, 2023. These include records of treatment as well as consultation about those incidents, whether from a time contemporaneous with the incidents or later.

The Committee also requires production of hospital records and medical, psychiatric or psychological, or other health-professional records by any treatment provider of any treatment or consultation in the last two years regarding mental acuity, attention, focus, confusion, memory loss, fatigue, or stamina. These are the same records that the Committee requested on April 17, 2023. The Committee proposes Judge Newman provide such medical records by May 23, 2023.

## II. Request to Transfer

The Letter Motion from counsel for Judge Newman also asks, pursuant to Rule 26, that the Chief Judge or the Committee request that the Chief Justice of the United States transfer the above-captioned matter to the judicial council of another circuit. Letter Motion at 3. For the reasons explained below, the Letter Motion is denied at this time without prejudice to renewing the request for a transfer after Judge Newman has complied with orders of the Committee requiring that she provide medical records and undergo neurological and neuro-psychological testing conducted by physicians selected by the Committee.[1]

---

[1] Pursuant to Rule 26 only the chief judge or the judicial council may ask the Chief Justice for a transfer. By this order, both the chief judge and the Committee deny the

IN RE COMPLAINT NO 23-90015

The Rules make clear that transfer of a matter involving an investigation into judicial misconduct or disability is warranted only in "exceptional circumstances."  Rule 26. The commentary to Rule 26 identifies several factors that may counsel in favor of transfer, such as "where there are multiple disqualifications among the original judicial council," where "the issues are highly visible and a local disposition may weaken public confidence in the process," or where there are "internal tensions" in the local judicial council.  Commentary on Rule 26.  None of those circumstances applies here.  The concern in a highly visible case involving serious charges of misconduct is that a local judicial council may be perceived as proceeding too leniently. Because this case is rooted in concerns about a judge's disability it does not raise similar concerns.  In addition, the Breyer Committee Report—which informed the drafting of the Rules—suggests that this case involves many of the factors that counsel *against* transfer.  *See* Implementation of the Judicial Conduct and Disability Act of 1980, Report to the Chief Justice of the Judicial Conduct and Disability Act Study Committee, 239 F.R.D. 116, 215 (Sept. 2006) ("Breyer Committee Report").  In this case, the "relative ignorance" of judges in another circuit of "local circumstances and personalities might make them less able to gauge what corrective action would be effective and appropriate," judges in another circuit would likely be "in a poor position to persuade a judge whom they do not know well to take the action they believe is necessary," and a transfer would

─────────────────────

request for transfer at this time without prejudice to refiling after Judge Newman produces the requested medical records and undergoes the ordered medical exams and testing.  The judicial council has, in a companion order issued this same day, likewise denied without prejudice to refiling any such request to transfer and requires the same medical testing and evaluations and disclosure of medical records.

IN RE COMPLAINT NO 23-90015

undoubtedly "increase time and expense" involved in resolving this matter, with little apparent benefit. *Id.* As discussed throughout, the Committee has already conducted more than a dozen interviews in this matter and worked extensively with its expert consultant. In short, this is a case in which the general preference in the Rules for local resolution of judicial misconduct or disability proceedings squarely applies.

The suggestion in the Letter Motion that "transferring a complaint about a circuit judge appears to be standard practice within the regional circuits," Letter Mot. at 3, is simply incorrect. The Letter Motion cites only three examples of such transfers over the last decade. And the actual data for complaints involving judicial misconduct or disability establish that such inter-circuit transfers remain—as the Rules intended—exceptional. In the twelve-month period ending September 30, 2022, there were 375 complaints involving circuit judges, but only 2 complaints involving judges at any level were transferred from one circuit to another. *See* Table S22, *Judicial Complaints— Complaints Commenced, Terminated, and Pending with Allegations and Actions Taken Under Authority of 28 U.S.C. 351-364 During the 12-Month Period Ending Sept. 30, 2022, available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_s22_0930.2022.pdf. In the prior twelve month period ending September 30, 2021, there were 319 complaints relating to circuit judges and *zero* transfers from one circuit to another. *See* Table S22, *Judicial Complaints—Complaints Commenced, Terminated, and Pending with Allegations and Actions Taken Under Authority of 28 U.S.C. 351-364 During the 12-Month Period Ending Sept. 30, 2021, available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_s22_0930.2021.pdf

Each of the three examples of a transfer cited in the Letter Motion also involved circumstances wholly unlike

IN RE COMPLAINT NO 23-90015

the situation presented in this case. Each case was focused on highly publicized allegations of misconduct. This proceeding, by contrast, is rooted in the fundamentally different question whether, after decades of extraordinary and distinguished service, Judge Newman now suffers at the age of 95 from a disability that has rendered her unable to perform her duties. This case simply does not raise the same concerns that the colleagues of a subject judge may take too lenient an approach in a case involving highly publicized charges of misconduct and that public confidence will be bolstered by transferring the matter to another circuit. Instead, we believe this is precisely the sort of proceeding that the Breyer Committee Report contemplated benefiting from local handling in the circuit where it arises. The most relevant precedent for this matter appears to be the proceeding conducted by the Sixth Circuit concerning District Judge John R. Adams and an investigation into whether he suffered from a mental or emotional disability in which the Sixth Circuit twice denied motions from Judge Adams requesting a transfer of the proceeding to another circuit. *See* Order and Memorandum at 4, *In re Complaint of Judicial Misconduct*, No. 06-13-90009 (Judicial Council of the Sixth Circuit Feb. 22, 2016) (recounting that Chief Judge Cole of the Sixth Circuit twice rejected requests to transfer because the case did not raise any "exceptional circumstances" warranting such action).

To the extent the Letter Motion anticipates that the Committee may conduct an evidentiary hearing at a later point in this proceeding and speculates that witnesses at any such hearing "likely would include" members of the Circuit, Letter Motion at 3—and argues that such an eventuality could raise questions about those judges serving as adjudicators in this matter—those concerns are premature at this stage of the proceedings. The Committee has determined to proceed in a cautious, deliberate, and step-wise fashion in this matter. Based on (i) data related to Judge

IN RE COMPLAINT NO 23-90015

Newman's caseload and the time it takes her to issue opinions, (ii) descriptions detailed extensively above from multiple staff members, including Judge Newman's own chambers staff, who report that over the last year Judge Newman has experienced significant mental deterioration including memory loss, lack of focus, confusion and the inability to understand and execute simple tasks she was once capable of completing, and (iii) the recommendation of an independent expert, the Committee has determined that the most important next step in this investigation is for Judge Newman to provide medical records and to undergo psychiatric and neurological evaluations conducted by neutral physicians selected by the Committee. Information from these records and evaluations will serve an important gating function in determining the appropriate next steps in the Committee's investigation.

Accordingly, the Letter Motion asking the Chief Judge or the Committee to make a request to the Chief Justice to transfer this matter to the Judicial Council of another circuit is denied without prejudice to renewing the motion after Judge Newman has complied with this order requiring that she provide medical records and undergo neurological and neuro-psychological evaluations.

Accordingly,

IT IS ORDERED THAT:

(1) Judge Newman is directed to undergo the above-identified evaluation and testing;

(2) Given the willingness of the physicians to handle this matter on an expedited basis, the fact that these tests were previously ordered on April 7, 2023 and the need to retain the physicians and allocate funds, a prompt response is necessary to secure the appointments. Judge Newman is therefore directed to inform the Committee by 9:00 am on May 10, 2023 (email response is acceptable) as

IN RE COMPLAINT NO 23-90015

to whether she will comply with this Order and make herself available for the above needed evaluations and tests;

(3)  Judge Newman is also directed to inform the Committee in writing (email response is acceptable) by 9:00 am on May 10, 2023 as to whether she will provide the Committee with the identified medical information (the same information previously requested on April 17, 2023) by May 24, 2023.  Judge Newman may seek an extension for any medical records that she is unable to obtain in this time frame;

(4)  Refusal to comply with this Order without good cause shown may result in the Committee seeking to expand the scope of the investigation to include an inquiry into whether Judge Newman's further non-cooperation constitutes misconduct under Rule 4(a)(5).  Failure to respond to this Order by the deadlines specified in ordering clauses (2) and (3) above will be deemed failure to comply; and

(5) The request for the Chief Judge or the Committee to request transfer to the judicial council of another circuit is denied without prejudice to refile after Judge Newman has complied with the Committee's order concerning medical records and has undergone the neurological and neuro-psychological evaluations ordered by the Committee.  The judicial council has unanimously entered an order this same day similarly denying the transfer request without prejudice to refiling after compliance with this Committee's requests for medical records and the Committee-ordered neurological and neuro-psychological evaluations and testing.


SO ORDERED: May 3, 2023.

14

# Exhibit I

Note:  This order is nonprecedential.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

~~UNDER SEAL (NON-PUBLIC ORDER)~~

IN RE COMPLAINT NO.
FC-<u>(Complaint # 23-90015)</u>

---

<u>May 3, 2023</u>

---

Per Curiam

   Judge Newman's request to ask the Chief Judge and/or judicial council to request that the Chief Justice transfer this proceeding to the judicial council of another circuit pursuant to Rule 26 of the Rules for Judicial-Conduct and Judicial-Disability Proceedings, having been referred to the active judges of the court eligible to participate, and the request having duly been considered,

   IT IS ORDERED THAT:

   The transfer request is denied without prejudice to re-filing after Judge Newman has complied with the Special Committee requests for medical records and the evaluation and testing ordered by the Special Committee.

                                        FOR THE COURT

                                        <u>/s/ Peter R. Marksteiner</u>
                                        Peter R. Marksteiner
                                        Clerk of Court

# Exhibit J

# United States Court of Appeals for the Federal Circuit

---

## IN RE COMPLAINT NO. 23-90015

---

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges.*

PER CURIAM.

## ORDER

By order of March 24, 2023, a special committee composed of Chief Judge Moore, Judge Prost, and Judge Taranto (the Committee) was appointed to investigate and report its findings and recommendations with respect to a complaint identified against Judge Newman raising, inter alia, a concern that she has a mental or physical disability that renders her unable to discharge the duties of her office. On May 3, 2023, the Committee issued an order reminding Judge Newman and her counsel that both the Judicial Conduct and Disability Act of 1980 (the Act) and the Rules for Judicial-Conduct and Judicial-Disability Proceedings (the Rules) impose confidentiality obligations on Judge Newman and her counsel with respect to this proceeding (the Confidentiality Order).

In response, on May 10, 2023,[1] Judge Newman's counsel submitted a letter brief. That letter misstated the requirements of the Confidentiality Order and relied on that

---

[1] The letter response submitted by Judge Newman's counsel is dated May 9, 2023, but it was not submitted to the Court until 8:38 am on May 10.

IN RE COMPLAINT NO 23-90015

misstatement in objecting to the order on First Amendment grounds.  It also requested, for the very first time, pursuant to Rule 23(b)(7),[2] that Judge Newman be permitted to publicly disclose information concerning the Committee's consideration of this matter.[3]

This Order addresses the First Amendment issues that have been raised in Judge Newman's letter brief and Judge Newman's request pursuant to Rule 23(b)(7).

## I.   Confidentiality Requirements for Judicial Conduct and Disability Proceedings and the First Amendment

### A.   The Scope of the Confidentiality Order.

At the outset, it is important to reiterate what the Confidentiality Order actually required.  By its terms the order set out to "remind the parties . . . of the confidentiality obligations imposed by the terms of [the Act] and [the Rules]." Confidentiality Order at 1.  The Act states that "all papers, documents, and records of proceedings related to investigations conducted under this chapter shall be confidential and shall not be disclosed *by any person*."  28 U.S.C. § 360(a) (emphasis added).  Rule 23(b) states that "[t]he consideration of a complaint by a chief judge, a special committee, a judicial council or the Committee on Judicial Conduct and Disability is confidential" and that "[i]nformation about this consideration must not be publicly disclosed by

---

[2] The letter brief repeatedly mis-cites this provision as Rule 23(a)(7).

[3]   The same day, without awaiting a response to that request, Judge Newman sued the judges of the Committee and the entire Judicial Council of the Federal Circuit in federal district court asserting claims, *inter alia*, on First Amendment grounds.  *See* Complaint *in Newman v. Moore*, No. 1:23-cv-01334 (D.D.C.).

any judge or judicial employee." Rule 23(b)(1). The Confidentiality Order went no further than the express requirements of the Rules that apply to a subject judge and her counsel acting unilaterally. The ordering clause tracked exactly the terminology of Rule 23(b)(1) by directing Judge Newman and her counsel to "refrain from publicly disclosing information about the Committee's consideration of and investigation into the complaint identified against Judge Newman." Confidentiality Order at 4. The restriction on "publicly disclosing information" is necessarily limited to disclosing (i.e., uncovering and making public) information that was not already public. As the Committee noted, certain prior orders had already been publicly disclosed. The Confidentiality Order imposed no restriction on discussion of those orders or other aspects of the proceeding that were already public, as long as no other confidential information is disclosed in such a discussion. Indeed, the order made it express that the Committee's intention was to ensure that "[g]oing forward . . . there will not be *further releases* of information relating to the Committee's consideration of the complaint identified against Judge Newman." Confidentiality Order at 4 (emphasis added).

Accordingly, the suggestion in the first sentence of Judge Newman's letter brief that the Confidentiality Order directed her and her counsel to "cease making public statements regarding the above-referenced matter," May 10 Letter at 1, misstates the requirements of the order. To the extent Judge Newman and her counsel wish to publicly discuss aspects of this proceeding that have already been made public, the Confidentiality Order placed no restriction on them.[4]

---

[4] Judge Newman, of course, remains bound by Canon 2A of the Code of Conduct for United States Judges. The Committee expresses no view at this time on whether that

IN RE COMPLAINT NO 23-90015

**B. The Confidentiality Requirements Imposed by the Rules and the Confidentiality Order Do Not Run Afoul of the First Amendment**

What is at issue at present is disclosure during the initial, investigative stage of this proceeding.  The confidentiality requirements imposed by the Act, by the Rules, and by the Confidentiality Order (which is coterminous with the Rules) on disclosure during this stage have been widely held to be compatible with the First Amendment.  Multiple courts have recognized that compelling interests served by preserving the confidentiality of judicial misconduct and disability proceedings are sufficient to outweigh any First Amendment interest that participants in those proceedings may have in speaking publicly about information learned during the proceedings at least while they are under way.

For example, in *Kamasinski v. Judicial Review Council*, 44 F.3d 106 (2d Cir. 1994), the Second Circuit considered the confidentiality restrictions imposed in Connecticut's judicial misconduct proceedings.  Applying strict scrutiny, the court concluded that the State had compelling interests supporting broad confidentiality requirements that prohibited, among other things, disclosure by any person of information gained through interaction with the investigating body.  *Id.* at 111.  Most relevant here, the court pointed out as a compelling interest the "value of confidentiality in facilitating the investigative process," and explained that "a common result of publication will be that witnesses otherwise willing to speak candidly will decline to do so, in the knowledge that the media and others will pursue them to inquire whether they have in fact testified." *Id.*

---

canon may impose restrictions on Judge Newman's conduct in this context.

IN RE COMPLAINT NO 23-90015

Similarly, in reviewing First Amendment objections to the confidentiality restrictions in Pennsylvania's judicial misconduct proceedings, the Third Circuit ruled that the "confidentiality requirement is reasonable and may be enforced insofar as it would prevent a person, whether a Board member, employee, or counsel, from disclosing proceedings taking place before the Board." *First Amendment Coalition v. Judicial Inquiry & Review Board*, 784 F.2d 467, 479 (3rd Cir. 1986). After highlighting the importance of confidentiality in the investigative process, the court concluded that "the state interest in this respect, as in the grand jury setting, is sufficiently strong to support such a ban." *Id.; accord Adams v. Committee on Judicial Conduct & Disability*, 165 F. Supp. 3d 911, 929 (N.D. Calif. 2016) ("[C]ourts have found that confidentiality in judicial misconduct proceedings serves the important functions of: encouraging the filing of complaints; obtaining complete and candid testimony; [and] increasing cooperation with [an] investigation . . . .").

It also bears noting that "[t]he notion that the effectiveness of judicial disciplinary boards depends to a large extent on confidentiality . . . has been almost universally accepted." *First Amendment Coalition*, 784 F.2d at 475. In 1978, the Supreme Court observed that 47 States, the District of Columbia, and Puerto Rico all had some procedures for judicial misconduct inquiries, and all but Puerto Rico included confidentiality requirements at least through the investigative stage. *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 834 (1978). The Court noted that "the substantial uniformity of the existing state plans suggests that confidentiality is perceived as tending to insure the ultimate effectiveness of the judicial review commissions." *Id.* at 835; *cf. Bradbury v. Idaho Judicial Council*, 28 P.3d 1006, 1015 (Idaho 2001) ("[T]he language in *Landmark* supports the idea that judicial disciplinary

5

proceedings may be confidential.").[5] In subsequent years, it appears that uniformity in this approach only grew. In 1980, Congress enacted the Judicial Conduct and Disability Act, which imposes its own strict confidentiality requirement for federal procedures. *See* 28 U.S.C. § 360(a). And in 1994, commentators observed that all 50 States had judicial conduct and disability procedures that included confidentiality requirements and that "every jurisdiction protects preliminary investigations from public access." Bryan E. Keyt, *Reconciling the Need for Confidentiality in Judicial Disciplinary Proceedings with the First Amendment: A Justification Based Analysis*, 7 Geo. J. Legal Ethics 959, 960 (1994).

Judge Newman's letter brief points to the district court decision in *McBryde v. Committee to Review Circuit Council Conduct and Disability Orders*, 83 F. Supp. 2d 135 (D.D.C. 2001), to argue that a prior restraint prohibiting a judge who is the subject of a misconduct or disability proceeding from publicly discussing any aspect of the

---

[5] In *Landmark*, the Supreme Court held that it would violate the First Amendment to impose criminal penalties on a *third party* (not a participant in the proceeding) for publishing information it had acquired about a judicial misconduct proceeding. *See* 435 U.S. at 837-38; *id.* at 837 ("We do not have before us any constitutional challenge to a State's power to keep the Commission's proceedings confidential or to punish participants for breach of this mandate."). That ruling has no application here. Judge Newman and her counsel are participants in the proceedings and under the Rules and the Confidentiality Order they are prohibited only from publicly disclosing "information about the Committee's ongoing consideration" of the complaint against her, Confidentiality Order at 4—which is necessarily information gained through interaction with the Committee in the course of its proceedings.

IN RE COMPLAINT NO 23-90015

proceeding violates the First Amendment. *See* Letter Br. at 2-3. But *McBryde* held nothing so broad. Instead, the holding there was limited to the situation where the entire proceeding had ended and the judge had already been publicly reprimanded. The court summed up its holding: "The interest in shielding witnesses from publicity and encouraging complainants to come forward in the future, while legitimate, is insufficient to justify the restriction on Judge McBryde's open and frank discussion of the proceedings *once they have concluded and sanctions have been imposed.*" 83 F. Supp. 2d at 178 (emphasis added). Throughout its discussion, the court made clear that its analysis relied on the fact that the proceeding had ended and that Judge McBryde had suffered a public reprimand. The court reasoned that "*at the point where the proceedings have long since concluded* and Judge McBryde has undergone a public reprimand and sanctions, this interest [in witness privacy] loses much of its significance." *Id.* at 177-78 (emphasis added); *see also id.* at 176 (noting that while all jurisdictions impose confidentiality requirements on judicial conduct proceedings, no jurisdiction does so "in perpetuity").

That reasoning is inapplicable here. When the Committee issued the Confidentiality Order on May 3, it was still in the investigative stage of this proceeding—a stage at which the need for encouraging witnesses to come forward is at its height. The assertion from Judge Newman's counsel that the analysis in *McBryde* "did not depend" on the fact that the "proceedings against the late Judge John McBryde had concluded," Letter Br. at 3, is incorrect.

The Committee's view that there is a compelling need for confidentiality to facilitate the investigative process is buttressed by experience in this very proceeding—in which the Committee believes that adherence to confidentiality requirements has encouraged witnesses to come forward and to speak candidly. Despite earlier releases of some

IN RE COMPLAINT NO 23-90015

information about this investigation, the Committee has conducted multiple interviews with witnesses and has informed them of the confidentiality protections of Rule 23, especially those applicable at this stage of the proceedings. Within the last two weeks—since the Confidentiality Order was issued—additional witnesses have come forward to volunteer that they have relevant information. Such witnesses might not have been willing to volunteer, or to speak as freely, if they believed they would immediately be dragged into a public media storm.

Judge Newman's letter brief attempts to dismiss any concern for discouraging witness participation by suggesting that it is "risible" to think that Judge Newman "could physically intimidate anyone" and that she and her counsel have not even been apprised of the identity of any witnesses. Letter at 2. Those assertions fundamentally misunderstand the way in which witnesses may be discouraged from participating in this process and misstate the facts.

As the Second Circuit pointed out in *Kamasinski*, if people believe that their names will be publicly disclosed and they will be drawn into a media circus, they are less likely to volunteer information. *See* 44 F.3d at 111. It is the threat of public disclosure itself that may hamper an investigation without any other form of "intimidation." Potential witnesses may be intimidated by the fear of unwanted publicity in itself.

In addition, counsel's suggestion that Judge Newman could not *physically* intimidate anyone ignores the obvious power that Judge Newman, as a circuit judge, has over the lives and livelihoods of employees in a federal courthouse. Indeed, some of the events witnesses have described in this proceeding highlight that authority and the fear it may engender in employees who feel subject to Judge Newman's authority. The Committee has received information that,

IN RE COMPLAINT NO 23-90015

on one recent occasion, Judge Newman ordered an em-
ployee who had moved from her chambers pursuant to the
court's Employment Dispute Resolution plan to return to
her chambers by 11:00 am or else she would effectively end
his employment at the court.  That employee then went to
the Special Committee and the Director of Workplace Re-
lations fearing that he was about to lose his job.  Judge
Newman also stated to multiple court staff members a
threat to have the employee arrested and removed from the
building.  In short, a federal judge can exercise enormous
authority over the livelihoods of employees in a federal
courthouse.  And, unfortunately, Judge Newman's recent
conduct has already given employees cause for concern
that, in her current mental state, she will attempt to wield
that power against them when she feels that they have
been disloyal.  The Committee has endeavored to collect in-
formation quickly and in confidence in part out of concern
for the protection of the employees in our courthouse.

Counsel asserts that Judge Newman and her lawyers
have not been apprised of the identity of any witnesses.
But even if we assume the correctness of the assertion, we
see no explanation by counsel of why the First Amendment
gives a right to obtain the identity of persons giving state-
ments to the Committee at this investigatory stage or a
right to disclose such information publicly.  Of course, to
ensure a fair process, the Rules provide for notice and re-
sponse rights later in the proceeding.  In any event, coun-
sel's assertion is not true.  On May 3, the Committee issued
an order under seal that described many of the statements
that witnesses had provided the Committee.  Although the
order did not refer to any witnesses by name, the incidents
it described are known to Judge Newman, and given the
small number of participants in some of the events, it will
necessarily be obvious to Judge Newman who some of the
witnesses are.  The Committee thus believes that Judge
Newman has been provided sufficient information that she

IN RE COMPLAINT NO 23-90015

would be able to determine the identity of at least some witnesses.

For all the reasons above, the Committee concludes that—at least for purposes of this investigative stage of the proceedings—the confidentiality obligations imposed by Rule 23 (and reiterated by the Confidentiality Order) are consistent with the First Amendment.

## II. Judge Newman's Request Under Rule 23(b)(7) to Disclose Information Concerning the Committee's Consideration of this Matter

Judge Newman's May 10 letter brief also presented, for the first time, a request pursuant to Rule 23(b)(7) that the Chief Judge consent to the public release of information concerning the Committee's consideration of this matter. That request calls for a judgment by the Chief Judge about whether, and the extent to which, confidentiality should be lifted. The Chief Judge recognizes that the judgment depends on the state of the Committee's investigation. Therefore, the full Committee (which includes the Chief Judge) has considered the request.

The Chief Judge and the Committee believe that, especially while a proceeding remains in the investigative stage, such a request raises significant policy issues. On one hand, a confidentiality restriction implicates the First Amendment and thus requires justification. On the other hand, for the reasons explained above, confidentiality is generally essential for the investigative process. A request for disclosure that would undermine that process—for example, by creating publicity that would potentially discourage witnesses with relevant information from coming forward or speaking candidly—should not be granted.

In this case, the Committee has been moving expeditiously to gather information. At this point, the Committee believes the investigation is reaching the stage at which

IN RE COMPLAINT NO 23-90015

there is a diminished concern that public disclosures will discourage witnesses from volunteering information. The Committee believes that most employees who may have relevant information have likely already come forward. At this point, the most critical information the Committee lacks is information from appropriate neurological and neuro-psychological examinations of Judge Newman, which Judge Newman has so far refused. Disclosing much of the information already in hand will not deter the experts performing those examinations, should they occur, from supplying their results to the Committee.

In addition, there is an important further consideration favoring additional disclosures at this point. Inaccurate and distorted information about this proceeding has already been the subject of public discussion. The Rules themselves acknowledge that the Chief Judge or the Judicial Council may disclose information about the consideration of a complaint "in the interest of assuring the public that the judiciary is acting effectively and expeditiously in addressing the relevant complaint proceeding." Commentary to Rule 23(b)(8).

Given the importance of properly balancing these considerations before establishing any precedent that could affect the functioning of the Rules in future cases, the Chief Judge and the Committee referred Judge Newman's request to the Judicial Council. The Judicial Council has voted unanimously to publicly disclose prior orders issued by the Committee and by the Judicial Council and Judge Newman's Letter Responses, with appropriate redactions to protect the identity of witnesses.

The Confidentiality Order and the Rules, however, shall remain in effect with regard to all future filings in this matter. Judge Newman and her counsel are free to discuss information that has been publicly released pursuant to this order and prior orders of the Judicial Council,

IN RE COMPLAINT NO 23-90015

but they shall remain bound by Rule 23 not to disclose other information about the Committee's consideration of this matter that remains confidential. This means, for example, that to the extent Judge Newman and her counsel may be able to identify witnesses even from the redacted material that is released, they are not permitted to disclose witnesses' names publicly. In addition, going forward, Judge Newman and her counsel are still bound by the requirement of Rule 23 that they may not unilaterally make public disclosures of information that has not yet been made public about the Committee's consideration of this matter. To the extent Judge Newman believes that future orders of the Committee or other information about the Committee's consideration of this matter (including her future filings) should become public, she may make requests for disclosure pursuant to Rule 23(b)(7).

Accordingly,

IT IS ORDERED THAT:

(1) In response to Judge Newman's request pursuant to Rule 23(b)(7) and 23(b)(8), prior orders of the Committee and the Judicial Council as well as Judge Newman's Letter Responses to date will be publicly released, with appropriate redactions to protect the identity of witnesses;

(2) To the extent Judge Newman and her counsel are able to identify witnesses from information included in such orders, they are prohibited from publicly disclosing the names of witnesses;

(3) Judge Newman and her counsel remain bound by Rule 23 and the Confidentiality Order with regard to information not publicly disclosed by the Court such as future orders and filings; and

IN RE COMPLAINT NO 23-90015

(4) Disclosures by counsel that appear to be in violation of Rule 23, the Confidentiality Order, or this Order may result in issuance of an order to show cause why counsel should not be held in contempt.

SO ORDERED: May 16, 2023.

13

# Exhibit K

# United States Court of Appeals for the Federal Circuit

**UNDER SEAL (NON-PUBLIC ORDER)**

_____

## IN RE COMPLAINT NO. 23-90015

_____

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges.*

PER CURIAM.

## ORDER

By order of March 24, 2023, a special committee composed of Chief Judge Moore, Judge Prost, and Judge Taranto (the Committee) was appointed to investigate, and to report its findings and recommendations with respect to, a complaint identified against Judge Newman raising, inter alia, a concern that she may have a mental or physical disability that renders her unable to discharge the duties of her office.[1]

In orders dated April 7, 2023, April 17, 2023, and May 3, 2023, the Committee ordered Judge Newman to undergo

---

[1] Chief Judge Moore did not file a complaint nor is she a complainant. Instead, Chief Judge Moore *identified* a complaint pursuant to Rule 5, which allows a Chief Judge to initiate the complaint when others have presented allegations establishing probable cause to believe a disability exists. Rule 5 permits witnesses and complainants to remain confidential during the initial stages of the proceedings.

IN RE COMPLAINT NO 23-90015

a neurological evaluation and neuropsychological testing to determine whether she suffers from a disability and ordered her to provide medical records. The unanimous Judicial Council issued its own order on May 3, 2023 supporting the Committee's decision to require the examinations (the evaluation and testing) and the provision of medical records. Judge Newman has not complied with those orders. Instead, on May 10, 2023,[2] counsel for Judge Newman submitted a letter brief refusing to provide medical records related to an alleged cardiac event and a separate fainting episode on the ground that they are supposedly "irrelevant" to any medical or psychological professional's evaluation of whether Judge Newman may now suffer from a cognitive impairment. Judge Newman also raised objections to the examinations the Committee had ordered, arguing (among other things) that she should select the professionals who would conduct them and that limits should be placed on the examinations before she would agree.

In this order, we address Judge Newman's objections and more clearly define our requests for medical records. We further address her objections and more clearly define and stage the examinations that the Committee requires Judge Newman to undergo. We also set out once more the accumulated and growing body of evidence providing the Committee a reasonable basis for concluding that the examinations it ordered are necessary at this juncture to enable a fully informed determination of whether Judge Newman suffers from a disability. As explained again below, there is overwhelming evidence raising concerns about whether Judge Newman currently suffers from a disability that makes her unable to efficiently perform the duties of

---

[2] The letter response submitted by Judge Newman's counsel is dated May 9, 2023, but it was not submitted to the Court until 8:38 am on May 10.

IN RE COMPLAINT NO 23-90015

her office.  Put simply, when the incontrovertible data from the Clerk's Office establish that Judge Newman (despite having a reduced workload) is unable to complete her work in a timely fashion; when multiple court staff members have reported concerns that Judge Newman cannot remember from day to day how to perform simple tasks such as logging into the computer network or remembering where files have been saved (and in seeking help on these matters she has appeared "paranoid" and repeatedly insisted her devices are hacked and bugged); when two of the five members of Judge Newman's staff recently resigned from her chambers and requested no further contact with Judge Newman; when multiple witnesses report that Judge Newman has threatened to have one staff member arrested and removed from the building; and when Judge Newman's [third staff member] refuses to answer basic questions about her role and responsibilities in chambers and instead—on advice of counsel—asserts her Fifth Amendment right to remain silent to avoid incriminating herself, it is crucial for the Committee to secure professional examinations of whether Judge Newman is suffering from a cognitive or other impairment making her unable efficiently to carry out the duties of her office.

It is also long past time for Judge Newman to begin cooperating with the Committee's inquiry.  Judge Newman has repeatedly asserted through counsel that she suffers no cognitive impairment.  To demonstrate that, Judge Newman should take this opportunity to meet with the neutral, independent neurologist and neuropsychologist selected by the Committee to address, through the examinations they deem appropriate, the many concerns that have been expressed.  The litigants whose rights are at stake in the cases before this court deserve to have confidence that the judges ruling on their cases do not suffer from a cognitive impairment. The Committee and the Judicial Council have an overriding duty to ensure that the

3

IN RE COMPLAINT NO 23-90015

judges resolving litigants' cases are able-minded and capable of performing their jobs. When serious concerns are raised about a judge's fitness, they must be taken seriously and addressed expeditiously. The Judicial Conduct and Disability Act of 1980 (the Act) and the Rules require the judge in these proceedings to cooperate. Rule 13. Judge Newman should be willing to cooperate and undergo the necessary and standard examinations to remove the cloud that will linger over all cases in which she participates while such concerns exist.

## A. Medical Records

In its orders of April 17, 2023 and May 3, 2023, the Committee required that Judge Newman provide hospital, medical, psychiatric or psychological, and other health-professional records that relate to Judge Newman's alleged cardiac issues and fainting episode. The Committee also required production of hospital, medical, psychiatric or psychological, or other health-professional records from any treatment provider in the last two years regarding mental acuity, attention, focus, confusion, memory loss, fatigue, or stamina.

In the letter brief submitted on May 10, Judge Newman provided no rationale for refusing to provide records in the second category, *i.e.*, records related to treatment or consultation she has had in the last two years regarding mental acuity, attention, focus, confusion, memory loss, fatigue, or stamina. Such records are obviously relevant to the Committee's inquiry into whether Judge Newman has a disability related to mental acuity, attention, focus, confusion, memory loss, fatigue, or stamina that affects her ability to perform the functions of her job. To the extent that Judge Newman suggests that requiring the production of such records is an unwarranted invasion of her privacy, the Committee notes that the Rules expressly contemplate that the Committee may require the

IN RE COMPLAINT NO 23-90015

production of medical records.  *See* Commentary to Rule 13. And these records are directly relevant to the Committee's inquiry.

The only objection Judge Newman explained in her letter brief relates to the Committee's request for medical records concerning her apparent cardiac event and a fainting episode.  According to Judge Newman, such records are irrelevant—and, she claims, the Committee has not explained how such records are relevant—to any inquiry into whether Judge Newman suffers from a disability related to cognitive function.

As detailed below, the Committee's investigation has shown that there are significant concerns that Judge Newman is currently unable to efficiently execute the obligations of her office.  Despite enjoying a significantly reduced workload, Judge Newman shows abnormal delays in issuing opinions compared to the other active judges of the court.  In addition, numerous personnel who interact with Judge Newman in the course of the court's business have raised concerns about her comprehension, confusion, short term memory loss, agitation, and lack of focus.

Dr. ███████████, whom the Committee retained to consult in this matter, has informed the Committee that medical records related to a cardiac event and a fainting episode—like records directly addressing mental acuity, attention, focus, confusion, memory loss, fatigue, or stamina—may very well shed light on the observed changes in Judge Newman's behavior and the issues of impairment of cognitive and other functioning the Committee is investigating.  To be sure, the records may not end up shedding such light.  But the Committee (and the medical professionals the Committee has asked to evaluate Judge Newman) cannot know the significance of those records until the medical professionals have seen them.  And the Committee cannot conduct a responsible investigation by failing to

5

IN RE COMPLAINT NO 23-90015

gather information that, according to the Committee's medical consultant, may shed light on conditions relevant to the issue of disability. Dr. ████ has informed the Committee that it would be standard practice for a treating neurologist to consider such records in evaluating impairment issues like those presented here.

To address any concerns about privacy, the Committee hereby limits its requirement concerning the records at issue so that Judge Newman need not supply such records to the Committee itself but only to the neurologist whom the Committee has selected to conduct an evaluation of Judge Newman. Accordingly, Judge Newman is ordered to provide the above-mentioned records and a list of current medications to the office of Dr. ████ within 30 days. The Committee requests that Judge Newman notify the Committee by 9:00 am May 23, 2023 whether she will comply with this direction.

Refusal to provide the requested medical records hinders the Committee's investigation into whether Judge Newman suffers from a disability. The Committee has now made multiple attempts to explain to Judge Newman the importance of providing these records. If Judge Newman continues to refuse to provide these records, this investigation may be expanded to determine whether her noncooperation is an act of misconduct. The Rules expressly contemplate that the Committee may review medical records as part of its investigation, Commentary to Rule 13(a), and that "refusing, without good cause shown, to cooperate in the investigation" is an act of misconduct. Rule 4(a)(5).

## B. Testing and Evaluation (Examinations)

Based on its investigation to date, the Committee has determined that there is a reasonable basis for concern that Judge Newman may suffer from a disability that interferes with her ability to perform the responsibilities of her office. This investigation has included more than

6

IN RE COMPLAINT NO 23-90015

twenty interviews with court staff and discussions with Dr. ██████. These form the basis for the Committee's conclusion that there is a reasonable basis for the required neuropsychological testing and neurological evaluation recommended by Dr. ██████ in order to determine whether Judge Newman has a disability that renders her unable to perform the functions and duties of her office.

### 1. Court Staff Concerns about Judge Newman's Fitness

Court staff from the Clerk's Office, from the Information Technology (IT) and Human Resources (HR) offices, and from Judge Newman's own chambers have reported that, in their interactions with Judge Newman over the course of the last year, Judge Newman has exhibited behavior that indicates significant mental deterioration, including memory loss, lack of focus, confusion, uncharacteristic paranoia, and the inability to understand and execute simple tasks she was once capable of completing. Some of the concerns raised by staff are detailed below.

Several court staff members reported to the Committee that over the last year Judge Newman frequently claimed that her email and computer were being hacked—also, at times, that her phones were being bugged—and that her complaints have increased from once or twice a week to almost daily or every other day. They describe her demeanor in their encounters with her over these matters as "agitated" and "paranoid" and the conversations themselves as "bizarre" and "nonsensical." Staff reported that, in the past, Judge Newman claimed that the culprits who were hacking and bugging her devices were bloggers and the media who were out to get her and bring her down. More recently, staff reported that she is claiming that it is the court itself hacking and bugging her devices. In each instance, IT staff scanned her devices and found no evidence to

7

IN RE COMPLAINT NO 23-90015

support Judge Newman's concerns.  Staff indicated that her claims about hackers usually stemmed from her having forgotten where she saved a file or email, and even after the IT staff would locate the file or email for her (on her desktop or in one of her folders) she would continue to allege that hackers were responsible for hiding the file.

IT staff also reported that the last time Judge Newman participated in the court's mandatory security awareness training she was unable to complete it.  The training amounts to watching a 10-20 minute video and answering a small number of multiple choice questions about the video.  IT staff indicated that Judge Newman repeatedly failed the test.  She was unable to get the multiple-choice questions correct even after watching the short video several times—even though, staff indicated, retesting involves presentation of the same multiple-choice questions each time.  Ultimately, an IT staff member sat with Judge Newman and watched the video with her, after which she was still unable to answer the same questions.  He reported having to feed her the answers in order for her to pass and that she was simply unable to retain the information she had just watched multiple times.  This staff member indicated that he has worked with Judge Newman for many years and that he was amazed at how quickly and easily she picked things up when she was in her 80s.  Over the last few years, he noticed a change observing that she now gets easily confused, has trouble retaining information, and forgets how to perform basic tasks that used to be routine for her.

Staff reported that Judge Newman often forgets how to do simple tasks that she previously had no difficulty performing, such as logging into our court system or network, remembering where she put court material, and bringing her briefs and case materials to court on court days.  Staff reported that Judge Newman has trouble recalling events

and information just days after they occur and at times seems lost and confused.

Staff reported that they have to assist her repeatedly with the same tasks, as she seems unable to remember how to perform them from one day to the next, though she performed them independently for years without difficulty. One staff member stated, "Though it is difficult to say this, I believe Judge Newman is simply losing it mentally."

One staff member relayed a recent episode in which Judge Newman indicated that she was not required to comply with a court rule that required circulating votes on opinions within 5 days. This rule was unanimously adopted by the court (including a vote by Judge Newman) in March 2018. The staffer recounted that Judge Newman said that she did not have to comply with this rule because Chief Judge Markey told her she could take 30 days to vote. Chief Judge Markey has been dead for almost 17 years and has not been a member of the court for 32 years.

Recently, a staff member raised a matter related to events in Judge Newman's chambers pursuant to the confidential Employment Dispute Resolution (EDR) process. Judge Newman refused to participate in the EDR proceeding to resolve the employee's concerns. She also sent an email to 95 individuals at the court disclosing that confidential matter (including the identity of the employees). This conduct raises concerns about Judge Newman's ability to remember or understand important confidentiality requirements and to manage the administration of her chambers. Judge Newman's refusal to participate in our court's EDR proceedings when they involved her chambers staff—and even when they involve complaints about her by her chambers staff—raises concerns about Judge Newman's ability to follow rules and manage staff, which may be related to a potential cognitive impairment.

IN RE COMPLAINT NO 23-90015

Until recently, Judge Newman's chambers had five employees. Two of Judge Newman's chambers staff ended their employment in her chambers on April 19, 2023. Recent emails sent by Judge Newman related to these events suggest potential confusion or memory loss. For example, on April 19, 2023, an email was sent to Judge Newman and her chambers staff indicating that one of her law clerks resigned effective that day and did not wish to be contacted by any member of the chambers including the Judge. Judge Newman acknowledged receiving the email and indicated her clerk's resignation was "appropriate" and that the clerk's separation from her chambers should be expeditiously processed. Yet eight days later, on April 27, 2023, Judge Newman sent an email to all judges on the court indicating that she had not "released" the law clerk and that his continued service at the court in another chambers was "in violation of my right to law clerk services."

There was a nearly identical exchange about [Newman chambers staff member]. As the Committee's order of April 20, 2023, detailed, Judge Newman's [chambers staff member] alleges that Judge Newman threatened to terminate him on the morning of April 19, 2023 for his use of interim relief that had been granted under the court's EDR program (relocation outside chambers, while continuing to perform his job for Judge Newman). Multiple staff members reported that on April 18, 2023, Judge Newman stated her intention to have him forcibly removed from the building and arrested. *See* April 20 Order. In light of these events, an email was sent to Judge Newman and her chambers staff on April 19, 2023 informing them that [Newman chambers staff member] was no longer a member of the Newman chambers and that he wished for there to be no further communication to him by any member of the Newman chambers including the Judge herself. Yet on April 27, 2023 (again just 8 days later), Judge Newman sent an email to all judges stating: "I never released [Newman

10

chambers staff member] [] from my chambers staff.  His movement to your staff, without consultation with me, violates his confidentiality and other obligations to me." This former Newman employee now works in our ▮▮▮▮ Office. Despite being repeatedly told that he chose to leave her chambers because of her alleged abusive treatment of him, Judge Newman thereafter accused the court, the Chief Judge, and our Deputy Clerk of Court on multiple occasions by email of having improperly taken [Newman chambers staff member] and/or depriving her of ▮▮▮▮▮ services.

Judge Newman has a[n employee] in her chambers who was unwilling to provide any testimony to the Committee about Judge Newman's ability to perform the duties of her job.  In fact, in response to questions seek-ing basic information about her own duties, the [employee]—on advice of counsel—invoked her Fifth Amendment right to remain silent to avoid incriminating herself.  For example, when asked, "Q. We understand that you are her [employee].  Can you tell us about that role and what your re-sponsibilities are? A. I am going to invoke my right under the Fifth Amendment to avoid self-incrimination."  She likewise asserted the Fifth Amendment right in response to questions about whether she has prepared any bench memos or draft opinions in the last year and whether she is currently working on any pending cases at the court.  She further invoked the Fifth Amendment right when asked about her perceptions of Judge Newman's ability to carry out her job.

Staff also reported that during conversations or email exchanges Judge Newman would ask the same questions

over and over, requiring provision of the same answer over and over. Staff indicated that at times she seems confused and suspicious and to be struggling to comprehend what she is being told.

For example, a member of the court's Human Resources team (HR) has tried for weeks to work with Judge Newman to replace [Newman chambers staff member]. As emails from HR indicate, Judge Newman was informed on April 24, 2023 that she could rehire her former [employee] on a temporary basis (as Judge Newman had requested), and then on April 27, 2023, Judge Newman was informed that she could advertise to hire a new permanent [employee].[3] From that point, HR tried repeatedly to work with Judge Newman both to bring back her requested temporary [employee] and to post to hire a new permanent person. HR reported exchanges in which Judge Newman would ask the same questions over and over, requiring the same answer to be given repeatedly.[4] HR reported that any

---

[3] For multiple reasons, including the pending EDR proceeding concerning Judge Newman's treatment of [Newman chambers staff member], the Judicial Council had initially placed a pause on hiring new personnel for Judge Newman's chambers on April 20, 2023. Four days later, on April 24, 2023, the Judicial Council approved Judge Newman's request to bring back, on a temporary basis, the person who served as her [employee] until ████████ ago.

[4] For example, Judge Newman asked HR whether her former [employee] (a retired annuitant) would face a salary offset to her pension if she returned. HR informed her in writing that her [employee] would receive both her full pension AND salary for hours worked at the court. Judge Newman responded 30 minutes later, "To be clear: Are you saying she would receive no additional pay for working at

---

IN RE COMPLAINT NO 23-90015

delays in acquiring the approved support services is entirely due to Judge Newman not giving her permission to move forward to fulfill her own request.  Judge Newman's communications and interactions regarding the process of replacing [Newman chambers staff member] who resigned raises further concern about possible memory loss and confusion.

## 2.   Judge Newman's Significant Delays in Resolving Cases

In addition to the alleged conduct described above, Judge Newman's significant delays in resolving cases raise concerns that she may suffer from a disability that prevents her from effectively and expeditiously carrying out the duties of her office.  The Committee has conducted further investigation into Judge Newman's ability to efficiently manage her caseload.  This investigation has provided further evidence that Judge Newman may suffer from cognitive or other impairments that render her unable to effectively discharge her duties.

Between October 1, 2021 and March 24, 2023, Judge Newman authored only 10 majority opinions compared to an average of approximately 58 for the other active judges on the court.  Even accounting for dissents and concurrences, during this time period, the average active judge authored 61 opinions, whereas Judge Newman authored 28.  At the same time, Judge Newman took more than three times as long to issue her opinions.  Other active judges averaged approximately 53 days to issue an opinion after assignment.  In contrast, Judge Newman's average time to issuance was approximately 199 days.  The next closest judge authored 55 opinions (43 majority opinions and 12 dissents/concurrences) and had an average time from

---

the court?"  In the same 24-hour period, HR reported having to answer this same question four separate times.

13

IN RE COMPLAINT NO 23-90015

assignment to issuance of 106 days. The next closest judge thus wrote approximately twice as many opinions in approximately half the time.

Similarly, between October 1, 2020 and September 30, 2021, Judge Newman authored only 9 majority opinions while the other active judges authored on average 42. The other active judges averaged 61 days from assignment to issuance, whereas Judge Newman's average time to issuance was 249 days—more than four times the average.

| Time Period | # of Maj. Op. PN | Assignment to Issuance PN Opinions | # of Maj. Op. Other Judges | Assignment to Issuance Other Judges |
|---|---|---|---|---|
| 10/20-9/21 | 9 | 249 days | 42 | 61 days |
| 10/21-3/23 | 10 | 199 days | 58 | 53 days |

Judge Newman's extended delays relative to her colleagues, coupled with her considerably lower productivity during the same period, is cause for concern.

In addition, there have also been a number of recent instances in which cases have been reassigned from Judge Newman to another judge following abnormally lengthy delays. *See* March 24, 2023 Order at 4–5. To reiterate just a few examples: (1) ██████ ██████, a pro se case submitted on the briefs without oral argument, was reassigned after it had been pending 374 days and was resolved within 3 days of reassignment; (2) ██████ ██████, also a pro se

14

submitted case, was reassigned after it had been pending 624 days and was resolved within a month of reassignment; and (3) ███████ ███████, also a pro se submitted case, was reassigned after it had been pending 302 days and was resolved within a couple of weeks of reassignment.

These statistics demonstrate that there is serious cause for concern regarding Judge Newman's ability to carry out her duties. Considered together with the other evidence described above, it confirms that there is a reasonable basis to believe that Judge Newman may suffer from a disability preventing her from expeditiously performing her duties as a judge.

Judge Newman's only response to the evidence of abnormal delay despite lower productivity is that during the summer of 2021, Judge Newman sat on 10 panels. Our research demonstrates that during this time period, when arguments were conducted by telephone because of COVID, these 10 panels considered 51 cases. Judge Newman presided over 9 of the 10 panels and assigned herself just one opinion. (She also had 5 dissents in whole and in part during that period.) This compares to 33 opinions that were assigned to the other two members of those panels for cases heard during that period. (The remainder were decided under Rule 36, a summary affirmance.) The one opinion she assigned to herself took her 234 days (from the date of oral argument to issuance). Thus, while Judge Newman was still paneled on a similar number of cases to her active colleagues during the summer of 2021, her productivity as measured by opinions and timeliness was much, much lower.

Judge Newman's lower productivity is indicated in three ways: (1) she does not assign herself her share of opinions (even considering her higher rate of dissenting) and takes unreasonable lengths of time to complete opinions she does assign herself (as detailed above); (2) she does

IN RE COMPLAINT NO 23-90015

not participate in motions panels, an important and time-consuming task required of active judges;[5] and, (3) Judge Newman's participation in cases has substantially slowed over the last year:  May 2022-April 2023.  From May 2022 through April 2023, the average Federal Circuit judge participated in deciding 128 cases; Judge Newman in contrast participated in deciding only 65 cases.  Despite participating in fewer cases, assigning herself fewer opinions to write, and not participating in motions practice, Judge Newman still takes an unreasonably long period of time compared to her colleagues to issue opinions.  This dramatic reduction in productivity causes the Committee to be concerned that Judge Newman may suffer from a disability which renders her unable to fulfill the obligations of her job as an active judge.

The Committee is aware that analyses based on publicly available data have been presented elsewhere purporting to show that Judge Newman's productivity does not deviate significantly from that of other judges.  The Committee notes that public data regarding the resolution of cases is materially incomplete in ways that significantly obscure the exact information the Committee needs to analyze.  For example, public data does not (and cannot) reflect which judges authored per curiam opinions.  This omission is significant as 31.6% of opinions issued by the court are per curiam.  From October 1, 2021 through March 24, 2023, 616 opinions were issued and 195 (or 31.6%) were

---

[5] In recent years, each active judge generally acts as Lead Motion's judge one month a year and participates in motions panels 4 months a year.  In 2023 to date, there have been an average of 69 motions resolved by written opinions each month.  In 2022, there were an average of 63 motions resolved by written opinion each month.  Judge Newman has not participated in motions panels since January 2021.

IN RE COMPLAINT NO 23-90015

per curiam.  Only 1 of the 195 per curiam opinions was authored by Judge Newman.  Data that neglects authorship
of per curiam opinions therefore materially distorts conclusions about a judge's productivity and delay.  The court's
internal data maintained by the Clerk's Office, from which
the above statistics have been derived, accounts for authorship of every opinion.

Similarly, public data reflecting the time between an
appeal being docketed and terminated does not indicate the
time between when a judge is assigned an opinion and
when the opinion issues—the relevant metric for assessing
delay attributable to the judge.  The Court's internal data
accounts for when authorship is actually assigned, providing an accurate picture of the fraction of an appeal's pendency that is attributable to delay by a judge in producing
an opinion.

The Court's internal data also accounts for delays in
authorship attributed to stays or reassignments.  Again,
the public data looking only at the time between docketing
and termination does not account for delays for administrative reasons and delays in authorship.  Nor does public
data reflect when cases have been reassigned to another
judge.  For example, in ████ ████████, Judge Newman
did not circulate a draft opinion until 624 days after argument.  The case was reassigned to another panel member
and the opinions issued within a month.  Publicly-available
data would attribute the entire period of 650+ days from
argument to issuance to the judge ultimately listed as the
author of the majority—when in fact Judge Newman was
responsible for 624 of those days and the authoring judge
was only responsible for about a month.  Only data from
the Clerk's Office, which takes into account such reassignments, can accurately attribute delay to the proper judge.
Public databases cannot do so.

17

Finally, statistics that attribute the time between docketing and termination to all three judges on a panel will also obscure delays attributable to any individual judge. Again using ███████ ███████ as an example, Judge Newman failed to produce an opinion for 624 days before the case was reassigned to another judge. After reassignment, the case was resolved within a month. Panel-based statistics will inaccurately attribute the 624 day-delay to all three judges on the panel, despite the fact that this delay was entirely attributable to Judge Newman. Conversely, panel-based statistics will also artificially decrease a non-authoring judge's average time for resolution when he or she sits on a panel with an expeditious author.[6] This metric provides no basis at all for ascertaining delay attributable to individual judges.

### 3. Recommendation of the Committee's Expert Consultant

The Committee's consultant, Dr. ███████████, has recommended that Judge Newman undergo a neurological evaluation and a complete neuropsychological battery of tests to determine whether she suffers from a disability impairing her functioning, and if so, its nature and extent. Dr. ██████ has reviewed materials discussed herein regarding the staff's interactions with Judge Newman and informed the Committee that he believes that the ordered evaluation and testing are necessary.

---

[6] Not surprisingly, panel-based data often results in roughly comparable statistics for every judge. Because panels are randomly assigned, each active judge sits with every other active judge with roughly equal frequency. This will necessarily result in panel-based statistics appearing similar for every judge because fluctuations above or below the mean will average out.

Dr. ███, has identified a qualified neurologist, Dr. ███, who is willing to perform the necessary neurological testing on an expedited basis, and a qualified neuropsychologist, Dr. ███, who is willing to conduct the neuropsychological testing on an expedited basis. Dr. ███ and Dr. ███ shall be provided with any material from the Committee and from Judge Newman that they deem appropriate and necessary to perform the examinations deemed necessary to ascertain the nature and scope of any potential disability.

### 4. Committee Conclusion Regarding the Need for Medical Testing

The reports to the Committee of memory loss, confusion, and an increasing inability at times to perform simple, routine tasks necessary to carry out her duties as a judge, combined with Judge Newman's backlog and delays in the processing of cases compared to her colleagues and Dr. ███ recommendation, have caused the Committee to conclude that the recommended medical evaluation and testing are necessary to determine if Judge Newman has a disability that prevents her from performing her duties as a judge. *See* Rule 13(a). To be clear, the Committee has made no fact findings at this time regarding the allegations made by court staff, but rather finds that these allegations individually and collectively combined with the evidence of significant delay give the Committee a reasonable basis to order the identified examinations. *See* Rule 13(a).

### 5. Judge Newman's Objections

Judge Newman raises three concerns about the ordered examinations: (1) she asserts that she should be permitted to choose the professional(s) who conduct any evaluation and testing; (2) she states that she will not agree to testing of unknown scope and duration; and (3) she objects to the lack of any defined limitation on the use of

IN RE COMPLAINT NO 23-90015

the examination results.  We address those concerns in order.

### (a).    The Committee has the authority to require medical evaluations and testing conducted by professionals selected by the Committee.

The Act and the Rules give the Committee the authority to order the examinations it deems necessary.  Section 353(c) authorizes the Committee to "conduct an investigation as extensive as it considers necessary."  28 U.S.C. § 353(c).  The Rules reinforce that "the special committee should take steps to determine the full scope of the potential [] disability."  Rule 13(a).  Commentary to Rule 13 expressly recognizes the Committee's authority under the statute and rules to order the examinations it deems necessary in order to ascertain the nature and scope of the potential disability.  Rule 13 cmt.  Finally, the Rules authorize the Committee to "determine the appropriate extent and methods of its investigation in light of the allegations."  Rule 13(a).

There is no question that the Committee is entitled to determine the scope of the necessary investigation and, in doing so, to determine the necessary examinations and to choose independent professionals to perform them.  This issue was litigated extensively in the *Adams* case arising in the Sixth Circuit.  There, Judge Adams refused to undergo examination by the expert medical provider chosen by the Special Committee.  *See* Order and Memorandum at 21, *In re Complaint of Judicial Misconduct*, No. 06-13-90009 (Judicial Council of the Sixth Circuit Feb. 22, 2016).  The scope of the investigation was expanded, and the Judicial Council found it an act of misconduct for Judge Adams to refuse the examination by its selected medical provider.  *See id.* at 21, 27.  The Judicial Council found "Judge Adams's refusal to cooperate with the Special Committee's request that he undergo a mental health examination with a

20

IN RE COMPLAINT NO 23-90015

psychiatrist selected by the Special Committee constituted misconduct." *Id.* at 27. On appeal, the Judicial Conduct and Disability Committee agreed with the Sixth Circuit Judicial Council, explaining that "[w]e share the Judicial Council's view that input from an independent medical expert is necessary to fully and fairly assess Judge Adams's mental condition and fitness to continue to serve as a judge." *In re Complaint of Judicial Misconduct*, C.C.D. No. 17-01, at 36 (U.S. Jud. Conf. 2017). As the Judicial Conduct and Disability Committee explained: "While Judge Adams has expressed a preference for being evaluated by an expert of his choosing and an opportunity to direct to some extent the nature of the examination, we conclude that the Special Committee and the Judicial Council appropriately exercised their discretion in determining that an examination by an independent expert is necessary to ensure accuracy and reliability of the procedures and examination results." *Id.* at 32.

In this case, the Committee has similarly determined that examinations by independent, neutral professionals chosen by the Committee are necessary. The Committee has identified independent professionals in the local area who are willing to expedite their examinations of Judge Newman. Judge Newman has articulated no sufficient basis for refusing the testing with these independent medical providers.

### (b).   Defined scope of examinations.

Judge Newman expressed concern that there should be a clearer definition and limitation of the examinations that are being required. The Committee therefore is providing a clearer definition of the limited testing it is requiring under this order. Based on recommendations from the Committee's consultant, the Committee is requiring two forms of examination at this time.

IN RE COMPLAINT NO 23-90015

First, the Committee requires that Judge Newman meet with the neurologist, Dr. ███, for an in-person examination which should last 30-45 minutes. This initial intake appointment will not require any invasive procedures (such as blood work or imaging studies). If the neurologist believes such additional procedures are necessary for assessing whether Judge Newman suffers a cognitive impairment, such testing can be the subject of further discussion between the Committee and Judge Newman after this initial examination has taken place.

Second, the Committee requires that Judge Newman see the neuropsychologist, Dr. ███, for a full battery of neuropsychological testing. This process involves a clinical interview, the administration of questionnaires related to personality and mental health symptoms, and cognitive testing. The clinical interview is designed to provide a basic understanding of the individual's social, educational, occupational, medical, and psychiatric history. The cognitive testing is designed to test all major areas of neurocognitive functioning, including attention, processing speed, working memory, executive functioning, spatial abilities, memory, and language. No aspect of this process is physically invasive; the process consists of answering questions or performing tasks that test cognitive function. The entire examination, including all cognitive testing, is likely to take up to six hours. According to Dr. ███ and Dr. ███, this can be split into two sessions if necessary; however, in situations in which a job requires lengthy periods of cognitively demanding tasks, it is better for the evaluation to be completed in a single day.

Judge Newman has suggested that she may be willing to provide medical records as an alternative to the examinations just described. The Committee concludes that the seriousness of the concerns which have been raised by so many different court staff members combined with Judge Newman's lengthy delays in processing cases makes the

22

IN RE COMPLAINT NO 23-90015

just-described examinations necessary for the Committee, at this juncture, to make a fully informed determination of the nature and extent of any potential impairment.

**(c).    Limitations on use of examination results.**

Finally, Judge Newman expressed concern over the use that will be made of the examination results. The results will be maintained as confidential to the extent permitted by the rules of these proceedings. The Committee will use the results solely to aid its determination of whether Judge Newman has a disability that renders her unable to perform the duties of her office and for the preparation of its report and recommendation to the Judicial Council. This is the Committee's sole purpose regarding the disability inquiry—determining whether Judge Newman has a disability and if so the nature and scope and its impact on her ability to perform the functions of her job.

The Committee requests that Judge Newman inform the Committee by 9:00 am May 23, 2023 if she is willing to meet with the neurologist and the neuropsychologist as described above. This request must be answered independently of any objection to the requests regarding medical records made above. As Judge Newman is continuing to resolve cases in her existing docket, it is imperative that these examinations be conducted on an expedited basis. The Committee will make every effort to acquire examination dates as quickly as possible.

**C. Interview with Judge Newman**

Judge Newman has suggested that the Committee's prior orders contain errors of fact, but she has not identified any specific errors. We have previously invited Judge Newman to meet with the Committee for an interview in which she could provide the Committee with information relevant to the Committee's investigation, including

23

correcting any error of fact. April 17, 2023 Order. We again request that Judge Newman participate in a video-taped interview with the Committee which will provide her with an opportunity to clarify these matters. The Committee is available to meet with Judge Newman at 2:00 pm June 6, 7, or 8. Please inform the Committee by 9:00 am May 23, 2023 as to which date Judge Newman is available.

## D. The Importance of Expeditious Resolution of This Proceeding

Finally, Judge Newman criticizes the Committee for setting deadlines for compliance that are shorter than the deadlines provided for in various rules governing proceedings other than these conduct and disability proceedings. The Act that governs these proceedings declares that the Special Committee shall "conduct an investigation as extensive as it considers necessary, and shall ***expeditiously*** file a comprehensive written report thereon with the judicial council." 28 U.S.C § 353(c) (emphasis added). Congress made clear its intent for the proceedings under this Act to be expeditious. "It is required, however, that upon receipt of the complaint, the judicial council is required to take final action on each complaint in an expeditious manner. The Committee is of the view that this will not take more Than 90 days in the usual case." Sen. Rep. No. 96-362, at 2 (1979). "The committee must satisfy its investigative responsibilities as expeditiously as possible, and then must file a comprehensive written report thereon with the full judicial council of the circuit." H.R. Rep. No. 96-1313, at 11 (1980). Moreover, despite the concerns about Judge Newman's mental fitness, she is continuing to participate in cases currently on her docket, petitions for rehearing and rehearing en banc, and en banc proceedings of the court. The litigants in these proceedings deserve to have this court resolve concerns about Judge Newman's fitness as expeditiously as possible.

IN RE COMPLAINT NO 23-90015

Accordingly,

IT IS ORDERED THAT:

(1) Judge Newman is directed to undergo the above-identified evaluation and testing;

(2) Given the willingness of the expert professionals to handle this matter on an expedited basis, the fact that these examinations have now been ordered three times dating back to April 7, 2023, and the need to retain the expert professionals and allocate funds, a prompt response is necessary to secure the appointments. Judge Newman is directed to inform the Committee by 9:00 am on May 23, 2023 (email response is acceptable) whether she will comply with this Order and make herself available for the above needed evaluations and tests;

(3) Judge Newman is directed to inform the Committee in writing (email response is acceptable) by 9:00 am on May 23, 2023 as to whether she will provide the neurologist with the medical records identified above and list of current medications. The records would be due to the neurologist within 30 days of this Order.

(4) Refusal to comply with this Order without good cause shown may result in the Committee seeking to expand the scope of the investigation to include an inquiry into whether Judge Newman's further non-cooperation constitutes misconduct under Rule 4(a)(5). Failure to respond to this Order by the deadlines specified in ordering clauses (2) and (3) above will be deemed failure to comply.

(5) The Committee again requests that Judge Newman appear for an in-person, video-taped interview with the Committee to take place any afternoon from June 6-8 at 2:00 pm. Judge Newman is directed to inform the Committee, through counsel, by May 23, 2023 at 9:00 am whether she will make herself available for an interview on one of those dates.

25

IN RE COMPLAINT NO 23-90015

(6)  The request to reconsider a transfer is denied.  The judicial council unanimously determined in its May 3, 2023 order that Judge Newman was required to first comply with the Committee's request for medical records and the Committee-ordered neurological and neuro-psychological evaluations and testing.

SO ORDERED: May 16, 2023.

# Exhibit L

# 𝔘nited 𝔖tates 𝔒ourt of 𝔄ppeals for the 𝔉ederal 𝔒ircuit

## ~~UNDER SEAL (NON-PUBLIC ORDER)~~

---

### IN RE COMPLAINT NO. 23-90015

---

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges*.

PER CURIAM.

### ORDER

By order of May 16, 2023, the special committee composed of Chief Judge Moore, Judge Prost, and Judge Taranto (the Committee) ordered Judge Newman to undergo certain neurological and neuro-psychological examinations and to submit certain medical records to the neurologist and also asked Judge Newman to appear for an interview with the Committee. This order repeated, with clarifications, directives (and an interview request) issued by the Committee starting in early April. The May 16 order established a deadline of 9:00 am on May 23, 2023, for Judge Newman simply to respond indicating whether she would agree: (i) to undergo the specified examinations; (ii) to provide the requested medical records; and (iii) to appear for an interview (with the examinations, the provision of records, and interview to occur at later dates). On Saturday, May 20, four days after the May 16 order issued, counsel for Judge Newman submitted a letter seeking a 16-day extension of the May 23 deadline—to June 8. For the reasons explained below, the requested extension is denied, but a

IN RE COMPLAINT NO 23-90015

shorter extension is granted until 9:00 am on Friday, May 26, 2023.

Especially in light of the length of time the Committee's orders for neurological and neuro-psychological examinations and for medical records, and the Committee's request for an interview, have been pending, counsel has not provided any sufficient justification for the requested extension.   The proffered reasons for the extension are that counsel is traveling abroad in Israel until June 1 and will be busy with family engagements during his trip, that he will also be busy preparing grades for students in courses that he teaches, and that the 7-hour time difference between Israel and Washington, D.C. makes communication with his client more difficult.   None of these grounds provides adequate justification for delaying this proceeding.

On April 7, 2023, the Committee first ordered Judge Newman to undergo neurological and neuro-psychological examinations.   On April 17, 2023, the Committee first ordered her to provide medical records and requested that she appear for an interview.   The examination and records directives were repeated in a May 3 order.   Directives to undergo examinations and to provide records and the interview request have thus already been pending for 45 days and 35 days, respectively.   And counsel for Judge Newman has been fully aware of those directives and request for at least a month, since April 21, when counsel's organization first entered an appearance in these proceedings.   The May 16 order clarifies the earlier orders in limited ways—most notably, by staging the neurological examination directive and by requiring the records to be supplied solely to the neurologist (not the Committee).

As the Committee explained in its order of May 16, the Judicial Conduct and Disability Act declares that the Committee shall "conduct an investigation as extensive as it considers necessary, and shall *expeditiously* file a

IN RE COMPLAINT NO 23-90015

comprehensive written report thereon with the judicial council." 28 U.S.C. § 353(c) (emphasis added). The Senate Judiciary Committee, in its report on the proposed Act, explained that it believed that the proceedings culminating in Judicial Council action on a complaint "should not take more than 90 days in the usual case." S. Rep. No. 96-362, at 2 (1979). Given that the Committee was appointed on March 24, this proceeding has been underway for almost 60 days already. And the most significant remaining barrier to completing the investigation is the pending question whether Judge Newman will comply with the directives the Committee has issued for the specified examinations and for medical records. Even if Judge Newman agrees to the specified examinations, moreover, it will still take further time to schedule the examinations and receive results. Accordingly, it is important that the Committee keep this process moving forward as expeditiously as possible.

A lengthy extension is particularly unwarranted given the limited nature of the response that must be provided by the deadline. Judge Newman is not being asked to undergo examinations, to provide records (to the neurologist), or sit for an interview by the May 23 deadline set in the May 16 order. Instead, she is merely being asked to indicate, by that deadline, whether she now agrees that she will do those things at a later date. Given the length of time that counsel has already had to consult with Judge Newman on these same matters, additional time is not warranted. And given modern communications methods, the Committee does not believe that a 7-hour time difference presents a substantial barrier for counsel to conduct whatever further consultations may be required with his client to come to a conclusion on whether Judge Newman will cooperate with the directives and request at issue.

The Committee also notes that counsel who is travelling is not the only lawyer representing Judge Newman in this matter. The April 21, 2023 letter from the New Civil

IN RE COMPLAINT NO 23-90015

Liberties Alliance was signed by another lawyer, and a third lawyer from the same organization has appeared as counsel in the lawsuit Judge Newman has filed about this proceeding and has responded to press inquiries regarding this Committee's orders.

Finally, counsel's time commitments to academic pursuits suggest only that counsel may not have adequate time to represent clients in time-sensitive proceedings such as this. It provides no basis for the Committee to delay a proceeding that is supposed to be conducted expeditiously.

Accordingly, the request for an extension until June 8 is denied. To allow counsel time to communicate with Judge Newman after this order issues, the Committee grants a limited extension of three days until 9:00 am, Eastern Daylight Time, on Friday, May 26, 2023.


Accordingly,

IT IS ORDERED THAT:

(1) A three-day extension of the 9:00 a.m. May 23 deadline is granted, to 9:00 a.m., Eastern Daylight Time, on Friday, May 26, 2023;

(2) Judge Newman is directed to inform the Committee in writing (email is acceptable) by 9:00 am on May 26, 2023 whether she will comply with the Committee's order of May 16, 2023, and make herself available for the examinations described in that order;

(3) Judge Newman is directed to inform the Committee in writing (email is acceptable) by 9:00 am on May 26, 2023, whether she will provide the Committee's selected neurologist with medical records and a list of current medications as described in the Committee's order of May 16, 2023;

IN RE COMPLAINT NO 23-90015

(4)  Judge Newman is directed to inform the Committee in writing (email is acceptable) by 9:00 am on May 26, 2023 whether she will make herself available for a video-taped interview with the Committee at 2:00 pm one afternoon between June 6 and June 8; and

(5)  Failure to respond by 9:00 am on May 26, 2023, to any of the foregoing may be treated by the Committee as a refusal to cooperate.

SO ORDERED: May 22, 2023.

# Exhibit M

# United States Court of Appeals
# for the Federal Circuit

## ~~UNDER SEAL (NON-PUBLIC ORDER)~~

---

## IN RE COMPLAINT NO. 23-90015

---

Before MOORE, *Chief Judge*.

## ORDER

By order of March 24, 2023, a special committee composed of Chief Judge Moore, Judge Prost, and Judge Taranto (the Committee) was appointed to investigate and report its findings and recommendations with respect to a complaint identified against Judge Newman to the Judicial Council.

In orders dated April 7, 2023, April 17, 2023, and May 3, 2023, the Committee ordered Judge Newman to undergo a neurological evaluation and neuropsychological testing to determine whether she suffers from a disability and ordered her to provide medical records. The unanimous Judicial Council issued its own order on May 3, 2023 supporting the Committee's decision to require the examinations (the evaluation and testing) and the provision of medical records. Judge Newman has not complied with those orders. On May 16, 2023, the Committee provided further explanation of the relevance of the medical records and narrowed its order to require Judge Neman to provide the necessary records directly to the medical provider (no longer requiring such records be provided directly to the Committee) and provided Judge Newman with 30 days in which to provide the records. The Committee again sought that Judge Newman undergo a neurological evaluation and

IN RE COMPLAINT NO 23-90015

neuropsychological testing to determine whether she suffers from a disability (such testing to be scheduled at a mutually convenient time in the future). The Committee further explained the nature of this testing (entirely non-invasive), its duration, and the cognitive functions such testing sought to evaluate. The Committee again requested that Judge Newman participate in an interview with the Committee. The Committee requested that Judge Newman inform the Committee by May 23, 2023 whether she would comply with the order and then granted her counsel an extension until May 26, 2023. The Order further informed Judge Newman that "[r]efusal to comply with this Order without good cause shown may result in the Committee seeking to expand the scope of the investigation to include an inquiry into whether Judge Newman's further noncooperation constitutes misconduct under Rule 4(a)(5)."

Judge Newman responded to the Committee on May 25, 2023, indicating that Judge Newman will not comply with any aspect of the May 16 Order. Specifically, she refused to engage with the ordered neurological evaluation and neuropsychological testing, to produce certain medical records, and to meet with the Committee for a recorded interview.

Pursuant to Rule 13(a) of the Rules for Judicial Conduct and Judicial Disability Proceedings, the Committee has requested that the scope of the investigation be expanded to investigate whether Judge Newman has failed to cooperate in violation of the Rules and whether her failure to cooperate constitutes misconduct. *See* Rule 4(a)(5) of the Rules for Judicial Conduct and Judicial Disability Proceedings ("Cognizable misconduct includes refusing, without good cause shown, to cooperate in the investigation of a complaint or enforcement of a decision rendered under these Rules.").

IN RE COMPLAINT NO 23-90015

Based on this information, there is sufficient cause to believe that Judge Newman has failed to cooperate and thereby committed additional misconduct.    Accordingly, the scope of the investigation is expanded to include an investigation into this newly identified matter.

IT IS SO ORDERED.

  05/26/2023                         /s/ Kimberly A. Moore
Date                             Kimberly A. Moore
                                    Chief Judge

# Exhibit N

# United States Court of Appeals
# for the Federal Circuit

## ~~UNDER SEAL (NON-PUBLIC ORDER)~~

---

## IN RE COMPLAINT NO. 23-90015

---

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges*.

PER CURIAM.

### ORDER

By order of May 16, 2023, the special committee composed of Chief Judge Moore, Judge Prost, and Judge Taranto (the Committee) ordered Judge Newman to undergo certain neurological and neuro-psychological examinations and to submit certain medical records to the neurologist selected by the Committee and also asked Judge Newman to appear for an interview with the Committee. The May 16 Order repeated, with clarifications, directives (and an interview request) issued by the Committee starting in early April. The May 16 Order established a deadline of 9:00 am on May 23, 2023, for Judge Newman to respond indicating whether she would agree: (i) to undergo the specified examinations; (ii) to provide the requested medical records; and (iii) to appear for an interview (with the examinations, the provision of records, and interview to occur at later dates). On May 22, the Committee extended the deadline to 9:00 am on May 26, 2023.

On May 25, Judge Newman responded through counsel and refused to comply with any aspect of the May 16 Order

IN RE COMPLAINT NO 23-90015

(May 25 Response).  Judge Newman indicated that she would not cooperate in any respect unless (i) she was immediately restored to the rotation of assignments for new cases *and* (ii) this matter was transferred to be considered by the judicial council of another circuit.  May 25 Response at 3.  If those demands were met, Judge Newman indicated that she intended to start over from the beginning by negotiating with a new Special Committee in the transferee circuit concerning "selecting medical providers" and "setting the appropriate parameters for any examination."  *Id; see also* May 9 Response ("Judge Newman reserves the right to request that the transferee council restart the entire process").

On May 26, 2023, pursuant to Rule 13(a) of the Rules for Judicial Conduct and Disability Proceedings, the Committee requested that this investigation be expanded to consider whether Judge Newman's refusal to cooperate constituted misconduct.  The same day, Chief Judge Moore issued an order expanding the investigation to include that question of misconduct.

In light of the practical constraints that Judge Newman's refusal to cooperate places on the Committee's ability to proceed, this order narrows the focus of the Committee's further investigation and establishes a timetable for further proceedings.

The Committee believes that Judge Newman's refusal to comply with the Committee's orders requiring her to undergo medical examinations and to provide medical records and its request for an interview significantly impairs the Committee's ability to make a fully informed assessment of whether Judge Newman suffers from a disability that impairs her ability to perform the functions of her office and to make a recommendation to the Judicial Council on that issue.  The Committee does have strong evidence suggesting such a disability—notably, information showing that

IN RE COMPLAINT NO 23-90015

despite handling far less than an active judge's work, Judge Newman has abnormally, lengthy delays in issuing opinions ; and overwhelming evidence from the Court staff who interact with Judge Newman that Judge Newman has displayed troubling changes in behavior, including inability to focus, short term memory loss, confusion and agitation. But the Committee believes it important, in order to make a formal finding concerning a disability, to obtain the input it has specified from independent medical professionals after they have actually examined Judge Newman. In the *Adams* case, the Judicial Council of the Sixth Circuit concluded that it could not determine whether Judge Adams suffered from a disability that rendered him unable to discharge the duties of his office "because Judge Adams refused to undergo an evaluation by the forensic psychiatrist the Special Investigating Committee retained." Order & Mem., *In re Complaint of Judicial Misconduct*, No. 06-13-90009, at 27 (Sixth Cir. Judicial Council Feb. 22, 2016); *see also* Mem. of Decision, *In re: Complaint of Judicial Misconduct*, C.C.D. No. 17-01, at 36 (Committee on Judicial Conduct and Disability, Aug. 14, 2017) (noting that "input from an independent medical expert is necessary to fully and fairly assess [a judge's] mental condition and fitness to continue to serve as a judge"); *see also id.* at 37 (noting that the ability of the Sixth Circuit judicial council to make "findings with regard to Judge Adams's capability of discharging his adjudicative responsibilities" was "impeded by Judge Adams's refusal to submit to a mental health examination").

Accordingly, the Committee investigation will focus on the question whether Judge Newman's refusal to cooperate with the Committee's investigation constitutes misconduct. *See* Rule 4(a)(5) ("Cognizable misconduct includes refusing, without good cause shown, to cooperate in the investigation of a complaint or enforcement of a decision rendered under these Rules."). Given that the Committee

IN RE COMPLAINT NO 23-90015

is narrowing its investigation at this time to whether the failure to cooperate constitutes misconduct, the Committee will likewise limit its consideration of any remedial action solely to remedies for such misconduct that do not require additional factual development.  In that regard, the Committee directs Counsel's attention to the statement of the Committee on Judicial Conduct and Disability in the *Adams* case noting that "sanctions for [a judge's] continued failure to cooperate" with orders for a mental health examination may include a "prohibition of the assignment of new cases on a temporary basis for a time certain."   Mem. of Decision, *In re: Complaint of Judicial Misconduct*, C.C.D. No. 17-01, at 39 (Committee on Judicial Conduct and Disability, Aug. 14, 2017).

Because narrowing the focus of further proceedings to the question of misconduct dramatically narrows the issues at stake, the Committee believes that this approach will also necessarily result in a more streamlined process.  Most importantly, the question whether Judge Newman's responses to the Committee's orders constitute "refusing, without good cause shown, to cooperate in the investigation," Rule 4(a)(5), can be determined based upon the paper record established by the Committee's orders and Judge Newman's filed responses, along with any legal argument Judge Newman wishes to submit to justify her responses or otherwise establish "good cause shown" for her actions.  There are no percipient fact witnesses to additional events that are relevant to the misconduct determination.  As a result, the Committee currently believes that there is no need for a hearing pursuant to Rule 14 for the taking of testimony.  Rule 14 itself makes clear that holding such a hearing is not required in every case.  Instead, it states that the Committee "*may* hold hearings to take testimony and receive other evidence."   Rule 14(a) (emphasis added).  Where there is no need for taking live testimony, a hearing is not required.  Similarly, although Rule 15(a)(2) states

IN RE COMPLAINT NO 23-90015

that "[t]he subject judge may suggest additional witnesses to the special committee," in this case there are no witnesses who could have relevant testimony bearing on the narrow issue of misconduct.

Rule 15 establishes that "[t]he subject judge may submit written argument to the special committee and must be given a reasonable opportunity to present oral argument at a reasonable stage of the investigation." Rule 15(d). As explained below, the Committee will receive briefing from Judge Newman on the misconduct question and will hear argument from Judge Newman's counsel.

To the extent that Judge Newman may seek to argue that her conduct was justified because the Committee lacked a reasonable basis for ordering her to undergo examinations and to provide medical records, it may be relevant for Judge Newman to have access to the evidence on which the Committee based its determinations. Accordingly, concurrent with the issuance of this order, the Committee is providing Judge Newman, through counsel, all affidavits and deposition transcripts that the Committee has gathered to date. These materials—which include information on Judge Newman's lengthy delays in issuing opinions and her handling of far less than an active judge's work—provided the basis for the Committee's conclusion that Judge Newman should be ordered to undergo the examinations and to provide medical records.

Counsel are once again expressly cautioned concerning the confidentiality obligations imposed by the Judicial Conduct and Disability Act, the Rules, and by the Committee's prior order. The Act states in unambiguous terms that "all papers, documents, and records of proceedings related to investigations conducted under this chapter shall be confidential and shall not be disclosed *by any person*." 28 U.S.C. § 360(a) (emphasis added). Similarly, Rule 23(b)(1) provides that information about the Committee's

consideration of a complaint "must not be publicly disclosed by any judge or judicial employee."  The Committee has taken care that prior public releases do not identify any witnesses who have provided statements to the Committee. Counsel are cautioned that any public release of information that is not already public regarding the Committee's consideration of the matters before it—especially including the identity of any witnesses—will violate the Act, the Rules, and Committee's order addressing confidentiality of May 16, 2023.

Accordingly,

IT IS ORDERED THAT:

(1) By 3:00 pm, Eastern Daylight Time on July 5, Judge Newman may submit a brief limited to addressing the question whether Judge Newman's refusal to undergo examinations, to provide medical records, and to sit for an interview with the Committee as described in the May 16 Order constitute misconduct and the appropriate remedy if the Committee were to make a finding of misconduct; the letter brief may be single spaced and is limited to 25 pages; and,

(2) the Committee will hear oral argument from counsel for Judge Newman on July 13, 2023 at 2:00 pm in courtroom 201.  This argument will be confidential, members of the public will not be permitted.  Counsel shall be allowed 45 minutes for argument.

SO ORDERED: June 1, 2023.

# Exhibit O

# United States Court of Appeals
# for the Federal Circuit

## ~~UNDER SEAL (NON-PUBLIC ORDER)~~

_____

## IN RE COMPLAINT NO. 23-90015
_____

Before the Judicial Council of the Federal Circuit

PER CURIAM.

## ORDER

By order of March 24, 2023, Chief Judge Moore appointed a special committee (the Committee) to investigate and report its findings and recommendations with respect to a complaint identified against Judge Newman pursuant to Rule 5 of the Rules for Judicial-Conduct and Judicial-Disability Proceedings.  The complaint was based, *inter alia*, on a concern that Judge Newman may be "unable to discharge all the duties of office by reason of mental or physical disability." 28 U.S.C. § 351(a).

Prior to the formation of that Committee, on March 8, 2023, the Judicial Council met to consider concerns raised about Judge Newman's mental fitness by court staff and Judge Newman's abnormally large backlog in cases and her apparent inability to issue opinions in a timely fashion. The Judicial Council voted unanimously to preclude the assignment of new cases to Judge Newman.  In the course of the proceedings before the Committee, Judge Newman requested that she immediately be restored to the rotation of new case assignments.  *See* May 25, 2023 Letter from G. Dolin to The Special Committee at 3.  The Committee

IN RE COMPLAINT NO 23-90015

referred that request to the Judicial Council and, constru-
ing it as a request for reconsideration of the Council's prior
decision, the Council has reconsidered, based on currently
available information, whether Judge Newman should be
precluded from receiving new case assignments.  As ex-
plained below, having considered the matter *de novo*, un-
der the facts as they currently stand, the Council has
determined that Judge Newman should not be allowed new
case assignments.

**The Circumstances at the Time of the Council's
March 8 Order**

When the Council met on March 8, significant concerns
had been raised about Judge Newman's backlog of cases
and her apparent inability to issue opinions in a timely
fashion.  Concerns had also been raised by court staff about
her mental fitness to continue to perform the work of an
active judge.  At that point in time, Judge Newman had
nine opinions pending, four of which were over 120 days old
and one of which was 454 days old.  Judge Newman had
already been foreclosed from assignment to any panel for
the April sitting because, when cases were being assigned
for April in February, her backlog had placed her in viola-
tion of Federal Circuit Clerical Procedures #3, ¶ 15.  Pur-
suant to that provision, new cases will not be assigned to
any judge with four or more opinions over six months old
or two or more opinions over one year old.

In addition, Judge Newman's backlog of cases would
have been even larger if there had not been several inter-
ventions over the previous 18 months in which cases had
been reassigned from her to another judge following unnec-
essary delay and the circulation of draft opinions that no
other member of the panels would join.  These instances
are described in the order of March 24.  *See* March 24, 2023
Order at 4–5.  To give just a few examples: (1) ███████ (
██████ ), a pro se submitted case, was reassigned after it had

2

IN RE COMPLAINT NO 23-90015

been pending 374 days; (2) ███████ (███████), a pro se submitted case, was reassigned after it had been pending 624 days; and (3) ███████ (███████), a pro se submitted case, was reassigned after it had been pending 302 days.

The backlog was a source of even greater concern for the Council because Judge Newman had accumulated this backlog despite taking on significantly less work than other active judges on the Court.  Judge Newman had not participated in motions panels since January 2021 and she was already on a significantly reduced rotation for panel assignments.  From June 2022 through March 2023, the average active judge on the Court participated in 116 cases, while Judge Newman participated in only 60.

### *De Novo* Consideration of Barring Judge Newman from New Case Assignments

Based on the information available to the Council today, the Council has now considered *de novo* whether there are grounds to preclude Judge Newman from receiving new case assignments and whether an order should issue precluding her from receiving such assignments.

Unfortunately, the Council's concerns about Judge Newman's abnormally large backlog of cases and her apparent inability to issue opinions in a timely fashion have not abated.  To the contrary, they have increased.  Since the Council's March action, Judge Newman has issued only two of her majority opinions.  She still has a backlog of seven opinions, three of which have been pending for over 200 days and all of which have been pending for over 100 days.  Four of them, moreover, are cases submitted without argument that are generally among the most expeditiously resolved.  These are all opinions which she assigned to herself yet has been unable to circulate to the panels for vote.

The Council is particularly concerned that Judge Newman has been unable to make any significant progress on

3

IN RE COMPLAINT NO 23-90015

addressing her opinion backlog despite having three law clerks, having no new cases assigned for April, May, June, or July, and not sitting on motions panels since January 2021.

In addition, the publicly available May 16 order details substantial data from the Clerk's office demonstrating that Judge Newman, despite issuing dramatically fewer opinions than other judges on the court, takes much longer to do it. Between October 1, 2021 and March 24, 2023, Judge Newman authored only 10 majority opinions. The average for other active judges was 58. *See* May 16 Order at 13. If dissents and concurrences are accounted for, the average active judge authored 61 opinions while Judge Newman authored 28. *See id.* Despite the lower opinion load, Judge Newman was dramatically slower. The average time to issuance after assignment for other judges was 58 days; for Judge Newman it was approximately 199 days. *See id.* Such lengthy delays are a disservice to the litigants before the Court, who have a right to have their matters resolved expeditiously. The Council is concerned that assigning additional cases to Judge Newman now will only interfere with her ability to clear her current backlog and exacerbate delays in her already long-delayed opinions.

In light of Judge Newman's continued backlog of cases, and her inability to clear the backlog despite the absence of new cases assignments demanding her attention, the Council concludes upon *de novo* consideration that Judge Newman is not expeditiously carrying out the work of the Court, that assigning her new cases will only further interfere with expeditious execution of the work of the Court, and that an order precluding Judge Newman from new case assignments is warranted.

This action is warranted under the Council's statutory authority to "make all necessary and appropriate orders for the effective and expeditious administration of justice

4

IN RE COMPLAINT NO 23-90015

within its circuit." 28 U.S.C. § 332(d)(1).  Under section 332(d), the Council has broad authority to suspend the assignment of new cases, or to reassign pending cases, to a given judge to address delays that interfere with the "expeditious administration of justice."  *See, e.g., U.S. v. Colon-Munoz*, 318 F.3d 348, 354–55 (1st Cir. 2008) ("An order of the Judicial Council reassigning cases . . . to address judicial delay falls within the broad mandate of § 332(d).").  Indeed, the Supreme Court has expressly recognized that rules imposed by a judicial council suspending the assignment of new cases until a judge resolves a backlog of existing cases "are reasonable, proper, and necessary rules, and the need for [their] enforcement cannot reasonably be doubted."  *Chandler v. Jud. Council of Tenth Cir. of U. S.*, 398 U.S. 74, 85 (1970).  The same authority extends to suspending a judge from case assignments by order of the judicial council.  The Council concludes that Judge Newman's backlog of cases and her delays outlined above provide a complete and sufficient basis for an order barring her from the assignment of new cases.  This is not a censure but rather a decision made for the effective and expeditious administration of the business of the court.

In addition, although not necessary for its decision, the Council notes that its action is further buttressed by the substantial information that has been described in the publicly available orders.  The Council is not required to blind itself to that information in carrying out its duties under section 332(d).  The information the Committee has detailed in its order of May 16 raises, at a minimum, a reasonable concern that Judge Newman may suffer from a disability that renders her incapable of carrying out the duties of her office and thus incapable of issuing her opinions more promptly.  That information tends to confirm the Council's concern that, if Judge Newman were restored to the rotation of new case assignments, the addition of new work to her load would exacerbate the delays in her current

5

IN RE COMPLAINT NO 23-90015

cases and simply add a new set of cases into Judge Newman's backlog where they will linger unresolved for months if not years. That would further interfere with the expeditious administration of justice in this Court and do a disservice to litigants.

Beyond that, the information the Committee has publicly detailed may raise a legitimate concern that Judge Newman may suffer from a cognitive impairment that affects her ability to decide cases. The Council believes that ensuring the "effective and expeditious administration of justice," 28 U.S.C. § 332(d)(1), may justify refraining from assigning litigants to a judge when there are substantial grounds (made public at the judge's request) to doubt the judge's fitness to decide cases. We need not reach at this time whether concerns about mental fitness alone can justify Council action of the present sort pursuant to 28 U.S.C. § 332(d)(1) or 28 U.S.C. §§ 351-364 prior to action by the Council on a finding of disability under § 354.

Accordingly,

IT IS ORDERED THAT:

Judge Newman shall be excluded in the rotation for new case assignments at this time based on the facts described above pending further order of the Judicial Council.

SO ORDERED: June 5, 2023.

6

# Exhibit P

COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY
OF THE JUDICIAL CONFERENCE OF THE UNITED STATES

————————

IN RE COMPLAINT NO. FC-23-90015

————————

(Filed May 24, 2023)

Present:     Judges William B. Traxler, Jr., Chair, Patricia A. Gaughan, Phyllis J. Hamilton, M.
Margaret McKeown, D. Brooks Smith, Carl E. Stewart, Sarah S. Vance.

**MEMORANDUM OF DECISION**

A judge on the Federal Circuit who is the subject of an identified complaint seeks review
of an interim order of the Judicial Council suspending her from being assigned any cases while the
complaint is being investigated and adjudicated. The Committee on Judicial Conduct and
Disability has no jurisdiction to review this interim order. Review is denied.

# Exhibit Q

∛ New Civil Liberties Alliance

April 21, 2023

The Honorable Kimberly A. Moore
Chief Circuit Judge
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

HAND DELIVERED

Re: *Complaint Against Circuit Judge Pauline Newman*

Dear Chief Circuit Judge Moore:

The New Civil Liberties Alliance ("NCLA") is a nonpartisan, nonprofit civil rights organization dedicated to defending constitutional rights from unlawful administrative power. NCLA's CEO is Philip Hamburger, the Maurice & Hilda Friedman Professor of Law at Columbia Law School. NCLA's Board of Advisors includes both retired federal appellate and trial judges, law school professors, former senior federal department and agency executives, prominent law firm partners, corporate counsel, and policy experts in the fields of constitutional and administrative law.

It has come to NCLA's attention that you, in your capacity as the Chief Judge of the Federal Circuit, have "identified a complaint" against Circuit Judge Pauline Newman. *See* 28 U.S.C. § 351(b); *see also* R. Jud. Conduct & Disability Proceedings 5. Circuit Judge Newman has engaged NCLA to represent her interests in the above-referenced investigation.

We understand that either you, in your capacity as Chief Judge, or the "special committee" ordered that no new cases be assigned to Circuit Judge Newman pending conclusion of the "special committee" investigation. Your order of March 24, 2023 is ambiguous as to whether Circuit Judge Newman was afforded even an opportunity formally to respond to the "identified complaint" prior to your selection of the "special committee" as required by Rule 11(f) of the Rules for Judicial Conduct and Judicial Disability Proceedings. The order also contains basic errors of fact. For example, contrary to the order's page-one allegation that Circuit Judge Newman's Summer 2021 "sittings were reduced compared to her colleagues," Circuit Judge Newman served on ten different panels of the Court—more than any other judge but two.

Furthermore, your order of April 13, 2023 alleges that Circuit Judge Newman has failed to cooperate in these proceedings. The basis for this allegation appears to be Circuit Judge Newman's failure to respond within *three days* to a prior order that directed her to submit to a medical examination by an expert of the "special committee's" choosing. Leaving aside significant legal questions that such an order raises, three days is not sufficient time to obtain counsel and receive legal advice in responding to this order—protections to which Circuit Judge Newman is entitled under the governing statute and the rules. *See* 28 U.S.C. § 358(b)(1); *see also* Jud. Conduct & Disability Proceedings 15(f). By way of comparison, the Federal Rules of Civil Procedure afford a defendant 21 days to answer the complaint, whereas the Federal Rules of Appellate Procedure set the response deadline at 30 days. *See* Fed. R. Civ. P. 12(a)(1)(A)(i); Fed. R. App. P. 31(a). Surely, a federal judge responding to a complaint should be afforded no less due process. Your order of April 17, 2023, directing that Circuit Judge Newman respond to a request to "provide hospital records, medical, psychiatric or psychological, and other health-professional records" by April 21, 2023 (*i.e.*, within *four days*) sets similarly unreasonable deadlines. While we certainly appreciate the efforts to resolve this matter expeditiously, the deadlines established by these two orders do not provide sufficient opportunity to answer the requests, obtain and consult with counsel, or engage in negotiation as to the scope of the requests as provided by the Commentary to Rule 13 of the Rules for Judicial Conduct and Judicial Disability Proceedings.

Now that Circuit Judge Newman has obtained representation, she can properly respond to the requests that she undergo medical examination, provide medical records, and "sit down with the Committee for a video-taped interview." However, in light of our request (explained in more detail below) to transfer the matter to a judicial council of another circuit, we believe that such a response would be premature. Nevertheless, we wish to make clear that Circuit Judge Newman did not, has not, and will not fail to cooperate with any investigation that is conducted consistent with the limits that the Constitution, the Judicial Disability Act of 1980, and the Rules for Judicial Conduct and Judicial Disability Proceedings place on such investigations. Accordingly, we will reply to your orders of April 7, 2023 and April 17, 2023 once the transfer request is resolved.

We also note that the decision to preclude Circuit Judge Newman from being assigned new cases *prior* to the adjudication of your "identified complaint" fails to state any legal authority or basis for such an action. Instead, on April 5, 2023, you sent an email to Circuit Judge Newman (copying all other members of the Court) stating that she "will not be assigned any new cases until these proceedings are resolved." Absent impeachment proceedings, resignation, or imposition of sanctions under the Judicial Disability Act, there are no legal bases to deny the functions of an Article III judicial office to an individual who has been duly appointed to hold such an office "during good behaviour." U.S. Const. art. III, § 1.

Indirect interference with Circuit Judge Newman's judicial functions such as withdrawing her support staff or equipment is equally problematic, especially if one of the bases for proceeding against her is delay in the disposition of cases. We understand that Circuit Judge Newman has been deprived of her secretarial assistance, one of her clerks, and had her ability to use the Court's communication systems restricted. She cannot be expected to complete her duties in a timely fashion if, unlike the other judges on the Court, she lacks the necessary access to communications and administrative and research support.

Of even more pressing concern, however, is the ability of the "special committee" or *any* Federal Circuit Judicial Council to investigate or render any determination, without creating the appearance of prejudice—if not actual prejudice.

As you are aware, the Rules for Judicial Conduct and Judicial Disability Proceedings authorize a "special committee" to conduct an evidentiary hearing, and the rules afford the subject judge the ability to compel the testimony of witnesses.  *See* R. Jud. Conduct & Disability Proceedings 14(b), 15(c).  In this case, such witnesses likely would include not only members of the "special committee," but also current and former members of the Circuit (who could and would testify regarding the allegations in your "identified complaint" against Circuit Judge Newman).  It is evident that members of the "special committee" and of any Federal Circuit Judicial Council could not serve as adjudicators of the complaint against Circuit Judge Newman while also serving as fact witnesses in the proceeding.

Moreover, because other witnesses also may include members of the bar who practice exclusively before the Federal Circuit, members of the Office of White House Counsel, former law clerks, and others who may have an interest in the "special committee" investigation and recommendation, the investigation can fairly be described as "highly visible and [one where] a local disposition may weaken public confidence in the process."  Commentary on R. Jud. Conduct & Disability Proceedings 26.  This concern is supported by leading judicial ethics experts.  *See* Riddhi Setty and Michael Shapiro, *Federal Circuit Chief Moore Takes Action to Unseat Judge Newman*, Bloomberg News (April 13, 2023) ("'The fact that you have a chief judge initiating a complaint against a long-time colleague would suggest this ought to be handled by the chief judge and circuit council' of another federal appeals court.") (quoting Professor Arthur Hellman).

Of course, a proceeding of this sort by any judicial council would raise a host of constitutional questions, but at the very least this complaint needs to be transferred.  Indeed, transferring a complaint about a Circuit Judge appears to be standard practice within regional circuits.  *See, e.g.*, *In re Charges of Judicial Misconduct*, No. 21-90142-JM (resolution of the complaint against Circuit Judge William Pryor of the U.S. Court of Appeals for the Eleventh Circuit by the Judicial Council of the Second Circuit); *In re Charges of Judicial Misconduct*, No. DC-13-90021 (resolution of the complaint against Circuit Judge Edith Jones of the U.S. Court of Appeals for the Fifth Circuit by the Judicial Council of the District of Columbia Circuit); *In re Charges of Judicial Misconduct*, No. 12-90069-JM (resolution of the complaint against Circuit Judge Boyce F. Martin of the U.S. Court of Appeals for the Sixth Circuit by the Judicial Council of the Second Circuit).  The practice of other courts over the years strongly suggests that a request for transfer is not only appropriate, but necessary.

For these reasons, NCLA respectfully requests that you or the "special committee" (acting pursuant to Rule 26 of the Rules of Judicial Conduct and Judicial Disability Proceedings, and in the interests of justice and public confidence in the judicial system) request that the Chief Justice of the United States transfer this investigation to the judicial council of another circuit.  We additionally request that consistent with the Constitution, the Judicial Disability Act of 1980, and the Rules for Judicial Conduct and Judicial Disability Proceedings, you immediately restore Circuit Judge Newman to the regular rotation on the Court's calendar and that you cease interfering with Circuit Judge Newman's operation of her own chambers and immediately restore her full access to the Court's communication systems and her complement of administrative and legal support staff so as to permit

her to discharge her judicial duties in the same manner as other judges on the United States Court of Appeals for the Federal Circuit and throughout the federal judiciary.

Sincerely,

/s/ *Mark Chenoweth*

President and General Counsel, NCLA

cc:    The Honorable John G. Roberts, Jr.
        The Chief Justice of the United States

        The Honorable Robert M. Dow, Jr.
        Counselor to the Chief Justice of the United States

        ***

        The Honorable Sharon Prost
        Circuit Judge, United States Court of Appeals for the Federal Circuit

        The Honorable Richard G. Taranto
        Circuit Judge, United States Court of Appeals for the Federal Circuit

# Exhibit R

 New Civil Liberties Alliance

May 9, 2023

The Honorable Kimberly A. Moore
Chief Circuit Judge
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

VIA EMAIL

*Re: In re Complaint No. 23-90015 (Complaint Against Circuit Judge Pauline Newman)*

Dear Chief Circuit Judge Moore:

We are in receipt of the special committee orders of May 3, 2023, one of which directs that both Judge Pauline Newman and her attorneys cease making public statements regarding the above-referenced matter, and another a) requesting that Judge Newman undergo neurological and neuropsychological examinations before physicians of the special committee's choosing; b) requesting that Judge Newman provide the special committee with medical records regarding a myocardial infarction and stent placements both of which allegedly occurred in 2021, and a fainting episode that allegedly occurred on May 3, 2022; and c) denying our prior request that you seek to transfer this matter to another Circuit's judicial council. This letter addresses these four issues. Before proceeding further, we must again note and object to the undue and unseemly haste with which the special committee is proceeding and with which it directs Judge Newman to respond. We have criticized previous orders which set three- and four-day deadlines to respond to special committee inquiries. The May 3, 2023 Order is slightly more generous, setting a seven-day deadline, but it is still proceeding, without any pressing need to do so, on a significantly more compressed schedule than would a similar matter that was governed either by the Federal Rules of Civil Procedure or Federal Rules of Appellate Procedure.

## I.

We respectfully submit that the special committee's order of May 3, 2023 forbidding Judge Newman or her attorneys from publicizing the details of an ongoing investigation ("Gag Order") is unconstitutional and inconsistent with the requirements of the Rules for Judicial Conduct and Judicial Disability Proceedings ("Conduct Rules"). The special committee is correct that the Conduct Rules contemplate that the investigation of allegations of judicial misconduct or disability is meant to be confidential so as "to protect the fairness and thoroughness of the process by which a complaint is

filed or initiated, investigated … and ultimately resolved," as well as to "protect identity of witnesses" from any possible intimidation.

At the outset, we note that neither Judge Newman, nor her attorneys, have even been apprised of the identity of any witnesses that the special committee has spoken to or intends to speak to. Thus, it is hard to see how anything Judge Newman or her attorneys might say could affect the "identity of witnesses" or "intimidate" these unknown individuals. (The very idea that Judge Newman could physically intimidate *anyone* is risible).

More to the point, however, the Conduct Rules, as the Gag Order itself recognizes, *see* p. 3, explicitly permit a judge that is subject to an investigation to release "any materials from the [investigation's] files … to any person." R. 23(a)(7). To the extent that prior communications may not have been clear, you can construe the present letter as Judge Newman's explicit consent under Rule 23(a)(7). Granted, such right can be exercised only if the "chief judge consent[s] in writing" to such a course of action. *Id.* It appears from the Gag Order, *see* p. 3, that you do not intend to furnish such consent. If our understanding is correct, then we respectfully submit that such a refusal is contrary to the very Conduct Rules under which the process is being conducted. Specifically, Commentary to Rule 23 states that "[o]nce the subject judge has [pursuant to subsection (a)(7)] consented to the disclosure of confidential materials related to a complaint, the chief judge ordinarily will refuse consent *only* to the extent necessary to protect the confidentiality interests of the complainant or of witnesses who have testified in investigatory proceedings." Comm. on R. 23 (emphasis added). Of course, neither Judge Newman nor her attorneys have any wish to breach the confidentiality interests of any witnesses, so Judge Newman explicitly consents to any redactions necessary to accomplish these goals. At the same time, we reiterate that a chief judge's blanket refusal to consent to release of materials under Rule 23(a)(7) violates both the letter and spirit of the rules.

Additionally, and to the extent that you decline to consent to release of materials under Rule 23(a)(7), the Gag Order raises significant constitutional problems. It is well settled that "gag orders" are prior restraints under the First Amendment, *Alexander v. United States*, 509 U.S. 544, 550 (1993). Hence, they bear "a heavy presumption against [their] constitutional validity," *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963), and are subject to strict scrutiny, *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Such orders cannot be justified even in judicial proceedings unless there is a likelihood that "publicity, unchecked, would so distort the views of potential *jurors* that [they could not] fulfill their sworn duty to render a just verdict exclusively on the evidence.…" *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 569 (1976) (emphasis added). The Supreme Court's focus on *jurors* explains why gag orders are rarely, if ever, entered in appellate cases. Simply put, federal judges, who enjoy both life tenure and protection by federal law enforcement officials are unlikely to be swayed in their duty by any amount of publicity. Thus, the Gag Order does not serve a *compelling* governmental interest and therefore necessarily fails strict scrutiny.

The issue of the constitutionality of the confidentiality provisions has been previously addressed by the United States District Court for the District of Columbia in *McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*, 83 F. Supp. 2d 135 (D.D.C. 1999).[1] In that

---

[1] Although this opinion was vacated in part by the United States Court of Appeals for the District of Columbia Circuit, the First Amendment portion was neither appealed nor disturbed by the appellate

case, the Court held section 372(c)(14) of Title 28 on which Rule 23 is based to be unconstitutional. Admittedly, in *McBryde* the challenge to the required confidentiality arose after the proceedings against the late Judge John McBryde had concluded, whereas proceedings against Judge Newman are ongoing. However, the District Court's analysis did not depend on that distinction. Rather, it concluded that § 372(c)(14), which mandates confidentiality, is a prior restraint which cannot be justified by any legitimate state concerns, especially when witness identity remains protected.[2]

In light of the above, we respectfully ask that you either consent to the disclosure of materials as authorized by Rule 23(a)(7) or alternatively withdraw the Gag Order altogether, except insofar as necessary to protect any witnesses in the proceedings.

## II.

We respectfully object to the special committee's request for Judge Newman's medical records concerning a myocardial infarction and stent placements, both of which allegedly occurred in 2021, and a fainting episode that allegedly occurred on May 3, 2022. We are at a loss as to how such records may be relevant to any determination of Judge Newman's physical, much less mental, health. Exercising judicial functions does not require much physical exertion, and there are judges who continue to serve even with severe physical limitations.[3]  It is therefore hard to understand how any records of an alleged myocardial infarction could shed any light on Judge Newman's fitness to continue her work as a federal judge.

Much the same can be said about the special committee's request for Judge Newman's medical records related to a fainting episode that allegedly occurred on May 3, 2022. Fainting episodes are not uncommon. "Syncope [*i.e.*, fainting] is a common medical problem, with a frequency between 15% and 39%." Rose M. F. L. da Silva, *Syncope: Epidemiology, Etiology, and Prognosis*, 5 Frontiers in Physiology 1 (2014). A full *50%* of women over the age of 80 experience a syncopal episode. *See* Rose Anne Kenny, *et al.*, *Epidemiology of Syncope/Collapse in Younger and Older Western Patient Populations*, 55 Progress in Cardiovascular Diseases 357 (2013).  Given how often syncopal episodes occur in the general

court. *See McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001) ("On cross motions for summary judgment, the district court agreed with Judge McBryde's First Amendment argument but rejected the rest. Only Judge McBryde appealed….") (internal citation omitted).

[2] Indeed, the District Court concluded that once disciplinary proceedings had run their course, even the protection of witness identity was not a sufficiently weighty interest to justify prior restraint. *See* 83 F. Supp. 2d 177-78. To the extent that protection of witness identities while an investigation is pending constitutes a legitimate state interest, that concern is satisfied by Judge Newman's consent to withholding identities of the witnesses from any public disclosure of information.

[3] For example, Judge Ronald M. Gould of the United States Court of Appeals for the Ninth Circuit has been diagnosed with multiple sclerosis—a disease that "has taken away [the] use of his arms and his legs"—requiring him to use a wheelchair as a result. *See* Admin. Office U.S. Courts, *Focus on What You Can Do, Advises Judge with MS*, available at https://bit.ly/3nDMWoQ (2013). Yet, Judge Gould continues to serve with distinction on his Court and remains in active status.

population (and especially in the population of elderly women), any medical records regarding that episode are no more relevant than medical records regarding treatment for a common cold. The special committee has not explained why it believes that these records are relevant to its investigatory and deliberative processes. Given the medical data, it is unlikely to be able to do so.

In short, the special committee seeks to invade Judge Newman's medical privacy without any showing that such an invasion is necessary or even helpful to resolving any of the issues before the special committee. Accordingly, at this time, Judge Newman (without conceding that such records even exist) respectfully declines to provide the requested records as they are irrelevant to any legitimate inquiry into her mental or physical abilities.

### III.

We also respectfully object to the special committee's request that Judge Newman submit to neurological and neuropsychological examinations before physicians of the special committee's choosing. Judge Newman recognizes that the Conduct Rules permit the special committee to "request the judge [being investigated] … undergo a medical or psychological examination." Commentary to R. 13(a). However, the rules do not suggest that the special committee is permitted to select the medical provider (much less do so without even seeking the subject judge's input) or set the scope of medical testing and examinations exclusively as it sees fit. To the contrary, the rules contemplate a *cooperative* process, *i.e.,* a process constituting "working or operating *together*" and a "*joint* operation." Webster's Second New International Dictionary at 402 (emphasis added). It is for that reason that the rules suggest that a special committee consider "enter[ing] into an agreement with the subject judge as to the scope and use that may be made of the examination results." Commentary to R. 13(a). The special committee's demand that Judge Newman undergo neurological and neuropsychological examinations of unknown duration and scope with the "use that may be made of the examination results" remaining undefined, all after Judge Newman suggested negotiating the matter pursuant to the rules, indicates not a *cooperative* process, but one where the special committee expects Judge Newman's blind submission to its imperious demands. Respectfully, such a process is not consistent with the Conduct Rules.

Furthermore, the Conduct Rules contemplate that "in the alternative [to the medical examination], the special committee may ask to review existing records, including medical records," *id.*, meaning that a judge being investigated may, as an alternative to being seen by physicians hand-picked by the special committee, instead choose to be seen by another qualified provider and submit those records. Judge Newman reserves this possibility and is willing to discuss it with the special committee provided that the boundaries as to the scope of testing and the use of the test results are established in advance. In other words, Judge Newman is willing to "*cooperate*" with the investigatory process, but she is not willing to simply "*submit*" to demands that are not reasonable in either scope or manner of execution.[4]

---

[4] While we appreciate the special committee's assurances that should Judge Newman agree to undergo the requested neurological and neuropsychological examinations before physicians of the special committee's choosing, the special committee would bear the cost of such exams, we note that these assurances are not necessary. As a federal employee, Judge Newman has access to the best health care

For the above reasons, at this time, Judge Newman respectfully declines to submit to the neurological and neuropsychological examinations before physicians of the special committee's choosing. This decision is without prejudice to a negotiated solution within the parameters outlined above.

IV.

Next, we wish to express our surprise and disappointment at your refusal to request a transfer of this matter to a judicial council of another circuit despite the near-unanimous view of experts in legal ethics that the circumstances warrant such a transfer. Although the May 3, 2023 Order denying the transfer contains several factual inaccuracies, we need not dwell on those here. The important point is that each and every member of the Federal Circuit Judicial Council is expected to be a *witness* in this matter. You may construe this letter as our notice of intent to call you personally, as well as all of your colleagues (including Judge Newman) as witnesses in any hearing held under Rule 14 of the Conduct Rules. *See* R. 15(c) ("At any hearing held under Rule 14, the subject judge has the right to present evidence, to compel the attendance of witnesses, and to compel the production of documents.").

In light of the fact that each and every member of the Judicial Council is expected to be a *witness* in this process, it is difficult to understand how these individuals would not be disqualified from serving as *adjudicators* in the same process. Indeed, federal law requires judges to disqualify themselves whenever they have "personal knowledge of disputed evidentiary facts concerning the proceeding." Judge Newman's ability to complete her work, her interpersonal behavior vis-à-vis her colleagues, her comments during deliberation over cases, etc., are all "disputed evidentiary facts" over which members of the Federal Circuit Judicial Council have "personal knowledge." In this situation, disqualification appears to be mandatory for each and every member of the Judicial Council. Commentary to Rule 26 of the Conduct Rules in turn states that "transfers may be appropriate … in the case of a serious complaint where there are multiple disqualifications among the original judicial council." Given that the entire Federal Circuit Judicial Council seems obligated to recuse, transfer appears to be the only appropriate option, and the only one consistent with constitutional due process requirements.

We also note that the special committee's and Judicial Council's invitations to raise the question of transfer anew once Judge Newman complies with the special committee's request to provide medical information and undergo neurological and neuropsychological examinations before physicians of the special committee's choosing, fails to understand not only the purpose, but also the effect of the transfer. Commentary to Rule 26 states that once a transfer is ordered, "the transferee judicial council shall determine the proper stage at which to begin consideration of the complaint— for example, reference to the transferee chief judge, appointment of a special committee, etc." In other words, once the transfer is made, the transferee council is not bound by any evidence, reports, or decisions made by the transferor council. This means that a late transfer will simply delay the resolution of the matter (as Judge Newman reserves the right to request that the transferee council restart the entire process) without any added benefit to either Judge Newman, the Court, or the public.

---

and health insurance coverage and therefore can meet any financial obligations associated with the required testing.

We therefore strongly urge you and the Judicial Council as a whole to reconsider the denial of our request that you invite the Chief Justice of the United States to transfer this matter to the judicial council of another circuit.

V.

Finally, we note that neither you nor the special committee nor the Judicial Council responded to our request to immediately restore Judge Newman to her full role as an active member of the Court, including assigning her to panels to hear cases and providing her with the same administrative support as other judges of the Court—support to which she is statutorily entitled. As we explained in our letter of April 21, 2023, an action "preclud[ing] Circuit Judge Newman from being assigned new cases prior to the adjudication of your 'identified complaint' [lacks] any legal authority or basis…." This remains as true today as it was three weeks ago. We therefore once again respectfully urge you and the Judicial Council to cease interfering with Judge Newman's exercise of her constitutional office at least until such time as the current proceedings against her are concluded.

CONCLUSION

We wish to reiterate that Circuit Judge Pauline Newman, whose unblemished and illustrious service to the American public as a Circuit Judge of the United States Court of Appeals for the Federal Circuit is now in its 40th year, stands ready to cooperatively resolve her colleagues' concerns. However, in doing so, she does not intend to surrender her constitutional and statutory rights, or the office to which she was unanimously confirmed by the United States Senate. It is our sincere hope that the Judicial Council of the Federal Circuit is also willing to resolve this matter in a cooperative manner and consistent with the Constitution and laws of the United States.

Sincerely,

/s/ *Gregory Dolin, M.D.*

Senior Litigation Counsel

# Exhibit S

New Civil Liberties Alliance

May 20, 2023

The Honorable Kimberly A. Moore
Chief Circuit Judge
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

VIA EMAIL

Re: In re Complaint No. 23-90015 (Complaint Against Circuit Judge Pauline Newman)

Dear Chief Judge Moore:

I am in receipt of the special committee's orders of May 16, 2023. One of the orders once again requested that Judge Newman agree to medical evaluations and provide medical records for the committee's review. The order set a deadline of May 23, 2023 at 9:00am to respond to the request. This letter is to request an extension of time until June 8, 2023.

The reasons for the request are as follows. On May 16th, 2023, I travelled out of the country to Israel to attend a traditional Jewish baby-naming ceremony for my newborn niece. (Indeed, I received the special committee's orders while already at the airport). I am not scheduled to return to Washington, D.C. until June 1, 2023. While in Israel, I am scheduled to attend a variety of family functions, in addition to attempting to spend the time with my new niece. Accordingly, my ability to dedicate significant amount of time to this or other legal matters will be quite limited. Furthermore, given the time difference between Israel and Washington, D.C., my ability to effectively communicate with my client is also impeded. Finally, I have an immovable deadline of May 31, 2023 to submit grades for over 100 students who were enrolled in my Spring 2023 courses at the University of Baltimore.

Since the initial order provided Judge Newman one week to respond to the requests, I am similarly asking for one week from the time of my return to provide an appropriate response. In light of the above, I respectfully request the aforementioned extension of time.

Sincerely,

/s/ *Gregory Dolin, M.D.*

Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE

# Exhibit T

# ⚝ New Civil Liberties Alliance

May 25, 2023

The Honorable the Members of the Special Committee of the
Judicial Council for the Federal Circuit
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439
**VIA EMAIL**

*Re: In re Complaint No. 23-90015 (Complaint Against Circuit Judge Pauline Newman)*

Your Honors:

      This letter responds to the special committee's orders of May 16, 2023, which requested that Judge Pauline Newman agree 1) to medical evaluations by two physicians of the committee's choosing, 2) provide medical records for the committee's review (via a physician chosen by the committee), and 3) make herself available for a video-taped interview with the committee. After denying our request for an extension of time, the committee set the deadline to respond to these requests on May 26, 2023 at 9:00am.[1] The May 16 orders also once again denied our reasonable request to transfer this matter to another circuit's judicial council, and they again completely ignored our request that the Court cease unlawfully barring Judge Newman from hearing new cases before this investigation has concluded.

      As we have written previously, the process contemplated by the Rules for Judicial Conduct and Judicial Disability Proceedings ("Conduct Rules") is a cooperative one, *i.e.*, characterized by *all* parties to the process "working or operating *together*." Webster's Second New International Dictionary at 402 (emphasis added). But the process thus far has been anything but cooperative. Instead—and this cannot be emphasized enough—the committee, and/or the Judicial Council of the Federal Circuit ("Judicial Council") has acted *unlawfully* by removing Judge Newman from hearing cases even before the investigation began in earnest. This ongoing action violates Judge Newman's constitutional duty and rights under Article III and the Due Process Clause of the Constitution, her statutory rights under the Judicial Conduct and Disability Act of 1980, 28 U.S.C. § 351, *et seq.*, and the Conduct Rules.

---

[1] We note that May 26, 2023 falls on the Jewish major festival of Shavuot ("Feast of Weeks"). The committee was apprised that Judge Newman's lead counsel is spending this time in Israel with family in order to attend to family and religious obligations. It is particularly disappointing that the committee refused to take these matters into account. In order to avoid a conflict with counsel's religious obligations, we are filing this letter ahead of the deadline, even though doing so has further limited our time to properly consult with Judge Newman and provide a fulsome response to the committee.

But removing her from hearing cases also tramples on the rights of every Federal Circuit litigant with an appeal heard during the time of Judge Newman's unlawful absence from the pool. Such litigants have the right to have their cases heard by a fair draw from the full complement of judges confirmed and appointed to hold judicial office. In all likelihood, some number of disappointed litigants will see fit to raise this objection, as they will stand on their right to have an equal chance of having Circuit Judge Newman sit to hear their cases. The Court should reseat Judge Newman immediately to avert this impending problem that the Court's actions to date have created for itself.

The committee and/or Judicial Council not only maintained this errant, prejudicial course but failed to even acknowledge our repeated attempts to have its errors corrected. Their refusal even to acknowledge the glaring problems counsel has identified would lead any neutral observer to question the committee's and/or the Judicial Council's impartiality in this matter. It is one thing to commit honest errors. It is quite another to persist in them and deliberately disregard repeated attempts to have them corrected. It thus appears that the committee is not interested in "working or operating together" with Judge Newman, but instead insists that Judge Newman merely submit to its unlawful demands.[2]

Additionally, the growing list of demands on Judge Newman is premised in large part on statements that the committee already collected from the employees of the Federal Circuit. These statements were provided to Chief Judge Moore by, *inter alia*, individuals whose very livelihood depends on the Chief Judge (given that the Chief Judge has the power to hire, fire, and reassign employees of the Court, as amply demonstrated by her actions reassigning the employees from Judge Newman's own chambers to other positions). Despite the committee's professed concern that Judge Newman might "intimidate" witnesses by the mere fact that she is a United States Circuit Judge, the same concern does not seem to impress the committee when it comes to interviewing witnesses who work under Chief Judge Moore's authority and supervision. This approach further indicates that the committee is subjecting Judge Newman to double standards and is not taking a cooperative and disinterested approach to resolving this matter.

The substance of the demands themselves, as we have pointed out before, is also highly problematic. The committee has demanded that Judge Newman turn over medical records to, and submit to medical and psychological testing by, physicians whose credentials have not been subject to any examination and whose level of expertise generally or in matters such as the complaint before the committee is entirely unknown to Judge Newman or her attorneys. Neither Judge Newman nor her attorneys know on what basis the committee chose a particular medical consultant and on what basis that particular consultant recommended the physicians who are slated to review Judge Newman's medical records and examine Judge Newman. The expertise of these physicians has not been subject to *voir dire* nor to the analysis required by *Daubert v. Merrell Dow Pharma.*, 509 U.S. 579 (1993). Yet, the committee has rejected, out of hand, the suggestion that the choice of physicians be made jointly by Judge Newman and members of the committee.[3]

---

[2] The committee's denial of an entirely reasonable extension request is further evidence of the committee's lack of interest in taking a *cooperative* approach to this matter.

[3] The committee's citation to *In re Complaint of Judicial Misconduct*, No. 06-13-90009 (Judicial Council of the Sixth Circuit Feb. 22, 2016) is entirely misplaced. In that case, when faced with a lawsuit, the Judicial Council for the Sixth Circuit *vacated* the request for a psychological evaluation by an expert of the judicial council's choosing

Next, the committee's request that Judge Newman appear for a video-taped interview is in significant tension with the assurances the committee made in its May 3, 2023 Order that it is intimately familiar with Judge Newman, her work, her behavior, her personality, and any changes in these traits. If the committee is indeed already familiar with these facts, it is hard to understand what additional information it expects to glean from the requested video-taped interview.

Unfortunately, actions taken by this committee against Judge Newman thus far, and the committee's conduct towards Judge Newman over the past two months, have forced Judge Newman to reach a regrettable decision: With the greatest respect for the committee, she cannot in good conscience meet its requests. To assent to the committee's demands while it is unlawfully keeping her from hearing cases would sacrifice the legal principles to which Judge Newman has devoted her entire life and career. Judge Newman has not sat on the federal bench for over thirty-nine years just to sit idly by while due process of law gets thrown to the wind in her own case and unilateral actions are taken in defiance of Congress's unique role in impeaching judges.

Nevertheless, and despite all of the above objections, Judge Newman *does* wish to engage in a truly cooperative process to resolve any doubts or concerns about her physical and mental ability to continue to hold judicial office. To that end, Judge Newman is entirely willing to undergo necessary testing, provide necessary records, and meet with a special committee *provided that she is immediately restored to her rights and duties as a judge and further provided that this matter is promptly transferred to a judicial council of another circuit*, which is unmarred by the prior unlawful decisions and which is willing to "work[] or operat[e] *together*" with Judge Newman, including on selecting medical providers and setting the appropriate parameters of any examination. Judge Newman commits to making herself available for appropriate appointments at the earliest opportunity in these circumstances.[4]

Regrettable as it may be, should the committee persist in its unlawful actions and demands, Judge Newman will be forced to seek her remedies in federal district court.[5] Even at this late hour, it is our sincere hope that such a development can yet be avoided. The power to do so, however, rests entirely with the special committee and the Judicial Council of the Federal Circuit.[6]

Sincerely,

/s/ *Gregory Dolin, M.D.*

Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE

---

and vacated all sanctions associated with a refusal to submit to such an unlawful request. We are confident that, if the present matter proceeds to adjudication in the District Court, the outcome will be much the same.
[4] This commitment is made in the spirit of cooperation, but without waiving any rights that Judge Newman may have under the Constitution and the laws of the United States.
[5] *See Newman v. Moore, et al.*, No. 23-cv-01334 (D.D.C. 2023).
[6] Pursuant to Rule 23(b)(7) of the Conduct Rules Judge Newman consents to and requests a public release of this letter.

# Exhibit U

≥⅛≤ New Civil Liberties Alliance

May 16, 2023

The Honorable William B. Traxler
Chair, Committee on Judicial Conduct and Disability
Judicial Conference of the United States
Administrative Office of the United States Courts
One Columbus Circle, NE
Washington, DC 20544
VIA EMAIL

*Re: In re Complaint No. 23-90015 (Pauline Newman) (Fed. Cir. 2023)*

Dear Judge Traxler:

I write to you in your capacity as Chairman of the Committee on Judicial Conduct and Disability in order to seek the Committee's review of the recent orders entered by the Judicial Council of the Federal Circuit ("Judicial Council") respecting Circuit Judge Pauline Newman's continuation in office.

As you may have learned from press reports, on March 24, 2023, the Hon. Kimberly A. Moore, Chief Judge of the United States Court of Appeals for the Federal Circuit, "identified a complaint" against Judge Newman, as contemplated by Rule 5 of the Rules for Judicial Conduct and Judicial Disability Proceedings ("Conduct Rules"). I, along with other attorneys at the New Civil Liberties Alliance ("NCLA"), represent Judge Newman in these proceedings and related matters.

In an order signed on that date, Chief Judge Moore concluded that there exists "probable cause to believe that Judge Newman 'has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts' and/or 'is unable to discharge all the duties of office by reason of mental or physical disability.'" Accordingly, Chief Judge Moore empaneled a "special committee" to investigate the allegations into Judge Newman, as required by Rule 11(f) of the Conduct Rules. The purpose of this letter is not to challenge that process, which is ongoing, as there will be a suitable time and place to do so. The purpose of this letter is to seek Committee on Judicial Conduct and Disability's review of the Judicial Council's interim order suspending Judge Newman from being assigned any cases while the complaint is being investigated and adjudicated.

Specifically, on April 5, 2023, Chief Judge Moore sent an email to Circuit Judge Newman (copying all other members of the Court) stating that "the *judicial council* has voted unanimously not to assign [Judge Newman] to sit on any new cases *pending the results of the investigation*" and that Judge

Newman "will not be assigned any new cases until these proceedings are resolved."  Email from Chief Judge Moore to Judge Newman (April 5, 2023, 4:05pm) (emphasis added).  This email is reproduced in and incorporated into Chief Judge Moore's April 6, 2023 Order which expanded the scope of investigation into Judge Newman.[1]

NCLA and Judge Newman recognize that under the Judicial Disability Act of 1980 *upon receipt of a report from the special committee*, the judicial council may "order[] that, on a *temporary basis for a time certain*, no further cases be assigned to the judge whose conduct is the subject of a complaint."  28 U.S.C. § 354(a)(2)(A)(i) (emphasis added).  *See also* R. 20(b)(1)(D)(iii).  But that process was not followed here.  Neither NCLA nor Judge Newman is aware of any authority that permits a Chief Judge acting alone, or even the judicial council acting as a collegial body, prior to any findings of misconduct or disability, to order that a fellow Article III judge be indefinitely barred from exercising the functions of her office.  "Sentence first, verdict afterwards" is the antithesis to the way American courts must and do operate.

To the extent that the Judicial Council's vote referenced in Chief Judge Moore's April 5 email can be construed as a sanction under Rule 20(b)(1)(D)(iii), then the Conduct Rules permit Judge Newman to "petition the Committee [on Judicial Conduct and Disability] for review of such an order.  R. 21(b)(1)(A).  We do not concede that the Judicial Council's vote can be construed as meeting the requirements of Rule 20(b)(1)(D)(iii), if for no other reason than the fact that it took place *before* the "receipt of a[ny] report from the special committee."  But out of an abundance of caution, and to protect Judge Newman's rights, we are now petitioning for a review, by the Committee on Judicial Conduct and Disability, of the above-referenced vote by the Judicial Council.

We have previously attempted to resolve this issue directly with Chief Judge Moore by letters of April 21, 2023 and May 10, 2023,[2] but have received no response.  We therefore turn to the Committee on Judicial Conduct and Disability for expeditious resolution of this matter.  Judge Newman must be restored to her full rights and obligations as an active member of the Federal Circuit Court of Appeals—including being assigned to panels to hear cases—pending the completion of an investigation into Chief Judge Moore's identified complaint and its adjudication.  We look forward to your reply and stand ready to provide such additional relevant documents that you or the Committee on Judicial Conduct and Disability may request.

Sincerely,

/s/ *Gregory Dolin, M.D.*
Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE

---

[1] A copy of the order is attached to this letter.

[2] Copies of the letters to Chief Judge Moore are attached to this letter.

# Exhibit V



---------- Forwarded message ---------
From: **Judge Pauline Newman** ████████████████████
Date: Thu, Apr 20, 2023 at 11:53 AM
Subject: Re: Staff
To: Chief Judge Kimberly A. Moore ████████████████
Cc: Adel Pappas ██████████████  All Judges ████████████████

This deprivation of staff is not acceptable. I never offered my law clerks to perform secretatial services instead of law clerk services.
Sent from my iPhone

On Apr 20, 2023, at 11:06 AM, Chief Judge Kimberly A. Moore ████████████████ wrote:

Judge Newman,

Effective April 19, 2023, two of your staff members (a law clerk and a paralegal) are no longer members of your chambers. The Judicial Council has unanimously voted not to permit hiring to fill the positions recently vacated by your two staff members during the pendency of the Judicial Conduct and Disability proceedings. As a result of these departures, you retain a staff of three which includes a permanent long term clerk and two term clerks. Your current workload is less than that of our senior judges and you are not hearing new cases during the resolution of the investigation. With three clerks you will have a larger staff than our senior judges with a smaller workload than they have. It was reported to the court that you asked your clerks if they were capable to performing all of your departing paralegal's job functions and they answered in the affirmative. Moreover, your departing paralegal has prepared a transition memo for your chambers and has agreed to continue to be available to your chambers to assist with any transition related issues or questions.

Kimberly Moore (on behalf of the unanimous judicial council)

1

The Honorable Kimberly A. Moore

Chief Judge

U.S. Court of Appeals for the Federal Circuit

# Exhibit W

# UNITED STATES COURT OF APPEALS

## FOR THE

## FEDERAL CIRCUIT



# CLERICAL PROCEDURES

*Incorporating all procedures as adopted and amended as of April 7, 2023*

Internal Use Only – Not for Public Distribution

*(Return to Table of Contents)*

CP #3

**Date:**       April 7, 2023

**Subject:**    AUTHORING PANEL OPINIONS – CIRCULATION OF ITEMS FOR
                VOTE – USE OF VOTE SHEETS – ON OPINIONS AND ORDERS;
                DEADLINES AND NONASSIGNMENT POLICY

1.     In all cases other than those disposed of under Rule 36, the authoring judge shall circulate, as soon as possible after conference, a draft opinion and one vote sheet in the format posted on the court's intranet.

2.     The circulating chambers will include the date of circulation on the upper right corner of the opinion or order. The date appearing on a revised opinion will be that on which the revised opinion is circulated.

3.     The authoring chambers completes the upper portion of the vote sheet by placing checks and information at the appropriate spaces.  The initials of the authoring judge are entered after "FROM."  Inapplicable words in parentheses are lined out.  One check (√) should be placed before the initials of each addressee and before those of the authoring judge. The authoring judge may insert comments, identified with that judge's initials, under "COMMENTS," drawing a line across the page immediately below such comments.

4.     On receipt of a vote sheet, the voting judge completes the lower "vote" portion of the vote sheet, entering a check (√) in the appropriate box(es).  Comments may be added by the voting judge, identifying himself or herself with initial preceding the comments, under "COMMENTS" and on additional sheets if necessary.  The voting judge signs or initials after "voting judge" and enters the date of the vote.

5.     Voting should be given priority in each chambers over other matters as a proven means of facilitating the work of the court.  Judges shall vote on circulating precedential and nonprecedential opinions within five working days of receipt, or explain to the authoring judge why more time is needed.  Within 30 days of circulation of an opinion to the panel, any dissent or separate opinion should be circulated.  Authoring judges should consult with panel members to facilitate prompt voting and disposition of the case.

Internal Use Only – Not for Public Distribution

CP #3

concurs in the result of an authoring judge's opinion, and another judge dissents, the panel will continue its efforts to produce an opinion in which at least a panel majority can join. Any transfer of authorship will be reported to the Chief Judge.

11.    When a judge elects to change a vote, a notice that the earlier vote is withdrawn will be entered under "COMMENTS" on a new vote sheet.

12.    When all votes are in, and the precedential opinion/order or nonprecedential opinion is ready for issuance, the authoring chambers sends the opinion or order in Word® format, with a transmittal sheet containing a statement of the votes, to the Clerk's Office via the court's opinion/order processing system in accordance with paragraphs 1 and 3(d) of CP # 4. The authoring chambers bears responsibility for assuring that the opinion or order has been approved by the panel. The authoring judge's chambers is responsible for assuring that all opinions sent to the Clerk's Office are in full compliance with the formatting requirements of CP#5.

13.    Vote sheet forms will be available electronically on the court's intranet.

14.    Vote sheets are not required for Rule 36 dispositions.

15.    In an effort to reduce the delay between the submission and decision of cases, the court has adopted a nonassignment measure to ensure that judges who have a number of aged cases in which drafts have not been circulated will make circulating drafts in those cases a first priority.

Any judge who has (1) four or more opinion assignments over six months old, or (2) two or more opinion assignments over a year old (i.e., in which a draft has not been circulated to the panel for more than six months in four or more cases, or in more than one year in two or more cases after submission) will not be assigned to hear additional cases until the judge has reduced the number of such opinion assignments below (1) four over six months, or (2) two over a year.

Internal Use Only – Not for Public Distribution

*(Return to Table of Contents)*

CP #3

The rule applies to all cases barring exceptional circumstances.[*]

[Link to Vote Sheet]

---

[*]For example, a panel may decide to hold or stay a case pending en banc or Supreme Court disposition of another matter.  In such circumstances, the requirements of CP # 3 paragraph 15 do not apply.

Internal Use Only – Not for Public Distribution

# Exhibit X



PRODUCT    LAW FIRMS    COMPANIES    ABOUT US    RESOURCES    BLOG    CONTACT    LOGIN

# Blog

## Legal Analytics Sheds Light on Recent Judicial Conflict in the Federal Circuit

By Elaine Chow  |  May 3rd, 2023  |  Analytics Articles, Legal Trends

On March 24, 2023, Kimberly Moore, chief judge of the Court of Appeals for the Federal Circuit, issued an order identifying a complaint under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351–364, against Pauline Newman, who has been a Federal Circuit judge since 1984. In the order, Judge Moore stated that she had found probable cause to believe that Judge Newman "has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts" and/or "is unable to discharge all the duties of office by reason of mental or physical disability." According to Chief Judge Moore, "[j]udges and staff have reported extensive delays in the processing and resolution of cases" by Judge Newman despite a reduction in her workload in 2021 and 2022. A second order issued by Chief Judge Moore on April 13, 2023 concluded that "there is sufficient cause to believe that Judge Newman has failed to cooperate constituting additional misconduct."

Lex Machina examined Federal Circuit data for the three-year period of January 1, 2020 to December 31, 2022, focusing on the 10 judges who were on active status during the entire time period. If a judge was a panelist on an appeal, then that

### SUBSCRIBE TO BLOG

Stay up to date on Legal Ana

Professional Email

Subscribe Now

### RECENT POSTS

> Webcast on the 2023 Insurance Litigation Report

> Lex Machina Releases its 2023 Insurance Litigation Report

> 3 Common Pitfalls Lawyers Face Without Legal Analytics

> Webcast: Launching Lex Machina's Expanded Real Property Litigation Module

CATEGORIES

❯ Analytics Articles

❯ COVID-19

❯ Legal Trends

❯ Products

❯ Reports

case and its outcome are attributed to that judge; as a result, a case can be attributed to more than one judge. These panels may also include Judges Cunningham (appointed 2021) and Stark (appointed 2022), Judge O'Malley, who retired in March 2022, Judge Wallach, who went on senior status in May 2021, and Judges Bryson, Clevenger, Linn, Mayer, Plager, Schall, who are on senior status.

According to Lex Machina's data, Judge Newman has been a panelist on the fewest number of cases terminated during the time period at 436 cases, and terminated cases on which she was a panelist have the longest median time to termination at 424 days. Median time to termination means that half of the cases terminated in less than the median number of days, and half of the cases terminated in more than the median number of days.

However, among all active judges, none of the judges who were panelists on appeals cases that were terminated during the time period had a median time to termination of less than a year.

| Judge | Number of Appeals Cases Terminated (1/1/20 – 12/31/22) | Median Time to Termination in Days (1/1/20 – 12/31/22) |
|---|---|---|
| Chen | 520 | 388 |
| Dyk | 557 | 400 |
| Hughes | 496 | 415 |
| Lourie | 580 | 405 |
| Moore | 490 | 390 |
| Newman | 436 | 424 |
| Probst | 584 | 407 |
| Reyna | 577 | 422 |
| Stoll | 510 | 420 |

| Taranto | 583 | 401 |

In fact, for these 10 active judges, the median time to termination during the time period was 404 days for 2,248 appeals cases. As shown in the box plot below, the maximum number of days to termination for appeals cases during the time period, excluding outliers, was 827 days. A more detailed explanation of box plots and outliers as used in Lex Machina can be found here.

When Judge Newman was not a panelist, the median time to termination during the time period was 400 days for 1,812 appeals cases. The box plot below shows that the maximum number of days to termination for appeals cases during the time period, excluding outliers, was 790 days.

When the data is broken down by year, Judge Newman has the second fewest number of cases terminated in 2020 after

Judge Hughes, and the fewest number of cases terminated in 2021 and 2022, although in 2022 she had 145 terminated cases compared to Chief Judge Moore's 146 cases. For cases in which Judge Newman was a panelist, the median time to termination was the highest among her colleagues in 2022 at 441 days. Judge Prost had the second longest median time to termination at 429 days. In 2020 and 2021, Judge Newman did not have the longest median time to termination compared to her colleagues.

Lex Machina's data indicates that even in individual years during the time period, the median time to termination for the active federal circuit judges is still more than a year (except for Chief Judge Moore, who in 2021 had a median time to termination of 364 days).

Analyzing the data can provide a more detailed, nuanced, and clear understanding of judicial performance. Lex Machina will continue to monitor the judge analytics of the parties involved as the inter-judicial conflict in the Federal Circuit continues to develop.

## Share This Story!        

Product:
Legal Analytics
Platform
Quick Tools
How We're Different
Federal Practice Areas
State Courts
All Areas of Coverage

Business Type:
Law Firms
Companies
Consultants
Public Interest

About Us
News & Events
Resource Library
Careers
Blog

Lex Machina
1010 Doyle Street, Suite 200
Menlo Park, CA 94025
Phone: 1-650-390-9500

REQUEST A LIVE DEMO

Lex Machina is a LexisNexis Company | Privacy Policy | Cookie Policy | Terms of Use | © 2015-2022



We use cookies to help provide and enhance our service and tailor content and advertisements. By continuing or closing this message you agree to the use of cookies.

Disable them/read more

CLOSE

# Exhibit Y



**NEUROLOGY**
at The GW Medical Faculty Associates

2150 Pennsylvania Avenue, NW, 9th Floor
Washington, DC 20037
phone: 202.741.2700  fax: 202.741.2721

Ms. Pauline Newman is a 96 yo United States Circuit Judge of the US court of Appeals who is here to evaluate her mental status.

She is currently under investigation by her Court for "medical impairments" including having had a heart attack and 2 stents -which she denies having- and being "intellectually compromised" and no longer able to function in her capacity as a federal judge. As a consequence she has been denied access to new cases.

Judge Newman denies having cognitive impairment. Her opinions in the past year have been quantitatively analyzed by Law Professor Andrew Michaels at the University of Houston Law School and found to be exemplary. He did not perceive "a significant drop in the quality or thoroughness of her opinions" over the previous decade.

She believes that she is being unfairly treated by her judicial colleagues. Much of this controversy has been depicted in Washington Post accounts over her being prevented from continuing to hear and write opinions on current cases.

Past medical Hx: ███████████████████████████████████████

She is a graduate of Vassar College, received a Master of Arts from Columbia University, a Doctor of Philosophy in Chemistry from Yale University and law degree from NY University School of Law. There is no family hx for memory disorders or dementia.

███████████████████████████ R wrist is in a cast. She is unable to write.

Review of systems is otherwise not contributory.

On examination,
Her speech is fluid, with normal content and articulation. She describes her medical history and background with great detail and eloquence.

A partial MoCA examination is performed as she is unable to write and therefore cannot follow trail or draw a cube (each worth one point on the 30 point test).  She scores 24/28 failing to remember 4 of 5 words after several minutes. All other aspects of the test were precise and correct.

Her head is normocephalic.
Neck is supple.
Cranial nerves,
Funduscopic examination discloses bilateral cataracts. EOMi. PERRL.
Sensation is intact. Her face is symmetrical with normal smile and eye closure.
Hearing normal to voice.
Tongue protrudes in midline.

Sensory and Motor exam,
Sensation normal over both hands.
Her arm strength is not tested.
Her gait is normal with normal stride, turn and arm swing. Romberg is negative.
Reflexes are 2+ at the knees and ankles.

Impression,
Judge Newman has a slight limitation in immediate memory as reflected in her MoCA evaluation. Her cognition is otherwise completely normal. Her speech is normal and her ability to provide her vocational and medical history is precise and eloquent.

As she has a cardiac pacemaker and therefore she cannot undergo a Brain MRI with NeuroQuant which could have been used to measure volumes of key brain regions important for memory, she could have a more detailed neuropsychological evaluation as part of her neurological assessment..

My findings would support her having cognitive function sufficient to continue her participation in her court's proceedings.

Ted L. Rothstein MD
Professor of Neurology
George Washington University
June 21, 2023