# Exhibit 2

87th Congress, 1st Session - - - - - House Document No. 201

# REPORT ON THE POWERS AND RESPONSIBILITIES OF THE JUDICIAL COUNCILS

A REPORT

OF THE

JUDICIAL CONFERENCE OF THE UNITED STATES

WITH A

FOREWORD BY THE CHAIRMAN

OF THE

COMMITTEE ON THE JUDICIARY
HOUSE OF REPRESENTATIVES

PRESENTED BY MR. CELLER



July 5, 1961—Ordered to be printed

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1961

71748

**H. Res. 250**

*In the House of Representatives, U.S.,*
*June 29, 1961.*

*Resolved*, That the report entitled "Report on the Powers and Responsibilities of the Judicial Councils", by the Judicial Conference of the United States, March 13, 14, 1961, together with a foreword by Honorable Emanuel Celler, chairman of the Committee on the Judiciary, be printed as a House document.

Attest:

RALPH R. ROBERTS, *Clerk.*

II

# CONTENTS

|   | Page |
|---|---|
| Letter of transmittal | IV |
| Foreword | V |
| Introduction | 1 |
| Background of the statute | 1 |
| Legislative history of the statute | 4 |
| Literature on the statute | 6 |
| Recognition of the scope of the statute made in its application and use | 7 |
| Other statutes indicative of the intended importance of judicial councils | 7 |
| Enforcement powers of the judicial councils | 8 |
| Conclusions | 8 |
| Suggestions and comments | 9 |

# LETTER OF TRANSMITTAL

Supreme Court of the United States,
*Washington, D.C., March 24, 1961.*

Hon. Sam Rayburn,
*Speaker of the House of Representatives,*
*The Capitol, Washington, D.C.*

Dear Mr. Speaker: Pursuant to the provisions of title 28, United States Code, section 331, I am transmitting herewith a report on the operation of the judicial councils of the circuits, provided for in title 28, United States Code, section 332, adopted by the Judicial Conference of the United States at a meeting held at Washington, D.C., March 13–14, 1961.

Respectfully,

Earl Warren,
*Chief Justice of the United States.*

IV

# FOREWORD

### By Hon. Emanuel Celler, Member of Congress

It is gratifying to receive from the Chief Justice this report of the Judicial Conference of the United States on the powers and responsibilities of judicial councils. It is important and urgent that the judges of the United States rid themselves of any lingering doubts on this subject and that the judicial councils in all circuits discharge their broad administrative functions as contemplated and authorized by the Congress.

The report of the Judicial Conference, which follows, accurately sets forth the legislative history of the laws enacted in 1939 which created the judicial councils of the circuits and the Administrative Office of the U.S. Courts, with all-inclusive responsibility for court management and judicial administration. Since I, at the time, was a member of the Committee on the Judiciary of the House, I know it was the intention of the Congress to charge the judicial councils of the circuits with the responsibility for doing all and whatever was necessary of an administrative character to maintain efficiency and public confidence in the administration of justice.

The Committee on the Judiciary, of which I am privileged to serve as chairman, has had in the past good reason to question whether the judicial councils have exercised the broad powers Congress conferred upon them by the enactment of section 332 of title 28 of the United States Code and whether the councils were as effective as they might be and were intended to be in maintaining the high standards desirable in judicial administration.

In past years many problems have been called to the attention of the Committee on the Judiciary which, in my judgment, should have been settled by the judicial council of the circuit and need never have been brought to the attention of the Congress if the judicial council had met the responsibility and exercised the powers conferred upon it by the Congress. I will mention only one example.

The Congress is not infrequently importuned to create additional judicial districts and divisions. Most of these demands originate from inadequate judicial service in the localities concerned. Nearly all of them could and should be remedied by action of the judicial council of the circuit in arranging and planning judicial assignments to provide an equitable distribution of the judgepower of the circuit.

The language of title 28, United States Code, section 332 was recommended to the Congress in 1939 by the judges themselves and was deliberately worded in broad terms in order to confer broad responsibility and authority on the judicial councils. It was the considered judgment of the Congress that the judicial councils were by their very nature the proper agents for supervising management and administration of the Federal courts. The councils are close

▼

**VI**                          **FOREWORD**

to all the courts of the circuit and know their needs better than anyone else and, by placing responsibility and authority in the councils of the circuits, administrative power in the judicial branch was decentralized, as it ought to be, and in each circuit kept in the hands of judges of the circuit.

There is an urgent need for the judicial councils in all circuits to recognize their full responsibilities and to perform more effectively the function originally intended by the Congress. This report by the Judicial Conference of the United States concludes that the present statute is adequate. There is, therefore, every reason to expect that in the future the judiciary will undertake to do their own housekeeping and not leave these responsibilities to the Congress or to some other agency to be authorized by the Congress.

I am convinced that if the recommendations in this report of the Judicial Conference are fully implemented and carried out by the judicial councils of the circuits there will result a wholesome and general improvement in the administration of the Federal judicial system, which is as much desired by the Congress as by the judiciary.

EMANUEL CELLER,
*Chairman, Committee on the Judiciary.*

# REPORT ON THE RESPONSIBILITIES AND POWERS OF THE JUDICIAL COUNCILS

Adopted by the Judicial Conference of the United States at its spring session held March 13–14, 1961

## Introduction

The Judicial Conference of the United States, at its September 1960 session, directed that a study and report be made on the responsibilities and powers of the judicial councils of the circuits, under title 28, United States Code, section 332, in the light of the background, history, expressions, experience, and other data existing as to the statute.

A special committee was appointed for this purpose—consisting of Chief Judge Harvey M. Johnsen of the Eighth Circuit, chairman; Chief Judge J. Edward Lumbard of the Second Circuit; Circuit Judge Richard T. Rives of the Fifth Circuit; Chief Judge Royce H. Savage of the northern district of Oklahoma; and Chief Judge Roszel C. Thomsen of the district of Maryland—and a report of its studies and conclusions was duly filed.

The Judicial Conference, after a thorough consideration of the report, which resulted in certain appropriate modifications, adopted the report at its session on March 13–14, 1961, and directed that it be published.

## I. Background of the Statute

Section 332 presently appears as part of chapter 15 in the Judicial Code, which is entitled "Conferences and Councils of Judges." This convenient grouping into a separate chapter of the various provisions existing in the code for judicial conferences and councils, together with the simplification and change engaged in as to some of the original language, which was done by the revision and codification act of 1948, possibly has tended to dim a little the setting and the context in which the provision for judicial councils was initially enacted.

The provision for judicial councils of the circuits came into being as a section of Public Law No. 299, approved August 7, 1939 (53 Stat. 1223), whose enacting clause read:

That the Judicial Code is hereby amended by adding at the end there of a new chapter to be numbered XV and entitled "The Administration of the United States Courts," as follows:

Sections 302 to 305 of this new "Chapter XV—The Administration of the United States Courts" contained the provisions for the establishment, structure, and functions of the present Administrative Office

1

**2**   POWERS AND RESPONSIBILITIES OF THE JUDICIAL COUNCILS

of the U.S. Courts. Section 306 followed, coordinately and relatively, with provision for another instrumentality in the statutory scheme of "The Administration of the United States Courts."

The provisions of section 306, as here pertinent, were:

> To the end that the work of the district courts shall be effectively and expeditiously transacted, it shall be the duty of the senior circuit judge of each circuit [now designated as chief judge] to call at such time and place as he shall designate, but at least twice in each year, a council composed of the circuit judges for such circuit who are hereby designated as a council for that purpose * * *. The senior judge shall submit to the council the quarterly reports of the Director [of the Administrative Office] required to be filed by the provisions of section 304, clause (2), and such action shall be taken thereon by the council as may be necessary. It shall be the duty of the district judges promptly to carry out the directions of the council as to the administration of the business of their respective courts. * * *

In the revision and codification made of the Judicial Code in 1948, this language was shortened; a sentence was added that "The council shall be known as the Judicial Council of the circuit"; the word "directions" was changed to "orders"; and the expression "To the end that the work of the district courts shall be effectively and expeditiously transacted," etc., was rephrased and constituted into a separate paragraph, which is the final paragraph in present title 28, United States Code, section 332, and which reads:

> Each judicial council shall make all necessary orders for the effective and expeditious administration of the business of the courts within the circuit. The district judges shall promptly carry into effect all orders of the judicial council.

The change of the word "directions" to "orders" would seem to have been one of form and emphasis rather than of substance, in view of the edict contained in the original statute that "It shall be the duty of the district judges promptly to carry out the directions of the council as to the administration of the business of their respective courts." Thus, there has occurred no change of substance in the statute since its original enactment, except that, by the substitution made of the expression "the effective and expeditious administration of the business *of the courts within the circuit*" (emphasis supplied), for the previous phrases of "the work of the district courts" and "the administration of the business" of these "respective courts," it can perhaps be argued that the provisions of the section now are as specifically applicable to a court of appeals, under the general term "the courts within its circuit," as to a district court.

The point here, however, is that the background, history, and expression from which the original statute emerged are as significant in relation to the present statute as in their lighting of the purpose and scope of the initial enactment.

The relationship existing under Public Law No. 299 between the creation of the Administrative Office of the U.S. Courts and the establishment of judicial councils of the circuits, as instrumentalities in "The Administration of the United States Courts," has been referred to above. In examining the purpose which the judicial councils thus were designed to serve, it is of fundamental interest to note why and how the provision for them came to be made a part of the statute.

At the time of the September 1938 session of the Judicial Conference, there had been pending in the Congress a measure, known as the Ashurst bill, sponsored by the Attorney General, and having

as its objectives (in the characterization made by the Judicial Conference report) (1) "to give the courts the power of managing their own business affairs [budget, supplies, etc.] and to that extent relieve the Department of Justice of that responsibility," and (2) "to secure an improved supervision of the work of the courts through an organization under judicial control."[1]

Some of the judges throughout the system were in disagreement or doubt as to the desirability of lodging in such an administrative organ the powers provided for in the bill, even though the office was to perform its functions under the control of the judiciary itself. Members of the Supreme Court also were opposed to the measure as it stood, because of their view that the responsibility for the functioning of the Administrative Office and the proper exercising of the powers set up in the bill would fall on that Court and could cast upon the Chief Justice the necessity and burden of becoming involved at local levels in the complaints, problems, and questions which might arise—thus "possibly making the Chief Justice and the Court itself a center of attack."

In the September 1938 conference, Chief Justice Hughes took occasion to discuss these difficulties in relation to the scope and purpose of the bill, which he characterized as extending to—

the discovery of the needs of the courts, not merely from an administrative point of view in its more restricted sense, but discovery of unnecessary delays, of inefficiency and *of all the various matters relating to the work of the judges which may be regarded as important to a more ideal administration of justice in the Federal courts.* [Emphasis supplied.]

He then made the following proposal to the Conference:

Now, my thought has led me to this consideration: I think the difficulty in this present bill lies in an undue centralization * * *. My thought is that there should be a greater attention to local authority and local responsibility. It seems to me that * * * we have in the various circuits foci of Federal action from the judicial standpoint for supervision of the work of the Federal courts.

Instead of centering immediately and directly the whole responsibility for efficiency upon the Chief Justice and the Supreme Court, I think there ought to be a mechanism through which there would be a concentration of responsibility in the various circuits—immediate responsibility for the work of the courts in the circuits, with power and authority to make the supervision all that is necessary to induce competence in the work of all of the judges of the various districts within the circuit.

Now we have had in the States considerable effort in this direction through the appointment of judicial councils. * * * My thought is that in each circuit there should be an organization *which will have direct and immediate responsibility with regard to the judicial work in that circuit.* [Emphasis supplied.]

My suggestion for your consideration is that there should be in each circuit a judicial council. * * *

*      *      *      *      *      *      *

When you come to the supervision of the work of the judges, * * * there you have the great advantage of the supervision of that work by the men who know. The circuit judges know the work of the district judges by their records that they are constantly examining, while the Supreme Court gets only an occasional one. And the circuit judges know the judges personally in their districts; they know their capacities. And if complaints are made, they have immediate resort to the means of ascertaining their validity. That direct supervision can be made very effective, and I think far more so than the more remote supervision, entailing a great deal of labor and circumlocution, imposed upon the Chief Justice.[2]

---

[1] Report of the Judicial Conference, September session, 1938, p. 12.
[2] These quotations, and those which have preceded them, have been extracted from Transcript of the Proceedings of the Judicial Conference, Sept. 30, 1938, pp. 174-192.

**4**  POWERS AND RESPONSIBILITIES OF THE JUDICIAL COUNCILS

The Judicial Conference approved this suggestion of Chief Justice Hughes and made provision for a committee to prepare a legislative measure—

> having in view the incorporation of the provisions of the present bill looking to the transfer of the budget from the Department of Justice to the administration of the courts by some proper means, and likewise embracing a provision looking toward the establishment of judicial councils or some other like method within the several circuits and the District of Columbia *for the control and improvement of the administration of justice therein.*[3]  [Emphasis supplied.]

The committee thus created collaborated with a committee appointed by the Attorney General in the preparation of a bill, which was introduced in the Senate as S. 188, 76th Congress, 1st session, and which, with some minor changes, became Public Law No. 299. It should be noted here, however, that the provisions of the section on judicial councils represented the concept and the product of the members of the Committee of the Conference, under the directions given them as set out above, and that no change whatsoever was made by Congress in the provisions or in the language which the Committee proposed. Congress enacted the section dealing with judicial councils precisely as the committee had formulated it. It thus gave to the judiciary, in exact form and content, what the Committee of the Conference, under the responsibility imposed upon it by the Conference, was convinced, and held out to the committees of the Congress, embodied the responsibility and had the capacity to function as an effective instrumentality in the correlated scheme being enacted, for "The Administration of the United States Courts."

## II. LEGISLATIVE HISTORY OF THE STATUTE

In seeking to gain the acceptance of Congress for the provision for judicial councils, as well as for the provisions of the bill generally, various members of the Committee of the Conference testified before the congressional committees.

Chief Justice Groner of the Court of Appeals for the District of Columbia, who was Chairman of the Conference Committee, spoke of the considerations engaged in at the September 1938 session of the Conference, which had prompted the appointment of the Committee and which had entered into the Committee's drafting result, as follows:

> There was a general recognition of the fact that, altogether aside from the question of the administration of the funds of the courts, there was a feeling on the part of the judges and a large part of the members of the bar that there ought to be some method of compiling the statistics of the work of the courts, and of keeping abreast of the work by bringing those statistical figures to the attention of some organization of the courts which could apply corrective measures when they were necessary.
>
> \*   \*   \*   \*   \*   \*   \*
>
> The additions in the bill over the former bill are in a provision which creates in each circuit what is called a judicial council, composed of all the circuit judges in the circuit. The provisions in relation to the duties of the judicial council, condensed, are that the administrative officer shall examine the state of the dockets, shall ascertain the cause of apparent delays in the disposition of cases, the time which the judges give to the trial of cases, and the whole subject of the work of the district courts, and once in each quarter he is required to put that information together, with his comments in the form of a report, which he submits to the newly instituted judicial council.
>
> \*   \*   \*   \*   \*   \*   \*

---

[3] Report of the Judicial Conference, September session, 1938, p. 12.

The bill provides that it shall then be the duty of the judicial council in each circuit to consider the report of the administrative officer, and promptly to take such action as may be necessary to correct whatever is made the subject of criticism therein. * * *

So far as I know personally, the criticism of the courts is due to delay. I have not heard, except perhaps in one or two instances, any substantial criticism of the work of the courts, except that the length of time which ensues between the commencement of a suit and its conclusion is too long, particularly the delay which exists in one or two or three or four districts in the country.

Those matters this bill undertakes to provide for by outlining certain duties of the judicial council. Under the present judicial setup we have no authority to require a district judge to speed up his work or to admonish him that he is not bearing the full and fair burden that he is expected to bear, *or to take action as to any other matter which is the subject of criticism, or properly could be made the subject of criticism, for which he may be responsible.*

The bill also provides what is not now true, that it shall be the duty of the district judge, when admonished or when matters are otherwise brought *to his attention by the judicial council, to take whatever steps are thought to be necessary or declared to be necessary to correct those things which ought not to exist in a well-run judicial system.*[4] [Emphasis supplied.]

This part of the testimony of Judge Groner was formally incorporated into Senate Report No. 426, which was made to accompany S. 188, in Congress consideration of the bill. Judge Groner added a comment, in concluding his testimony, to the effect that representatives of the Administrative Office should be able to be of assistance informationally to the judicial councils in "finding out, in regard to delays or any other matters of comment or criticism, the cause of it * * *."[5] He made reference also at the end of his testimony, as he had done at the start, to the duty and responsibility of the courts, in preserving the independence of the judiciary, "of protecting themselves against the criticism or against those things which produce criticism" and "of maintaining the general and universal confidence of the people in the courts,"[6] and indicated his belief that the provisions of the bill would help to serve that end.

There was testimony of similar effect by other members of the Conference Committee, as well as by other judges and lawyers. The late Judge John J. Parker, a member of the Conference Committee, stated, in his testimony at the hearings before the Committee of the Judiciary of the House of Representatives, 76th Congress, 1st session, page 22:

Judge PARKER. This (council) can deal with all sorts of questions that arise in the administration of justice.

Mr. CELLER. Do you put any restraint on the council at all?

Judge PARKER. I do not think this bill does. Of course, I assume this is true: That the councils will be restrained by the inherent limitations of the situation. They would know that, if they commanded a judge to do something, unnecessarily or unwisely, he would refuse to do it, and that would probably be the end of the matter.

It is unnecessary here to go further into the testimony before the congressional committees. The general purport of all this may concludingly be summarized in the expression made by the late Arthur T. Vanderbilt, a member of the Attorney General's Committee which collaborated with the Committee of the Conference, the then president of the American Judicature Society, and a former president of the American Bar Association:[7]

---

[4] Hearing before the Subcommittee of the Committee on the Judiciary of the Senate, Apr. 4 and 5, 1939 on S. 188, pp. 9, 10, 11.
[5] Id., p. 14.
[6] Id., pp. 14 and 9.
[7] Id., p. 16.

I would like to point out that the present bill has a great advantage over the bill that was introduced last year, and for that I think the credit must go to the Chief Justice and the other members of the Supreme Court, in that it does not attempt to centralize all the business affairs of the Federal courts in Washington, but rather creates a system of decentralization in recognizing the circuit courts of appeals, 11 of them, * * * *as the operating units in bringing about the proper administration of justice.* This bill has at least that very great advantage that, the circuit judges being responsible for the condition of the district courts within the circuits, have it within their power to know much more about what is going on in that circuit than could the Chief Justice or the Associate Justices of the Supreme Court here at Washington. I think the principle or the example there set is one which is very important and will be very helpful in the administration of the bill. [Emphasis supplied.]

It seems patent that what the Committee of the Conference intended, what its members and the other witnesses who testified held out to the committees of the Congress, and what the report which accompanied the bill reflected as being the legislative understanding and object of the provision, was that it imposed upon a judicial council the responsibility of seeing that the work and function of the courts in its circuit were expeditiously and effectively performed; and that this responsibility of observation, supervision, and correction went to the whole of a court's functioning, in both personal and institutional aspect.

In the language set out in Senate Report No. 426, page 4, extracted from one of the witnesses' testimony, the concept was—

that whatever is wrong in the administration of justice, from whatever source it may arise, is brought to the attention of the judicial council, that it may be corrected by the courts themselves.

### III. LITERATURE ON THE STATUTE

The section on judicial councils does not appear to have been the subject of much outside expression, indicative of general legal view upon it.

At the 1958 Attorney General's Conference on Court Congestion and Delay in Litigation, however, Circuit Judge Warren E. Burger commented as follows (Report of the Conference, pp. 9–10):

These [last] two sentences of section 332 * * * are in general terms, but they are all-embracing and confer almost unlimited power. Any problem—whatever it may be—relating to the expeditious and effective administration of justice within the circuit is within the power of the circuit judicial council.

Similarly, in an address before the National Conference of Judicial Councils in 1960 (reported in vol. 47, A.B.A. Journal, p. 169) Chief Judge J. Edward Lumbard, a member of this Special Committee, stated:

As this language [of sec. 332] is about as broad as it could possibly be, there is no doubt that the Congress meant to give to the councils the power to do whatever might be necessary more efficiently to manage the courts and administer justice.

Further, in an article appearing in the June 1960 American Bar Association Journal, Circuit Judge Prettyman made this characterization of the statute and its implications:

This statute is flat and unequivocal in conferring power. With the power goes corresponding responsibility. With responsibility goes corresponding duty.

The statute has also been referred to in the Report to the Senate Appropriations Committee, of April 1959, of the Field Study of the

Operations of United States Courts, made by staff member Paul J. Cotter, where, among other things, the observations were made (pp. 33 and 36):

> The objectives of this legislation, which was passed in 1939, appear quite clear. * * *
>
> \* \* \* \* \* \* \*
>
> * * * It was the judiciary, for the most part, which urged Congress to enact the present law relating to the supervisory functions of judicial councils. It has been on the statute books for approximately 20 years without any requests for changes being made, and it would appear incumbent upon the judiciary to make it work or to request amendment to the present law.

## IV. Recognition of the Scope of the Statute Made in its Application and Use

The purpose of this report is to indicate the responsibilities and powers of the judicial councils as they exist under the present statute. It is not, therefore, necessary to go into the question of the number of times that the statute has affirmatively been used by the several councils. The special Committee of the Conference, appointed to make this study, has been able to obtain from each chief judge of the circuits individual examples of situations in which the statute has been employed, in order to examine the scope of the responsibility and power which has thereby been given recognition in its application.

These examples show a variety of situations in which the councils, mostly through having the chief judge deal with the matter in personal approach, have undertaken and effected corrections of things which lie within the full scope of the responsibility pointed out above.

In other words, most of the councils appear, from the things with which they have dealt in these situations, to have recognized that their responsibilities and power extend, not merely to dealing with the questions of the handling and dispatching of a trial court's business in its technical sense, but also to dealing with the business of the judiciary in its broader or institutional sense, such as the preventing of any stigma, disrepute, or other element of loss of public confidence occurring as to the Federal courts or to the administration of justice by them, from any nature of action by an individual judge or a person attached to the courts.

It might be observed, also, that while the various councils have perhaps not been as active generally as they might and should have been, the various actions they have taken indicate that at least some of them have been far more active and alert as to their responsibility than they have been given credit for being by the profession. This lack of cognizance of what they have done probably results from the informal manner in which their responsibility has been exercised—and ordinarily properly so—to accomplish their object.

## V. Other Statutes Indicative of the Intended Importance of Judicial Councils

The role of the judicial councils as an instrument of intended importance in the administration of the Federal court system is given emphasis, it is believed, by the recognition and function accorded them under a number of special statutes. It would needlessly prolong this report to enumerate and discuss all of these, but one example will

sufficiently serve in illustration. Thus, under title 11, United States Code, section 62(b), in the field of bankruptcy, the Council is given the power to make removal of a referee for cause, where the judges of a district court fail so to remove him by a concurrence of a majority of them.

## VI. Enforcement Powers of the Judicial Councils

Section 332 provides that the Council "shall take such action (on the quarterly reports of the Administrator) as may be necessary"; that it "shall make all necessary orders for the effective and expeditious administration of the business of the courts within its circuit"; and that "The district judges shall promptly carry into effect all orders of the judicial council."

It will be noted that there is no express provision for sanctions in relation to the orders of the council. It is apparent from the testimony of the witnesses before the committees of Congress that this was deliberate on the part of the conference committee in drafting the section; that it was felt that the command of the statute, that all orders of the Judicial Council should be carried into effect, would be sufficient, in the nature and spirit of the judicial office, and in the tradition of the scheme of authority which has always existed in a judicial system, to cause those orders to be obeyed; and that any defiance of a council's order would be extremely rare; and that there would exist implicitly or inherently some way of dealing with it, if it occurred.

Thus, in the Senate committee hearings, Senator (now Circuit Judge) Danaher, in referring to the question of "lack of teeth," commented on the provision relating to the reports of the Director, that the Council may take such action as may appear to be necessary, and indicated that he felt that "that answered the question as to the teeth" (pp. 18 and 19). Arthur Vanderbilt replied, "I think it does quite completely and adequately." He added that, as to situations in which the admonition of the Council might not be respected, "Those cases are so rare that I do not think you would ever have to bother with them." And he had precedingly observed, "I think the circuit court and the judicial council would have adequate power to deal with such a situation" (p. 19).

The significance of this, in the view of the Judicial Conference, is merely to make it clear that the omission of any provision for specific sanctions was in no way intended to affect the Council's responsibility to exercise its supervisory and corrective functions or to prompt it to engage in any deterrence in respect thereto.

## VII. Conclusions

On the basis of the foregoing, the Judicial Conference of the United States is of the following views and conclusions:

(1) Under section 332, the judicial councils are intended to have, and have, the responsibility of attempting to see that the business of each of the courts within the circuit is effectively and expeditiously administered.

(2) The responsibility of the councils "for the effective and expeditious administration of the business of the courts within its circuit" extends not merely to the business of the courts in its tech-

nical sense (judicial administration), such as the handling and dispatching of cases, but also to the business of the judiciary in its institutional sense (administration of justice), such as the avoiding of any stigma, disrepute, or other element of loss of public esteem and confidence in respect to the court system, from the actions of a judge or other person attached to the courts.

(3) The councils have the responsibility and owe the duty of taking such action as may be necessary, including the issuance of "all necessary orders," to attempt to accomplish these ends.

(4) These responsibilities should ordinarily be approached, in the spirit and tradition of the judicial institution, in an attitude of attempted cooperation and assistance to the district courts and not of purported policemanship, since the purpose of the statute is to make the Council an instrument to help prevent problems from arising, to help find solutions for those which have arisen, as well as to take such corrective action for prevention or solution "as may be necessary."

(5) If the councils are effectively to serve these purposes, it is manifest that they must undertake to keep themselves informed. Their primary source of information will, of course, be the reports of the Director of the Administrative Office, as referred to in the statute. But formal statistics alone will not always, and perhaps not usually, be sufficient as a basis for the exercise of intelligent responsibility. Statistics may point out the existence of a problem, but they do not ordinarily demonstrate the causes or reasons underlying the problem. Thus, in the attempt to deal with a problem, such as where a court appears to be falling behind and perhaps to be approaching an incipient congestion, it would seem desirable for the Council to call upon the Administrative Office to undertake to make an exploration into the particular situation, in order to enable it to get at the underlying picture and understand what it is that needs suggestion or corrective action on the part of the Council.

(6) In the judgment of the Judicial Conference the present statute is adequate to enable the judicial councils, on proper exercise of their responsibilities, to serve their intended purpose, as an instrumentality in the statutory scheme of Public Law No. 299, for "The Administration of the U.S. Courts," to assist in achieving "the effective and expeditious administration of the business of the courts." The expression which the Conference made in the report of its September 1939 session, page 11, after the enactment of the act, is entitled to be renewed:

> It is confidently expected that through the operation of this act the important objectives to which reference has been made will be measurably attained.

## VIII. SUGGESTIONS AND COMMENTS

The Judicial Conference makes these suggestions and comments:

(1) The tasks of a judicial council might perhaps be made easier by gaining understanding and cooperation, through a discussion of its responsibilities and concerns, and its approach to them, at the judicial conference of the circuit. In this connection it should be noted that the purpose of these conferences, under title 28, United States Code, section 333, is—

> considering the business of the courts and advising means of improving the administration of justice within such circuit.

**10** POWERS AND RESPONSIBILITIES OF THE JUDICIAL COUNCILS

(2) Understanding of the functions and concerns of both the judicial councils and the judicial conferences of the circuits by the bar should be encouraged.

(3) Some formality in the holding of council meetings and the setting up of an agenda can perhaps contribute to their functioning. Too much informality may tend to a dilution of the sense of responsibility.

(4) Understanding of the work of the council and of the spirit of its approach to its responsibilities can perhaps be fostered by inviting the district judge, who is the representative on the Judicial Conference of the United States, to attend a council meeting. In this respect, the same purpose in comprehension will perhaps be served as to the council, as results to a court of appeals in calling a district judge at some time to sit with it and thereby become familiar with its processes.

(5) It is not possible to cover within the compass of this report all of the specific things which the Conference has discussed as falling within the responsibilities of the councils. These have included such matters as the responsibility of dealing with situations where a judge, eligible to retire, has become incapacitated, so that the work of the court is materially being prejudiced thereby. Another illustration is having a judge who has an accumulation of submitted cases not take on any further trial work until such cases have been decided. These specific matters could be numerously multiplied. For purposes of the present report, the all-inclusive general statements made above will have to suffice.

○