## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HON. PAULINE NEWMAN,

               Plaintiff,

       v.

HON. KIMBERLY A. MOORE, *et al.*,

             Defendants.

Case No. 1:23-cv-01334-CRC

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 4

I.  Plaintiff's three groups of claims—and therefore her entire complaint—should
be dismissed. .......................................................................................... 4

    A.  Plaintiff's challenges to her June 5 suspension are moot. ............................. 4

    B.  Plaintiff's as-applied challenges to Act-related actions are unreviewable. ........ 5

    C.  Plaintiff did not plead any facial challenges to the Act and,
even if she did, her improper-removal and due-process claims fail. ................ 9

        1.  Plaintiff did not plead any facial challenges to the Act. ...................... 9

        2.  Plaintiff's (supposedly facial) claims for improper removal and
lack of due process should be dismissed. ......................................... 11

II.  There are additional jurisdictional and merits reasons to dismiss. .......................... 13

    A.  This Court lacks appellate jurisdiction to review judicial actions—whether
taken under the Act or § 332—by the Judicial Council. ............................... 14

        1.  All the actions at issue are judicial. ................................................. 14

        2.  Judicial actions must be reviewed in a court with appellate
jurisdiction, not a court of original jurisdiction like this one. ............. 17

    B.  Comity, exhaustion, and related concerns weigh in favor of
dismissing the complaint. ............................................................................. 20

    C.  Plaintiff's challenge to the Judicial Council's June 5 Order suspending
new case assignments is unavailing. ............................................................ 21

        1.  The Judicial Council has full statutory authority to craft an
appropriate remedy for a judge's backlog of cases. ........................... 21

        2.  The June 5 Order was lawfully issued. ............................................ 25

CONCLUSION ................................................................................................ 29

# TABLE OF AUTHORITIES

## Cases

*Adams v. Comm. on Jud. Conduct & Disability*,
    165 F. Supp. 3d 911 (N.D. Cal. 2016) ........................................................................ 15

*Adams v. Jud. Council of Sixth Cir.*,
    2020 WL 5409142 (D.D.C. Sept. 9, 2020) ................................................................ 21

*Allegheny Def. Project v. FERC*,
    964 F.3d 1 (D.C. Cir. 2020) ................................................................................27, 29

*Arpaio v. Obama*,
    797 F.3d 11 (D.C. Cir. 2015) ...................................................................................... 29

*Axon Enterprise, Inc. v FTC*,
    598 U.S. 175 (2023)..................................................................................................5, 6

*Bartenwerfer v. Buckley*,
    598 U.S. 69 (2023)........................................................................................................ 22

*Beberman v. Blinken*,
    61 F.4th 978 (D.C. Cir. 2023) ...................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................... 10

*Champion v. McCalister*,
    2023 WL 5989552 (W.D. Okla. Sept. 14, 2023)........................................................ 11

*Chandler v. Jud. Council of the Tenth Cir.*,
    398 U.S. 74 (1970)................................................................................................*passim*

*Colindres v. U.S. Dep't of State*,
    575 F. Supp. 3d 121 (D.D.C. 2021), *aff'd,*71 F.4th 1018 (D.C. Cir. 2023)..................... 12

*Colindres v. U.S. Dep't of State*,
    71 F.4th 1018 (D.C. Cir. 2023) ...............................................................................12, 21

*Constellation Mystic Power, LLC v. FERC*,
    45 F.4th 1028 (D.C. Cir. 2022) .................................................................................... 5

*Cox v. Nielsen,*
   2019 WL 1359806 (D.D.C. Mar. 26, 2019) ............................................................. 12

*Dep't of Com. v. New York,*
   139 S. Ct. 2551 (2019) ............................................................................................ 29

*Dist. of Columbia Ct. of Appeals v. Feldman,*
   460 U.S. 462 (1983) ................................................................................................ 16

*Ellerbe v. Jud. Council for the Third Cir.,*
   2023 WL 2163900 n.3 (E.D. Pa. Feb. 22, 2023) ..................................................... 17

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
   544 U.S. 280 (2005) ................................................................................................ 18

*FDIC v. Bender,*
   127 F.3d 58 (D.C. Cir. 1997) .................................................................................. 12

*Fed. Express v. Dep't of Commerce,*
   39 F. 4th 756 (D.C. Cir. 2022) ................................................................................. 8

*Flores v. Attorney General,*
   856 F.3d 280 (3d Cir. 2017) .................................................................................... 15

*Free Enterprise Fund v. Public Company Accounting Oversight Board,*
   561 U.S. 477 (2010) ............................................................................................. 5, 6

*Freeport-McMoRan Oil & Gas Co. v. FERC,*
   962 F.2d 45 (D.C. Cir. 1992) .................................................................................. 29

*Genus Med. Techs. LLC v. FDA,*
   994 F.3d 631 (D.C. Cir. 2021) ................................................................................ 28

*Harris v. Mayorkas,*
   2022 WL 3452316 (D.D.C. Aug. 18, 2022) ........................................................ 12, 21

*Hastings v. Jud. Conf. of U.S. ("Hastings I"),*
   770 F.2d 1093 (D.C. Cir. 1985) .......................................................................... 20, 21

*Hastings v. Jud. Conf. of U.S. ("Hastings II"),*
   829 F.2d 91 (D.C. Cir. 1987) ......................................................................... 3, 14, 21

*Hohn v. United States,*
   524 U.S. 236 (1998) ................................................................................................ 18

*Holt v. Walsh Grp.*,
316 F. Supp. 3d 274 (D.D.C. 2018) ........................................................ 12, 14

*Hoye v. City of Oakland*,
653 F.3d 835 (9th Cir. 2011) ........................................................................ 9

*Hurd v. D.C., Gov't*,
864 F.3d 671 (D.C. Cir. 2017) ...................................................................... 2

*In re Imperial "400" Nat'l, Inc.*,
481 F.2d 41 (3d Cir. 1973) ..................................................................... 19, 20

*In re McBryde*,
117 F.3d 208 (5th Cir. 1997) ........................................................ 5, 16, 19, 25

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
140 S. Ct. 768 (2020) ................................................................................ 27

*Johnson v. Panetta*,
953 F. Supp. 2d 244 (D.D.C. 2013) ............................................................ 12

*Khalid v. Garland*,
2023 WL 2561943 (D.D.C. Mar. 16, 2023) ................................................ 11

*Leedom v. Kyne*,
358 U.S. 184 (1958) .................................................................................... 8

*Lewis v. Governor of Alabama*,
944 F.3d 1287 (11th Cir. 2019) .................................................................. 21

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) .................................................................... 19

*McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. Of Jud. Conf. of U.S.*,
264 F.3d 52 (D.C. Cir. 2001) .............................................................*passim*

*Metro. Wash. Ch., Associated Builders & Contractors, Inc. v. District of Columbia*,
62 F.4th 567 (D.C. Cir. 2023) ..................................................................... 10

*Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*,
828 F.2d 1385 (9th Cir. 1987) ................................................................... 20

*Overton v. Torruella*,
183 F. Supp. 2d 295 (D. Mass. 2001) ......................................................... 15

*Pitch v. United States,*
   953 F.3d 1226 (11th Cir. 2020)........................................................................ 15

*Plaut v. Spendthrift Farm, Inc.,*
   514 U.S. 211 (1995)........................................................................................ 19

*Posters 'N' Things, Ltd. v. United States,*
   511 U.S. 513 (1994)........................................................................................ 12

*Ramirez v. Blinken,*
   594 F. Supp. 3d 76 (D.D.C. 2022)..................................................................... 4

*Rooker v. Fidelity Trust Co.,*
   263 U.S. 413 (1923)........................................................................................ 18

*Sanai v. Kozinski,*
   2021 WL 1339072 (N.D. Cal. Apr. 9, 2021) ............................................... 5, 15

*Surfside Non-Surgical Orthopedics P.A. v. Allscripts Healthcare Sols., Inc.,*
   2019 WL 2357030 (N.D. Ill. June 4, 2019) ..................................................... 21

*Texas v. United States,*
   798 F.3d 1108 (D.C. Cir. 2015)........................................................................ 12

*Thomas v. District of Columbia,*
   2021 WL 5769443 (D.D.C. Dec. 6, 2021) ....................................................... 11

*Trackwell v. U.S. Gov't,*
   472 F.3d 1242 (10th Cir. 2007)........................................................................ 20

*United States v. Aguilar,*
   515 U.S. 593 (1995)........................................................................................ 15

*United States v. Colon-Munoz,*
   318 F.3d 348 (1st Cir. 2003)............................................................................ 24

*United States v. Richardson,*
   676 F.3d 491 (5th Cir. 2012) ........................................................................... 15

*United States v. Salerno,*
   481 U.S. 739 (1987)........................................................................................ 10

*United States v. TDC Mgmt. Corp., Inc.,*
   827 F.3d 1127 (D.C. Cir. 2016)........................................................................ 12

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982) ......................................................................... 10

*Withrow v. Larkin*,
   421 U.S. 35 (1975) ........................................................................... 14

**Statutes**

1 U.S.C. § 1 ........................................................................................... 7

28 U.S.C. § 332 ............................................................................... *passim*

28 U.S.C. § 357 ............................................................................... 2, 5, 6

28 U.S.C. § 359 ....................................................................... 7, 26, 27, 28

28 U.S.C. § 362 ................................................................................... 25

28 U.S.C. § 455 ..................................................................................... 8

28 U.S.C. § 604 ................................................................................... 17

28 U.S.C. § 605 ................................................................................... 17

28 U.S.C. § 612 ................................................................................... 17

28 U.S.C. § 1503 ................................................................................. 15

**Rules**

Fed. R. Civ. P. 8 ................................................................................... 11

U.S. Courts, *Judicial Conduct & Disability* ("JC&D Rules"),
   available here ................................................................................. 21

Judicial-Conduct & Judicial Disability Proceedings Rule 20 ........................... 21

## INTRODUCTION

When 96-year-old Judge Pauline Newman filed her amended complaint in late June 2023, she had been suspended from hearing new matters due to her troubling backlog of cases. She was also in the midst of an on ongoing investigation by a three-judge Special Committee under the Judicial Conduct and Disability Act because there were concerning signs that a possible disability was impeding her ability to perform the duties of an active circuit judge. Multiple court personnel had reported her memory loss, lack of focus, confusion over simple matters, uncharacteristic paranoia, and inability to perform simple tasks.  And her actions toward courthouse personnel—including her accusations that the IT staff was hacking her computer and her threats to have a member of her own chambers staff forcibly removed from the building and arrested—were only the tip of the iceberg.  The Special Committee conducted over 20 witness interviews, examined case-related statistics from the Clerk's Office, and consulted with an expert physician, ultimately developing significant evidence that Judge Newman is unable to continue as an active judge.

While those significant concerns about Judge Newman's fitness persist today, the circumstances surrounding her amended complaint do not.  Judge Newman has steadfastly refused to comply with the Special Committee's common-sense requests that she undergo specified cognitive testing, provide specified medical records, or even participate in an interview with the Committee.  For that reason, the Special Committee issued a 111-page Report & Recommendation, finding that Judge Newman had committed misconduct and recommending a suspension for her refusal to cooperate.  *See* Ex. 1, Special Committee Report (July 31, 2023), ECF No. 25-1.  The Federal Circuit's Judicial Council—made up of 11 circuit judges—then unanimously affirmed the Special Committee's findings in its own 73-page order, suspending Judge Newman from hearing new cases for one year or until she cooperates

1

(if that occurs sooner).[1]  *See* Ex. B, September 20 Order, ECF No. 30-1.  That decision is now under review by the Judicial Conference through its Committee on Judicial Conduct and Disability (JC&D Committee), composed of seven more federal judges from across the country.  And her separate suspension from hearing new cases—entered on June 5 under the Judicial Council's authority to assure "the effective and expeditious administration of justice within its circuit"—was vacated after Judge Newman cleared her case backlog just the week before this brief was filed.  *See* Ex. 4, November 9 Order (citing 28 U.S.C. § 332(d)); Ex. O, June 5 Order, ECF No. 15-1.

With these developments, the Court's task has been simplified.  Plaintiff characterizes her amended complaint as presenting three types of challenges: (1) challenges to the June 5 Order—issued under the Judicial Council's § 332 authority and not under the Act—suspending Judge Newman from receiving new cases; (2) as-applied constitutional challenges to various actions taken by Defendants under the Act; and (3) purported facial challenges to the constitutionality of the Act.  *See* Pl.'s Opp'n at 2–3, ECF No. 30.

Each category is straightforwardly dismissed. The first category is moot: the Judicial Council vacated the June 5 Order immediately after Judge Newman cleared the case backlog that formed the basis of that order.  The second category—as-applied challenges to the Act— is expressly barred from review by Act.  28 U.S.C. § 357(c); *McBryde v. Comm. to Rev. Cir.*

---

[1] Plaintiff attempts to introduce "additional facts" about how "Judge Newman underwent evaluations by two board-certified professionals."  Pl.'s Opp'n at 3–5, ECF No. 30.  It bears mentioning that the 11 circuit judges on the Judicial Council roundly rejected Judge Newman's reliance on these heralded evaluations, finding that they are "not remotely an adequate substitute for the thorough medical examinations ordered by the Committee based on the recommendations of the Committee's consultant."  Ex. B, September 20 Order at 8, ECF No. 30-1.  And it speaks volumes that Plaintiff repeatedly touts these self-serving evaluations—and even asks for *this* Court to conduct its own "competency hearing," Pl.'s Opp'n at 32 n.17—but refuses to undergo evaluations by the neutral medical professionals selected by the Special Committee.  Needless to say, Defendants dispute Plaintiff's factual assertions.  But those facts are irrelevant to the purely legal issues here.  And, in any event, Plaintiff cannot rely on judicial notice to establish Judge Newman's cognitive abilities.  *See Hurd v. D.C., Gov't*, 864 F.3d 671, 686 (D.C. Cir. 2017).

*Council Conduct & Disability Ords. Of Jud. Conf. of U.S.*, 264 F.3d 52, 58–64 (D.C. Cir. 2001). Plaintiff's citations to recent cases about special judicial-review schemes do not help her; the only judicial-review scheme here is under the Act, and all *outside* judicial review is not simply channeled to another court but *barred* altogether.  The third category—supposed facial challenges to the Act—does not exist.  As currently pled, Plaintiff asserts only as-applied claims; she cannot use a revisionist reading to amend them through her opposition brief.  Regardless, Defendants moved to dismiss her purported improper-removal and due-process claims on their merits.  In response, Plaintiff has little, if anything, to say.  And for good reason: binding precedent forecloses both claims.  *McBryde*, 264 F.3d 52; *Hastings v. Jud. Conf. of U.S.*, 829 F.2d 91, 104 (D.C. Cir. 1987) ("*Hastings II*").  Those points suffice for dismissal.

But if any of Plaintiff's complaint survives those grounds, there are three additional reasons to grant Defendants' motion.  First, the Court has no original jurisdiction to review this collateral attack on actions of the Federal Circuit's Judicial Council.  The Judicial Council's suspension of new case assignments is a judicial act, whether taken under the Act or under § 332 (and Plaintiff concedes the former).  So, like Judge Chandler in his seminal Supreme Court case, Judge Newman must seek review in a court with appellate jurisdiction over the Federal Circuit.  *See Chandler v. Jud. Council of the Tenth Cir.*, 398 U.S. 74, 79 (1970).  Second, Plaintiff chose not to rebut Defendants' argument that this Court should decline jurisdiction due to the pending misconduct proceedings under the Act and the (now-realized) possibility that the Judicial Council could take further action on the June 5 Order.  *Compare* Defs.' Br. at 46–48, ECF No. 24-1, *with* Pl.'s Opp'n at 1–45.  Those uncontested comity and exhaustion principles independently justify dismissal.  Third, even if the June 5 Order were not moot, her challenges to that order are unavailing.  Plaintiff essentially concedes that judicial councils may suspend case assignments to a particular judge.  She voices solely procedural and duration-related objections.  But the June 5 Order was only temporary, and Judge Newman was properly excluded from voting on her own suspension.  Plaintiff's challenges to the June 5 Order are meritless.

Defendants' motion to dismiss should be granted and Plaintiff's preliminary-injunction motion should be denied as moot.

## ARGUMENT

I. **Plaintiff's three groups of claims—and therefore her entire complaint—should be dismissed.**

Plaintiff describes her claims as falling into three groups: (1) challenges to the June 5 suspension; (2) as-applied constitutional challenges to the Act; and (3) purported facial constitutional challenges to the Act.  *See* Pl.'s Opp'n at 2–3.  Each group of claims should be dismissed for straightforward reasons.

### A.   Plaintiff's challenges to her June 5 suspension are moot.

Plaintiff's challenges to the June 5 Order—issued under the Judicial Council's § 332 authority—are now moot.  An issue "becomes moot" if it is "no longer live or the parties lack a legally cognizable interest in the outcome."  *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 86 (D.D.C. 2022) (Cooper, J.) (citation omitted).  When Plaintiff filed her amended complaint in June 2023, the only active suspension was the Judicial Council's June 5 Order.[2]  That order was based on Judge Newman's substantial backlog of cases.  *See* Defs.' Br. at 37–42 & n.20.[3] And most of those were *pro se* cases, submitted on the briefs without oral argument, which the Judicial Council characterized as "generally the most expeditiously resolved."  *Id.*  Despite having no new work for ten months, Judge Newman took between 202 and 303 days to issue those seven backlogged opinions.  *See* Ex. 4, November 9 Order at 2.  And when she issued her last one on November 8—a five-page opinion that Judge Newman had assigned to herself—the Judicial Council vacated the June 5 Order the very next day.  *Id.*

---

[2] As explained further below, the June 5 Order superseded a prior March 8 suspension order.  *See* Section II.C.2., *infra*.

[3] The parties agree that the June 5 Order—issued under the Judicial Council's § 332 authority—was not mooted by the Judicial Council's September 20 Order suspending Judge Newman under the Act.  *See* Pl.'s Opp'n at 13–14.  But that makes no difference now that the Judicial Council has separately vacated the June 5 Order itself.

As a result, Plaintiff's claims attacking that order are moot.  "[I]t is impossible for a court to grant any effectual relief whatever to the prevailing party" because there is no June 5 Order to enjoin.  *Beberman v. Blinken*, 61 F.4th 978, 981 (D.C. Cir. 2023).  The order has already been vacated, and a decision on its validity has no chance—let alone a "more-than-speculative" one—of affecting Judge Newman now or in the future.  *Constellation Mystic Power, LLC v. FERC*, 45 F.4th 1028, 1046 (D.C. Cir. 2022).  The Court therefore has no need to decide the jurisdictional and merits issues related to the June 5 Order because Plaintiff's challenges to that order should be dismissed as moot.

### B.    Plaintiff's as-applied challenges to Act-related actions are unreviewable.

Initially, Plaintiff concedes that Counts II, III, IV, X, and XI are as-applied constitutional challenges to the Act.  Pl.'s Opp'n at 28.  The Act's judicial-review bar and the D.C. Circuit's decision in *McBryde* therefore compel dismissal of those Counts.  264 F.3d at 63 ("Congress clearly and convincingly barred our review of [judges'] claim[s] of unconstitutional *application* of the Act." (emphasis added)); Defs.' Br. at 19–20.  Recognizing this binding precedent, Plaintiff resorts to the argument that *McBryde* is "no longer good law" because it has been silently overruled by *Axon Enterprise, Inc. v FTC*, 598 U.S. 175 (2023), and *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010).  *See* Pl.'s Opp'n at 33–36.  But Plaintiff nowhere grapples with the plain text of that provision: subject to inapplicable exceptions, "all orders and determinations, including denials of petitions for review, shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise."  28 U.S.C. § 357(c).  And she nowhere explains how that provision no longer means what it says.  Her as-applied claims are flatly precluded and her arguments are baseless.

For starters, both *Axon* and *Free Enterprise Fund* considered whether a litigant could immediately challenge agency action in district court notwithstanding a "special statutory review scheme" that prescribed judicial review "in a court of appeals following the agency's own review process."  *Axon*, 598 U.S. at 185; *Free Enterprise Fund*, 561 U.S. at 489.  Here, by contrast, § 357(c)—entitled "No judicial review"—did not merely channel eventual judicial

review to a particular court; it erected a "crystal clear" barrier to judicial review altogether. *In re McBryde*, 117 F.3d 208, 220 n.7 (5th Cir. 1997); *Sanai v. Kozinski*, 2021 WL 1339072, at *7 (N.D. Cal. Apr. 9, 2021) ("Any challenge to an 'order' or 'determination' in a judicial conduct [proceeding], even when framed in terms of constitutional or statutory authority, *cannot proceed*." (emphasis added)); *see also* Defs.' Br. at 19 (collecting cases). Whatever *Axon* and *Free Enterprise Fund* might say about challenges to executive agency action where there is a "special statutory review scheme," those cases have no bearing here: Congress expressly precluded outside judicial review of any decision under the Act in favor of an internal appeal process within the federal judiciary.

It is also irrelevant that the Supreme Court in *Axon* and *Free Enterprise Fund* questioned certain executive agencies' expertise adjudicating constitutional issues. 598 U.S. at 194–95; 561 U.S. at 491. The Court has never—as Plaintiff attempts to do here—extended such skepticism to the ranks of the federal judiciary. And for good reason. Federal judges, of course, decide constitutional questions all the time. No doubt the 27 federal judges on the Judicial Conference of the United States would find it surprising to learn that they "[know] nothing about separation of powers or tenure protection," or that they lack "competence to adjudicate constitutional claims." Pl.'s Opp'n at 34–35. And the Act itself does not prohibit the Judicial Conference or its JC&D Committee from deciding constitutional issues when they receive a petition for review. *See* 28 U.S.C. § 357(a). To the contrary, the D.C. Circuit in *McBryde* expressly advised that the JC&D Committee should do so. *See McBryde*, 264 F.3d at 62. And the judges on the JC&D Committee have since exercised exactly that authority. *See, e.g.*, *In re Complaint of Judicial Misconduct*, C.C.D. No. 17-01 at 38 (U.S. Jud. Conf. Comm. on Jud. Conduct & Disability Aug. 14, 2017) (noting that the JC&D Committee analyzed and "reject[ed] Judge Adams's constitutional and statutory challenges"), *available* here. Unlike review schemes involving Executive Branch agencies, Congress deliberately required review by judicial bodies "composed exclusively of Article III judges," precisely because those judges

would have "the power to 'keep [the judiciary's] own house in order.'" *McBryde*, 264 F.3d at 60–62 (reviewing legislative history).

Also meritless is Plaintiff's suggestion that the statutory prohibition on amicus participation during Act-related proceedings will make it "difficult" to present an as-applied constitutional challenge to the JC&D Committee.  Pl.'s Opp'n at 35–36 (citing *see* 28 U.S.C. § 359(b)).  Courts routinely decide as-applied constitutional challenges without amicus participation.  The JC&D Committee is more than capable of deciding such issues, especially where, as here, the Judicial Council has thoroughly addressed them in its September 20 Order. *See, e.g., In re Complaint of Judicial Misconduct*, C.C.D. No. 17-01 at 38 (analyzing Judge Adams's constitutional challenges).  And nothing precludes the JC&D Committee from asking the Judicial Council for a response to any petition for review.  *See, e.g., In re: Complaint of Judicial Misconduct*, C.C.D. No. 13-01 at 8 (U.S. Jud. Conf. Comm. Jan. 17, 2014) (noting that a Judicial Council filed a "letter of response" with the JC&D Committee), *available* here. Nor is it apparent that the United States cannot make submissions to the Judicial Conference. *Compare* 28 U.S.C. § 359(b), *with* 1 U.S.C. § 1.  So amicus participation is irrelevant here.

With no help from recent case law or the Act itself, Plaintiff then attempts to portray a footnote in *McBryde* as defeating the D.C. Circuit's earlier holding in the *same opinion* that the Act bars all as-applied constitutional challenges.  Pl.'s Opp'n at 36–37.  In a footnote, the *McBryde* court noted: "we do not decide whether a long-term disqualification from cases could, by its practical effect, affect an unconstitutional 'removal.'"  264 F.3d at 67 n.5.  But this footnote merely disclaims any position on the merits of whether "long-term disqualification" was allowable; it had no bearing on the court's core jurisdictional holding that § 357(c) bars all as-applied challenges. 264 F.3d at 67.  So, for example, if the JC&D Committee addressed an as-applied constitutional challenge to a "long-term disqualification" under the Act, *McBryde* provides no guidance.  *See id.* at 62 (advising that the JC&D Committee should address constitutional claims).  But nothing in the *McBryde* footnote suggests that the court was holding open hypothetical future jurisdiction for future as-applied constitutional challenges.

Plaintiff also attempts an end run around *McBryde* altogether: she argues that Defendants acted *ultra vires* because they "were obligated to recuse themselves." Pl.'s Opp'n at 34 (citing *Leedom v. Kyne*, 358 U.S. 184 (1958)). This fails on multiple levels. First, as Plaintiff's argument essentially concedes, she is making an as-applied challenge based on the facts in her case, which is straightforwardly precluded by the Act's judicial-review bar. *See id.* (attempting to distinguish *McBryde* using the purported facts here). As *McBryde* makes clear, a constitutional challenge and an *ultra vires* challenge are equally barred by § 357(c). *See* 264 F.3d at 62–63. Second, Plaintiff cites nothing to indicate that this narrow form of extraordinary relief is available against Article III judges. *See* Pl.'s Opp'n at 34. Third, in any event, such relief is "confined to 'extreme' agency error where the agency has 'stepped so plainly beyond the bounds of [its statutory authority], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court.'" *Fed. Express v. Dep't of Commerce*, 39 F. 4th 756, 764 (D.C. Cir. 2022). All Plaintiff musters to meet that "Hail Mary" standard, *id.* at 765, is the bald assertion that the entire Judicial Council was required to recuse itself under 28 U.S.C. § 455. Pl.'s Opp'n at 34. But Plaintiff herself admits that "the decision whether or not to recuse belongs to each judge herself and not to her fellow members of the court or the judicial council." *Id.* at 17. And all members of the Judicial Council "carefully considered whether recusal/disqualification was required under § 455 and determined that it was not." Sept. 20 Order at 43 n.21; *see* Defs.' Br. at 33–34 (explaining that "there was no prospect that the inquiry framed by the Committee would result in judges becoming witnesses").

Because *McBryde*'s nonreviewability holding remains good law and Plaintiff has no other means of overcoming the Act's express judicial-review bar on as-applied constitutional challenges,[4] Counts II, III, IV, X, and XI should all be dismissed.

---

[4] Plaintiff has abandoned her argument that Congress's 2002 amendment silently conferred jurisdiction on this Court to hear her challenges. Pl.'s Br. at 30, ECF No. 13-1. Perhaps that's because, as Defendants explained, the 2002 recodification simply reinforces the point made in *McBryde*: the Judicial Conference performs the relevant "judicial review" and may decide constitutional claims. *See* Defs.' Br. at 21–22 (citing *McBryde*, 264 F.3d at 62).

**C.**   **Plaintiff did not plead any facial challenges to the Act and, even if she did, her improper-removal and due-process claims fail.**

As Defendants acknowledged, the D.C. Circuit in *McBryde* construed the Act to narrowly permit judicial review of challenges to the facial constitutionality of the Act. 264 F.3d at 58–59; Defs.' Br. at 20. Plaintiff, however, failed to plead any facial challenges to the Act. Even if she did, and even if the Court does not dismiss this case on the jurisdictional grounds explained below, it should dismiss Plaintiff's (purportedly facial) claims that the Act authorizes improper removal and violates due process. *See* Am. Compl. ¶¶ 81, 96, ECF No. 10.

**1.**   **Plaintiff did not plead any facial challenges to the Act.**

In contrast to an as-applied challenge, "a facial challenge is a challenge to an entire legislative enactment or provision." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). As Defendants explained, Plaintiff has not pled any facial challenges to the Act. *See* Defs.' Br. at 19–24. And in the one Count where she arguably did so, her claim entails deciding an as-applied challenge. Defs.' Br. at 21–24. In response, Plaintiff insists that Counts I, V, VI, VII, VIII, and IX raise facial challenges, notwithstanding her express references to various "orders" and "determinations" of the Special Committee that bring them within the scope of the Act's judicial-review bar. *See* Pl.'s Opp'n at 28–33.

By their own terms, Plaintiff's identified Counts hinge on Defendants' "orders and threats," Am. Compl. ¶ 82 (Count I), Defendants' "enforcement of the Act's unconstitutionally vague disability provisions against Plaintiff," *id.* ¶ 104 (Count V), Defendants' "imposition of [examination] requirements on Plaintiff," *id.* ¶ 108 (Count VI), Defendants' "enforcement of the Act's unconstitutionally vague investigative provision against Plaintiff," *id.* ¶ 113 (Count VII), Defendants' "requiring Plaintiff to undergo a compelled medical or psychiatric examination," *id.* ¶ 119 (Count VIII), and Defendants' "requiring Plaintiff to surrender her private medical records," *id.* ¶ 125 (Count IX). Plaintiff now wishes that these Counts asserted broad facial attacks on the Act. *See* Pl.'s Opp'n at 33.

But the Court should reject this delayed episode of pleader's remorse: the complaint Plaintiff actually filed belies her claim that these Counts are facial attacks that simply rely on Defendants' actions for "purposes of establishing standing." *Id.* None of these Counts—which are tailored to Defendants' isolated acts—come close to meeting the facial-challenge standard of showing "that no set of circumstances exists under which the Act would be valid." *Metro. Wash. Ch., Associated Builders & Contractors, Inc. v. District of Columbia*, 62 F.4th 567, 577 (D.C. Cir. 2023) (citation omitted).[5] And none of the purported facial claims cites any statutory provision, let alone identifies which provision(s) of the Act are allegedly unconstitutional on their face. That omission is not a minor technicality: it is critical because it deprives Defendants of adequate notice. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (purpose of the claimant's obligation to provide a "short and plain statement of the claim" is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"); *Champion v. McCalister*, 2023 WL 5989552, at *4 (W.D. Okla. Sept. 14, 2023) (dismissing claim because the plaintiff did "not identify which specific provision in the city code, or the Oklahoma Statutes, is the moving force behind the constitutional violation").

Despite Plaintiff's efforts, "[i]t is well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss." *Thomas v. District of Columbia*, 2021 WL 5769443, at *3 (D.D.C. Dec. 6, 2021) (Cooper, J.) (citation omitted); *Khalid v. Garland*, 2023 WL 2561943, at *4 (D.D.C. Mar. 16, 2023) (Cooper, J.) ("While [plaintiff] describes facial challenges in his opposition to Defendants' motion to dismiss, a plaintiff

---

[5] As to Count V—where Plaintiff asserts that the Act's "disability provision" is unconstitutionally vague, Am. Compl. ¶¶ 100–05—Defendants argued that it was barred by § 357(c) because it necessarily entails deciding an as-applied challenge. *See* Defs.' Br. at 22–23 (citing *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982) (court assessing vagueness claim must "examine the complainant's conduct before analyzing other hypothetical applications of the law")). Plaintiff does not rebut Defendants' legal argument, but instead proves Defendants' point by asking the Court to resolve the as-applied challenge and find (as a factual matter) that she is not disabled. Pl.'s Opp'n at 30–32. Indeed, Plaintiff demands that this Court conduct a *de novo* hearing into Judge Newman's competency. *Id.* at 32 n.17. There is no basis in the Act or anywhere else for that type of inquiry.

cannot amend his complaint through briefing.").  If Plaintiff wishes to assert facial challenges to "Congress's handiwork" in the Act, she has the burden of doing so *in her complaint* through "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Because her operative complaint fails to do so, Counts I, V, VI, VII, VIII, and IX should all be dismissed.

> ### 2.  Plaintiff's (supposedly facial) claims for improper removal and lack of due process should be dismissed.

Even if Plaintiff adequately pled facial constitutional claims, and even if the Court does not dismiss this case on the jurisdictional grounds explained below, it should dismiss Plaintiff's claims that the Act authorizes improper removal[6] and violates due process.  *See* Am. Compl. ¶¶ 81, 96; *see* Section II.A., *infra*.  Plaintiff raised those claims in her preliminary-injunction motion and Defendants moved to dismiss them as meritless (if the Court reached the merits).  *See* Defs.' Br. at 28–36.

The D.C. Circuit has already ruled that the Act does not unconstitutionally encroach on Congress's impeachment power.  "The Constitution limits judgments for impeachment to removal from office and disqualification to hold office" but "[i]t makes no mention of discipline generally."  Defs.' Br. at 29–30 (quoting *McBryde*, 264 F.3d at 65).  This is confirmed by Executive Branch parallels, past practice, and the Breyer Report, each demonstrating that intrabranch discipline is common (including under the Act).  *Id.* at 30–31.  It also makes little sense to say that the Act implicitly infringes on Congress's impeachment power when Congress has *explicit* powers to control the lower federal courts and enact all necessary-and-proper laws, which it used to pass the Act in full view of its own impeachment power.  *Id.* at 32.

Plaintiff does not respond to any of these arguments.  And "when a litigant files a response to a motion to dismiss but fails to address certain arguments made by the defendant,

---

[6] To the extent that Plaintiff suggests that this challenge applies not only to the Act but also to § 332, that challenge is moot because the June 5 Order was vacated, so there is no current suspension under that order.  In any event, such a challenge to § 332 would fail for the same reasons it fails for the Act.

the court may treat those arguments as conceded." *Harris v. Mayorkas*, 2022 WL 3452316, at *13 (D.D.C. Aug. 18, 2022) (quoting *Holt v. Walsh Grp.*, 316 F. Supp. 3d 274, 278 (D.D.C. 2018)); *Colindres v. U.S. Dep't of State*, 575 F. Supp. 3d 121, 130 (D.D.C. 2021) (same), *aff'd,*71 F.4th 1018 (D.C. Cir. 2023); *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997) (same); *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 527 (1994) (stating that where "brief on the merits fails to address [an] issue," the party "therefore abandons it"). Even "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." *Cox v. Nielsen*, 2019 WL 1359806, at *14 (D.D.C. Mar. 26, 2019) (quoting *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013)); *see United States v. TDC Mgmt. Corp., Inc.*, 827 F.3d 1127, 1130 (D.C. Cir. 2016) (holding that an "argument is forfeit" when a party "does not further develop it (or even mention it again) after [a] single, conclusory statement"). And the D.C. Circuit has "yet to find" that a district court abused its discretion in applying "the failure-to-respond forfeiture rule." *Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1025 (D.C. Cir. 2023) (citing *Texas v. United States*, 798 F.3d 1108, 1110, 1114–15 (D.C. Cir. 2015)). So the Court can dismiss this claim for that reason alone.

To the extent Plaintiff musters any argument at all, she simply notes that, as a factual matter, she may have no work to do. *See* Pl.'s Opp'n at 29–30. But that's true of any judicial suspension: if a judge is suspended from hearing new cases, they may always complete their current cases and be left with no work during the suspension. That does not change the constitutional analysis. Nothing in the D.C. Circuit's reasoning turned on whether a judge has a specific case to decide at a particular time. *See McBryde*, 264 F.3d at 65–67. To the contrary, Judge McBryde himself—like Judge Newman here—was suspended from hearing any new cases for a year and may well have cleared his pending cases, resulting in no cases to adjudicate during that time. *Id.* at 54–55. Judge Chandler was also suspended from hearing new cases, leaving him with only 12 pending cases, which he presumably cleared during his suspension as well. *Chandler*, 398 U.S. at 82. A lack of cases is simply the natural result of

12

intrabranch discipline allowed by the Act.[7]  And "the impeachment power does not exclude all intrabranch discipline." *McBryde*, 264 F.3d at 67.  Plaintiff advances almost no argument to the contrary and her claim should be dismissed.

The same is true for Plaintiff's claim that the Act's combination of investigative and adjudicative functions (reflected in Act-related proceedings here) violates the Due Process Clause.  Even if Plaintiff could show that she was deprived of a protected interest, her due process claim is foreclosed by binding precedent: the D.C. Circuit considered and rejected an identical due process claim "that the Act has authorized an improper combination of investigative and adjudicative functions." *Hastings II*, 829 F.2d at 104; *see Withrow v. Larkin*, 421 U.S. 35, 39–41 (1975).  Plaintiff again made no attempt to respond, so her claim can be dismissed for that reason alone. *See Holt*, 316 F. Supp. 3d at 278.  Her brief has no reference to the D.C. Circuit's decision in *Hastings II*, the seminal Supreme Court decision of *Withrow v. Larkin*, 421 U.S. 35 (1975), or any of Defendants' other arguments on this point.  Plaintiff's due-process claim should be dismissed.

## II.    There are additional jurisdictional and merits reasons to dismiss.

Dismissal is also warranted on additional grounds.  First, this Court has no jurisdiction to review the judicial actions of the Federal Circuit's Judicial Council.  Second, comity, exhaustion, and related principles all weigh in favor of dismissing the complaint.  Third, even if the June 5 Order were not moot, Plaintiff's challenges to that order are meritless.

---

[7] Notably, the Judicial Council suspended Judge Newman for one year or *until she complies* with the Special Committee's order for medical examinations, medical records, and an interview, which could happen any day. Ex. B, September 20 Order at 71, ECF No. 30-1.  The unanimous Judicial Council specifically determined that there was "overwhelming evidence of behavior by Judge Newman that provided a reasonable basis for concluding that she may suffer from a disability that renders her unable to discharge the duties of her office." *Id.* 18–19.  So tests performed by independent doctors were important for the Council to fulfill its statutory obligation. *Id.*  And the required examinations would take less than a day.

### A.   This Court lacks appellate jurisdiction to review judicial actions—whether taken under the Act or § 332—by the Judicial Council.

Judge Newman asks for a single district judge to review a unanimous order by 11 Article III circuit judges and to prevent these judges from exercising their powers under the Act. Am. Compl. ¶¶ 80–134. But because Plaintiff's Act-related proceedings and the Judicial Council's June 5 Order suspending new case assignments (if it weren't moot) are judicial in nature, she must seek review in a court with appellate jurisdiction—not a court of original jurisdiction like one.

### 1.   All the actions at issue are judicial.

Plaintiff advances no argument that the Judicial Council was acting other than judicially when it suspended Judge Newman's cases under the Act. *See* Pl.'s Opp'n at 7–9, 25–27. And for good reason. As a majority of the en banc Eleventh Circuit concluded: "The ordinary meaning of 'judicial proceeding' plainly include[s] the process required by the Judicial Conduct and Disability Act." *Pitch v. United States*, 953 F.3d 1226, 1245 (11th Cir. 2020) (en banc) (Pryor, J., joined by six other judges of 12-judge en banc court, concurring). Unsurprisingly, courts have repeatedly held that Act-related proceedings are judicial in nature. *See, e.g.*, *Sanai*, 2021 WL 1339072, at *8; *Adams v. Comm. on Jud. Conduct & Disability*, 165 F. Supp. 3d 911, 922 n.5 (N.D. Cal. 2016); *Overton v. Torruella*, 183 F. Supp. 2d 295, 305 (D. Mass. 2001). And as with attorney-disciplinary proceedings, judicial suspensions under the Act are considered "judicial." Defs.' Br. at 24–25 (collecting cases). Because the Judicial Council's June 5 Order is moot, the Court can easily find that the only actions now at issue (those under the Act) are "judicial."

In any event, this also defeats Plaintiff's argument that the now-moot June 5 suspension under the Judicial Council's § 332 authority—allowing orders for the "effective and expeditious administration of justice"—is administrative rather than judicial.[8] *See generally* Pl.'s

---

[8] Plaintiff highlights the term "*administration* of justice" in § 332(d) as an indication that the judicial council's actions are necessarily "administrative" and not "judicial." *See* Pl.'s

Opp'n at 7–9.  Plaintiff gives no reason why the same type of suspension by the same judicial body is somehow "administrative" when imposed under § 332 and "judicial" when imposed under the Act.  In both situations, a judge is suspended from hearing new cases by their colleagues on the judicial council.  *Compare* 28 U.S.C. § 332, *with id.* § 354.  So both are judicial actions.  *See* Defs.' Br. at 24–26.  That's what the Fifth Circuit held: even though a judicial council may at times act as "administrative body," it "act[s] as a court" when it orders the reassignment of certain cases.  *In re McBryde*, 117 F.3d at 221.

That's why Judge Chandler petitioned the Supreme Court when he was suspended from hearing new cases under the Tenth Circuit Judicial Council's § 332 authority.  While the four-justice majority in that case sidestepped the status of judicial councils, the only three justices to directly analyze the question concluded that a judicial council acts judicially when it suspends new case assignments under § 332.  *Compare Chandler*, 398 U.S. at 86 n.7, *with id.* at 105 (Harlan, J., concurring), *and id.* at 133 (Douglas, Black, JJ., dissenting) ("A judicial council is only the court of appeals for a named circuit sitting en banc.").  Like a judge's "orders setting a time for discovery or trial, or transferring a case to another district," a council's order directing the flow of cases is "an integral step in the progress of those cases from initial filing to final adjudication."  *Id.* at 105 (Harlan, J., concurring).  "[I]n this regard," such orders "are not unlike the extraordinary writ of mandamus" or "the orders entered by courts in proceedings for disbarment of an attorney."  *Id.* at 106; *contra* Pl.'s Opp'n at 26.  So when "performing its central responsibilities under 28 U.S.C. § 332" to direct case assignments, a judicial council "exercises judicial power granted under Article III."  *Chandler*, 398 U.S. at

---

Opp'n at 7, 25.  But she reads far too much into that term.  *See Chandler*, 398 U.S. at 103–05 n.8 (Harlan, J., concurring).  The phrase "administration of justice" is routinely used to reference judicial proceedings.  *See* 28 U.S.C. § 1503(a); *United States v. Aguilar*, 515 U.S. 593, 599 (1995); *Flores v. Attorney General*, 856 F.3d 280, 293 n.66 (3d Cir. 2017) ("[T]he 'administration of justice' . . . means a judicial proceeding."); *United States v. Richardson*, 676 F.3d 491, 502–03 (5th Cir. 2012) ("[O]bstructing the due administration of justice means 'interfering with the procedure of a judicial hearing or trial.'").

110 (Harlan, J., concurring); *id.* at 135 (Douglas, Black, JJ., dissenting) (When a Judicial Council "moves to disqualify a judge from sitting" it is "an inferior judicial tribunal over which [the Supreme Court] ha[s] appellate jurisdiction").

Plaintiff, again, has no response to any of these arguments about the judicial nature of a judicial council's *action*.[9]  *See* Pl.'s Opp'n at 7–9, 25–27.  Instead, she attempts to show that judicial councils are administrative *bodies*.  *Id.* at 7–9.  But as she herself later acknowledges, "the nature of a proceeding 'depends not upon the character of the body but upon the character of the proceedings.'"  *Id.* at 26 (quoting *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 477 (1983)).  And, as discussed above, a judicial council *proceeding* that results in an order suspending case assignments to a particular judge is in the heartland of its "judicial" actions.

This is confirmed by the surrounding statutory scheme, which lays out various tasks that Congress considered "administrative" rather than "judicial."  Much of the federal courts' *administrative* work is done by the aptly named Administrative Office of the United States Courts.  *See Chandler*, 398 U.S. at 97 (Harlan, J., concurring) ("The role of the Administrative Office, and its Director, was to be 'administrative' in the narrowest sense of that term.").  That body undertakes tasks like "[e]xamin[ing] the state of the dockets of the courts"; "[f]ix[ing] the compensation of" court employees; spending funds for the "procurement, installation, and maintenance of security equipment"; submitting budget estimates; and procuring "information technology resources."  28 U.S.C. §§ 604, 605, 612.  The statute itself even identifies administrative actions that judicial councils can "delegate[]" to the circuit executive, including "[m]aintaining a modern accounting system" and "[e]stablishing and maintaining property control records and undertaking a space management program."  *Id.* § 332(e).  None of those activities bear any resemblance to the judicial action here: controlling the assignment of new cases to a particular judge.

---

[9] At one point, Plaintiff even characterizes her participation in the Judicial Council as a constitutional duty of her *judicial* office.  *See* Pl.'s Opp'n at 18; *see* Section II.C.2., *infra*.

Indeed, the fact that a particular action is taken by a *judicial* council is already a good indicator that it may be judicial. *See Ellerbe v. Jud. Council for the Third Cir.*, 2023 WL 2163900, at *2 n.3 (E.D. Pa. Feb. 22, 2023) ("[A]cts taken by the Judicial Council are judicial in nature."). The judicial council "was designed as an actual participant in the management of the judicial work of the circuit." *Chandler*, 398 U.S. at 98 (Harlan, J., concurring). The councils are made up exclusively of federal judges. 28 U.S.C. § 332(a)(1). And they are "authorized to hold hearings, to take sworn testimony, and to issue subpoenas and subpoenas duces tecum."[10] *Id.* § 332(d)(1). In any event, "at least in the issuance of orders" to judges regulating "the exercise of their official duties, the Judicial Council acts as a judicial tribunal for purposes of [ ] appellate jurisdiction under Article III." *Chandler*, 398 U.S. at 102 (Harlan, J., concurring). To hold otherwise "would suggest an entity not wielding judicial power might review" such council orders, raising "constitutional questions" that should be avoided. *Hohn v. United States*, 524 U.S. 236, 245–46 (1998).

### 2.  Judicial actions must be reviewed in a court with appellate jurisdiction, not a court of original jurisdiction like this one.

Even if the Judicial Council acted judicially, Plaintiff claims that she may still bring her claims in district court. *See* Pl.'s Opp'n at 26–27. When a group of federal circuit judges makes a judicial decision, Plaintiff says, there is "no indication" that it "can only be challenged by way of an 'appeal.'" *Id.* at 26. Apparently, when litigants disagree with a decision by the D.C. Circuit, there is no need to "appeal"; they can simply file suit in the District of Maryland challenging the D.C. Circuit's decision because that district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at 27. The federal court system does not work like that.

---

[10] While Plaintiff notes the council's ability to promulgate rules after "appropriate public notice and an opportunity for comment," that requirement applies only to "general order[s] relating to practice and procedure." *Compare* Pl.'s Opp'n at 7, *with* 28 U.S.C. § 332(d)(1). Setting aside whether such "general order[s]" would be judicial, there is no notice-and-comment requirement for a judicial council's specific orders directed at a particular judge.

As Defendants explained (with no response from Plaintiff), district courts "are empowered to exercise original, not appellate, jurisdiction." Defs.' Br. at 26 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) ("The jurisdiction possessed by the District Courts is strictly original."). That means district courts can "hear and decide a matter before any other court can review the matter." *Original Jurisdiction*, Black's Law Dictionary (11th ed. 2019). But they have no power to directly review the judicial decisions of other federal judges. *See Appellate Jurisdiction*, Black's Law Dictionary (11th ed. 2019) (defining "appellate jurisdiction" as "[t]he power of a court to review and revise a lower court's decision"); Defs.' Br. at 26 (collecting cases); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 175 (1803) ("[T]he essential criterion of appellate jurisdiction" is "that it revises and corrects the proceedings in a cause already instituted, and does not create that cause."). From the beginning, "the Framers crafted th[e] charter of the judicial department with an expressed understanding that it gives the Federal Judiciary the power" to decide issues "subject to review only by superior courts in the Article III hierarchy." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19 (1995).

No court has squarely held that lower federal courts could directly review judicial actions by a judicial council. *See* Defs.' Br. at 27 & n.12. That's why Judge Chandler sought review in the Supreme Court when he was suspended from hearing cases under the same statutory provision at issue here. *Chandler*, 398 U.S. at 79. And that's why the Fifth Circuit held that it had no jurisdiction to review similar suspension orders of its *own* judicial council.[11] *In re McBryde*, 117 F.3d at 221. If the Fifth Circuit had no jurisdiction to review orders of its

---

[11] The Fifth Circuit ultimately held that it could decide Judge McBryde's mandamus petition only because the Chief Judge of the Northern District of Texas had issued orders implementing the judicial council's § 332 order. *In re McBryde*, 117 F.3d at 221–22; *id.* at 221 (concluding that "we lack both direct appellate jurisdiction over the Council's order and inherent jurisdiction to issue a writ of mandamus directly to the Council"). Regardless of whether there is such a fictional basis for jurisdiction, *see* Defs.' Br. at 28 n.13, it is irrelevant here. No district judge was involved at any stage of the June 5 Order. And *this* Court has no appellate jurisdiction to issue orders to another district court anyway.

own judicial council, certainly a district court has no jurisdiction to enjoin the judicial council of an entirely *different circuit*. *Id.* at 220–21 (noting that the Fifth Circuit "lack[s] direct appellate jurisdiction" over its judicial council just as it "lack[s] jurisdiction over district courts outside of this circuit"). Federal courts have "only the jurisdiction that Congress grants [ ] by statute." *Id.* at 220. Yet, crucially, Plaintiff "identifies no statute granting a right of review of Judicial Council action to this court, and we have found none." *Id.*

Put simply, "direct review by a district judge of the actions of circuit judges would present serious incongruities and practical problems certainly not contemplated" by Congress. *Chandler*, 398 U.S. at 93–94 (Harlan, J., concurring); *In re Imperial "400" Nat'l, Inc.*, 481 F.2d 41, 50 (3d Cir. 1973) (Lumbard, J., dissenting) ("It would be altogether incongruous for any lower court or single panel of judges in the Court of Appeals" to "pass upon whether what the council has done is a lawful and proper exercise of the council's powers."). And "there is no indication that" Congress "empower[ed] the District Courts to issue mandamus" or similar orders "to other judicial tribunals." *Chandler*, 398 U.S. at 93–94 (Harlan, J., concurring); *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1246 (10th Cir. 2007) ("For a district court to issue a writ of mandamus" or similar order "against an equal or higher court would be remarkable."); *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1393 n.19 (9th Cir. 1987) ("Needless to say, a district court has no [ ] authority to 'review' any ruling of a court of appeals."). So at least where a judicial council is acting judicially, a district court has no jurisdiction to review those judicial actions.

Plaintiff does not mention (much less respond to) any of these authorities or concerns. *Compare* Defs.' Br. at 26–27, *with* Pl.'s Opp'n at 26–27. Instead, she advances a novel original-really-means-appellate argument without any grounding in law or logic. That attempt should be easily rejected. Again, this Court need not determine whether review of the Judicial Council's action is available in the Supreme Court by mandamus or otherwise. Defs.' Br. at 27; *Imperial "400"*, 481 F.2d at 50 (Lumbard, J., dissenting) (opining that review of judicial council action is available only by way of "a petition to the circuit council to review its action or a

petition for mandamus to the Supreme Court").  It is sufficient to recognize that the judicial
actions of 11 circuit judges here render those actions unsuitable for review by a district court.

**B.   Comity, exhaustion, and related concerns weigh in favor of dismissing the complaint.**

In their motion, Defendants argued that this Court should decline jurisdiction due to
the pending misconduct proceedings under the Act and the fact that the Judicial Council may
take further action on the June 5 Order.  *See* Defs.' Br. at 46–48.  Principles of comity and
exhaustion, Defendants argued, warranted this Court yielding to those ongoing proceedings
to "preclude disruptive injunctive relief by federal courts."  *Hastings v. Jud. Conf. of U.S.,* 770
F.2d 1093, 1102 (D.C. Cir. 1985) ("*Hastings I*").  As the D.C. Circuit explained: before any
separate federal court assesses Judge Newman's claims, "the authorities charged with admin-
istration of the Act should at least have an opportunity" to discharge those responsibilities.
*Hastings II*, 829 F.2d at 103.  Disregarding that statutorily prescribed process would be tanta-
mount to "rendering judgment on the constitutionality of proceedings *while* the proceedings
themselves are going on."  *Hastings I*, 770 F.2d at 1102.  Given the ongoing nature of the
proceedings under the Act, Defendants asked the Court to decline jurisdiction and dismiss
Plaintiff's complaint.  Defs.' Br. at 48.

Plaintiff failed to respond to this argument.  The Court should therefore find that she
conceded the point and dismiss the case.  *See Colindres*, 71 F.4th at 1025; *Harris*, 2022 WL
3452316, at *13 (collecting cases); *see* Section I.C.2., *supra*.

Subsequent events prove that the Court always had ample reason to dismiss this case
for comity and exhaustion reasons.  *See Adams v. Jud. Council of Sixth Cir.*, 2020 WL 5409142,
at *6 (D.D.C. Sept. 9, 2020) (finding mootness where "events outrun the controversy such
that the court can grant no meaningful relief").  Plaintiff has asked this Court to "order the
termination of any further investigation of Plaintiff by the Judicial Council of the Federal
Circuit," Am. Compl. at 31.  But the proceedings under the Act have progressed beyond the
Judicial Council and are now before the Judicial Conference's JC&D Committee.  *See* JC&D

Rule 20(f) (explaining that the JC&D Committee automatically reviews judicial-council decisions under these circumstances and "the subject judge may make a written submission to" the JC&D Committee "but will have no further right of review").  Any relief from the Judicial Council's actions would necessarily lie against the JC&D Committee, which is not a defendant here.  *See Lewis v. Governor of Alabama*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc) ("[I]t must be *the effect of the court's judgment on the defendant*—not an absent third party—that redresses the plaintiff's injury, whether directly or indirectly."); *Surfside Non-Surgical Orthopedics P.A. v. Allscripts Healthcare Sols., Inc.*, 2019 WL 2357030, at *6 (N.D. Ill. June 4, 2019) ("[I]f the plaintiff has sued the wrong defendant, the Court cannot redress its injury.").  Simply put, the matter is now before the Judicial Conference, not the Judicial Council or the Special Committee, and there is therefore nothing left to enjoin at those levels.  These realities demonstrate the perils of Plaintiff's choice to sue in district court while the underlying proceedings remain subject to layer upon layer of review by numerous Article III judges.

## C.   Plaintiff's challenge to the Judicial Council's June 5 Order suspending new case assignments is unavailing.

In her preliminary-injunction motion, Plaintiff argued that the Judicial Council lacked authority to suspend her case assignments in the June 5 Order.  *See* Pl.'s Br. at 30–54.  And Defendants moved to dismiss.  Defs.' Br. at 28, 37–46.  For the reasons discussed above, this issue is moot and, in any event, this Court has no power to review this claim.  *See* Sections I.A. & II.A, *supra*.  But if the Court reaches this issue, it should dismiss.

### 1.   The Judicial Council has full statutory authority to craft an appropriate remedy for a judge's backlog of cases.

"Each judicial council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit."  28 U.S.C. § 332(d)(1).  As Defendants explained, the text, history, purpose, and case law of § 332 are unmistakably clear that a judicial council may suspend a judge from hearing new cases until her backlog is cleared.  Defs.' Br. at 37–42.  Plaintiff has little answer to these points.  *See* Pl.'s Opp'n at 20–24.  Gone is her main argument that judicial councils can only issue "general" orders and not

"order[s] specifically targeting Judge Newman." *Compare* Pl.'s Br. at 35–36, *with* Pl.'s Opp'n at 20–24.  Now, Plaintiff argues that the (moot) June 5 Order was unlawful because it was an "indefinite" suspension, implying that it permanently barred new cases. *See* Pl.'s Opp'n at 20–24.  She then uses that theory to distinguish various cases that support Defendants' position. *See id.*  These arguments should be rejected.

"We start where we always do: with the text of the statute." *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023).  On its face, § 332's text places no limit on the Judicial Council's ability to "make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit." 28 U.S.C. § 332(d)(1); Defs.' Br. at 38.  As Defendants noted, the imperative "shall" indicates that, where "necessary and appropriate," a judicial council must act when a judge has a substantial backlog.  Defs.' Br. at 38.  Conspicuously absent from Plaintiff's opposition is any discussion of this text at all. *See* Pl.'s Opp'n at 20–24.  She neither attempts to analyze the broad statutory language nor attempts to justify her cramped view of the council's power.

The same is true for § 332's history and purpose.  As Defendants explained at length, § 332 was enacted for courts to correct "whatever is wrong in the administration of justice, from whatever source it may arise."  Defs.' Br. at 38 (quoting Ex. 2, JCUS Report at 6).  In the words of then-Judge Warren Burger: "Any problem—whatever it may be—relating to the expeditious and effective administration of justice within the circuit is within the power of the circuit judicial council." *Id.* (quoting Ex. 2, JCUS Report at 6).  And that primarily includes judicial delay. *Id.* at 39–40 (collecting cases).  As Justice Harlan (and many other judges) recognized, the "abatement of delays in disposition of cases was a principal purpose for creation of the Councils." *Chandler*, 398 U.S. at 123 (Harlan, J., concurring).  Plaintiff says nothing to rebut this extensive history; in fact, she now seems to agree that "the whole *raison d'être* for judicial councils is to combat excessive delays in resolution of cases." Pl.'s Opp'n at 22.  Her only argument is that "Defendants are unable to point to a *single* case where in order to accomplish this goal, any judicial council indefinitely suspended one of its colleagues from

22

hearing cases." *Id.* But whether judicial councils have such power or not—and nothing in the text or history of § 332 indicates that they do not—is entirely beside the point.

The Judicial Council never used its § 332 power to "indefinitely" suspend Judge New-man. As Defendants explained, Judge Newman was "excluded in the rotation for new case assignments" only "at this time" and only "based on the facts described [in the June 5 Order] pending further order of the Judicial Council." June 5 Order at 5–6; Defs.' Br. at 37 n.20. The "facts described" in the June 5 Order were, of course, about Judge Newman's "backlog of seven opinions." June 5 Order at 3; Defs.' Br. at 37 n.20. That backlog was recently cleared and, true to its word, the Judicial Council vacated its June 5 Order. *See* Ex. 4, November 9 Order (noting that Judge Newman's final backlogged opinion issued on November 8). As this sequence indicates, there was never any indication that the June 5 Order was anything other than temporary.

This defeats most of Plaintiff's remaining arguments. For example, she tries to distin-guish *Colón-Muñoz* by arguing that, unlike the suspension there, the June 5 Order has "no timeline for reconsideration" or "end point." Pl.'s Opp'n at 24. But once that mistaken "in-definite" characterization is disregarded, *Colón-Muñoz* supports the June 5 Order. There, the First Circuit upheld a council order under § 332 that suspended new case assignments to a particular judge for one year and reassigned dozens of *pending* cases that the judge unduly delayed. *See* Pl.'s Ex. C, ECF No. 30-1. The court explained that "[a]n order of the Judicial Council reassigning cases (or providing an impartial mechanism for doing so) to address ju-dicial delay falls within the broad mandate of section 332(d)."[12] *United States v. Colon-Munoz,*

---

[12] Plaintiff argues that she might hypothetically have had a "*smaller* backlog" than one of her colleagues, yet still be subject to the June 5 Order. Pl.'s Opp'n at 24 & n.13. But this ignores the Judicial Council's finding that Judge Newman showed an "inability to clear [her] backlog despite the absence of new case assignments demanding her attention," and "that assigning her new cases will only further interfere with expeditious execution of the work of the Court." June 5 Order at 4. Restoring Judge Newman to assignments just because she made *some* progress on clearing her backlog would have frustrated the purpose of the Coun-cil's Order. Again, though, the June 5 Order has now been vacated.

318 F.3d 348, 354–55 (1st Cir. 2003) (citing *Chandler*, 398 U.S. at 98–102 (Harlan, J., concurring)).  So too here.

That's why none of the seven Justices in *Chandler* questioned whether the Tenth Circuit Judicial Council could, as Plaintiff herself puts it, enter an order that "suspended assignment of new cases to Judge Stephen S. Chandler, 'until the further order of the Judicial Council.'" Pl.'s Opp'n at 22 (quoting *Chandler*, 398 U.S. at 78).  Far from criticizing this as an "indefinite" suspension, Justice Harlan recognized that a judicial council may require a judge to "clear up his docket" or may "channel cases to other judges when a situation exist[s] with respect to one judge that was inimical to the effective administration of justice."  *Chandler*, 398 U.S. at 120–21.  And while Plaintiff says that Judge Chandler "apparent[ly] acquiesce[d]" to the way his colleagues divided work *after* the challenged suspension, that factual idiosyncrasy is irrelevant to whether the judicial council had the power to suspend Judge Chandler in the first place.  *See* Pl.'s Opp'n at 23.  On that point, the majority was unequivocal: court rules refusing to assign "more cases until opinions and orders issue on [a judge's] backlog" are "reasonable, proper, and necessary rules, and the need for [their] enforcement cannot reasonably be doubted."  *Chandler*, 398 U.S. at 85.

In the same vein, nothing in the Fifth Circuit's *In re McBryde* decision casts doubt on the Judicial Council's authority to suspend Judge Newman for her case backlog.  Citing that case, Plaintiff claims that a judicial council must follow the Act if it wishes to "punish or otherwise censure a judge for misconduct."  Pl.'s Opp'n at 23.  But there is no such limitation on § 332 orders (whether in the statutory text or otherwise).  And in any event, the June 5 Order did not "punish" Judge Newman; it plainly states that it "is not a censure but rather a decision made for the effective and expeditious administration of the business of the court."[13]

---

[13] Plaintiff relatedly suggests that the Judicial Council could not have lawfully issued the June 5 Order until the Act-related proceedings had concluded.  Pl.'s Opp'n at 21.  But the June 5 Order—predicated on Judge Newman's case backlog and delays—was issued under § 332.  So the requirements of the Act have no relevance to the June 5 Order.  Indeed, the Act, in 28 U.S.C. § 362, states that nothing in the Act shall be construed to affect any other provision of Title 28, which includes § 332.

June 5 Order at 5.  Even under the Fifth Circuit's standard, the court made clear that judicial councils do not "lack[] the authority under § 332 to *reassign* cases for administrative reasons." *In re McBryde*, 117 F.3d at 229 (emphasis added).  This blesses judicial-council action that goes *beyond* the June 5 Order: the Judicial Council simply allowed Judge Newman to do her work unimpeded by new cases rather than taking away *pending* cases she was already adjudicating.

Again, Defendants are aware of no court holding that a judicial council cannot, under § 332, address concerns over judicial backlog or delay by suspending new case assignments to a particular judge.  Defs.' Br. at 41.  And Plaintiff has pointed to none.  This Court should not be the first.  Section 332 gives the Judicial Council full authority to do exactly what it did: suspend Judge Newman from hearing new cases until she clears her backlog.  So even if Plaintiff's claims challenging the June 5 Order were not moot, they should be dismissed.

### 2.     The June 5 Order was lawfully issued.

Plaintiff continues to argue that the June 5 Order "was unlawfully promulgated because Judge Newman . . . was not given notice, much less invited to participate in the Judicial Council's deliberations."  Pl.'s Br. at 37–39; Pl.'s Opp'n at 14–17.  But as Defendants explained, Judge Newman was given notice of her backlog and the workload-related statistics at issue, which became the basis for the June 5 Order.  Defs.' Br. at 42.  And the June 5 Order itself was issued in response to Judge Newman's own request for reconsideration of her previous suspension.  *Id.*  Again, Plaintiff provides no colorable constitutional or statutory basis for any right to participate in the discussion and vote of the Judicial Council.[14]  But beyond

---

[14] While Plaintiff points to § 332 "for Judge Newman's right to participate in Judicial Council meetings," that provision explicitly allows "the chief judge of the circuit" to "excuse[]" council members from meetings.  *Compare* Pl.'s Opp'n at 18, *with* 28 U.S.C. § 332(a)(6).  And as other statutory provisions make clear, nothing entitles *every* circuit judge to serve on a judicial council.  *See* 28 U.S.C. § 332(a) (allowing "an equal number of circuit judges and district judges"); *id.* § 359(a) (barring subject judges from serving on a judicial council).  The Constitution provides no right to attend council meetings either.  Pl.'s Opp'n at 18.  For most of this Country's history, judicial councils did not even exist.  *See* Defs.' Br. at 8–9 (noting their creation in 1939).  And Plaintiff cites no case indicating that federal judges must serve on a judicial council to fulfill the constitutional duties of their office.

25

that, Congress has straightforwardly directed that no judge who is being investigated under the Act may serve on a judicial council. 28 U.S.C. § 359(a). Because Judge Newman was the subject of the Special Committee's investigation when the Judicial Council met to consider the action taken in the June 5 Order, her exclusion was required.

The statutory text is clear: "[n]o judge whose conduct is the subject of an investigation under this chapter shall serve" upon "a judicial council" until "all proceedings under this chapter relating to such investigation have been finally terminated." 28 U.S.C. § 359(a). Despite Plaintiff's wishes, the text makes no exception for a judge to participate on a judicial council for matters *other than* the complaint leveled against them. Defs.' Br. at 42–43. And it is hardly unreasonable for Congress to decide that if a judge's misconduct or disability is serious enough to warrant a special-committee investigation, then the judge should not be serving on a judicial council charged with deciding other matters concerning, for example, "the effective and expeditious administration of justice within [the] circuit." Defs.' Br. at 43; 28 U.S.C. § 332(d)(1). That's not reading the statute "literally." Pl.'s Opp'n at 15. It's just reading the statute. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020) (Courts "must enforce plain and unambiguous statutory language . . . according to its terms."); *Allegheny Def. Project v. FERC*, 964 F.3d 1, 18 (D.C. Cir. 2020) ("[C]ourts must take statutory language at its word."). By contending that § 359 "is geared only to participation in the investigatory and adjudicatory functions taken in context of the Disability Act," Plaintiff freelances a reading divorced from the statutory text. Pl.'s Opp'n at 15.

This is only reinforced by the statute's subsequent provision. *Contra* Pl.'s Opp'n at 16. There, Congress mandates that "[n]o person shall be granted the right to intervene or to appear as amicus curiae in any proceeding before a judicial council or the Judicial Conference *under this chapter*"—that is, under the Act. 28 U.S.C. § 359(b) (emphasis added). The fact that Congress specifically carved out "proceeding[s] . . . under this chapter" in § 359(b) but *not* in

§ 359(a) confirms that Congress wanted a subject judge barred from *all* activities of special committees, judicial councils, the Judicial Conference, or its standing committee.[15]

Consistent with this clear statutory command, Judge Newman was not "entitled" to participate in the Judicial Council's June 5 decision on her suspension. Pl.'s Opp'n at 18. The statute provides that "[e]ach member of the council shall attend each council meeting unless excused by the chief judge of the circuit." 28 U.S.C. § 332(a)(6). But Judge Newman *was* "excused" from attending by the Chief Judge. *See* Defs.' Br. at 44 & n.23. And if Plaintiff were correct that the statute grants her an absolute right (and obligation) to attend all council meetings, then § 359(a)'s prohibition on her attendance would be meaningless. Courts do not read statutes like that. *See Genus Med. Techs. LLC v. FDA*, 994 F.3d 631, 638 (D.C. Cir. 2021) ("[A] statute should be construed to give effect to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."). And this Court should not do so either.

Plaintiff cannot salvage her misreading by disputing the Chief Judge's underlying authority to "excuse[]" Judge Newman from the council meeting. Pl.'s Opp'n at 18. Despite Plaintiff's protestations, nothing in the statutory text requires a member of the judicial council to *request* excusal before they may be excused from a council meeting. And the clear definition of "excuse" straightforwardly refutes such a requirement. *See* Defs.' Br. at 44 n.23. Yet again, Plaintiff says nothing to rebut these arguments. The best she can do is conjure hypotheticals about chief judges excusing half the council based on their personal preferences. But this case is a far cry from such far-fetched scenarios. Pl.'s Opp'n at 18–19. As Defendants (and the

_____

[15] This also dispenses with Plaintiff's convoluted argument contrasting § 359(b)—regarding amicus participation in Act-related proceedings—with § 332—contemplating "public notice and an opportunity for comment" before a judicial council issues "[a]ny general order relating to practice and procedure." *See* Pl.'s Opp'n at 15–16. It is simply not true that § 332(d) "require[s] that which § 359(b) explicitly forbids." Pl.'s Opp'n at 16. A public commenter under the former is not "interven[ing] or . . . appear[ing] as amicus curiae" for purposes of the latter. But more fundamentally, Plaintiff conspicuously omits that § 359(b) is *on its face* limited only to proceedings under the Act: it prohibits amicus participation in "proceeding[s] . . . under this chapter." *See* 28 U.S.C. § 359(b). And § 332 is not part of "this chapter [16]" of Title 28. So there is no tension between § 359(b) and § 332(d) at all.

Special Committee) explained, "[t]he Judicial Council properly operated on the view that Judge Newman would be recused in any decision" about suspending herself from hearing new cases.  Defs.' Br. at 44.  And, as explained above, her exclusion was *required* by the Act.  *See* 28 U.S.C. § 359(a).  Under those circumstances, it was common sense that Judge Newman should be excused from a council meeting regarding her own suspension.

In short, there was nothing "unlawful" about how the Judicial Council issued its June 5 Order.  Because § 359 barred Judge Newman from serving on the Judicial Council at that time, and because she should have properly been recused from ruling on her own suspension, she was properly excused from those deliberations.

And nothing about the twice-moot March 8 Order changes that outcome.  That order was superseded by the June 5 Order, which considered Judge Newman's suspension *de novo*.  Defs.' Br. at 45.  And the June 5 Order was then vacated by the Judicial Council's November 9 Order.  So there can be no argument that the March 8 Order continues to have any relevance here.  As the D.C. Circuit held, when a challenged order is "superseded by a subsequent [ ] order," that challenge is "plainly moot."  *Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 46 (D.C. Cir. 1992).  This is especially true in the context of Plaintiff's request for an injunction because Plaintiff "may not rest on past injury" to seek "prospective declaratory and injunctive relief."  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *see generally* Am. Compl. ¶¶ 55–71 (complaining about the June 5 Order).

Just as when a court of appeals affirms a district court or a district court denies a reconsideration motion, there is nothing "contrived" about taking a fresh look at an earlier judicial decision and reaching the same result.  Pl.'s Opp'n at 12–13.  This is one of many reasons why Plaintiff's citation to *Department of Commerce v. New York* is inapposite.  That was an APA case where the Supreme Court vacated an agency decision because "the evidence

tells a story that does not match the explanation the Secretary gave for his decision."[16]  139 S. Ct. 2551, 2575 (2019).  But the Supreme Court did "not hold that the agency decision [ ] was substantively invalid"; it remanded to the agency for a *new* decision.  *Id.* at 2576.  That's the equivalent of the June 5 Order: even assuming the March 8 Order was defective (it wasn't), the Judicial Council took a fresh look at Judge Newman's caseload and issued a *new* decision.  *See* Ex. O, June 5 Order at 1–5.  This is exactly the type of reconsideration blessed by the Supreme Court.  Plaintiff's procedural objections to the June 5 Order are meritless.

## CONCLUSION

For the reasons explained above and in Defendants' prior brief, the Court should dismiss Plaintiff's complaint and deny Plaintiffs' preliminary-injunction motion as moot.

---

[16] Beyond the inapplicability of an APA case to the Judicial Council's actions, the facts of *New York* bear little resemblance to the facts here.  As early as February 2023, Judge Newman's backlog "had placed her in violation of Federal Circuit Clerical Procedures #3, ¶ 15" and she therefore "had already been foreclosed from assignment to any panel for the April sitting."  Ex. O, June 5 Order at 2.  So when the Judicial Council met on March 8, "significant concerns *had been* raised about Judge Newman's backlog of cases and her apparent inability to issue opinions in a timely fashion."  *Id.* (emphasis added).  And it was those *same* concerns over Judge Newman's backlog and delays that motivated the Judicial Council when it reconsidered the issue on June 5.  *Id.* at 3 ("Unfortunately, the Council's concerns about Judge Newman's abnormally large backlog of cases and her apparent inability to issue opinions in a timely fashion have not abated. To the contrary, they have increased.").  The record flatly refutes Plaintiff's baseless claim that Defendants issued the March 8 Order "long before they settled on the appropriate justification for the action."  Pl.'s Opp'n at 12.

DATED:  November 17, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Director, Federal Programs Branch

/s/ Stephen Ehrlich
STEPHEN EHRLICH
M. ANDREW ZEE
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
Peter W. Rodino, Jr. Federal Building
970 Broad Street, 7th Floor
Newark, NJ 07102
Phone:  (202) 305-9803
Email:   stephen.ehrlich@usdoj.gov

Attorneys for Defendants