```
1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
2
   HON. PAULINE NEWMAN,            ) Civil Action
3                                  ) No. 1:23-CV-1334
                   Plaintiff,      )
4                                  )
   vs.                             ) MOTION HEARING
5                                  )
   HON. KIMBERLY A. MOORE,         )
6  et al.,                         ) Washington, D.C.
                                   ) January 25, 2024
7                  Defendants.     ) Time:  10:05 A.M.
                                   )
8  _____

9          TRANSCRIPT OF MOTION HEARING HELD BEFORE
        THE HONORABLE JUDGE CHRISTOPHER R. COOPER
10                UNITED STATES DISTRICT JUDGE

11 _____

                    A P P E A R A N C E S
12
   For Plaintiff:      GREGORY DOLIN
13                     JOHN JULIAN VECCHIONE
                       New Civil Liberties Alliance
14                     1225 19th Street NW
                       Suite 450
15                     Washington, DC 20036

16 For Defendants:     STEPHEN EHRLICH
                       U.S. Department of Justice
17                     Civil Division, Federal Programs Branch
                       1100 L Street, NW
18                     Washington, DC 20005

19                     MICHAEL ANDREW ZEE
                       U.S. Department of Justice
20                     Civil Division, Federal Programs Branch
                       450 Golden Gate Avenue, Room 7-5395
21                     San Francisco, CA 94102

22 _____

   Court Reporter:     Tamara M. Sefranek, RMR, CRR, CRC
23                     Official Court Reporter
                       United States Courthouse, Room 6714
24                     333 Constitution Avenue, NW
                       Washington, D.C. 20001
25                     202-354-3246
```

```
1                        P R O C E E D I N G S
2              THE COURTROOM DEPUTY:  Your Honor, we're on the
3    record for Civil Case 23-1334, the Hon. Pauline Newman v. Hon.
4    Kimberly A. Moore, et al.
5              Counsel, please approach the lectern, identify
6    yourself for the record, starting with the plaintiff.
7              MR. DOLIN:  Good morning, Your Honor.  Gregory Dolin
8    for Judge Newman.
9              THE COURT:  Good morning, Mr. Dolin.
10             MR. EHRLICH:  Good morning, Your Honor.  Stephen
11   Ehrlich from Department of Justice on behalf of the defendants.
12             THE COURT:  Good morning, Mr. Ehrlich.  Just give me
13   a minute to get situated.
14             Okay.  I know we're here on cross-motions; we have a
15   preliminary injunction motion by the plaintiff and a motion to
16   dismiss by the defendants.  The defendants' motion is
17   dispositive, so why don't we start with the government, if
18   that's okay.
19             And just before you start, I know there are a lot of
20   moving parts out there.  The way that I've sort of organized
21   the case in my own mind is, first, the mootness of the 332(d)
22   claims.
23             Second, whether the as-applied challenges to the
24   Judicial Conduct and Disability Act are barred by
25   Section 357(c).
```

1          Third, does the Court otherwise lack original

2     jurisdiction over at least the as-applied claims.  A subset of

3     that question is which claims are facial as opposed to

4     as-applied.  And then, finally, the merits of the facial

5     claims.

6          So I don't know if that jibes with what you -- how

7     you plan to lay it out, but if you could go in that order, that

8     would be helpful.

9          MR. EHRLICH:  Absolutely, Your Honor.  I'm happy to

10    do that.

11         Again, may it please the Court, Stephen Ehrlich from

12    the Department of Justice on behalf of defendants.  Defendants

13    did not want to be here today, nor should they be.  In the last

14    year, 96-year-old Judge Newman has shown concerning signs that

15    a possible disability is impeding her ability to perform the

16    duties of an active circuit judge.

17         From the start, other members of the federal circuit,

18    who have long served with and value Judge Newman, approached

19    her in a respectful manner to address the difficult situation,

20    attempting an informal resolution that would have avoided --

21         THE COURT:  Counsel, I'm aware of the background.

22    What I'd like to do is turn the temperature down a little bit

23    and focus on the legal issues, okay?

24         MR. EHRLICH:  Absolutely.  So I'll start with

25    mootness, as Your Honor mentioned.

1          Obviously, we think the June 5th order under the

2     Judicial Council --

3          THE COURT:  If you could slow down just a little bit

4     for the benefit of the court reporter.

5          MR. EHRLICH:  Apologies, Your Honor.  I have an issue

6     with that.

7          THE COURT:  That's all right.  I know you have a lot

8     to say.

9          MR. EHRLICH:  So we believe that June 5th order is

10    moot.  I don't think there's any dispute that it's moot; just

11    an issue of whether either of the mootness exceptions that have

12    been briefed in the supplemental briefs overcome that.  And, of

13    course, we would say no.

14          So on voluntary cessation, we say that doesn't apply,

15    first of all, to governmental actors, especially federal

16    judges.  I think as the D.C. Circuit has made clear, you

17    don't -- they're loath to impute a manipulative intent to other

18    government actors.  I think that's all the more so here when

19    they're federal judges.  Also --

20          THE COURT:  I mean, that principle comes from the

21    *Clarke* case, I believe.

22          MR. EHRLICH:  That's right, Your Honor.

23          THE COURT:  Has that been consistently applied by the

24    circuit and other circuits?  I mean, certainly, I can envision

25    scenarios where a federal actor would, if not engage in

1    manipulative conduct, at least strategic conduct.  I mean, I

2    see it all the time.  I mean, it's understandable if someone

3    would withdraw a -- if an agency were to withdraw some sanction

4    or some course of dealing in order to moot a claim.

5          MR. EHRLICH:  Yeah.  I think courts have consistently

6    recognized that this causes -- there's serious doubts about

7    applying this.  What -- they usually, sort of, do both prongs

8    anyway and end up finding no voluntary cessation.  And I would

9    point to the *Chang* case from Judge Walton, issued last month,

10   and he echoed these same concerns that applied in *Alaska*.

11         I think, even more to the point, this exception only

12   applies if it was done to avoid litigation, and that's clearly

13   not what we have here.  The June -- the November 9th order that

14   vacated the June 5th order was done for one reason only, which

15   is she cleared her backlog, which was the basis of the June 5th

16   order, and so they vacated the order.  That was a suspension

17   due to that backlog.  So it wasn't to avoid litigation.

18         We've briefed the merits.  We're not avoiding the

19   issue.  I think for those reasons, that exception clearly does

20   not apply.

21         And then we have, obviously, arguments for --

22         THE COURT:  Be that as it may, certainly, the council

23   could reimpose the sanction at the stroke of a pen, as the

24   circuit said in *Alaska* was sort of one factor.  I know that

25   that gets more at the capable of repetition yet evading review

1    prong.

2          But should the Court not consider the ease with which

3    the circuit could reimpose the sanction given the fact that

4    Judge Newman has indicated that it is likely that she will not

5    be able to keep up with her cases going forward?

6          MR. EHRLICH:  Yes.  So I think a couple things on

7    that, Your Honor.  So I think, first of all, there's an

8    independent -- for both exceptions, she would have to show a

9    reasonable expectation that it would reoccur, and I think -- so

10   for both they, sort of, collapse on this prong, in our view.

11         I think both have the same issue, which is -- one is

12   she has an independent suspension under the act.  So even if

13   you enjoin the June 5th order -- which, obviously, we think is

14   moot -- it would have no effect.  She's not going to begin

15   hearing cases tomorrow, and so she can't build up a backlog.

16   And so any backlog from there is purely speculative.

17         But even if she could hear cases, I think it's

18   entirely speculative that the same exact thing would occur as

19   June 5th.  That backlog took a while to build up.  Some of

20   those cases were 100, 200, 300 days old throughout the

21   suspension.  So there's no -- there's no indication that that

22   would happen -- it certainly wouldn't happen immediately.

23         Even if it happened, the Judicial Council may take a

24   different approach.  They may act proactively.  They may do

25   something short of suspension.  I think we just have no idea.

1    Obviously, it's in the discretion of those 11 circuit judges to

2    determine how to deal with that situation if and when she

3    begins sitting again.

4          I think right now, sitting here today, there's no

5    reasonable expectation that the exact same thing is going to

6    occur.  And when you look at cases like *Alaska*, like the *Usher*

7    case we cite, like the *Armstrong* case, where it's not a matter

8    of reviving the exact thing that's going on here, and you have

9    to speculate about what other actors will do here, other 11

10   circuit judges who acted unanimously in this case.  But once

11   you have to speculate about that, it doesn't really fit into

12   these exceptions for mootness.  You're speculating about

13   further actions and what may happen.

14         So I think for those reasons, we are saying neither

15   of the exceptions would apply.

16              THE COURT:  Okay.

17              MR. EHRLICH:  One moment, Your Honor.  I'm just going

18   to grab some water.

19              THE COURT:  Sure.

20              MR. EHRLICH:  So I'm happy, Your Honor, to turn to

21   the Section 357 bar.  I think that's -- unless you have more

22   questions on mootness.

23              THE COURT:  No.  Please do.

24              MR. EHRLICH:  I think this is fairly laid out in our

25   briefs.  But our position is, basically, *McBryde* covers this.

1    The 357 bar takes care of all as-applied and statutory

2    challenges under the act.  And as pled in the complaint, that's

3    all we have here.  We have, basically, as pled only as-applied

4    challenges under the act to orders and determinations by the

5    special committee and the Judicial Council, and so we think

6    *McBryde* clearly, clearly bars --

7            THE COURT:  Your position is that every count in the

8    complaint is an as-applied challenge?

9            MR. EHRLICH:  Yes, I think so.  As pled, Your Honor,

10   I think that's right.  I understand my friend on the other side

11   thinks that some are trying to assert facial challenges, so

12   he's free to argue that.

13           But as currently pled, as we lay out in our briefs,

14   there's all sorts of orders and determinations that they're

15   challenging.  So just to put this in relief, I think everybody

16   agrees that Counts 2, 3, 4, 10, and 11 are --

17           THE COURT:  Hold on.  Hold on.

18           MR. EHRLICH:  Sure.

19           THE COURT:  2, 10, 4, 11?

20           MR. EHRLICH:  2, 3, 4, 10, and 11, Your Honor.  And I

21   think this is plaintiff's reply at 28 where we, sort of, agree

22   on this.

23           So I think those are clearly barred -- again, not --

24   there's judicial review, but the judicial review is happening

25   in the act-related proceedings with those federal judges.  So I

1    think we all agree that those are as-applied.

2            So the dispute, I think, plaintiff is honing in on

3    is, obviously, the remaining counts, which are 1, 5, 6, 7, 8,

4    and 9.  So 1 and 5 through 9.

5            I think these -- again, Judge Newman and -- plaintiff

6    may have tried to assert a facial challenge, but as pled, we're

7    talking about orders and determinations.  For example, Count 1

8    is their supposed constructive impeachment claim, and that

9    talks about defendants' orders and threats constitute an

10   attempt to remove plaintiff from office unlawfully, and then

11   talks about -- it lists specific actions of the special

12   committee.

13           I mean, we can tick through the list, but same thing,

14   for example, Count 6.  The imposition of these requirements for

15   medical exam and medical records on plaintiff are ultra vires

16   and unconstitutional.  We tick through these in the brief, Your

17   Honor.

18           But I think, in our view, while she could have tried

19   to do facial challenges, that may have evaded the bar.  It's

20   just that as pled, it doesn't -- it doesn't get there.  It's

21   challenging orders and determinations that under *McBryde* are

22   barred.

23           So I think for those reasons, we would say all of the

24   claims fall under the 357(c) bar and are, therefore, not able

25   to progress.  So that may be the -- one of the easier ways to

1      resolve the case.  But, obviously, we have other grounds, and

2      I'm happy to move to the original jurisdiction point for Your

3      Honor.

4              I think there's --

5              THE COURT:  Why don't you address the plaintiff's

6      arguments under -- that *Axon* and *Dart*, essentially, contradict

7      or undermine *McBryde*'s holding that 357 or the predecessor

8      statute barred as-applied challenges.

9              MR. EHRLICH:  Yes.  Happy to, Your Honor.  So nothing

10     in *Axon* casts any doubt on the -- on the holding of *McBryde*.

11     As we say in our brief, *Axon* is about a special statutory

12     review scheme, where the issue is whether you have to go

13     through the agency review process before you can come into

14     federal court, and this is not a special statutory review

15     scheme.  It's a complete bar on judicial review.

16              So *Axon* doesn't really apply at all.  But I think the

17     way this manifests itself is that *Axon* is about, as I said,

18     whether somebody has to go through the agency process before

19     they can get to court.

20              And I think the way to think about this, the way we

21     think about this is that she is already in a court -- she is in

22     the equivalent of a court.  She's going through a judicial

23     process under the act before 11 circuit judges and then 7

24     judges of the JC&D committee.  So in that sense, it doesn't

25     really apply with *Axon*.

1          When you try to apply the *Axon* factors, it just

2     doesn't really compute.  So if you look at the -- *Axon/Thunder*

3     *Basin* factors.  So whether meaningful judicial relief is

4     foreclosed, obviously, we would say no; she's getting judicial

5     relief now through the act-related review.

6          Whether it's a collateral claim in *Axon*, it was that

7     the agency was unconstitutionally structured, but we don't have

8     anything like that here.  The claims are how the Judicial

9     Council and the special committee used their powers, which

10    could be remedied at the end.

11         And then, obviously, the last factor is whether the

12    agency has any expertise in deciding the question at issue.

13    And, obviously, they're federal judges, so they have quite a

14    bit of expertise in deciding constitutional questions.

15         When you tick through those *Axon* factors, I think

16    it's pretty clear that the *Axon* framework doesn't really apply

17    here and *McBryde* is, obviously, still good law.  It doesn't

18    change the plain text of 357, which says that all orders and

19    determinations are barred from judicial review.  So I think

20    nothing in *Axon* does anything to those.

21         And just one last point on *Axon*, which, even if you

22    can go outside of the act -- out of the bar into federal court

23    here, it doesn't solve which court you need to go to.  And so

24    it doesn't solve our issue that you have to go to a court with

25    appellate, not original jurisdiction.

1        The *Dart* and I think *Leedom* are, sort of,

2    interrelated and plaintiff makes those.  We have a few reasons

3    in our briefs, a reply at page 8.  But let me start with

4    *McBryde* itself, which says *Leedom* was merely an application of

5    the familiar requirement that there be clear and convincing

6    evidence of legislative intent to preclude judicial review.

7    That's a quote from *McBryde*.

8        Obviously, *McBryde* then found that there was clear

9    intent to bar everything but facial challenges.  And the same

10   thing with *Dart*.  They expressly addressed *Dart* and said *Dart*

11   stands for the exceedingly narrow proposition that a statute

12   precluding review is limited by its language.  It doesn't mean

13   that every -- the bar is ineffective any time plaintiff asserts

14   a legal error.

15       So I think *McBryde* dealt with these exact arguments

16   and rejected them.  And then we have the reasons we give as

17   well in our brief, Your Honor, which is --

18       THE COURT:  So while there -- I will inquire with

19   plaintiff as to where on the face of the statute or how, if at

20   all, the circuit violated the face of the statute.  But there

21   is a rule governing the disability proceedings that says

22   matters should be transferred under -- to a different Judicial

23   Council in extraordinary circumstances.

24       What if I were to conclude that the committee

25   violated or -- let me ask you.  Did the committee violate that

1  rule by not transferring the matter to a different circuit?  It

2  is somewhat difficult to imagine more extraordinary

3  circumstances than those presented here.

4          MR. EHRLICH:  Sure.

5          THE COURT:  And would that be sort of an ultra vires

6  act consistent with what the agency did in *Dart*?

7          MR. EHRLICH:  I think it would be an as-applied --

8  as-applied aspect of this.  I think Your Honor's question sort

9  of builds that in because you have to examine the extraordinary

10 circumstances that would apply.  So by definition, I think

11 you're under the 357(c) bar to even get there.

12         Obviously, we have our other threshold issues, which

13 is original jurisdiction.  So I'm not sure how you would ever

14 get to that situation.  But if you were, I think we would say

15 absolutely the Judicial Council did not do anything wrong on

16 transfer.

17         I mean, this is laid out in the Judicial Council's

18 September 20th order, and I would point Your Honor to -- at

19 page 43 of that order where they explain all the reasons they

20 didn't transfer.  And it certainly makes no sense to transfer

21 now, which is at the end of the proceedings.

22         It's a narrow proceeding about her misconduct in

23 failing to cooperate.  That proceeding is, essentially, done at

24 the Judicial Council level.  It's before review at the JC&D

25 committee.

```
1              THE COURT:  What's the status of the committee's work

2     at this point?  Have they taken any action?

3              MR. EHRLICH:  They have not taken any public action.

4     It is fully submitted and ready for their decision.  So it is

5     up to them to decide, and I think it -- at this point, under

6     Rule 26, transfer wouldn't even be allowed.  Rule 26 is before

7     it gets to that point.  So, obviously, they didn't misapply

8     that there.

9              I think, as they've said throughout the process,

10    there's no case that they can find where -- and plaintiff has

11    never pointed to any -- about a transfer for disability.  And I

12    think, as the Judicial Council lays out in the citation I gave

13    Your Honor, there's great reasons for keeping it in the federal

14    circuit.

15             A lot of these things were happening in real time.

16    And as you can see from the record, from the Judicial Council's

17    order that chronicles this, I mean, plaintiffs -- excuse me,

18    not plaintiffs -- witnesses were coming forward in real time to

19    give more information about this happened with Judge Newman and

20    now this happened with Judge Newman; so it accumulated.  And

21    that's simply not possible if you transfer it to another

22    circuit that is not immediately available for witnesses.

23             And so I think for that and the other reasons

24    explained in the Judicial Council's order, it was, obviously,

25    not an abuse of discretion or -- I don't even know what
```

1    standard you would apply.  But if you ever reached this to try

2    and override the 11 circuit judges who decided this --

3                THE COURT:  And it's a should, not shall.

4                MR. EHRLICH:  Correct, Your Honor.  It also says

5    should.

6                Just one last thing on this, which is it's not their

7    decision to transfer.  They can request transfer from the chief

8    justice, but it's not their call.

9                So that the most you could order them to do is to ask

10   for a transfer, and then there may be some redressability

11   problems with that.  Obviously, we think you should never reach

12   that.  But even if you did, obviously, we think they did

13   everything properly, as they lay out in the order.

14               And I think -- I'm happy to move to the original

15   jurisdiction point, Your Honor.

16               THE COURT:  Please do.

17               MR. EHRLICH:  And I think this is, obviously, fairly

18   laid out in our briefs.  I think there seems to be no dispute,

19   as I interpret it from the briefing, that the act-related

20   proceedings are judicial in nature.  There's almost no argument

21   in the opposition about that.  It's mostly about the 332

22   authority and the June 5th suspension which, obviously, we say

23   is now moot.

24               But there's, obviously, a lot of reasons why it's

25   judicial.  Even the statute in 357 says it's judicial review.

1    It calls it judicial review.  It's, obviously, made up of

2    exclusively federal judges who have the power to issue

3    subpoenas and hold hearings.  It's akin to attorney

4    disciplinary proceedings, as courts have repeatedly held.

5         I think, if I could point you to one place on this, I

6    would say Judge Pryor's opinion in *Pitch*, which was joined by a

7    majority of the 11th Circuit en banc, lays out exactly all of

8    the reasons why this is a judicial proceeding.  It's in a

9    slightly different context.  He's analyzing the Federal Rules

10   of Criminal Procedure.

11        But he lays out exactly, in applying the standard

12   that I take both of us to be applying, which is mainly the

13   application of existing policies to present or past facts,

14   that's sort of the formulation from --

15        THE COURT:  It's also formulated in terms of

16   adjudication of present rights.  So the question is, does

17   Judge Newman have a right to hear cases.  I mean, you seem to

18   suggest -- correct me if I'm wrong -- in the due process area

19   that there is no right.  Does she have a right to hear cases?

20   If so, or if not, how are present rights being adjudicated?

21        MR. EHRLICH:  I think she has -- I think -- excuse

22   me, Your Honor.  I think we concede that this is an

23   adjudication of a present right, which is her hearing of cases.

24   And this is why we didn't challenge standing, for example.

25        We don't think that's irreparable harm, as we later

1    say, because she doesn't have an interest in hearing specific

2    cases; that is, the cases she would have heard but for the

3    suspension.  So we don't think it rises to that level.

4          But I think it's certainly her present right to hear

5    cases, and I don't take -- I mean, you can ask plaintiff, but I

6    don't take them to be disputing that.  So I think, in our view,

7    this falls exactly within -- exactly what *Pitch* said for

8    judicial proceedings for all of those factors.  You know, Judge

9    Pryor ticks through, obviously, the Supreme Court precedent on

10   this in terms of *Feldman* and applying that standard that Your

11   Honor just articulated.

12         And then -- so I think the act-related proceedings

13   are pretty clearly judicial.  That only leaves the Judicial

14   Council order that we think is moot.

15         THE COURT:  Just counting heads, if you go to

16   *Chandler*, there were at least five justices that did not agree

17   with Justice Harlan's concurrence that the Judicial Council

18   exercised judicial functions.  Your position is that that was

19   not part of the holding?

20         MR. EHRLICH:  Well, yeah.  I think Your Honor is

21   referring to Footnote 7 of *Chandler* where they, sort of, glaze

22   over this.  I think, first, we would say that's dicta.  I would

23   say -- I believe it was four justices in the majority.  But the

24   three justices, both Justice Harlan and the two dissenting

25   justices, the only three to directly address and analyze this

1    question, all found that it was a judicial action.  So I think

2    that pretty clearly says that.

3         But then you get cases like the Fifth Circuit *McBryde*

4    decision, which was analyzing a 332 order and said, while a

5    Judicial Council may act administratively sometimes, it acts as

6    a court when it reassigns cases.  This was square in the Fifth

7    Circuit decision.  It was cited in *Pitch*, again, for these

8    act-related things as well.

9         So I think all of those things combined paint a

10   pretty clear picture that this is judicial, and I think Justice

11   Harlan, obviously, goes most in-depth on this, and I think he

12   has a great opinion.  He lays out, obviously, reassigning cases

13   or stopping the flow of cases is, as he says, an integral

14   aspect of the cases from beginning to end of the case, just as

15   if Your Honor transferred a case to another court for venue or

16   other reasons.

17        So in that sense, he says it's similar to mandamus

18   and similar to other orders, like setting a time for trial.  So

19   I think in that sense, we would say it's pretty clearly

20   judicial on both fronts.

21        And I think, just to put a fine point on it, I think

22   we reference this in our brief from the *Hohn* case.  But to hold

23   otherwise, to say that they're administrative actions, would

24   mean that nonjudicial actors can review them, which would

25   raise, one, serious constitutional questions that should be

1    avoided, as Justice Kennedy says in *Hohn*; but it would also

2    defeat the entire purpose of the statutory scheme that Congress

3    enacted going back to 1939.

4         They specifically enacted this to take it away from

5    the political branches, to have a completely in-house mechanism

6    for policing the efficient and effective administration of

7    justice under 332 and for acts in 1980.  They wanted that

8    in-house in the judiciary.  So setting aside the grave

9    constitutional questions --

10        THE COURT:  Yet, they stopped short of creating a

11   court, in effect.

12        MR. EHRLICH:  They did stop short of creating a

13   separate court, but I think, as the D.C. Circuit said in

14   *McBryde*, there's functionally not really a difference between

15   that and the JC&D committee review that they ended up settling

16   on that came through the House bill.

17        It's the same idea, which is that -- I mean, even in

18   the court aspect, it would be Article III judges deciding.  I

19   think it was the same aspect.  As *McBryde* says, that was

20   probably more cosmetic than anything.

21        So either way, they wanted this in-house in the

22   judiciary; and to hold that it's administrative and perhaps

23   people in the executive branch could review it, I think, would,

24   again, raise constitutional questions and completely defeat the

25   purpose.

1          I think the second piece of this, Your Honor, is,

2     obviously, once you find that they're judicial, I think it's

3     very clear that that has to go to a court with appellate

4     jurisdiction, not original jurisdiction like this court.

5     That's why Judge McBryde went straight to the Supreme Court,

6     and that's why the three justices who addressed the question

7     said, hey, we have jurisdiction to deal with this.  That was

8     the point of figuring out whether it was judicial.

9          And that's -- the Fifth Circuit and *McBryde*, again,

10    corroborates this where they had -- they said they had no

11    jurisdiction to review Judicial Council orders of their own

12    circuit.  And, obviously, it came up through the district

13    court, so they were able to review it.  But, obviously, no

14    district judges are involved here.

15         So I think it's pretty clear, once you do judicial,

16    this court has no appellate jurisdiction.  You have only

17    original jurisdiction and, therefore, can't hear the case.

18         So I think with that, Your Honor -- I think those are

19    mainly our threshold issues that Your Honor had ordered.  We

20    have another one that we have in our briefs -- excuse me --

21    about these principles of comity and exhaustion which plaintiff

22    never responded to, and I think, therefore, has, essentially,

23    conceded.

24         But we make the point that -- in *Hastings I* about how

25    they talk -- they say, you know, you're going through the act

1    process; let that process play out.  It has to go through these

2    layers upon layers of review.  And to enjoin it in the middle

3    of the process would cause great harm.

4              And so I think, obviously, relying on that and the

5    other arguments we make in that section and we, sort of,

6    analogize it to, for example, the First-Filed Rule where two

7    courts should not simultaneously be deciding the same question.

8              THE COURT:  Right.  But now that it's at the judicial

9    conference level, aren't those sort of comity and prudential

10   arguments weaker because there's nothing at the Judicial

11   Council level to enjoin at this point?

12             MR. EHRLICH:  I wouldn't say weaker.  I would say

13   they've shifted.  They're not -- maybe I would say weaker.

14   They're not as strong as they were when we were at the

15   beginning of the process when this started in June.

16             But I think the principles still hold, and I think in

17   *Hastings I* they specifically talked about the JC&D committee

18   review and said they can interpose constitutional challenges at

19   the conference level.  So I think that -- of course, I mean, as

20   we point out in our reply brief, the judicial conference is not

21   a party here.  So that's the wrong defendant if you were trying

22   to enjoin something.

23             But I think more to the point, the judicial

24   conference could side with Judge Newman and reverse the

25   Judicial Council, in which case your injunction would be,

 1    essentially, advisory opinion.

 2             I think for those reasons, Your Honor could go that

 3    route if you want to.  I think, in our view, it's a prudential

 4    doctrine, and so that would be up to Your Honor.  But I think

 5    if you cleared all of those hurdles, I think you would end up

 6    at the two claims that we move to dismiss --

 7             THE COURT:  Just one last point on original

 8    jurisdiction.

 9             MR. EHRLICH:  Sure.

10             THE COURT:  I take it your position is that we would

11    still have jurisdiction over facial challenges consistent with

12    *McBryde*?

13             MR. EHRLICH:  No.  I don't -- that's not right, Your

14    Honor, and I'll tell you why.  It's because the -- because of

15    the judicial bar, obviously, everything other than -- only

16    facial challenges make it through.  When those courts are

17    deciding it, when the Judicial Council and the JC&D committee

18    are reviewing them, they're performing judicial acts.

19             If we get to the end of that process and facial

20    challenges need to be brought, the place to bring them is in a

21    court with appellate jurisdiction over those judicial entities,

22    which still would not be here.  So for --

23             THE COURT:  Isn't that inconsistent with *Feldman*,

24    where the Supreme Court said that, to the extent there are

25    claims, general challenges to the constitutionality of the bar

1    admission rule that was at issue in that case, they could still

2    be brought in the district court?

3            MR. EHRLICH:  I mean, *Feldman* is a little bit

4    different because it was coming from the equivalent of a state,

5    and here we're dealing with parallel federal judges.  I think

6    the things that Your Honor is seeing from *McBryde*, the

7    statements on this are really doing -- there's really three

8    different aspects of this.

9            One is whether facial challenges can be brought

10   outside of the act; that is, whether the bar bars facial

11   challenges.  *McBryde* says no, and we're not disputing that.

12   The second is where they should be brought.  And our view is

13   they have to be brought in a court of appellate jurisdiction.

14   And that's true under the act, the same as it's true in 332.

15   And that's, again, why Judge McBryde --

16           THE COURT:  But the challenge is not to any action of

17   the judicial conference or to higher-level Article III judges.

18   The challenge, if it's a true facial challenge, is to Congress.

19   And why wouldn't a district court have original jurisdiction

20   over that challenge, putting aside *McBryde*?

21           MR. EHRLICH:  Yes.  I think the answer is the reasons

22   that we've been discussing, which is the actions by -- first of

23   all, the actions that we're talking about, the orders and

24   determinations would fall under the bar.  So, obviously, we

25   think that's all there is here.

1        But setting that aside, if there's a true facial

2   challenge, we think that's a judicial action by the Judicial

3   Council, by the judicial conference who can decide these

4   questions.  And so a review of those --

5        THE COURT:  But if it's a true facial challenge, it's

6   a challenge to the statute in all of its applications, and

7   that's a challenge to congressional action, and it has nothing

8   to do with a lower-level court second-guessing the decisions or

9   application of a law by a higher-level court.

10       MR. EHRLICH:  But I think it does because, again,

11  those courts can address that.  And so, you know, if you, for

12  example, reached a contrary conclusion to the 11 circuit judges

13  on the Judicial Council on a facial constitutional challenge,

14  you have -- I don't really even know.  You have dueling, sort

15  of, determinations.

16       So I think the way we would envision this, there's

17  sort of two tracks.  So on the 332 track, it would be a

18  Judicial Council determination, which you would take directly

19  to an appellate court like Judge Chandler did.  For the act, I

20  think you would -- because of the bar, you would go up through

21  the act process, raising your constitutional challenges, and

22  then go to an appellate court if you're dissatisfied with that.

23  I think that's how these two tracks work out in our view.

24       But, again, I think -- I'm happy to move beyond

25  the -- unless Your Honor has more questions.

1     But moving beyond, even if you surmounted all of

2 these hurdles -- and I'm happy to take the merits in whatever

3 order Your Honor would like, but I'll start with the -- what

4 has been termed the constructive impeachment claim.

5     Again, just to reiterate, we don't think there's a

6 facial challenge, but assuming for the moment that there is, I

7 think, again, *McBryde* forecloses this --

8     THE COURT:  We're on Count 1.  Let's take the counts

9 that plaintiff submits are facial --

10     MR. EHRLICH:  Okay.

11     THE COURT:  -- which begin, I believe, with Count 1.

12     MR. EHRLICH:  Right.

13     THE COURT:  Which is, essentially, no executive or

14 judicial agency or body may exercise in form or in substance

15 the impeachment power reserved by the Constitution to the House

16 and the Senate.  That sounds like a facial challenge to me.

17     MR. EHRLICH:  Well, again, I think, Your Honor -- I

18 mean, we would quibble with that only because of the way it's

19 pled.  It talks about -- I'm looking specifically at

20 paragraph 82, for example, defendants' orders and threats

21 constitute an attempt to remove plaintiff from office

22 unlawfully, and then it lists specific actions taken against

23 Judge Newman.  I mean, that, to us, looks like orders and

24 determinations.  Again, maybe inartful pleading, but things

25 matter.

1        I think even if you reached it, I think, in our view,

2     it wouldn't matter.  I think *McBryde* pretty squarely forecloses

3     this constructive impeachment argument.  It says that things

4     short of full disqualification and removal from office are

5     allowed; interbranch discipline is allowed.  As it says, the

6     Constitution doesn't speak to discipline generally.  It, in

7     fact, allows criminal prosecutions.

8        So I think in that sense, we would say *McBryde*

9     controls.  I guess the only thing -- unless Your Honor has

10    questions, the only other point I would make on this is if

11    you're at this point in the analysis, it's by definition a

12    facial challenge.  So you would have to show that no set of

13    circumstances exist where there could be discipline short of

14    impeachment.

15       Obviously, *McBryde* says that that's not accurate;

16    rejects that argument.  But even if you wanted to say, okay,

17    suspensions, just suspensions specifically, you'd have to say

18    that there's no set of circumstances where a judge could be

19    suspended.  So a one-day suspension, a one-sitting suspension,

20    I mean, all -- none of the courts to address this have taken it

21    that far.

22       And so if you look at, for example, Judge Edwards in

23    dissent in *Hastings I* talks about, he takes issue with 15

24    years, and you have the district court in *McBryde* saying a

25    one-year suspension doesn't approximate removal.  And so,

1    because of the nature of a facial challenge, I don't think

2    there's any way to overcome *McBryde*.

3              In addition to the bigger problem here, which is that

4    suspensions of a judge just simply don't equate to removal, I

5    think plaintiff's counsel in their briefs cite to the 1994

6    commission report.  It says in there, as long as judges hold

7    office, receive their undiminished salary and then can exercise

8    the judicial power once they're restored, there hasn't been a

9    removal.

10             And when you look at the cases that *McBryde* --

11    obviously, *McBryde*, we think, settles this.  They cite, for

12    example, the Ninth Circuit case, which was a criminal

13    prosecution against the judge, and the judge made the same

14    argument and said, hey, look if I'm imprisoned, I'm removed,

15    and I can't exercise my judicial functions.

16             And the Ninth Circuit rejected that, in line, by the

17    way, with what the Supreme Court did in *Burton* that it

18    references in that Ninth Circuit decision, the *Claiborne*

19    decision, where a senator -- this is at the Supreme Court --

20    senator made the same argument, said I'm being criminally

21    prosecuted, and that's going to be the equivalent of an

22    expulsion from the Senate, which can only be done by two-thirds

23    of the Senate.

24             And the Supreme Court said no, that doesn't affect

25    your office.  It's about your criminal imprisonment, and you

1    still have your office.  Maybe you'll be expelled after that,

2    but that's a different issue.  I think Your Honor doesn't have

3    to ever get there.  I think you can just say *McBryde* handles

4    this.  I think -- more broadly, I think that's the reason this

5    would fail.

6        THE COURT:  Okay.  Move to Count 5, which is the --

7    at least one of the vagueness counts.  Section 351(a) fails to

8    provide adequate notice of what constitutes a mental disability

9    and renders a judge unfit to perform duties.  And Section

10   355 -- 353(c) authorizes a special committee to conduct an

11   investigation as extensive as it considers necessary, lacks

12   minimum enforcement guidelines.

13       Now, those sound like challenges in all of their

14   applications.

15       MR. EHRLICH:  Yes.  So I think we would agree with

16   that, except for the reasons that we give in our brief at

17   pages 22 to 23 and in our reply, page 10, Footnote 5, which is

18   that under vagueness law, you have to first see whether it's

19   vague as applied to the particular plaintiff.  And once you're

20   doing that, you're in the area that the act bars.

21       So I think this is -- I think we say in our brief,

22   this is the closest they come to asserting a facial challenge.

23   But because of the way that vagueness law would apply -- and we

24   cite the *Hoffman Estates* case and some others -- it necessarily

25   runs into the as-applied challenge bar.

1          THE COURT:  How can you say that those provisions

2    clearly apply to Judge Newman when the special committee did

3    not reach a conclusion as to whether the, sort of, mental

4    disability provision applied to her or not?

5          MR. EHRLICH:  Well, I guess there's a couple things

6    built in there, Your Honor.  But I think the first thing I

7    would say is we haven't briefed the merits of this because,

8    obviously, we have these threshold issues.

9          We're happy to -- if anything made it through our

10   motion to dismiss, we're happy to brief the merits of that.

11   But I think we would -- I mean, this is what the -- so I'm a

12   little bit loath to --

13         THE COURT:  I understand.

14         MR. EHRLICH:  -- sort of riff on that.  I guess I

15   would say here that this is what this was meant for.  351 lays

16   out the reasons for actions under the act, and if a judge has

17   lost their faculties, in a sense, so that they can't -- the

18   things against Judge Newman are true, which as Your Honor

19   points out, we haven't been able to get to the bottom of

20   because she's refused to take the tests.

21         If that were true, I think we would say that clearly

22   falls within -- that is a disability that is exactly within

23   what Congress was envisioning.

24         THE COURT:  We're at the pleading stage now.  I have

25   to take plaintiff's allegations as true, right?

1          MR. EHRLICH:  Right.  But I think -- again, we

2     haven't briefed that on a 12(b)(6) ground.  For -- the only

3     ones we've briefed on the merits are the constructive

4     impeachment and the due process because that's the only ones

5     they raised in their preliminary injunction motion.  We're

6     happy to do that at the appropriate time.  But, again, we don't

7     think you would ever get there because of the jurisdictional

8     issues.

9          So I think that that would bring us to the other

10    claim that they briefed in their preliminary injunction motion,

11    which is the due process claim, and then -- I don't think

12    there's a ton to say on this, Your Honor.  I mean, I don't want

13    to completely reiterate our briefing.

14          But I would just -- just to level-set, I think

15    everyone agrees that the due process is as-applied.  That would

16    be, I think, squarely under the bar.  Obviously, we would then

17    say there's no original jurisdiction, so there's that problem.

18          Then you have the problem for both this and

19    constructive impeachment that we lay out in our brief, which is

20    they've, essentially, conceded by not responding to any of our

21    arguments.  And we lay out all the case law on this at reply

22    brief pages 11 to 12.  So I think those are threshold issues.

23          But even if you got to the due process, again, this

24    is squarely taken care of by *Hastings II*, which said the

25    combination of investigative and adjudicative authority under

1    the act does not offend due process.  I mean, I think that

2    squarely takes care of that.

3          Just one last point on that, Your Honor.  Just, even

4    if that were all -- even if there were an issue with that,

5    which *Hastings* says there's not, the point that *Hastings* makes,

6    too, is that there's review by the JC&D committee and the

7    judicial conference which is, obviously, not by judges of the

8    circuit, which is drawn from judges around the country.  So

9    there's no risk of bias or actual bias in the proceedings.

10          So I think that, essentially, takes care of our

11    entire motion.  I don't know if Your Honor wants me to address

12    the merits of the June 5th and the 332 authority or --

13          THE COURT:  Let's hear from the plaintiffs [sic].

14    Thank you.

15          MR. EHRLICH:  Thank you, Your Honor.

16          THE COURT:  The plaintiff, I should say.  Mr. Dolin.

17          MR. DOLIN:  Good morning, Your Honor.

18          THE COURT:  Good morning.  How are you?

19          MR. DOLIN:  I'm doing well.  Thank you.  I will

20    endeavor to proceed in the same order as my friend on the other

21    side.  So I'll begin with mootness.

22          THE COURT:  Yes.

23          MR. DOLIN:  First, I disagree that voluntary

24    cessation doesn't apply to federal actors or government actors

25    or federal judges.  In fact, just last term -- maybe two terms

1    ago, the Supreme Court in the EPA case applied -- government

2    argued that, because EPA vacated its clean power plant rule,

3    the case is moot, and the Supreme Court declined to hold it

4    moot saying that it is capable of repetition, yet evading

5    review, despite the fact that the EPA voluntarily chose to --

6            THE COURT:  Let's assume I agree with you.  What

7    evidence in the record is there that the Judicial Council

8    vacated the June 5th order in order to manipulate the judicial

9    process somehow?  I mean, didn't the vacatur occur the day

10    after she cleared her backlog?

11            What other evidence is there in the record other than

12    that as to why that order was vacated?

13            MR. DOLIN:  First, I would point out, Your Honor,

14    that the June 5th order itself was strategic.  If you recall,

15    initially, judgment was suspended by this unrecorded,

16    unreported order of March 8th, and throughout -- between

17    March 8th and June 5th, throughout that time, Chief Judge

18    Moore, in her emails, which were then incorporated into orders

19    by the special committee -- so there's not just informal

20    emails; they became formal orders -- throughout said that

21    Judge Newman is suspended pending investigation.

22            After we sued and pointed out that there's no such

23    authority, only that June 5th order came into being, citing an

24    entirely new provision.  Then when Judge Newman fell below the

25    federal circuit's own guidelines as to what constitutes

1    backlog, the June 5th order was not vacated.  And only after we

2    again pointed that out in our briefing to this Court, only

3    then, ten days after we completed the briefing, was the order

4    vacated.

5            Yes, it was vacated the day after.  But, again, if

6    you look at -- just small details, even in the order itself,

7    the June 5th order has a disciplinary complaint number on it

8    even though it says it's under 332.  While we pointed out that

9    that makes us question whether it was truly under 332, the

10   November 9th order takes out that number.

11           So throughout this process, every time we would point

12   out an error, the defendants would do something to undermine

13   this Court's jurisdiction.  So I think the entire history of it

14   shows the November 9th order was strategically entered.

15           On top of that, to address opposing counsel's point

16   that, in order to see whether it's capable of repetition and

17   evading review, I take it that opposing counsel concedes that

18   it's evading review because under D.C. Circuit law, anything

19   that lasts for less than two years is presumptively evading

20   review.

21           So the only issue is, is it capable of repetition,

22   and opposing counsel says, well, injunction may not be

23   appropriate because you don't know what Judge Newman will do,

24   you don't know how the Judicial Council will react.  And I have

25   a couple of points to that.  One --

1          THE COURT:  First, she would have to show that

2     there's a reasonable expectation that she would be subject to

3     the same action again.  She says it's likely that she would

4     fall behind again and, therefore, be subject to similar action.

5     But yet, she just cleared her backlog.

6          What evidence is there in the record that she would

7     be likely to fall behind again?  Isn't that within her own

8     power to control?

9          MR. DOLIN:  Well, so the -- Judge Newman's --

10    contrary to defendants' assertions, Judge Newman's speed of

11    production has not varied in years.  And so we've put that

12    evidence before the Judicial Council.

13         We've done an analysis to how fast was she writing

14    opinions three years ago versus how fast was she writing

15    opinions now.  I know it's not in the record, but as her former

16    clerk, I can tell you 15 years ago it was no faster.  This is

17    just how Judge Newman works.

18         So if that's -- that's enough to suspend her --

19         THE COURT:  I mean, if she's concerned about

20    maintaining or not increasing her backlog, couldn't she go to

21    the Chief Judge and say, you know, can I take a 20 percent

22    reduction and wouldn't that -- I suspect that the answer would

23    be sure.

24         MR. DOLIN:  Sure.  And I want to make it clear.  So

25    the federal circuit has its own internal rules, which is in the

1    record -- Clerical Procedure 3, paragraph 5, I believe -- that

2    says that if you have a certain number of cases that are overly

3    old, four cases over six months old or two cases over a year

4    old, you don't get to do the next sitting.  Judge Newman

5    doesn't object to this general rule that applies to all judges.

6    So if she falls behind where she has these many cases, she

7    would be skipping a sitting or two sittings, or however

8    appropriate.

9         What she suspects will happen, given how she's been

10   treated since February of 2023 through the present day, is that

11   you -- and defendants, by the way, don't dispute that.  In

12   their briefing they said Judicial Council can do whatever it

13   wants whenever it wants.  They literally say that Judicial

14   Council of the Federal Circuit can force Judge Newman to travel

15   somewhere where the Court never sits and stay there even though

16   no cases are ever heard there.  That's not my speculation.

17   That's in their briefing.

18        So it's not speculative that if Judge Newman gets

19   back on the bench, Judicial Council will once again suspend her

20   even if she doesn't fall behind as defined by some proceedings.

21        On top of that, I think, Your Honor, injunction is

22   not, of course, the only remedy available to this Court.  We've

23   asked in our complaint for all other relief as the Court deems

24   just and proper.  For example, declaratory judgment; that

25   treating Judge Newman differently from all other judges, having

1   her jump through different hoops than what are provided by

2   clerical procedures, whatever those rules might be, is

3   improper; whether or not injunction is appropriate.  So I

4   think --

5          THE COURT:  That still requires a case or

6   controversy.

7          MR. DOLIN:  Correct.  But I think, because it's

8   highly unlikely that Judge Newman's speed will change -- it

9   hasn't changed in decades -- and given the fact how she's been

10  treated thus far, it is not speculative -- and, again, given

11  defendants' own briefing -- it's not speculative that another

12  round of sanctions will be imposed on Judge Newman, and I think

13  this Court can take cognizance of that.

14         THE COURT:  All right.

15         MR. DOLIN:  On 357(c) -- unless Your Honor has any

16  questions?

17         THE COURT:  No.

18         MR. DOLIN:  On the 357(c) bar, I think Your Honor

19  correctly queried the defendants as to whether all statutory

20  challenges are barred.  I think defendants are simply

21  incorrect.

22         In two cases with which defendant should be

23  particularly familiar with, because there are cases in which

24  Supreme Court took cases and reversed the federal circuit, are

25  *Cuozzo* and *SAS Institute* -- *Cuozzo v. Lee* and *SAS Institute*.

1          THE COURT:  I'm sorry.  What's the first one?

2          MR. DOLIN:  *Cuozzo*.

3          THE COURT:  Spell that.

4          MR. DOLIN:  C-u-o-z-z-o.  That is at 579 U.S. 261.

5     And *SAS Institute v. Iancu*.  And that's at 138 S.Ct. 1348.

6          THE COURT:  Thank you.

7          MR. DOLIN:  In those cases the court addressed a

8     similar provision barring judicial review that appears at

9     35 U.S.C. 314(d), which exclusively said that certain decisions

10    of the PTO director are, quote, final and unappealable.

11         In *Cuozzo*, the Supreme Court said, yes, that

12    absolutely means that Congress clearly meant to withdraw

13    judicial review from certain decisions of the director; much

14    like defendants argue Section 357(c) does here.

15         However, in both *Cuozzo* and *SAS Institute*, the Court

16    says -- said whenever director does something that the statute

17    authorizes -- so in that case it was whether director grants or

18    doesn't grant certain re-examination petitions -- but it turns

19    out, for example, in *SAS* the court said he cannot grant them in

20    part.  He can either grant them or not grant them.  When he

21    grants them in part, even though there's this bar in judicial

22    review, the court says we can review these ultra vires actions,

23    actions that are not authorized by the statute.

24         And those cases, of course, came after *McBryde*.  And

25    to the extent *McBryde* is inconsistent with those cases, of

1    course, the Supreme Court cases control.

2         THE COURT:  I will look at those.  The one that you

3    emphasized most in your pleadings, however, is *Dart*.  And *Dart*

4    made clear that the agency's ultra vires actions must be clear

5    based on the face of the statute.

6         And here, that would beg the question, what actions

7    has the Judicial Council taken that are on the face of the act

8    ultra vires?

9         MR. DOLIN:  At the very least two.  At the very

10    least, suspending Judge Newman before -- so on March 8th --

11    before completion of any proceedings, and, in fact, current

12    suspension that she's serving on, it's unique.  For example, in

13    the *McBryde* case -- and it's referenced in the opinion

14    itself -- Judge McBryde -- leaving aside the fact that he

15    wasn't suspended in total; he was only told not to handle

16    certain kinds of cases.

17         But leaving that aside, Judge McBryde had no sanction

18    imposed upon him until the process ran through the JC&D

19    committee.  Judge John Adams from the Sixth Circuit, same

20    situation.  So this is unique and unprecedented that a judicial

21    council suspended Judge Newman before any -- reaching any

22    conclusion and before letting the appellate process run.

23         That, by the way, goes to defendants' comity and

24    exhaustion argument.  The defendants themselves did not pay any

25    comity and exhaustion through the process.

1          THE COURT:  Okay.  Correct me if I'm wrong, the

2     sanction here is based only on her alleged failure to cooperate

3     with the investigation, which was in the past.

4          MR. DOLIN:  Well, it's a failure to cooperate.

5     There's still a question whether there's a reason to raise --

6     it's an unreasonable failure to cooperate, as the rules say.

7     But, again, so they've suspended her before the JC&D

8     committee's opined on whether or not Judge Newman had a reason

9     or not.

10          But, more importantly, is that the statute explicitly

11     says that one of the sanctions available to the Judicial

12     Council is temporary suspension, and in case that wasn't

13     listed -- as temporary suspension for time certain.  Defendants

14     admit that it's possible that this will be a permanent

15     suspension in their final brief; in their surreply they say

16     it's quite possible that Judge Newman will never hear cases

17     again because they don't intend to restore her.

18          They specifically say in the September 20th order

19     that this is a renewable suspension, and they intend to renew

20     it as they see fit.  That is simply ultra vires.  This is not

21     what the statute authorizes.  They authorize a suspension for a

22     certain period.  It has to be temporary, and it has to be for a

23     time certain; not for a year and possibly another year and

24     possibly another year.  That is not what the statute

25     authorizes.

1          The statute authorizes Judicial Council to do five

2     things:  private reprimand, public reprimand, asking for

3     voluntary retirement, certifying Judge Newman as disabled, and

4     temporary suspension.  And, by the way --

5          THE COURT:  But she could end the suspension tomorrow

6     if she were to comply with their requests, correct?

7          MR. DOLIN:  Actually, Your Honor, that's not clear.

8     Because even if she were to comply, at no point -- and this is

9     clear from the Judicial Council order.  At no point did

10    Judicial Council say that if the physician that we chose or you

11    chose -- again, leaving aside who she choose the physician is,

12    who they should be -- at no point do they say that if any

13    physician or if all physicians certified Judge Newman as being

14    capable to perform the work, that is the end of the matter.

15    They simply said that's going to be an aid of their own

16    decision whether or not Judge Newman is or not disabled.

17          In fact, in the June 5th order, the Court said we

18    reserve the question of whether or not we have the power to

19    suspend Judge Newman on suspicion of disability while the

20    process is running.  They said we don't have to reach it now

21    because we're going to use the 332 provision.  But they

22    explicitly reserved it.

23          So if, for example, she gets certified, gets a clean

24    bill of health, there's nothing to prevent -- again, under

25    defendants' own view of the case, there's nothing that would

1    prevent defendants to say that we still have suspicions given

2    what our staff reported to us that we still need to investigate

3    some more.  And so it doesn't actually -- it's not obvious that

4    she could end her suspension.

5            But even if it were obvious, Your Honor, I think

6    that's somewhat irrelevant because the act, assuming it is

7    constitutional, does allow some punishment for recalcitrance.

8    But it doesn't allow the Judicial Council to hold Judge Newman,

9    essentially, in contempt.

10           There's a provision for contempt proceedings.

11   Judicial Council has to come here and ask this Court to hold

12   Judge Newman in contempt.  They can do their own contempt

13   proceedings under the guise of the disability provision.

14           And as to disability, the point that I wanted to

15   make, that is one of the powers given to Judicial Council.  But

16   even there -- and I think it's worth noting -- if Judicial

17   Council were to declare Judge Newman disabled, the statute

18   doesn't actually say she stops hearing cases.  It merely says

19   that she becomes -- from most senior judge, she becomes most

20   junior judge, and her seat at the present can appoint someone,

21   basically a 13th member of the federal circuit and -- but Judge

22   Newman retains her office, and nothing in the statute said that

23   even as a disabled person she does not get to hear cases.  So I

24   think that's worth noting.  It cannot be that noncooperation

25   gets her more penalty than actual disability.

1          The *Cuozzo* and *SAS Institute* and *Dart* trilogy do show

2     that the Court needs to at least examine whether or not the

3     actions Judicial Council took are within the authorizing

4     statute.  It cannot be that, for example, Judicial Council

5     orders Judge Newman to pay a million dollars fine, say see

6     disability act, and then say that's entirely insulated from

7     review.  That's just not one of the things that's open to them.

8          THE COURT:  Okay.  Move on to the original

9     jurisdiction.

10          MR. DOLIN:  On to the original jurisdiction.  Judge

11     Newman doesn't dispute that the actions that Judicial Council

12     took are judicial in nature.  But actions that are judicial in

13     nature did not mean that the council was exercising judicial

14     power of the United States.  Those are two separate issues.

15          And, for example, in extradition proceedings, judges

16     will hear extradition cases, exercise judicial functions that

17     are judicial in nature.  They determine present rights, they

18     did apply facts to the law, but as the courts have held for a

19     long time -- and Second Circuit, most explicitly in a case

20     called *LoDuca*, that is not a -- these are cases held by -- held

21     by judges but not by courts.  There's a distinction.

22          The fact that somebody is confirmed to an Article III

23     position doesn't mean that in every action that that person

24     takes, he's exercising the function of a court.  So Judicial

25     Council, while staffed by Article III judges, is not the court.

1     It's not the federal circuit.  And so defendants' position --

2          THE COURT:  So your view is that the distinction

3     between judicial and administrative functions is formal -- is a

4     formal one, not a practical one?

5          MR. DOLIN:  Correct.  It's a formal -- in fact, in

6     *Mistretta*, Supreme Court case, the Court talked about Judicial

7     Council, judicial conference, administrative office of the

8     court, sentencing commission as all-in-one package.  *Mistretta*

9     was a challenge to whether federal judges can sit on a

10    sentencing commission.  The Court said judges can do other

11    things such as -- and list it, Judicial Council conference,

12    committees, AO, et cetera.

13         But doesn't mean that -- for example, just yesterday

14    I saw an announcement that another Article III judge was

15    appointed to head the AO.  That doesn't mean that in his

16    function as the head of the AO, he is a court.  He's a judge,

17    but he's not a court.

18         And so Judicial Council of the federal circuit is not

19    United States Court of Appeals for the federal circuit.  And,

20    therefore, the challenges to the acts of Judicial Council lie

21    here and not in appellate jurisdiction.  In essence, defendants

22    want to relitigate *Marbury* because there, essentially, they

23    want Judge Newman to seek in the first instance mandamus relief

24    from the Supreme Court, which the Supreme Court said it's not

25    available in the probably most well-known case, which is why

1    Judge Newman is here.

2            I think it's just wrong to assert that this Court

3    doesn't have original jurisdiction.

4            As to defendants' point that Congress meant to keep

5    the process in-house --

6            THE COURT:  I'm considering this for the first time.

7    Didn't *Chandler* involve actions by the Judicial Council?  And I

8    know that there was a split, and Justice Harlan's concurrence

9    in Footnote 7 suggested that the judicial conference or the

10   Judicial Council of whatever circuit was involved in that case

11   was acting as a judicial body, notwithstanding the fact that

12   it's, obviously, not an Article III court.

13           MR. DOLIN:  Again, I think --

14           THE COURT:  I think your colleagues are right that

15   that's dicta.  I don't think it's formally controlling, but

16   certainly it's out there.

17           MR. DOLIN:  I think to answer that, first, I think

18   you're right, it's dicta, it's not formally controlling and the

19   court -- the Court never reached this question.  This was in

20   Justice Harlan -- with all respect to Justice Harlan, he was

21   just speaking for himself.

22           Second, the Court actually did not say that they have

23   mandamus jurisdiction.  They simply assumed; saying, assuming

24   that this is all correct, would I need to go this far.  Because

25   they simply said that Judge Chandler agreed to whatever

1    sanctions were imposed on him.  We don't need to go to these

2    constitutional quagmire.  We simply say that, look, he has

3    nothing to complain about.  He agreed to whatever that he's now

4    complaining about.

5            I don't think the Supreme Court actually said that

6    this is a proper vehicle.  They simply assumed it without

7    deciding.

8            Finally, I guess -- well, two points.  I think that

9    defendants are not incorrect that Congress meant judiciary to

10   police itself and to keep it in-house, but this Court is part

11   of the judiciary.  We're not taking it out of judiciary's house

12   bringing this complaint here.  Keeping it in-house doesn't

13   actually mean just keeping it with the federal circuit.

14           And defendants are simply incorrect to say that this

15   Court can't even hear facial challenges because it has to go

16   through Supreme Court.  In fact, *McBryde* itself, one of the

17   issues that survived in *McBryde* and was so clear, was not even

18   appealed to the D.C. Circuit, was a facial challenge on a

19   prohibition to disseminate information once the process was

20   complete.

21           And it was decided by the District Court for the

22   District of Columbia, and the Department of Justice chose not

23   to appeal that portion of the decision.  So *McBryde* itself is

24   pretty clear evidence that this Court can, in fact, hear facial

25   challenges to the statute.

1          Unless the Court --

2          THE COURT:  That's a good dovetail into the last

3    area.  You say that Counts 1 and 5 through 9 are facial.

4          MR. DOLIN:  Yes.

5          THE COURT:  And so by process of elimination, you

6    acknowledge that the others are as-applied?

7          MR. DOLIN:  Yes.  In fact, some of them actually have

8    a title as-applied.

9          THE COURT:  Are titled -- okay.  Just to get that

10   clear.

11         Okay.  Proceed.

12         MR. DOLIN:  So unless Your Honor has further question

13   on original jurisdiction, I would like to move to constructive

14   impeachment.

15         Just to -- as an outset, I want to point out and

16   disagree with my learned colleague on the other side about

17   paragraph 82.  Paragraph 82 was cited to Your Honor, saying

18   that -- it mentions the various orders and threats of the

19   Judicial Council; and in defendants' interpretation, that means

20   this was as an-applied challenge.

21         But paragraph 82 simply goes to standing.  Judge

22   Newman is just not some freelancing judge saying, look, I read

23   the statute and I don't like it just to show that she was

24   injured by this statute.  And so -- but, of course, Count 1

25   reincorporates everything that came beforehand.

1          And in paragraph 81, we specifically challenge the

2     ability or congressional authorization of judicial councils to

3     suspend judges.

4          THE COURT:  For however long?  A one-day suspension

5     would violate the impeachment clause?

6          MR. DOLIN:  Well, certainly long-term suspensions.

7     So to the point that it has to be unconstitutional in every

8     application.

9          Certainly, to the extent -- again, that might require

10    Your Honor to construe what the statute means.  But, again,

11    it's still a facial challenge.  It doesn't involve what Judge

12    Newman went through.  That goes to the ultra vires claim.

13         But, certainly, to the extent that this statute

14    authorizes Judicial Council suspend a judge for 100 years, for

15    20 years, we're not -- to make it very clear, we're not saying

16    that, look, a suspension for a year was generally okay, but

17    because Judge Newman is 96 and given the actuarial table, it's

18    not okay with respect to her.

19         We're saying that at some point suspension becomes

20    long enough.  And *McBryde* put in Footnote 5, acknowledged that

21    at some point they become long enough to become effective

22    removal.

23         THE COURT:  So you've argued that -- you've hinted in

24    your briefs and you've argued today that Judge Newman's

25    suspension is, in fact, indefinite; and, therefore, at least by

1     implication, an unconstitutional long-term suspension.  I don't

2     see that alleged in the complaint.  Is that in the complaint?

3                MR. DOLIN:  It is not in our complaint because the

4     complaint was filed before, of course, the September 20th

5     order.

6                So like I said earlier at the beginning of my

7     presentation, as we would file a paper with the Court, Judicial

8     Council would take some sort of contrary action.  So defendants

9     are at least right in one regard; this is a fast-paced

10    proceeding, and this is difficult to litigate while there's

11    other things going on on the other track.

12               But nevertheless -- of course, we are happy to amend

13    the complaint if need be.  Defendants have not responded yet.

14               But the Court, certainly, can take cognizance, can

15    take judicial notice of the fact -- the order is publicly

16    available on the federal circuit website -- that Judge Newman

17    is, in fact, suspended for a year with option of renewal.  And

18    that is a long-term suspension.

19               Again, defendants themselves concede in their

20    briefing -- in their final brief that Judge Newman is likely

21    never to hear any cases again, and I think that ought to be

22    enough.

23               On to Count 5.  So the -- I found defendants'

24    argument somewhat odd that, even though they concede it's a

25    facial challenge, they still say it has to be processed as if

1    it's an as-applied challenge.  I, frankly, don't fully

2    understand it, but let me try to parse it as best I can.

3              THE COURT:  Well, let's assume that it's a facial

4    challenge.  Why should it not be dismissed?

5              MR. DOLIN:  So the statute says disabled.  But it in

6    no way, sort of, defines it.  So, for example, the Social

7    Security Act has a definition of what disability is.  The

8    Americans with Disabilities Act has a definition of what

9    disability is.  But here --

10             THE COURT:  Isn't it framed in terms of whether the

11   disability prevents a federal judge from fulfilling the duties

12   of their office?  And don't federal judges know better than

13   anybody else what the duties of their office are?

14             MR. DOLIN:  I would hope so.  But that's not how the

15   statute is framed or -- maybe that was the intent of Congress,

16   but that's not what the statute says.  I think the history of

17   application of that statute illustrates that.

18             So step back from Judge Newman's own case and take a

19   look at Judge Adams' case from the Sixth Circuit.  Judge Adams

20   was accused of being disabled and ordered to go through various

21   psychiatric examinations because -- again, this is just in

22   papers -- because his colleagues thought that he was overly

23   prickly and issued orders that reflected poorly on the

24   administration of justice.

25             That may or may not be true, but that hardly sounds

1    as a disability.  Yet, the Sixth Circuit Judicial Council was

2    able to cite it as disability.

3            Look at Judge Newman.  Judge Newman was one of the --

4    leaving aside from the fact that throughout these proceedings,

5    the Judicial Council kept changing and kept adding, kept

6    subtracting certain allegations.  The allegations that were --

7    one of the, for example, allegations that was cited against

8    Judge Newman showing that she's disabled was that she drafted

9    opinions that nobody on the panel would join.

10           And, respectfully, I -- with all respect to Judicial

11   Council of the Federal Circuit, I don't think that's evidence

12   of disability.  That's evidence of somebody being an

13   idiosyncratic -- maybe even an incorrect -- thinker but not

14   somebody who is disabled.  It's not as if in the case she was

15   writing a habeas opinion.  That perhaps could be evidence of

16   disability.

17           So it's one of those situations where I think

18   Congress may have had good intentions, but the way the statute

19   is drafted, it gives this unlimited power to Judicial Council

20   to call anything they want a disability, and they have.

21           Of course, I think, as Your Honor correctly pointed

22   out, Judicial Council itself cannot say that Judge Newman is

23   disabled.  Now, they, of course, say that's because Judge

24   Newman is recalcitrant and refuses to submit to any sort of

25   tests.  But, of course, they don't say if she does submit to

1     tests, they would end the proceedings.

2          I think it goes to show that it is an entirely

3     amorphous standard.  They can call disability anything they

4     want.  In fact -- it's not on the record, but in one of the

5     emails to Judge Newman, one of her colleagues said that one of

6     the problems he has with her is that he no longer is -- he no

7     longer thinks that her dissents really make an important point.

8     That's a just a very odd way to think of disability.

9          So I think that kind of -- that covers most, I think,

10    of what Your Honor laid out.

11         THE COURT:  Okay.

12         MR. DOLIN:  If the Court wishes, I can also talk

13    about our preliminary injunction motion.

14         THE COURT:  I think we've covered the merits.  You

15    can touch on the other PI, if you like.

16         MR. DOLIN:  I just want to touch very, very quickly

17    on kind of the balance of harms.  First, I think balance of

18    harm tips to Judge Newman.  If mere suspicion and even a strong

19    one of disability were enough, the statute would, in fact,

20    authorize suspensions.  But it doesn't.  In fact, as I

21    mentioned, even actual disability doesn't give Judicial Council

22    power to permanently suspend judges.

23         So as a result, defendants have zero interest in

24    keeping Judge Newman suspended, especially while JC&D process

25    is still pending.  And that's evidenced by the fact that,

1  again, as I mentioned, that in all their cases no consequences

2  were imposed while review committee process was ongoing.

3          While harm to Judge Newman is irreparable and ongoing

4  and while I agree that she doesn't have any right to sit on any

5  particular cases, there are -- and that also goes to ultra

6  vires -- there are, for example, pending en banc proceedings

7  where the statute explicitly says that en banc courts shall

8  consist of all active judges, and Judge Newman is an active

9  judge.  So she has a right to sit on that court.  And yet, her

10 colleagues have prevented her from doing so.

11         So while she may not have the rights on any

12 particular panel, but, certainly, has a right to sit on an

13 en banc court, I think balance of harm tips towards her.

14         Finally, she did not unduly delay seeking injunctive

15 relief.  This is what defendants allege.  She tried to work in

16 good faith with her colleagues to try to resolve it, to try to

17 see what is justification for the March 8th order.  And

18 finally, as soon as they entered this new June 5th order, then

19 she sought injunctive relief.

20         THE COURT:  So putting aside Judge Newman, you would

21 agree, though, that if there are credible allegations of

22 disability lodged against any judge that there's a public

23 interest in conducting an expedited, efficient investigation

24 and perhaps, if the allegations are credible enough, keeping

25 that judge from sitting on cases in the public interest pending

1        the results of that investigation?

2                If you were a litigant, would you want that judge on

3        your case?

4                MR. DOLIN:  I probably would not want a disabled

5        judge on my case.  However, I think, Your Honor, there are

6        procedures to do that.  If somebody is disabled, you know, that

7        can be certified to Congress if the judge would not voluntarily

8        retire, and Congress can proceed with impeachment.

9                And I understand that's a long and cumbersome

10       process, but I think that's a feature, not a bug.  Because --

11       precisely because -- I take your point, if a judge starts

12       exhibiting symptoms of schizophrenia or dementia or things like

13       that, I get that.

14               But given how amorphous disability can be under the

15       statute, I'm not sure which way the public interest tips when

16       colleagues can simply say, well, we suspect you're disabled and

17       so we're going to keep you off the bench until you do a bunch

18       of things.

19               I take your point.  But I think Judge Newman has been

20       writing opinions.  There's no evidence, for example, for that

21       so-called backlog that any of her opinions are somehow bizarre.

22       Supreme Court is currently considering a case where she was one

23       of two judges in dissent, a veterans case.  And although it's a

24       fool's errand to predict what the Court will do, but the

25       commentator said it's -- the federal circuit is likely to be

1    reversed and Judge Newman's opinion is likely to be vindicated.

2    That was written a year ago.

3              On the facts of this case, there's no allegations

4    that Judge Newman is so disabled as not to be able to hear

5    cases and fairly adjudicate them.

6              THE COURT:  Thank you.

7              MR. DOLIN:  Thank you.

8              THE COURT:  All right.  Mr. Ehrlich, brief last word.

9              MR. EHRLICH:  Thank you, Your Honor.  I just want to,

10   as you said, be brief and just hit a few highlights here.  So

11   I'll start with mootness.  I'll start with something that my

12   colleague brought up, which is we exactly foreshadowed this,

13   that the suspension may be vacated when she clears her backlog

14   and not before that.

15             And I can point you to our brief at page -- if I can

16   read my own writing -- 37, Note 20, and our reply brief at page

17   23, Note 13, where we explain the reason that we wouldn't

18   vacate the suspension before that was because -- and the June

19   5th order of the Judicial Council specifically explains, it

20   would exacerbate the problem because she's now getting new

21   cases and can't work through her old cases.  We exactly

22   foreshadowed that.  This is not a litigation tactic.  She

23   cleared her backlog, and the Judicial Council vacated the

24   suspension.

25             I think my friend on the other side has talked a lot

1    about the case caption.  The reason the June 5th order was on

2    the disability caption is because, as the June 5th order lays

3    out, it arose in the context of the disability proceedings.

4    She requested that.  As it says in the June 5th order, she

5    requested a reconsideration for a suspension.  As it says in

6    the June 5th order, that was then referred to the Judicial

7    Council through that process.  That's why the caption is on

8    that.

9         That's why in the November 9th there's no caption.

10   It's just from the Judicial Council.  It was a sua sponte

11   vacatur.  So there's nothing fishy going on here.

12        To the point -- I think it's a minor point about

13   applying the government actors -- the *Chang* case that I noted

14   to you --

15        THE COURT:  I'm sorry, which one?

16        MR. EHRLICH:  On the voluntary cessation applying

17   to government actors, the *Chang* case that I had cited to you by

18   Judge Walton was just last month, which is, obviously, post

19   *West Virginia v. EPA*, and he also cast serious doubts on that.

20   I don't think we need to win on that.  We didn't do it for

21   litigation purposes.

22        On capable of repetition, I think we don't concede

23   that, obviously.  We have some arguments in our brief on why

24   that doesn't apply, including that it's not evading review.  If

25   she had gone to, in our view, the proper court to review this,

1    she could have obtained review before it got mooted.  So we

2    don't concede that.

3              And then on the reasonable expectation, just a couple

4    things, Your Honor.  We absolutely never --

5              THE COURT:  I'm sorry.  What was that court?

6              MR. EHRLICH:  Well, I think you would have to go to a

7    court with appellate jurisdiction.

8              THE COURT:  So the Supreme Court in this case?

9              MR. EHRLICH:  Yes.  I would say Your Honor doesn't

10   have to decide which court that is or what the jurisdiction

11   would be.  But I will -- yes, Judge Chandler went to the

12   Supreme Court above the Judicial Council, and they could try

13   that here.

14             That's as -- we cite the *Ralls* case for this.  They

15   say if you had gone directly to the place you should have gone,

16   that wouldn't be evading review.  So we would apply that here.

17   But, again, on the --

18             THE COURT:  And the Supreme Court would have

19   mandatory jurisdiction over that case?

20             MR. EHRLICH:  Again, I don't -- Your Honor doesn't

21   have to decide that.  All you have to decide is that you don't

22   have original jurisdiction.  I don't think it would be

23   mandatory.  I think -- I don't want to craft their petition for

24   them.  Again, that's not for Your Honor.  I think they could

25   make a case, and Judge Chandler, obviously, made his case and

1    got three justices to go along with him.

2            On the reasonable expectation for mootness, just to

3    be absolutely clear, we never said that she will never hear

4    cases again.  We absolutely never said that.  We said that she

5    currently is subject to a separate suspension.

6            And so even if you enjoin the June 5th order, for a

7    million reasons we say you shouldn't do that, but even if you

8    did, she wouldn't start hearing cases anymore anyway.  She

9    wouldn't immediately start sitting.  She has a separate

10    suspension.

11            So that's where we say, obviously, while that

12    suspension is in place, she's not going to be hearing cases.

13    She won't get a backlog and won't be suspended.

14            And then just to -- I think I touched on this before,

15    but the last point on reasonable expectation is we don't know

16    what the Judicial Council would do if she started sitting -- if

17    she decided to take the test and the Judicial Council decided

18    to reinstate her and she started hearing cases again, it's

19    entirely possible that Judicial Council would set up some sort

20    of system so that she doesn't get a backlog again

21            THE COURT:  But that's all contingent on her taking

22    actions that she challenged in this court that she believes are

23    not only unconstitutional but personally invasive and onerous,

24    et cetera.

25            MR. EHRLICH:  Well, I think there's a couple things

1    built in there.  To the extent -- this is going to my point

2    that there's a separate suspension going on because she's not

3    taking the test, then yes, that is tied to her action.  But I'm

4    saying I think, even if she started hearing cases, even if she

5    acceded, even if she started getting cases tomorrow, it's

6    entirely speculative what the Judicial Council would do and how

7    they would handle that.

8         They might try to handle that as they're allowed to

9    on the front end and sort of maybe do -- you know, piecemeal a

10   sitting.  I don't know.  I'm completely speculating.  But

11   that's, I think, the point, which is that it's pure

12   speculation.

13        There's nothing to say that an exact same

14   suspension -- certainly not on the same backlog that would

15   arise under the June 5th order, but it would have to be a

16   different backlog, and the Judicial Council would have to take

17   a new action.  I don't think -- obviously, we think that's not

18   a reasonable expectation.

19        Then moving to the 357 bar, I think there was a lot

20   of discussion there.  One thing I do want to point out, I

21   think, when you asked for the ultra vires action, I think my

22   friend pointed to the March 8th.  The March 8th and the things

23   that they take issue with that was on the Council's 332

24   authority, not under the act.  And we described this.

25        The Judicial Council -- the 11 circuit judges

1    unanimously of the Judicial Council described this in the

2    June 5th order and said that was based on her backlog and the

3    concerns have not abated.  In fact, they've increased.

4         So in terms of ultra vires action, they try to push

5    the March 8th order under the act, but you have the 11 circuit

6    judges of the Judicial Council saying that's our 332 authority.

7    We used it on March 8th, and we're using it again on June 5th.

8         I mean, it's a little bit odd only because the

9    March 8th order is, I would say, doubly irrelevant.  It was

10   superseded by the June 5th, which was a de novo determination.

11   The Judicial Council looked fresh on Judge Newman's request and

12   said, backlog is still there, it's not good, you're not making

13   progress.  We have another suspension.  And then, obviously,

14   the November 9th order vacated that.

15        The March 8th has absolutely no bearing here.  And,

16   of course, Your Honor doesn't have to reach anything about

17   March 8th.

18        Just moving to original jurisdiction, Your Honor --

19        THE COURT:  Before you get there, address briefly the

20   *Cuozzo* and *SAS* cases which counsel suggested at least do not

21   require that the agency's action violate the statute on its

22   face in order to be ultra vires.

23        MR. EHRLICH:  Yeah.  So I guess I don't have a great

24   response because in the two briefs that they submitted of

25   extreme length, they never once raised these cases.

1       So I would think at that point it's waived, and if

2   Your Honor would like us to submit something extra on that, I

3   think we're happy to, but I don't think that's necessary.

4   Again, they didn't raise this before.

5       I think *McBryde* just squarely deals with that.  I

6   don't have those cases offhand.

7       THE COURT:  We'll take a look at them, and if we want

8   supplemental, we'll --

9       MR. EHRLICH:  Okay.  Great.  The last thing I would

10  say on that is *McBryde* did the analysis.  They did the analysis

11  of the statutory bar and said this -- we need clear evidence

12  that they're trying to bar constitutional claims.  We see the

13  clear evidence for as-applied, but facial or not to orders and

14  determinations.

15      So I don't think what I heard my friend say abrogates

16  that type of analysis, which is just looking at the statute and

17  interpreting it as *McBryde* did.  So I didn't hear anything that

18  would cast doubt on the analysis that *McBryde* did.  But as Your

19  Honor said, we're happy to submit something on that.

20      On the original jurisdiction point, I didn't hear any

21  answer to *Pitch* and all the cases we cited.  I think I heard

22  them concede that it's judicial.  I think there's some

23  confusion.  Maybe we're talking past each other in judicial

24  versus administrative.

25      We don't dispute that there's some actions that the

1     Judicial Council takes that are administrative.  *McBryde* --

2              THE COURT:  As I heard the argument is that this

3     Court does, in fact, have jurisdiction to review orders of

4     bodies even if they are comprised of judges and undertake

5     functionally judicial actions if that body is not an

6     Article III court.  So it is a formal distinction between

7     judicial and administrative as opposed to a functional

8     distinction.

9              MR. EHRLICH:  And I don't think that's correct.  I

10    mean, we concede that you can do that if there are

11    administrative actions, but once you concede that they're

12    judicial, once you recognize that they're judicial actions in

13    the way that we had talked about before and the way that

14    *Prentis* and *Pitch* and *Feldman* talk about, you're automatically

15    in a judicial action that has to go to an appellate court.

16             THE COURT:  But *Pitch* and *Feldman*, at least, dealt

17    with courts, higher courts.  *Chandler* dealt with the judicial

18    conference, if I'm not mistaken.

19             What's the authority for your position that the

20    distinction is functional and not formal?

21             MR. EHRLICH:  So I think we had agreed on that.

22    Because in their brief they say it's not the nature of the body

23    as a whole, but it's the nature of the proceeding, and we cite

24    this in our reply.

25             THE COURT:  I didn't hear that in counsel's argument.

1    So maybe there's an inconsistency between what they briefed and

2    what they argued today.

3         MR. EHRLICH:  Right.  I think what we say in our

4    brief, which is the way we interpreted their argument before,

5    which was there are some things -- and *McBryde* in the Fifth

6    Circuit -- sorry, the Fifth Circuit in their *McBryde* case says

7    this, which is there's some things that courts do that are

8    administrative, but when it reassigns cases, it acts as a

9    court.  And in the Fifth Circuit, they specifically said we

10   can't review the orders of our Judicial Council because those

11   are judicial actions.  They specifically said that in *McBryde*.

12        The reason it ended up in review is because they had

13   a district judge having to implement things and use their

14   discretion to implement the order, and so they had jurisdiction

15   over the district judge.  So that's the only scenario where

16   that's come up where they thought they could review judicial

17   actions.

18        Certainly, Justice Harlan and the two dissenters in

19   *Chandler* didn't say, yes, it's judicial, but we still don't

20   have appellate jurisdiction because it's -- I don't really know

21   what the theory is anymore.  It's both judicial and

22   administrative or something.  But once it was judicial -- once

23   it was a judicial action in the way we've been talking about,

24   it has to go to a court with appellate jurisdiction.

25        I think that's what happened in *Chandler* and as the

1    Fifth Circuit in *McBryde* said, as *Pitch* cited the Fifth Circuit

2    *McBryde*.  So I think I would just quibble with whatever

3    analysis that was.

4            Just the last point on this, Your Honor, as we talk

5    about in our brief, the statute sets out certain things that it

6    thinks are administrative.  Obviously, there's the

7    Administrative Office of United States Courts which has

8    specific things, and then there's things they can delegate to a

9    circuit executive that it calls administrative.  It's things

10   like space management and security and IT.  So, I mean, I think

11   the fact that they've conceded that it's judicial gets you all

12   the way there at this point.

13           And then just one point on *McBryde*.  *McBryde*, as we

14   say in our brief, didn't squarely address this question, didn't

15   decide this jurisdictional issue, and so we cite the *Portland*

16   *Cement* case in our brief, but that is not a precedent that Your

17   Honor needs to abide by because they didn't directly address

18   the question.

19           On the constructive impeachment issue, just two quick

20   points.  I think we would say it's not -- it's not a forever

21   suspension.  It's a one-year renewable suspension depending on

22   what happens with Judge Newman.  And the Judicial Council can

23   reconsider every year whether to take further action or not.

24   So it's absolutely not a forever suspension.

25           Again, just to be absolutely clear, we never said

1    that she'll never sit on cases again.  That has never been our

2    position.

3              THE COURT:  To be fair, it is a forever suspension or

4    it's an indefinite suspension unless she complies with actions

5    that she feels are illegal.

6              MR. EHRLICH:  Well, I don't -- I don't think it's

7    indefinite.  It's for one year.  And then the Judicial

8    Council --

9              THE COURT:  Or what -- the sooner of one year or

10   compliance?

11             MR. EHRLICH:  Right.  And when she -- if she

12   complied, obviously, that would be within the Judicial

13   Council's discretion.  Certainly, if she complied, it wouldn't

14   be renewable.  I think that's clear from the face of the

15   judicial order -- Judicial Council's order.  It's certainly

16   not.  I think for the reasons that I discussed before, even if

17   it --

18             THE COURT:  Just to be clear, if a year from now, or

19   however many months from now is left, she still has not

20   complied, the Council would have to upset the current

21   status quo somehow in order for the suspension to lapse.

22             MR. EHRLICH:  The Judicial Council would have to take

23   some action.

24             THE COURT:  Yes.

25             MR. EHRLICH:  Yes.  Obviously, in their discretion on

1       how to do that.

2              I think the most important thing I took away from my

3       friend's argument was --

4              THE COURT:  And by that time, hopefully, the judicial

5       conference would have taken at least some action.

6              MR. EHRLICH:  Right.  There's no timeline, much like

7       our courts; and those are courts, and they can roll whenever

8       they'd like.

9              I think the most important thing I heard on this from

10      the other side was that they said, well, at some point it

11      becomes an unconstitutional suspension, and I think that's all

12      Your Honor needs to hear because it's a facial challenge.  And

13      so they have to show that there's no circumstance in which this

14      could be constitutionally applied.

15             And I think the fact that they've come out and said

16      it's maybe not this point, maybe not this point, but somewhere

17      down here -- and this is sort of what I was getting at with

18      the -- that Judge Edwards was talking about 15 years seems like

19      too much in his *Hastings I* dissent.  I think on a facial

20      challenge, which is the only way you would get to this because

21      of the bar, I think that's all you need to -- that and *McBryde,*

22      obviously, to say that this challenge fails.

23             And then, just on the vagueness point, I think there

24      was a lot of back-and-forth about the Count 5.  Just to be very

25      clear, they did not move on that for their preliminary

1    injunction.  We did not move on that on 12(b)(6) grounds to

2    dismiss, and so we haven't addressed the merits of that.

3          The only thing, I think, before Your Honor now is the

4    issue of whether it's facial or as-applied for purposes of the

5    bar.  Obviously, if it made it past the bar and our other

6    jurisdictional objections, we can brief that on summary

7    judgment for Your Honor.

8          THE COURT:  Well, for any of these claims, if I

9    decide that they are facial and, therefore, I have jurisdiction

10   that they escape *McBryde*, then the question is whether they've

11   stated a claim on a 12(b)(6) standard, right?

12         MR. EHRLICH:  Well, I guess, two things.  One is,

13   even if you got past *McBryde*, we still have the original

14   jurisdiction problem.  But even past that, we haven't moved on

15   12(b)(6) on those.  We've only 12(b)(6)'d the constructive

16   impeachment and the due process, which they had moved on for

17   their preliminary injunction.

18         So I don't think you have anything before you to rule

19   on that.  We could be prepared to move for SJ quickly, but I

20   don't think that's before you -- the merits of the vagueness

21   challenge is not before you now.

22         I guess, for your purposes, though, the only thing I

23   would say now is, I think you saw from that discussion, it

24   seems very much like an as-applied challenge because they were

25   discussing how clearly it applies to her; well, maybe if it was

1     this but not this, you know, if she had -- if she was clearly

2     off the reservation and was trying to decide a different -- I

3     think this is exactly what we were saying in our briefing where

4     we pointed out that that inquiry, even if it's -- you have to

5     do the as-applied first under case law, and so that runs you

6     into the bar.

7          And then I think, just very quickly, Your Honor, just

8     a couple points on the harms.  And I think Your Honor raised a

9     great point about litigants appearing before Judge Newman if

10    she was sitting.

11         Just to be clear, we don't think you would ever reach

12    this point because there's no likelihood of success on the

13    claims that have been raised.  But as we point out in our

14    brief, there's already been a litigant who petitioned the

15    Supreme Court to overturn their case because Judge Newman was

16    sitting on the panel and all of these allegations about the

17    disability came out.

18         I think that's a serious thing to take into account.

19    I think another serious thing to take into account is what they

20    say in their supplemental brief, which is she's going to

21    continue to operate at an extremely slow pace, and that's a

22    pace that the Judicial Council has found is detrimental to the

23    effective and expeditious administration of justice, which is

24    why they used the 332 authority.

25         So I think that's a harm to the public and the

1   federal circuit and its judges and its litigants to take into

2   account, too.

3            The very last point is, I think it would be

4   extraordinary to enjoin an act of Congress in this posture,

5   especially as we've been talking about when this is up at the

6   JC&D committee.  But this is something that Congress considered

7   for a very long time.  They wanted to bring this process

8   in-house in 1939 and then 1980, and this has been on the books

9   for decades, obviously -- almost 50 years -- and to enjoin it

10  now would, I think, effectively show that the judiciary is not

11  capable of policing itself.  And I think, as this case shows,

12  that should not be true.

13           The Judicial Council and the special committee before

14  it have operated by the book, everything they needed to do by

15  the statutes, by the JC&D rules, and it's going through that

16  process.

17           So I think, unless Your Honor has more questions,

18  that's all I have.

19           THE COURT:  Thank you very much.  All right.

20  Well-briefed and well-argued on both sides.  I had hoped not to

21  be in this position, obviously, but here we are.  So the case

22  is under advisement.  We'll get something out sooner rather

23  than later.  Have a good day.

24           (The hearing adjourned at 11:40 a.m.)

25

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3           I, TAMARA M. SEFRANEK, do hereby certify that the

4      above and foregoing constitutes a true and accurate transcript

5      of my stenographic notes and is a full, true and complete

6      transcript of the proceedings to the best of my ability.

7                Dated this 29th day of January, 2024.

8

9                          /s/ Tamara M. Sefranek_____
                           Tamara M. Sefranek, RMR, CRR, CRC
10                         Official Court Reporter
                           Room 6714
11                         333 Constitution Avenue, N.W.
                           Washington, D.C.  20001

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 69:9

## 1

**1** [7] - 9:3, 9:4, 9:7, 25:8, 25:11, 46:3, 46:24
**10** [4] - 8:16, 8:19, 8:20, 28:17
**100** [2] - 6:20, 47:14
**10:05** [1] - 1:7
**11** [11] - 7:1, 7:9, 8:16, 8:19, 8:20, 10:23, 15:2, 24:12, 30:22, 58:25, 59:5
**1100** [1] - 1:17
**11:40** [1] - 68:24
**11th** [1] - 16:7
**12** [1] - 30:22
**12(b)(6** [4] - 30:2, 66:1, 66:11, 66:15
**12(b)(6)'d** [1] - 66:15
**1225** [1] - 1:14
**13** [1] - 54:17
**1348** [1] - 37:5
**138** [1] - 37:5
**13th** [1] - 41:21
**15** [3] - 26:23, 34:16, 65:18
**1939** [2] - 19:3, 68:8
**1980** [2] - 19:7, 68:8
**1994** [1] - 27:5
**19th** [1] - 1:14
**1:23-CV-1334** [1] - 1:3

## 2

**2** [3] - 8:16, 8:19, 8:20
**20** [3] - 34:21, 47:15, 54:16
**200** [1] - 6:20
**20001** [2] - 1:24, 69:11
**20005** [1] - 1:18
**20036** [1] - 1:15
**202-354-3246** [1] - 1:25
**2023** [1] - 35:10
**2024** [2] - 1:6, 69:7
**20th** [3] - 13:18, 39:18, 48:4
**22** [1] - 28:17
**23** [2] - 28:17, 54:17
**23-1334** [1] - 2:3
**25** [1] - 1:6
**26** [2] - 14:6
**261** [1] - 37:4
**28** [1] - 8:21
**29th** [1] - 69:7

## 3

**3** [3] - 8:16, 8:20, 35:1
**300** [1] - 6:20
**314(d** [1] - 37:9
**332** [12] - 15:21, 18:4, 19:7, 23:14, 24:17, 31:12, 33:8, 33:9, 40:21, 58:23, 59:6, 67:24
**332(d** [1] - 2:21
**333** [2] - 1:24, 69:11
**35** [1] - 37:9
**351** [1] - 29:15
**351(a** [1] - 28:7
**353(c** [1] - 28:10
**355** [1] - 28:10
**357** [6] - 7:21, 8:1, 10:7, 11:18, 15:25, 58:19
**357(c** [5] - 9:24, 13:11, 36:15, 36:18, 37:14
**357(c)** [1] - 2:25
**37** [1] - 54:16

## 4

**4** [3] - 8:16, 8:19, 8:20
**43** [1] - 13:19
**450** [2] - 1:14, 1:20

## 5

**5** [9] - 9:3, 9:4, 28:6, 28:17, 35:1, 46:3, 47:20, 48:23, 65:24
**50** [1] - 68:9
**579** [1] - 37:4
**5th** [26] - 4:1, 4:9, 5:14, 5:15, 6:13, 6:19, 15:22, 31:12, 32:8, 32:14, 32:17, 32:23, 33:1, 33:7, 40:17, 52:18, 54:19, 55:1, 55:2, 55:4, 55:6, 57:6, 58:15, 59:2, 59:7, 59:10

## 6

**6** [2] - 9:3, 9:14
**6714** [2] - 1:23, 69:10

## 7

**7** [4] - 9:3, 10:23, 17:21, 44:9
**7-5395** [1] - 1:20

## 8

**8** [2] - 9:3, 12:3
**81** [1] - 47:1
**82** [4] - 25:20, 46:17, 46:21
**8th** [11] - 32:16, 32:17, 38:10, 52:17, 58:22, 59:5, 59:7, 59:9, 59:15, 59:17

## 9

**9** [3] - 9:4, 46:3
**94102** [1] - 1:21
**96** [1] - 47:17
**96-year-old** [1] - 3:14
**9th** [5] - 5:13, 33:10, 33:14, 55:9, 59:14

## A

**a.m** [1] - 68:24
**A.M** [1] - 1:7
**abated** [1] - 59:3
**abide** [1] - 63:17
**ability** [3] - 3:15, 47:2, 69:6
**able** [6] - 6:5, 9:24, 20:13, 29:19, 50:2, 54:4
**abrogates** [1] - 60:15
**absolutely** [10] - 3:9, 3:24, 13:15, 37:12, 56:4, 57:3, 57:4, 59:15, 63:24, 63:25
**abuse** [1] - 14:25
**acceded** [1] - 58:5
**account** [3] - 67:18, 67:19, 68:2
**accumulated** [1] - 14:20
**accurate** [2] - 26:15, 69:4
**accused** [1] - 49:20
**acknowledge** [1] - 46:6
**acknowledged** [1] - 47:20
**act** [27] - 6:12, 6:24, 8:2, 8:4, 8:25, 10:23, 11:5, 11:22, 13:6, 15:19, 17:12, 18:5, 18:8, 20:25, 23:10, 23:14, 24:19, 24:21, 28:20, 29:16, 31:1, 38:7, 41:6, 42:6, 58:24, 59:5, 68:4
**Act** [3] - 2:24, 49:7, 49:8

**act-related** [5] - 8:25, 11:5, 15:19, 17:12, 18:8
**acted** [1] - 7:10
**acting** [1] - 44:11
**Action** [1] - 1:2
**action** [20] - 14:2, 14:3, 18:1, 23:16, 24:2, 24:7, 34:3, 34:4, 42:23, 48:8, 58:3, 58:17, 58:21, 59:4, 59:21, 61:15, 62:23, 63:23, 64:23, 65:5
**actions** [23] - 7:13, 9:11, 18:23, 23:22, 23:23, 25:22, 29:16, 37:22, 37:23, 38:4, 38:6, 42:3, 42:11, 42:12, 44:7, 57:22, 60:25, 61:5, 61:11, 61:12, 62:11, 62:17, 64:4
**active** [3] - 3:16, 52:8
**actor** [1] - 4:25
**actors** [8] - 4:15, 4:18, 7:9, 18:24, 31:24, 55:13, 55:17
**acts** [5] - 18:5, 19:7, 22:18, 43:20, 62:8
**actual** [3] - 31:9, 41:25, 51:21
**actuarial** [1] - 47:17
**Adams** [2] - 38:19, 49:19
**Adams'** [1] - 49:19
**adding** [1] - 50:5
**addition** [1] - 27:3
**address** [10] - 3:19, 10:5, 17:25, 24:11, 26:20, 31:11, 33:15, 59:19, 63:14, 63:17
**addressed** [4] - 12:10, 20:6, 37:7, 66:2
**adequate** [1] - 28:8
**adjourned** [1] - 68:24
**adjudicate** [1] - 54:5
**adjudicated** [1] - 16:20
**adjudication** [2] - 16:16, 16:23
**adjudicative** [1] - 30:25
**administration** [3] - 19:6, 49:24, 67:23
**Administrative** [1] - 63:7
**administrative** [12] - 18:23, 19:22, 43:3, 43:7, 60:24, 61:1,

61:7, 61:11, 62:8, 62:22, 63:6, 63:9
**administratively** [1] - 18:5
**admission** [1] - 23:1
**admit** [1] - 39:14
**advisement** [1] - 68:22
**advisory** [1] - 22:1
**affect** [1] - 27:24
**agency** [7] - 5:3, 10:13, 10:18, 11:7, 11:12, 13:6, 25:14
**agency's** [2] - 38:4, 59:21
**ago** [4] - 32:1, 34:14, 34:16, 54:2
**agree** [7] - 8:21, 9:1, 17:16, 28:15, 32:6, 52:4, 52:21
**agreed** [4] - 44:25, 45:3, 61:21
**agrees** [2] - 8:16, 30:15
**aid** [1] - 40:15
**akin** [1] - 16:3
**al** [2] - 1:6, 2:4
**Alaska** [3] - 5:10, 5:24, 7:6
**all-in-one** [1] - 43:8
**allegations** [8] - 29:25, 50:6, 50:7, 52:21, 52:24, 54:3, 67:16
**allege** [1] - 52:15
**alleged** [2] - 39:2, 48:2
**Alliance** [1] - 1:13
**allow** [2] - 41:7, 41:8
**allowed** [4] - 14:6, 26:5, 58:8
**allows** [1] - 26:7
**almost** [2] - 15:20, 68:9
**amend** [1] - 48:12
**Americans** [1] - 49:8
**amorphous** [2] - 51:3, 53:14
**an-applied** [1] - 46:20
**analogize** [1] - 21:6
**analysis** [7] - 26:11, 34:13, 60:10, 60:16, 60:18, 63:3
**analyze** [1] - 17:25
**analyzing** [2] - 16:9, 18:4
**ANDREW** [1] - 1:19
**announcement** [1] - 43:14
**answer** [4] - 23:21, 34:22, 44:17, 60:21

**anyway** [2] - 5:8, 57:8
**AO** [3] - 43:12, 43:15, 43:16
**apologies** [1] - 4:5
**appeal** [1] - 45:23
**appealed** [1] - 45:18
**Appeals** [1] - 43:19
**appearing** [1] - 67:9
**appellate** [13] - 11:25, 20:3, 20:16, 22:21, 23:13, 24:19, 24:22, 38:22, 43:21, 56:7, 61:15, 62:20, 62:24
**application** [5] - 12:4, 16:13, 24:9, 47:8, 49:17
**applications** [2] - 24:6, 28:14
**applied** [26] - 2:23, 3:2, 3:4, 4:23, 5:10, 8:1, 8:3, 8:8, 9:1, 10:8, 13:7, 13:8, 28:19, 28:25, 29:4, 30:15, 32:1, 46:6, 46:8, 46:20, 49:1, 60:13, 65:14, 66:4, 66:24, 67:5
**applies** [3] - 5:12, 35:5, 66:25
**apply** [15] - 4:14, 5:20, 7:15, 10:16, 10:25, 11:1, 11:16, 13:10, 15:1, 28:23, 29:2, 31:24, 42:18, 55:24, 56:16
**applying** [6] - 5:7, 16:11, 16:12, 17:10, 55:13, 55:16
**appoint** [1] - 41:20
**appointed** [1] - 43:15
**approach** [2] - 2:5, 6:24
**approached** [1] - 3:18
**appropriate** [4] - 30:6, 33:23, 35:8, 36:3
**approximate** [1] - 26:25
**area** [3] - 16:18, 28:20, 46:3
**argue** [2] - 8:12, 37:14
**argued** [5] - 32:2, 47:23, 47:24, 62:2, 68:20
**argument** [11] - 15:20, 26:3, 26:16, 27:14, 27:20, 38:24, 48:24, 61:2, 61:25, 62:4, 65:3
**arguments** [7] - 5:21, 10:6, 12:15, 21:5,

21:10, 30:21, 55:23
**arise** [1] - 58:15
**Armstrong** [1] - 7:7
**arose** [1] - 55:3
**Article** [7] - 19:18, 23:17, 42:22, 42:25, 43:14, 44:12, 61:6
**articulated** [1] - 17:11
**as-applied** [19] - 2:23, 3:2, 3:4, 8:1, 8:3, 8:8, 9:1, 10:8, 13:7, 13:8, 28:25, 30:15, 46:6, 46:8, 49:1, 60:13, 66:4, 66:24, 67:5
**aside** [8] - 19:8, 23:20, 24:1, 38:14, 38:17, 40:11, 50:4, 52:20
**aspect** [4] - 13:8, 18:14, 19:18, 19:19
**aspects** [2] - 13:8
**assert** [3] - 8:11, 9:6, 44:2
**asserting** [1] - 28:22
**assertions** [1] - 34:10
**asserts** [1] - 12:13
**assume** [2] - 32:6, 49:3
**assumed** [2] - 44:23, 45:6
**assuming** [3] - 25:6, 41:6, 44:23
**attempt** [2] - 9:10, 25:21
**attempting** [1] - 3:20
**attorney** [1] - 16:3
**authority** [8] - 15:22, 30:25, 31:12, 32:23, 58:24, 59:6, 61:19, 67:24
**authorization** [1] - 47:2
**authorize** [2] - 39:21, 51:20
**authorized** [1] - 37:23
**authorizes** [6] - 28:10, 37:17, 39:21, 39:25, 40:1, 47:14
**authorizing** [1] - 42:3
**automatically** [1] - 61:14
**available** [5] - 14:22, 35:22, 39:11, 43:25, 48:16
**Avenue** [3] - 1:20, 1:24, 69:11
**avoid** [2] - 5:12, 5:17
**avoided** [2] - 3:20, 19:1
**avoiding** [1] - 5:18

**aware** [1] - 3:21
**Axon** [12] - 10:6, 10:10, 10:11, 10:16, 10:17, 10:25, 11:1, 11:6, 11:15, 11:16, 11:20, 11:21
**Axon/Thunder** [1] - 11:2

### B

**back-and-forth** [1] - 65:24
**background** [1] - 3:21
**backlog** [18] - 5:15, 5:17, 6:15, 6:16, 6:19, 32:10, 33:1, 34:5, 34:20, 53:21, 54:13, 54:23, 57:13, 57:20, 58:14, 58:16, 59:2, 59:12
**balance** [3] - 51:17, 52:13
**banc** [4] - 16:7, 52:6, 52:7, 52:13
**bar** [25] - 7:21, 8:1, 9:19, 9:24, 10:15, 11:22, 12:9, 12:13, 13:11, 22:15, 22:25, 23:10, 23:24, 24:20, 28:25, 30:16, 36:18, 37:21, 58:19, 60:11, 60:12, 65:21, 66:5, 67:6
**barred** [6] - 2:24, 8:23, 9:22, 10:8, 11:19, 36:20
**barring** [1] - 37:8
**bars** [3] - 8:6, 23:10, 28:20
**based** [3] - 38:5, 39:2, 59:2
**Basin** [1] - 11:3
**basis** [1] - 5:15
**bearing** [1] - 59:15
**became** [1] - 32:20
**become** [2] - 47:21
**becomes** [4] - 41:19, 47:19, 65:11
**BEFORE** [1] - 1:9
**beforehand** [1] - 46:25
**beg** [1] - 38:6
**begin** [3] - 6:14, 25:11, 31:21
**beginning** [3] - 18:14, 21:15, 48:6
**begins** [1] - 7:3
**behalf** [2] - 2:11, 3:12
**behind** [4] - 34:4,

34:7, 35:6, 35:20
**believes** [1] - 57:22
**below** [1] - 32:24
**bench** [2] - 35:19, 53:17
**benefit** [1] - 4:4
**best** [2] - 49:2, 69:6
**better** [1] - 49:12
**between** [4] - 19:14, 32:16, 43:3, 61:6, 62:1
**beyond** [2] - 24:24, 25:1
**bias** [2] - 31:9
**bigger** [1] - 27:3
**bill** [2] - 19:16, 40:24
**bit** [6] - 3:22, 4:3, 11:14, 23:3, 29:12, 59:8
**bizarre** [1] - 53:21
**bodies** [1] - 61:4
**body** [4] - 25:14, 44:11, 61:5, 61:22
**book** [1] - 68:14
**books** [1] - 68:8
**bottom** [1] - 29:19
**Branch** [2] - 1:17, 1:20
**branch** [1] - 19:23
**branches** [1] - 19:5
**brief** [25] - 9:16, 10:11, 12:17, 18:22, 21:20, 28:16, 28:21, 29:10, 30:19, 30:22, 39:15, 48:20, 54:8, 54:10, 54:15, 54:16, 55:23, 61:22, 62:4, 63:5, 63:14, 63:16, 66:6, 67:14, 67:20
**briefed** [8] - 4:12, 5:18, 29:7, 30:2, 30:3, 30:10, 62:1, 68:20
**briefing** [9] - 15:19, 30:13, 33:2, 33:3, 35:12, 35:17, 36:11, 48:20, 67:3
**briefly** [1] - 59:19
**briefs** [9] - 4:12, 7:25, 8:13, 12:3, 15:18, 20:20, 27:5, 47:24, 59:24
**bring** [3] - 22:20, 30:9, 68:7
**bringing** [1] - 45:12
**broadly** [1] - 28:4
**brought** [6] - 22:20, 23:2, 23:9, 23:12, 23:13, 54:12
**bug** [1] - 53:10
**build** [2] - 6:15, 6:19

**builds** [1] - 13:9
**built** [2] - 29:6, 58:1
**bunch** [1] - 53:17
**Burton** [1] - 27:17

### C

**C-u-o-z-z-o** [1] - 37:4
**CA** [1] - 1:21
**cannot** [4] - 37:19, 41:24, 42:4, 50:22
**capable** [7] - 5:25, 32:4, 33:16, 33:21, 40:14, 55:22, 68:11
**caption** [4] - 55:1, 55:2, 55:7, 55:9
**care** [4] - 8:1, 30:24, 31:2, 31:10
**case** [50] - 2:21, 4:21, 5:9, 7:7, 7:10, 10:1, 14:10, 18:14, 18:15, 18:22, 20:17, 21:25, 23:1, 27:12, 28:24, 30:21, 32:1, 32:3, 36:5, 37:17, 38:13, 39:12, 40:25, 42:19, 43:6, 43:25, 44:10, 49:18, 49:19, 50:14, 53:3, 53:5, 53:22, 53:23, 54:3, 55:1, 55:13, 55:17, 56:8, 56:14, 56:19, 56:25, 62:6, 63:16, 67:5, 67:15, 68:11, 68:21
**Case** [1] - 2:3
**cases** [54] - 6:5, 6:15, 6:17, 6:20, 7:6, 16:17, 16:19, 16:23, 17:2, 17:5, 18:3, 18:6, 18:12, 18:13, 18:14, 27:10, 35:2, 35:3, 35:6, 35:16, 36:22, 36:23, 36:24, 37:7, 37:24, 37:25, 38:1, 38:16, 39:16, 41:18, 41:23, 42:16, 42:20, 48:21, 52:1, 52:5, 52:25, 54:5, 54:21, 57:4, 57:8, 57:12, 57:18, 58:4, 58:5, 59:20, 59:25, 60:6, 60:21, 62:8, 64:1
**cast** [2] - 55:19, 60:18
**casts** [1] - 10:10
**causes** [1] - 5:6
**Cement** [1] - 63:16
**certain** [10] - 35:2, 37:9, 37:13, 37:18, 38:16, 39:13, 39:22,

39:23, 50:6, 63:5
**certainly** [15] - 4:24,
5:22, 6:22, 13:20,
17:4, 44:16, 47:6,
47:9, 47:13, 48:14,
52:12, 58:14, 62:18,
64:13, 64:15
**CERTIFICATE** [1] -
69:1
**certified** [3] - 40:13,
40:23, 53:7
**certify** [1] - 69:3
**certifying** [1] - 40:3
**cessation** [4] - 4:14,
5:8, 31:24, 55:16
**cetera** [2] - 43:12,
57:24
**challenge** [31] - 8:8,
9:6, 16:24, 23:16,
23:18, 23:20, 24:2,
24:5, 24:6, 24:7,
24:13, 25:6, 25:16,
26:12, 27:1, 28:22,
28:25, 43:9, 45:18,
46:20, 47:1, 47:11,
48:25, 49:1, 49:4,
65:12, 65:20, 65:22,
66:21, 66:24
**challenged** [1] - 57:22
**challenges** [20] - 2:23,
8:2, 8:4, 8:11, 9:19,
10:8, 12:9, 21:18,
22:11, 22:16, 22:20,
22:25, 23:9, 23:11,
24:21, 28:13, 36:20,
43:20, 45:15, 45:25
**challenging** [2] - 8:15,
9:21
**Chandler** [10] - 17:16,
17:21, 24:19, 44:7,
44:25, 56:11, 56:25,
61:17, 62:19, 62:25
**Chang** [3] - 5:9, 55:13,
55:17
**change** [2] - 11:18,
36:8
**changed** [1] - 36:9
**changing** [1] - 50:5
**Chief** [2] - 32:17,
34:21
**chief** [1] - 15:7
**choose** [1] - 40:11
**chose** [4] - 32:5,
40:10, 40:11, 45:22
**CHRISTOPHER** [1] -
1:9
**chronicles** [1] - 14:17
**Circuit** [22] - 4:16,
16:7, 18:3, 18:7,
19:13, 20:9, 27:12,

27:16, 27:18, 33:18,
35:14, 38:19, 42:19,
45:18, 49:19, 50:1,
50:11, 62:6, 62:9,
63:1
**circuit** [30] - 3:16,
3:17, 4:24, 5:24, 6:3,
7:1, 7:10, 10:23,
12:20, 13:1, 14:14,
14:22, 15:2, 20:12,
24:12, 31:8, 34:25,
36:24, 41:21, 43:1,
43:18, 43:19, 44:10,
45:13, 48:16, 53:25,
58:25, 59:5, 63:9,
68:1
**circuit's** [1] - 32:25
**circuits** [1] - 4:24
**circumstance** [1] -
65:13
**circumstances** [5] -
12:23, 13:3, 13:10,
26:13, 26:18
**citation** [1] - 14:12
**cite** [8] - 7:7, 27:5,
27:11, 28:24, 50:2,
56:14, 61:23, 63:15
**cited** [6] - 18:7, 46:17,
50:7, 55:17, 60:21,
63:1
**citing** [1] - 32:23
**Civil** [5] - 1:2, 1:13,
1:17, 1:20, 2:3
**Claiborne** [1] - 27:18
**claim** [8] - 5:4, 9:8,
11:6, 25:4, 30:10,
30:11, 47:12, 66:11
**claims** [11] - 2:22, 3:2,
3:3, 3:5, 9:24, 11:8,
22:6, 22:25, 60:12,
66:8, 67:13
**Clarke** [1] - 4:21
**clause** [1] - 47:5
**clean** [2] - 32:2, 40:23
**clear** [24] - 4:16,
11:16, 12:5, 12:8,
18:10, 20:3, 20:15,
34:24, 38:4, 40:7,
40:9, 45:17, 45:24,
46:10, 47:15, 57:3,
60:11, 60:13, 63:25,
64:14, 64:18, 65:25,
67:11
**cleared** [5] - 5:15,
22:5, 32:10, 34:5,
54:23
**clearly** [13] - 5:12,
5:19, 8:6, 8:23,
17:13, 18:2, 18:19,
29:2, 29:21, 37:12,

66:25, 67:1
**clears** [1] - 54:13
**clerical** [1] - 36:2
**Clerical** [1] - 35:1
**clerk** [1] - 34:16
**closest** [1] - 28:22
**cognizance** [2] -
36:13, 48:14
**collapse** [1] - 6:10
**collateral** [1] - 11:6
**colleague** [2] - 46:16,
54:12
**colleagues** [6] -
44:14, 49:22, 51:5,
52:10, 52:16, 53:16
**COLUMBIA** [1] - 1:1
**Columbia** [1] - 45:22
**combination** [1] -
30:25
**combined** [1] - 18:9
**coming** [2] - 14:18,
23:4
**comity** [4] - 20:21,
21:9, 38:23, 38:25
**commentator** [1] -
53:25
**commission** [3] -
27:6, 43:8, 43:10
**committee** [18] - 8:5,
9:12, 10:24, 11:9,
12:24, 12:25, 13:25,
19:15, 21:17, 22:17,
28:10, 29:2, 31:6,
32:19, 38:19, 52:2,
68:6, 68:13
**committee's** [2] -
14:1, 39:8
**committees** [1] -
43:12
**complain** [1] - 45:3
**complaining** [1] - 45:4
**complaint** [10] - 8:2,
8:8, 33:7, 35:23,
45:12, 48:2, 48:3,
48:4, 48:13
**complete** [3] - 10:15,
45:20, 69:5
**completed** [1] - 33:3
**completely** [4] - 19:5,
19:24, 30:13, 58:10
**completion** [1] - 38:11
**compliance** [1] -
64:10
**complied** [3] - 64:12,
64:13, 64:20
**complies** [1] - 64:4
**comply** [2] - 40:6, 40:8
**comprised** [1] - 61:4
**compute** [1] - 11:2
**concede** [8] - 16:22,

48:19, 48:24, 55:22,
56:2, 60:22, 61:10,
61:11
**conceded** [3] - 20:23,
30:20, 63:11
**concedes** [1] - 33:17
**concerned** [1] - 34:19
**concerning** [1] - 3:14
**concerns** [2] - 5:10,
59:3
**conclude** [1] - 12:24
**conclusion** [3] -
24:12, 29:3, 38:22
**concurrence** [2] -
17:17, 44:8
**Conduct** [1] - 2:24
**conduct** [3] - 5:1,
28:10
**conducting** [1] - 52:23
**conference** [12] -
21:9, 21:19, 21:20,
21:24, 23:17, 24:3,
31:7, 43:7, 43:11,
44:9, 61:18, 65:5
**confirmed** [1] - 42:22
**confusion** [1] - 60:23
**Congress** [12] - 19:2,
23:18, 29:23, 37:12,
44:4, 45:9, 49:15,
50:18, 53:7, 53:8,
68:4, 68:6
**congressional** [2] -
24:7, 47:2
**consequences** [1] -
52:1
**consider** [1] - 6:2
**considered** [1] - 68:6
**considering** [2] - 44:6,
53:22
**considers** [1] - 28:11
**consist** [1] - 52:8
**consistent** [2] - 13:6,
22:11
**consistently** [2] -
4:23, 5:5
**constitute** [2] - 9:9,
25:21
**constitutes** [3] - 28:8,
32:25, 69:4
**Constitution** [4] -
1:24, 25:15, 26:6,
69:11
**constitutional** [10] -
11:14, 18:25, 19:9,
19:24, 21:18, 24:13,
24:21, 41:7, 45:2,
60:12
**constitutionality** [1] -
22:25
**constitutionally** [1] -

65:14
**constructive** [8] - 9:8,
25:4, 26:3, 30:3,
30:19, 46:13, 63:19,
66:15
**construe** [1] - 47:10
**contempt** [4] - 41:9,
41:10, 41:12
**context** [2] - 16:9,
55:3
**contingent** [1] - 57:21
**continue** [1] - 67:21
**contradict** [1] - 10:6
**contrary** [2] - 24:12,
34:10, 48:8
**control** [2] - 34:8, 38:1
**controlling** [2] -
44:15, 44:18
**controls** [1] - 26:9
**controversy** [1] - 36:6
**convincing** [1] - 12:5
**COOPER** [1] - 1:9
**cooperate** [3] - 13:23,
39:2, 39:4, 39:6
**correct** [8] - 15:4,
16:18, 36:7, 39:1,
40:6, 43:5, 44:24,
61:9
**correctly** [2] - 36:19,
50:21
**corroborates** [1] -
20:10
**cosmetic** [1] - 19:20
**council** [3] - 5:22,
38:21, 42:13
**Council** [74] - 4:2,
6:23, 8:5, 11:9,
12:23, 13:15, 13:24,
14:12, 17:14, 17:17,
18:5, 20:11, 21:11,
21:25, 22:17, 24:3,
24:13, 24:18, 32:7,
33:24, 34:12, 35:12,
35:14, 35:19, 38:7,
39:12, 40:1, 40:9,
40:10, 41:8, 41:11,
41:15, 41:17, 42:3,
42:4, 42:11, 42:25,
43:7, 43:11, 43:18,
43:20, 44:7, 44:10,
46:19, 47:14, 48:8,
50:1, 50:5, 50:11,
50:19, 50:22, 51:21,
54:19, 54:23, 55:7,
55:10, 56:12, 57:16,
57:17, 57:19, 58:6,
58:16, 58:25, 59:1,
59:6, 59:11, 61:1,
62:10, 63:22, 64:8,
64:20, 64:22, 67:22,

68:13

**Council's** [6] - 13:17, 14:16, 14:24, 58:23, 64:13, 64:15

**councils** [1] - 47:2

**counsel** [6] - 2:5, 3:21, 27:5, 33:17, 33:22, 59:20

**counsel's** [2] - 33:15, 61:25

**count** [1] - 8:7

**Count** [8] - 9:7, 9:14, 25:8, 25:11, 28:6, 46:24, 48:23, 65:24

**counting** [1] - 17:15

**country** [1] - 31:8

**Counts** [2] - 8:16, 46:3

**counts** [3] - 9:3, 25:8, 28:7

**couple** [6] - 6:6, 29:5, 33:25, 56:3, 57:25, 67:8

**course** [13] - 4:13, 5:4, 21:19, 35:22, 37:24, 38:1, 46:24, 48:4, 48:12, 50:21, 50:23, 50:25, 59:16

**Court** [52] - 1:22, 1:23, 3:1, 3:11, 6:2, 17:9, 20:5, 22:24, 27:17, 27:19, 27:24, 32:1, 32:3, 33:2, 35:15, 35:22, 35:23, 36:13, 36:24, 37:11, 37:15, 38:1, 40:17, 41:11, 42:2, 43:6, 43:10, 43:19, 43:24, 44:2, 44:19, 44:22, 45:5, 45:10, 45:15, 45:16, 45:21, 45:24, 46:1, 48:7, 48:14, 51:12, 53:22, 53:24, 56:8, 56:12, 56:18, 61:3, 67:15, 69:10

**court** [47] - 4:4, 10:14, 10:19, 10:21, 10:22, 11:22, 11:23, 11:24, 18:6, 18:15, 19:11, 19:13, 19:18, 20:3, 20:4, 20:13, 20:16, 22:21, 23:2, 23:13, 23:19, 24:8, 24:9, 24:19, 24:22, 26:24, 37:7, 37:19, 37:22, 42:24, 42:25, 43:8, 43:16, 43:17, 44:12, 44:19, 52:9, 52:13, 55:25, 56:5, 56:7, 56:10, 57:22, 61:6, 61:15, 62:9, 62:24

**COURT** [87] - 1:1, 2:9, 2:12, 3:21, 4:3, 4:7, 4:20, 4:23, 5:22, 7:16, 7:19, 7:23, 8:7, 8:17, 8:19, 10:5, 12:18, 13:5, 14:1, 15:3, 15:16, 16:15, 17:15, 19:10, 21:8, 22:7, 22:10, 22:23, 23:16, 24:5, 25:8, 25:11, 25:13, 28:6, 29:1, 29:13, 29:24, 31:13, 31:16, 31:18, 31:22, 32:6, 34:1, 34:19, 36:5, 36:14, 36:17, 37:1, 37:3, 37:6, 38:2, 39:1, 40:5, 42:8, 43:2, 44:6, 44:14, 46:2, 46:5, 46:9, 47:4, 47:23, 49:3, 49:10, 51:11, 51:14, 52:20, 54:6, 54:8, 55:15, 56:5, 56:8, 56:18, 57:21, 59:19, 60:7, 61:2, 61:16, 61:25, 64:3, 64:9, 64:18, 64:24, 65:4, 66:8, 68:19, 69:1

**Court's** [1] - 33:13

**Courthouse** [1] - 1:23

**COURTROOM** [1] - 2:2

**Courts** [1] - 63:7

**courts** [14] - 5:5, 16:4, 21:7, 22:16, 24:11, 26:20, 42:18, 42:21, 52:7, 61:17, 62:7, 65:7

**covered** [1] - 51:14

**covers** [2] - 7:25, 51:9

**craft** [1] - 56:23

**CRC** [2] - 1:22, 69:9

**creating** [2] - 19:10, 19:12

**credible** [2] - 52:21, 52:24

**criminal** [3] - 26:7, 27:12, 27:25

**Criminal** [1] - 16:10

**criminally** [1] - 27:20

**cross** [1] - 2:14

**cross-motions** [1] - 2:14

**CRR** [2] - 1:22, 69:9

**cumbersome** [1] - 53:9

**Cuozzo** [7] - 36:25, 37:2, 37:11, 37:15, 42:1, 59:20

**current** [2] - 38:11, 64:20

# D

**D.C** [7] - 1:6, 1:24, 4:16, 19:13, 33:18, 45:18, 69:11

**Dart** [9] - 10:6, 12:1, 12:10, 13:6, 38:3, 42:1

**Dated** [1] - 69:7

**days** [2] - 6:20, 33:3

**DC** [2] - 1:15, 1:18

**de** [1] - 59:10

**deal** [2] - 7:2, 20:7

**dealing** [2] - 5:4, 23:5

**deals** [1] - 60:5

**dealt** [3] - 12:15, 61:16, 61:17

**decades** [2] - 36:9, 68:9

**decide** [8] - 14:5, 24:3, 56:10, 56:21, 63:15, 66:9, 67:2

**decided** [4] - 15:2, 45:21, 57:17

**deciding** [6] - 11:12, 11:14, 19:18, 21:7, 22:17, 45:7

**decision** [8] - 14:4, 15:7, 18:4, 18:7, 27:18, 27:19, 40:16, 45:23

**decisions** [3] - 24:8, 37:9, 37:13

**declaratory** [1] - 35:24

**declare** [1] - 41:17

**declined** [1] - 32:3

**deems** [1] - 35:23

**defeat** [2] - 19:2, 19:24

**defendant** [2] - 21:21, 36:22

**defendants** [20] - 2:11, 2:16, 3:12, 33:12, 35:11, 36:19, 36:20, 37:14, 38:24, 39:13, 41:1, 43:21, 45:9, 45:14, 48:8, 48:13, 48:19, 51:23, 52:15

**Defendants** [2] - 1:7, 1:16

**defendants'** [11] - 2:16, 9:9, 25:20, 34:10, 36:11, 38:23, 40:25, 43:1, 44:4, 46:19, 48:23

**defined** [1] - 35:20

**defines** [1] - 49:6

**definition** [4] - 13:10, 26:11, 49:7, 49:8

**delay** [1] - 52:14

**delegate** [1] - 63:8

**dementia** [1] - 53:12

**Department** [5] - 1:16, 1:19, 2:11, 3:12, 45:22

**depth** [1] - 18:11

**DEPUTY** [1] - 2:2

**described** [2] - 58:24, 59:1

**despite** [1] - 32:5

**details** [1] - 33:6

**determination** [2] - 24:18, 59:10

**determinations** [9] - 8:4, 8:14, 9:7, 9:21, 11:19, 23:24, 24:15, 25:24, 60:14

**determine** [2] - 7:2, 42:17

**detrimental** [1] - 67:22

**dicta** [3] - 17:22, 44:15, 44:18

**difference** [1] - 19:14

**different** [10] - 6:24, 12:22, 13:1, 16:9, 23:4, 23:8, 28:2, 36:1, 58:16, 67:2

**differently** [1] - 35:25

**difficult** [3] - 3:19, 13:2, 48:10

**directly** [4] - 17:25, 24:18, 56:15, 63:17

**director** [4] - 37:10, 37:13, 37:16, 37:17

**Disabilities** [1] - 49:8

**Disability** [1] - 2:24

**disability** [28] - 3:15, 12:21, 14:11, 28:8, 29:4, 29:22, 40:19, 41:13, 41:14, 41:25, 42:6, 49:7, 49:9, 49:11, 50:1, 50:2, 50:12, 50:16, 50:20, 51:3, 51:8, 51:19, 51:21, 52:22, 53:14, 55:2, 55:3, 67:17

**disabled** [13] - 40:3, 40:16, 41:17, 41:23, 49:5, 49:20, 50:8, 50:14, 50:23, 53:4, 53:6, 53:16, 54:4

**disagree** [2] - 31:23, 46:16

**disciplinary** [2] - 16:4, 33:7

**discipline** [2] - 26:5,

26:6, 26:13

**discretion** [5] - 7:1, 14:25, 62:14, 64:13, 64:25

**discussed** [1] - 64:16

**discussing** [2] - 23:22, 66:25

**discussion** [2] - 58:20, 66:23

**dismiss** [4] - 2:16, 22:6, 29:10, 66:22

**dismissed** [1] - 49:4

**dispositive** [1] - 2:17

**dispute** [6] - 4:10, 9:2, 15:18, 35:11, 42:11, 60:25

**disputing** [2] - 17:6, 23:11

**disqualification** [1] - 26:4

**dissatisfied** [1] - 24:22

**disseminate** [1] - 45:19

**dissent** [3] - 26:23, 53:23, 65:19

**dissenters** [1] - 62:18

**dissenting** [1] - 17:24

**dissents** [1] - 51:7

**distinction** [5] - 42:21, 43:2, 61:6, 61:8, 61:20

**district** [7] - 20:12, 20:14, 23:2, 23:19, 26:24, 62:13, 62:15

**District** [2] - 45:21, 45:22

**DISTRICT** [3] - 1:1, 1:1, 1:10

**Division** [2] - 1:17, 1:20

**doctrine** [1] - 22:4

**DOLIN** [32] - 1:12, 2:7, 31:17, 31:19, 31:23, 32:13, 34:9, 34:24, 36:7, 36:15, 36:18, 37:2, 37:4, 37:7, 38:9, 39:4, 40:7, 42:10, 43:5, 44:13, 44:17, 46:4, 46:7, 46:12, 47:6, 48:3, 49:5, 49:14, 51:12, 51:16, 53:4, 54:7

**Dolin** [3] - 2:7, 2:9, 31:16

**dollars** [1] - 42:5

**done** [5] - 5:12, 5:14, 13:23, 27:22, 34:13

**doubly** [1] - 59:9

**doubt** [2] - 10:10,

60:18
**doubts** [2] - 5:6, 55:19
**dovetail** [1] - 46:2
**down** [3] - 3:22, 4:3, 65:17
**drafted** [2] - 50:8, 50:19
**drawn** [1] - 31:8
**due** [8] - 5:17, 16:18, 30:4, 30:11, 30:15, 30:23, 31:1, 66:16
**dueling** [1] - 24:14
**duties** [4] - 3:16, 28:9, 49:11, 49:13

## E

**ease** [1] - 6:2
**easier** [1] - 9:25
**echoed** [1] - 5:10
**Edwards** [2] - 26:22, 65:18
**effect** [2] - 6:14, 19:11
**effective** [3] - 19:6, 47:21, 67:23
**effectively** [1] - 68:10
**efficient** [2] - 19:6, 52:23
**Ehrlich** [4] - 2:11, 2:12, 3:11, 54:8
**EHRLICH** [55] - 1:16, 2:10, 3:9, 3:24, 4:5, 4:9, 4:22, 5:5, 6:6, 7:17, 7:20, 7:24, 8:9, 8:18, 8:20, 10:9, 13:4, 13:7, 14:3, 15:4, 15:17, 16:21, 17:20, 19:12, 21:12, 22:9, 22:13, 23:3, 23:21, 24:10, 25:10, 25:12, 25:17, 28:15, 29:5, 29:14, 30:1, 31:15, 54:9, 55:16, 56:6, 56:9, 56:20, 57:25, 59:23, 60:9, 61:9, 61:21, 62:3, 64:6, 64:11, 64:22, 64:25, 65:6, 66:12
**either** [3] - 4:11, 19:21, 37:20
**elimination** [1] - 46:5
**emails** [3] - 32:18, 32:20, 51:5
**emphasized** [1] - 38:3
**en** [4] - 16:7, 52:6, 52:7, 52:13
**enacted** [2] - 19:3, 19:4
**end** [11] - 5:8, 11:10, 13:21, 18:14, 22:5,

22:19, 40:5, 40:14, 41:4, 51:1, 58:9
**endeavor** [1] - 31:20
**ended** [2] - 19:15, 62:12
**enforcement** [1] - 28:12
**engage** [1] - 4:25
**enjoin** [7] - 6:13, 21:2, 21:11, 21:22, 57:6, 68:4, 68:9
**entered** [2] - 33:14, 52:18
**entire** [3] - 19:2, 31:11, 33:13
**entirely** [6] - 6:18, 32:24, 42:6, 51:2, 57:19, 58:6
**entities** [1] - 22:21
**envision** [2] - 4:24, 24:16
**envisioning** [1] - 29:23
**EPA** [4] - 32:1, 32:2, 32:5, 55:19
**equate** [1] - 27:4
**equivalent** [3] - 10:22, 23:4, 27:21
**errand** [1] - 53:24
**error** [2] - 12:14, 33:12
**escape** [1] - 66:10
**especially** [3] - 4:15, 51:24, 68:5
**essence** [1] - 43:21
**essentially** [9] - 10:6, 13:23, 20:22, 22:1, 25:13, 30:20, 31:10, 41:9, 43:22
**Estates** [1] - 28:24
**et** [4] - 1:6, 2:4, 43:12, 57:24
**evaded** [1] - 9:19
**evading** [5] - 5:25, 32:4, 33:17, 33:18, 33:19, 55:24, 56:16
**evidence** [12] - 12:6, 32:7, 32:11, 34:6, 34:12, 45:24, 50:11, 50:12, 50:15, 53:20, 60:11, 60:13
**evidenced** [1] - 51:25
**exacerbate** [1] - 54:20
**exact** [5] - 6:18, 7:5, 7:8, 12:15, 58:13
**exactly** [8] - 16:7, 16:11, 17:7, 29:22, 54:12, 54:21, 67:3
**exam** [1] - 9:15
**examination** [1] - 37:18

**examinations** [1] - 49:21
**examine** [2] - 13:9, 42:2
**example** [19] - 9:7, 9:14, 16:24, 21:6, 24:12, 25:20, 26:22, 27:12, 35:24, 37:19, 38:12, 40:23, 42:4, 42:15, 43:13, 49:6, 50:7, 52:6, 53:20
**exceedingly** [1] - 12:11
**except** [1] - 28:16
**exception** [2] - 5:11, 5:19
**exceptions** [4] - 4:11, 6:8, 7:12, 7:15
**exclusively** [2] - 16:2, 37:9
**excuse** [3] - 14:17, 16:21, 20:20
**executive** [3] - 19:23, 25:13, 63:9
**exercise** [4] - 25:14, 27:7, 27:15, 42:16
**exercised** [1] - 17:18
**exercising** [2] - 42:13, 42:24
**exhaustion** [3] - 20:21, 38:24, 38:25
**exhibiting** [1] - 53:12
**exist** [1] - 26:13
**existing** [1] - 16:13
**expectation** [7] - 6:9, 7:5, 34:2, 56:3, 57:2, 57:15, 58:18
**expedited** [1] - 52:23
**expeditious** [1] - 67:23
**expelled** [1] - 28:1
**expertise** [2] - 11:12, 11:14
**explain** [1] - 13:19, 54:17
**explained** [1] - 14:24
**explains** [1] - 54:19
**explicitly** [4] - 39:10, 40:22, 42:19, 52:7
**expressly** [1] - 12:10
**expulsion** [1] - 27:22
**extensive** [1] - 28:11
**extent** [5] - 22:24, 37:25, 47:9, 47:13, 58:1
**extra** [1] - 60:2
**extradition** [2] - 42:15, 42:16
**extraordinary** [4] - 12:23, 13:2, 13:9,

68:4
**extreme** [1] - 59:25
**extremely** [1] - 67:21

## F

**face** [6] - 12:19, 12:20, 38:5, 38:7, 59:22, 64:14
**facial** [33] - 3:3, 3:4, 8:11, 9:6, 9:19, 12:9, 22:11, 22:16, 22:19, 23:9, 23:10, 23:18, 24:1, 24:5, 24:13, 25:6, 25:9, 25:16, 26:12, 27:1, 28:22, 45:15, 45:18, 45:24, 46:3, 47:11, 48:25, 49:3, 60:13, 65:12, 65:19, 66:4, 66:9
**fact** [26] - 6:3, 26:7, 31:25, 32:5, 36:9, 38:11, 38:14, 40:17, 42:22, 43:5, 44:11, 45:16, 45:24, 46:7, 47:25, 48:15, 48:17, 50:4, 51:4, 51:19, 51:20, 51:25, 59:3, 61:3, 63:11, 65:15
**factor** [2] - 5:24, 11:11
**factors** [4] - 11:1, 11:3, 11:15, 17:8
**facts** [3] - 16:13, 42:18, 54:3
**faculties** [1] - 29:17
**fail** [1] - 28:5
**failing** [1] - 13:23
**fails** [2] - 28:7, 65:22
**failure** [3] - 39:2, 39:4, 39:6
**fair** [1] - 64:3
**fairly** [3] - 7:24, 15:17, 54:5
**faith** [1] - 52:16
**fall** [5] - 9:24, 23:24, 34:4, 34:7, 35:20
**falls** [3] - 17:7, 29:22, 35:6
**familiar** [2] - 12:5, 36:23
**far** [3] - 26:21, 36:10, 44:24
**fast** [3] - 34:13, 34:14, 48:9
**fast-paced** [1] - 48:9
**faster** [1] - 34:16
**feature** [1] - 53:10
**February** [1] - 35:10
**Federal** [5] - 1:17, 1:20, 16:9, 35:14,

50:11
**federal** [27] - 3:17, 4:15, 4:19, 4:25, 8:25, 10:14, 11:13, 11:22, 14:13, 16:2, 23:5, 31:24, 31:25, 32:25, 34:25, 36:24, 41:21, 43:1, 43:9, 43:18, 43:19, 45:13, 48:16, 49:11, 49:12, 53:25, 68:1
**Feldman** [5] - 17:10, 22:23, 23:3, 61:14, 61:16
**fell** [1] - 32:24
**few** [2] - 12:2, 54:10
**Fifth** [8] - 18:3, 18:6, 20:9, 62:5, 62:6, 62:9, 63:1
**figuring** [1] - 20:8
**file** [1] - 48:7
**Filed** [1] - 21:6
**filed** [1] - 48:4
**final** [3] - 37:10, 39:15, 48:20
**finally** [4] - 3:4, 45:8, 52:14, 52:18
**fine** [2] - 18:21, 42:5
**first** [16] - 2:21, 4:15, 6:7, 17:22, 23:22, 28:18, 29:6, 31:23, 32:13, 34:1, 37:1, 43:23, 44:6, 44:17, 51:17, 67:5
**First** [1] - 21:6
**First-Filed** [1] - 21:6
**fishy** [1] - 55:11
**fit** [2] - 7:11, 39:20
**five** [2] - 17:16, 40:1
**flow** [1] - 18:13
**focus** [1] - 3:23
**fool's** [1] - 53:24
**Footnote** [4] - 17:21, 28:17, 44:9, 47:20
**FOR** [1] - 1:1
**force** [1] - 35:14
**foreclosed** [1] - 11:4
**forecloses** [2] - 25:7, 26:2
**foregoing** [1] - 69:4
**foreshadowed** [2] - 54:12, 54:22
**forever** [3] - 63:20, 63:24, 64:3
**form** [1] - 25:14
**formal** [6] - 32:20, 43:3, 43:4, 43:5, 61:6, 61:20
**formally** [2] - 44:15, 44:18

75

**former** [1] - 34:15
**formulated** [1] - 16:15
**formulation** [1] - 16:14
**forth** [1] - 65:24
**forward** [2] - 6:5, 14:18
**four** [2] - 17:23, 35:3
**framed** [2] - 49:10, 49:15
**framework** [1] - 11:16
**Francisco** [1] - 1:21
**frankly** [1] - 49:1
**free** [1] - 8:12
**freelancing** [1] - 46:22
**fresh** [1] - 59:11
**friend** [5] - 8:10, 31:20, 54:25, 58:22, 60:15
**friend's** [1] - 65:3
**front** [1] - 58:9
**fronts** [1] - 18:20
**fulfilling** [1] - 49:11
**full** [2] - 26:4, 69:5
**fully** [2] - 14:4, 49:1
**function** [2] - 42:24, 43:16
**functional** [2] - 61:7, 61:20
**functionally** [2] - 19:14, 61:5
**functions** [4] - 17:18, 27:15, 42:16, 43:3

## G

**Gate** [1] - 1:20
**general** [2] - 22:25, 35:5
**generally** [2] - 26:6, 47:16
**given** [8] - 6:3, 35:9, 36:9, 36:10, 41:1, 41:15, 47:17, 53:14
**glaze** [1] - 17:21
**Golden** [1] - 1:20
**governing** [1] - 12:21
**government** [6] - 2:17, 4:18, 31:24, 32:1, 55:13, 55:17
**governmental** [1] - 4:15
**grab** [1] - 7:18
**grant** [4] - 37:18, 37:19, 37:20
**grants** [2] - 37:17, 37:21
**grave** [1] - 19:8
**great** [6] - 14:13, 18:12, 21:3, 59:23,

60:9, 67:9
**Gregory** [1] - 2:7
**GREGORY** [1] - 1:12
**ground** [1] - 30:2
**grounds** [2] - 10:1, 66:1
**guess** [7] - 26:9, 29:5, 29:14, 45:8, 59:23, 66:12, 66:22
**guessing** [1] - 24:8
**guidelines** [2] - 28:12, 32:25
**guise** [1] - 41:13

## H

**habeas** [1] - 50:15
**handle** [3] - 38:15, 58:7, 58:8
**handles** [1] - 28:3
**happy** [13] - 3:9, 7:20, 10:2, 10:9, 15:14, 24:24, 25:2, 29:9, 29:10, 30:6, 48:12, 60:3, 60:19
**hardly** [1] - 49:25
**Harlan** [5] - 17:24, 18:11, 44:20, 62:18
**Harlan's** [2] - 17:17, 44:8
**harm** [6] - 16:25, 21:3, 51:18, 52:3, 52:13, 67:25
**harms** [2] - 51:17, 67:8
**Hastings** [7] - 20:24, 21:17, 26:23, 30:24, 31:5, 65:19
**head** [2] - 43:15, 43:16
**heads** [1] - 17:15
**health** [1] - 40:24
**hear** [18] - 6:17, 16:17, 16:19, 17:4, 20:17, 31:13, 39:16, 41:23, 42:16, 45:15, 45:24, 48:21, 54:4, 57:3, 60:17, 60:20, 61:25, 65:12
**heard** [6] - 17:2, 35:16, 60:15, 60:21, 61:2, 65:9
**HEARING** [2] - 1:4, 1:9
**hearing** [9] - 6:15, 16:23, 17:1, 41:18, 57:8, 57:12, 57:18, 58:4, 68:24
**hearings** [1] - 16:3
**held** [4] - 16:4, 42:18, 42:20

**HELD** [1] - 1:9
**helpful** [1] - 3:8
**hereby** [1] - 69:3
**higher** [2] - 23:17, 24:9, 61:17
**higher-level** [2] - 23:17, 24:9
**highlights** [1] - 54:10
**highly** [1] - 36:8
**himself** [1] - 44:21
**hinted** [1] - 47:23
**history** [2] - 33:13, 49:16
**hit** [1] - 54:10
**Hoffman** [1] - 28:24
**Hohn** [2] - 18:22, 19:1
**hold** [10] - 8:17, 16:3, 18:22, 19:22, 21:16, 27:6, 32:3, 41:8, 41:11
**holding** [1] - 10:7, 10:10, 17:19
**HON** [2] - 1:2, 1:5
**Hon** [2] - 2:3
**honing** [1] - 9:2
**Honor** [72] - 2:2, 2:7, 2:10, 3:9, 3:25, 4:5, 4:22, 6:7, 7:17, 7:20, 8:9, 8:20, 9:17, 10:3, 10:9, 12:17, 13:18, 14:13, 15:4, 15:15, 16:22, 17:11, 17:20, 18:15, 20:1, 20:18, 20:19, 22:2, 22:4, 22:14, 23:6, 24:25, 25:3, 25:17, 26:9, 28:2, 29:6, 29:18, 30:12, 31:3, 31:11, 31:15, 31:17, 32:13, 35:21, 36:15, 36:18, 40:7, 41:5, 46:12, 46:17, 47:10, 50:21, 51:10, 53:5, 54:9, 56:4, 56:9, 56:20, 56:24, 59:16, 59:18, 60:2, 60:19, 63:4, 63:17, 65:12, 66:3, 66:7, 67:7, 67:8, 68:17
**Honor's** [1] - 13:8
**HONORABLE** [1] - 1:9
**hoops** [1] - 36:1
**hope** [1] - 49:14
**hoped** [1] - 68:20
**hopefully** [1] - 65:4
**House** [2] - 19:16, 25:15
**house** [8] - 19:5, 19:8, 19:21, 44:5, 45:10, 45:11, 45:12, 68:8

**hurdles** [2] - 22:5, 25:2

## I

**Iancu** [1] - 37:5
**idea** [2] - 6:25, 19:17
**identify** [1] - 2:5
**idiosyncratic** [1] - 50:13
**II** [1] - 30:24
**III** [7] - 19:18, 23:17, 42:22, 42:25, 43:14, 44:12, 61:6
**illegal** [1] - 64:5
**illustrates** [1] - 49:17
**imagine** [1] - 13:2
**immediately** [3] - 6:22, 14:22, 57:9
**impeachment** [12] - 9:8, 25:4, 25:15, 26:3, 26:14, 30:4, 30:19, 46:14, 47:5, 53:8, 63:19, 66:16
**impeding** [1] - 3:15
**implement** [2] - 62:13, 62:14
**implication** [1] - 48:1
**important** [3] - 51:7, 65:2, 65:9
**importantly** [1] - 39:10
**imposed** [4] - 36:12, 38:18, 45:1, 52:2
**imposition** [1] - 9:14
**imprisoned** [1] - 27:14
**imprisonment** [1] - 27:25
**improper** [1] - 36:3
**impute** [1] - 4:17
**IN** [1] - 1:1
**in-depth** [1] - 18:11
**in-house** [7] - 19:5, 19:8, 19:21, 44:5, 45:10, 45:12, 68:8
**inartful** [1] - 25:24
**including** [1] - 55:24
**inconsistency** [1] - 62:1
**inconsistent** [2] - 22:23, 37:25
**incorporated** [1] - 32:18
**incorrect** [4] - 36:21, 45:9, 45:14, 50:13
**increased** [1] - 59:3
**increasing** [1] - 34:20
**indefinite** [3] - 47:25, 64:4, 64:7
**independent** [2] - 6:8, 6:12

**indicated** [1] - 6:4
**indication** [1] - 6:21
**ineffective** [1] - 12:13
**informal** [3] - 3:20, 32:19
**information** [2] - 14:19, 45:19
**injunction** [10] - 2:15, 21:25, 30:5, 30:10, 33:22, 35:21, 36:3, 51:13, 66:1, 66:17
**injunctive** [2] - 52:14, 52:19
**injured** [1] - 46:24
**inquire** [1] - 12:18
**inquiry** [1] - 67:4
**instance** [1] - 43:23
**Institute** [5] - 36:25, 37:5, 37:15, 42:1
**insulated** [1] - 42:6
**integral** [1] - 18:13
**intend** [2] - 39:17, 39:19
**intent** [4] - 4:17, 12:6, 12:9, 49:15
**intentions** [1] - 50:18
**interbranch** [1] - 26:5
**interest** [5] - 17:1, 51:23, 52:23, 52:25, 53:15
**internal** [1] - 34:25
**interpose** [1] - 21:18
**interpret** [1] - 15:19
**interpretation** [1] - 46:19
**interpreted** [1] - 62:4
**interpreting** [1] - 60:17
**interrelated** [1] - 12:2
**invasive** [1] - 57:23
**investigate** [1] - 41:2
**investigation** [5] - 28:11, 32:21, 39:3, 52:23, 53:1
**investigative** [1] - 30:25
**involve** [2] - 44:7, 47:11
**involved** [2] - 20:14, 44:10
**irrelevant** [2] - 41:6, 59:9
**irreparable** [2] - 16:25, 52:3
**issue** [17] - 4:5, 4:11, 5:19, 6:11, 10:12, 11:12, 11:24, 16:2, 23:1, 26:23, 28:2, 31:4, 33:21, 58:23, 63:15, 63:19, 66:4

**issued** [2] - 5:9, 49:23
**issues** [8] - 3:23,
  13:12, 20:19, 29:8,
  30:8, 30:22, 42:14,
  45:17
**IT** [1] - 63:10
**itself** [10] - 10:17,
  12:4, 32:14, 33:6,
  38:14, 45:10, 45:16,
  45:23, 50:22, 68:11

## J

**January** [2] - 1:6, 69:7
**JC&D** [11] - 10:24,
  13:24, 19:15, 21:17,
  22:17, 31:6, 38:18,
  39:7, 51:24, 68:6,
  68:15
**jibes** [1] - 3:6
**John** [1] - 38:19
**JOHN** [1] - 1:13
**join** [1] - 50:9
**joined** [1] - 16:6
**judge** [23] - 3:16,
  26:18, 27:4, 27:13,
  28:9, 29:16, 41:19,
  41:20, 43:14, 43:16,
  46:22, 47:14, 49:11,
  52:9, 52:22, 52:25,
  53:2, 53:5, 53:7,
  53:11, 62:13, 62:15
**JUDGE** [2] - 1:9, 1:10
**Judge** [84] - 2:8, 3:14,
  3:18, 5:9, 6:4, 9:5,
  14:19, 14:20, 16:6,
  16:17, 17:8, 20:5,
  21:24, 23:15, 24:19,
  25:23, 26:22, 29:2,
  29:18, 32:17, 32:21,
  32:24, 33:23, 34:9,
  34:10, 34:17, 34:21,
  35:4, 35:14, 35:18,
  35:25, 36:8, 36:12,
  38:10, 38:14, 38:17,
  38:19, 38:21, 39:8,
  39:16, 40:3, 40:13,
  40:16, 40:19, 41:8,
  41:12, 41:17, 41:21,
  42:5, 42:10, 43:23,
  44:1, 44:25, 46:21,
  47:11, 47:17, 47:24,
  48:16, 48:20, 49:18,
  49:19, 50:3, 50:8,
  50:22, 50:23, 51:5,
  51:18, 51:24, 52:3,
  52:8, 52:20, 53:19,
  54:1, 54:4, 55:18,
  56:11, 56:25, 59:11,
  63:22, 65:18, 67:9,

67:15
**judges** [35] - 4:16,
  4:19, 7:1, 7:10, 8:25,
  10:23, 10:24, 11:13,
  15:2, 16:2, 19:18,
  20:14, 23:5, 23:17,
  24:12, 27:6, 31:7,
  31:8, 31:25, 35:5,
  35:25, 42:15, 42:21,
  42:25, 43:9, 43:10,
  47:3, 49:12, 51:22,
  52:8, 53:23, 58:25,
  59:6, 61:4, 68:1
**judgment** [3] - 32:15,
  35:24, 66:7
**Judicial** [78] - 2:24,
  4:2, 6:23, 8:5, 11:8,
  12:22, 13:15, 13:17,
  13:24, 14:12, 14:16,
  14:24, 17:13, 17:17,
  18:5, 20:11, 21:10,
  21:25, 22:17, 24:2,
  24:13, 24:18, 32:7,
  33:24, 34:12, 35:12,
  35:13, 35:19, 38:7,
  39:11, 40:1, 40:9,
  40:10, 41:8, 41:15,
  41:16, 42:3, 42:4,
  42:11, 42:24, 43:6,
  43:11, 43:18, 43:20,
  44:7, 44:10, 46:19,
  47:14, 48:7, 50:1,
  50:5, 50:10, 50:19,
  50:22, 51:21, 54:19,
  54:23, 55:6, 55:10,
  56:12, 57:16, 57:17,
  57:19, 58:6, 58:16,
  58:25, 59:1, 59:6,
  59:11, 61:1, 62:10,
  63:22, 64:7, 64:12,
  64:15, 64:22, 67:22,
  68:13
**judicial** [69] - 8:24,
  10:15, 10:22, 11:3,
  11:4, 11:19, 12:6,
  15:20, 15:25, 16:1,
  16:8, 17:8, 17:13,
  17:18, 18:1, 18:10,
  18:20, 20:2, 20:8,
  20:15, 21:8, 21:20,
  21:23, 22:15, 22:18,
  22:21, 23:17, 24:2,
  24:3, 25:14, 27:8,
  27:15, 31:7, 32:8,
  37:8, 37:13, 37:21,
  38:20, 41:11, 42:12,
  42:13, 42:16, 42:17,
  43:3, 43:7, 44:9,
  44:11, 47:2, 48:15,
  60:22, 60:23, 61:5,
  61:7, 61:12, 61:15,

61:17, 62:11, 62:16,
  62:19, 62:21, 62:22,
  62:23, 63:11, 64:15,
  65:4
**judiciary** [5] - 19:8,
  19:22, 45:9, 45:11,
  68:10
**judiciary's** [1] - 45:11
**JULIAN** [1] - 1:13
**jump** [1] - 36:1
**June** [28] - 4:1, 4:9,
  5:13, 5:14, 5:15,
  6:13, 6:19, 15:22,
  21:15, 31:12, 32:8,
  32:14, 32:17, 32:23,
  33:1, 33:7, 40:17,
  52:18, 54:18, 55:1,
  55:2, 55:4, 55:6,
  57:6, 58:15, 59:2,
  59:7, 59:10
**junior** [1] - 41:20
**jurisdiction** [36] - 3:2,
  10:2, 11:25, 13:13,
  15:15, 20:4, 20:7,
  20:11, 20:16, 20:17,
  22:8, 22:11, 22:21,
  23:13, 23:19, 30:17,
  33:13, 42:9, 42:10,
  43:21, 44:3, 44:23,
  46:13, 56:7, 56:10,
  56:19, 56:22, 59:18,
  60:20, 61:3, 62:14,
  62:20, 62:24, 66:9,
  66:14
**jurisdictional** [3] -
  30:7, 63:15, 66:6
**Justice** [13] - 1:16,
  1:19, 2:11, 3:12,
  17:17, 17:24, 18:10,
  19:1, 44:8, 44:20,
  45:22, 62:18
**justice** [4] - 15:8, 19:7,
  49:24, 67:23
**justices** [6] - 17:16,
  17:23, 17:24, 17:25,
  20:6, 57:1
**justification** [1] -
  52:17

## K

**keep** [4] - 6:5, 44:4,
  45:10, 53:17
**keeping** [5] - 14:13,
  45:12, 45:13, 51:24,
  52:24
**Kennedy** [1] - 19:1
**kept** [3] - 50:5
**Kimberly** [1] - 2:4
**KIMBERLY** [1] - 1:5

**kind** [2] - 51:9, 51:17
**kinds** [1] - 38:16
**known** [1] - 43:25

## L

**lack** [1] - 3:1
**lacks** [1] - 28:11
**laid** [4] - 7:24, 13:17,
  15:18, 51:10
**language** [1] - 12:12
**lapse** [1] - 64:21
**last** [15] - 3:13, 5:9,
  11:11, 11:21, 15:6,
  22:7, 31:3, 31:25,
  46:2, 54:8, 55:18,
  57:15, 60:9, 63:4,
  68:3
**lasts** [1] - 33:19
**law** [8] - 11:17, 24:9,
  28:18, 28:23, 30:21,
  33:18, 42:18, 67:5
**lay** [5] - 3:7, 8:13,
  15:13, 30:19, 30:21
**layers** [2] - 21:2
**lays** [6] - 14:12, 16:7,
  16:11, 18:12, 29:15,
  55:2
**learned** [1] - 46:16
**least** [12] - 3:2, 5:1,
  17:16, 28:7, 38:9,
  38:10, 42:2, 47:25,
  48:9, 59:20, 61:16,
  65:5
**leaves** [1] - 17:13
**leaving** [4] - 38:14,
  38:17, 40:11, 50:4
**lectern** [1] - 2:5
**Lee** [1] - 36:25
**Leedom** [2] - 12:1,
  12:4
**left** [1] - 64:19
**legal** [2] - 3:23, 12:14
**legislative** [1] - 12:6
**length** [1] - 59:25
**less** [1] - 33:19
**letting** [1] - 38:22
**level** [9] - 13:24, 17:3,
  21:9, 21:11, 21:19,
  23:17, 24:8, 24:9,
  30:14
**level-set** [1] - 30:14
**Liberties** [1] - 1:13
**lie** [1] - 43:20
**likelihood** [1] - 67:12
**likely** [6] - 6:4, 34:3,
  34:7, 48:20, 53:25,
  54:1
**limited** [1] - 12:12
**line** [1] - 27:16

**kind** [2] - 51:9, 51:17

**list** [2] - 9:13, 43:11
**listed** [1] - 39:13
**lists** [2] - 9:11, 25:22
**literally** [1] - 35:13
**litigant** [2] - 53:2,
  67:14
**litigants** [2] - 67:9,
  68:1
**litigate** [1] - 48:10
**litigation** [4] - 5:12,
  5:17, 54:22, 55:21
**loath** [2] - 4:17, 29:12
**lodged** [1] - 52:22
**LoDuca** [1] - 42:20
**long-term** [3] - 47:6,
  48:1, 48:18
**look** [13] - 7:6, 11:2,
  26:22, 27:10, 27:14,
  33:6, 38:2, 45:2,
  46:22, 47:16, 49:19,
  50:3, 60:7
**looked** [1] - 59:11
**looking** [2] - 25:19,
  60:16
**looks** [1] - 25:23
**lost** [1] - 29:17
**lower** [1] - 24:8
**lower-level** [1] - 24:8

## M

**maintaining** [1] -
  34:20
**majority** [2] - 16:7,
  17:23
**management** [1] -
  63:10
**mandamus** [3] -
  18:17, 43:23, 44:23
**mandatory** [2] - 56:19,
  56:23
**manifests** [1] - 10:17
**manipulate** [1] - 32:8
**manipulative** [2] -
  4:17, 5:1
**manner** [1] - 3:19
**Marbury** [1] - 43:22
**March** [11] - 32:16,
  32:17, 38:10, 52:17,
  58:22, 59:5, 59:7,
  59:9, 59:15, 59:17
**matter** [5] - 7:7, 13:1,
  25:25, 26:2, 40:14
**matters** [1] - 12:22
**McBryde** [52] - 7:25,
  8:6, 9:21, 10:10,
  11:17, 12:4, 12:7,
  12:8, 12:15, 18:3,
  19:14, 19:19, 20:5,
  20:9, 22:12, 23:6,

23:11, 23:15, 23:20, 25:7, 26:2, 26:8, 26:15, 26:24, 27:2, 27:10, 27:11, 28:3, 37:24, 37:25, 38:13, 38:14, 38:17, 45:16, 45:17, 45:23, 47:20, 60:5, 60:10, 60:17, 60:18, 61:1, 62:5, 62:6, 62:11, 63:1, 63:2, 63:13, 65:21, 66:10, 66:13
**McBryde's** [1] - 10:7
**mean** [30] - 4:20, 4:24, 5:1, 5:2, 9:13, 12:12, 13:17, 14:17, 16:17, 17:5, 18:24, 19:17, 21:19, 23:3, 25:18, 25:23, 26:20, 29:11, 30:12, 31:1, 32:9, 34:19, 42:13, 42:23, 43:13, 43:15, 45:13, 59:8, 61:10, 63:10
**meaningful** [1] - 11:3
**means** [3] - 37:12, 46:19, 47:10
**meant** [4] - 29:15, 37:12, 44:4, 45:9
**mechanism** [1] - 19:5
**medical** [2] - 9:15
**member** [1] - 41:21
**members** [1] - 3:17
**mental** [2] - 28:8, 29:3
**mentioned** [3] - 3:25, 51:21, 52:1
**mentions** [1] - 46:18
**mere** [1] - 51:18
**merely** [2] - 12:4, 41:18
**merits** [10] - 3:4, 5:18, 25:2, 29:7, 29:10, 30:3, 31:12, 51:14, 66:2, 66:20
**MICHAEL** [1] - 1:19
**middle** [1] - 21:2
**might** [3] - 36:2, 47:9, 58:8
**million** [2] - 42:5, 57:7
**mind** [1] - 2:21
**minimum** [1] - 28:12
**minor** [1] - 55:12
**minute** [1] - 2:13
**misapply** [1] - 14:7
**misconduct** [1] - 13:22
**mistaken** [1] - 61:18
**Mistretta** [1] - 43:6
**mistretta** [1] - 43:8
**moment** [2] - 7:17, 25:6

**month** [2] - 5:9, 55:18
**months** [2] - 35:3, 64:19
**MOORE** [1] - 1:5
**Moore** [2] - 2:4, 32:18
**moot** [8] - 4:10, 5:4, 6:14, 15:23, 17:14, 32:3, 32:4
**mooted** [1] - 56:1
**mootness** [8] - 2:21, 3:25, 4:11, 7:12, 7:22, 31:21, 54:11, 57:2
**morning** [6] - 2:7, 2:9, 2:10, 2:12, 31:17, 31:18
**most** [10] - 15:9, 18:11, 38:3, 41:19, 42:19, 43:25, 51:9, 65:2, 65:9
**mostly** [1] - 15:21
**MOTION** [2] - 1:4, 1:9
**motion** [8] - 2:15, 2:16, 29:10, 30:5, 30:10, 31:11, 51:13
**motions** [1] - 2:14
**move** [10] - 10:2, 15:14, 22:6, 24:24, 28:6, 42:8, 46:13, 65:25, 66:1, 66:19
**moved** [2] - 66:14, 66:16
**moving** [4] - 2:20, 25:1, 58:19, 59:18
**MR** [85] - 2:7, 2:10, 3:9, 3:24, 4:5, 4:9, 4:22, 5:5, 6:6, 7:17, 7:20, 7:24, 8:9, 8:18, 8:20, 10:9, 13:4, 13:7, 14:3, 15:4, 15:17, 16:21, 17:20, 19:12, 21:12, 22:9, 22:13, 23:3, 23:21, 24:10, 25:10, 25:12, 25:17, 28:15, 29:5, 29:14, 30:1, 31:15, 31:17, 31:19, 31:23, 32:13, 34:9, 34:24, 36:7, 36:15, 36:18, 37:2, 37:4, 37:7, 38:9, 39:4, 40:7, 42:10, 43:5, 44:13, 44:17, 46:4, 46:7, 46:12, 47:6, 48:3, 49:5, 49:14, 51:12, 51:16, 53:4, 54:7, 54:9, 55:16, 56:6, 56:9, 56:20, 57:25, 59:23, 60:9, 61:9, 61:21, 62:3, 64:6,

64:11, 64:22, 64:25, 65:6, 66:12
**must** [1] - 38:4

**N**

**N.W** [1] - 69:11
**narrow** [2] - 12:11, 13:22
**nature** [7] - 15:20, 27:1, 42:12, 42:13, 42:17, 61:22, 61:23
**necessarily** [1] - 28:24
**necessary** [2] - 28:11, 60:3
**need** [9] - 11:23, 22:20, 41:2, 44:24, 45:1, 48:13, 55:20, 60:11, 65:21
**needed** [1] - 68:14
**needs** [3] - 42:2, 63:17, 65:12
**never** [15] - 14:11, 15:11, 20:22, 35:15, 39:16, 44:19, 48:21, 56:4, 57:3, 57:4, 59:25, 63:25, 64:1
**nevertheless** [1] - 48:12
**New** [1] - 1:13
**new** [4] - 32:24, 52:18, 54:20, 58:17
**Newman** [59] - 2:3, 2:8, 3:14, 3:18, 6:4, 9:5, 14:19, 14:20, 16:17, 21:24, 25:23, 29:2, 29:18, 32:21, 32:24, 33:23, 34:17, 35:4, 35:14, 35:18, 35:25, 36:12, 38:10, 38:21, 39:8, 39:16, 40:3, 40:13, 40:16, 40:19, 41:8, 41:12, 41:17, 41:22, 42:5, 42:11, 43:23, 44:1, 46:22, 47:12, 47:17, 48:16, 48:20, 50:3, 50:8, 50:22, 50:24, 51:5, 51:18, 51:24, 52:3, 52:8, 52:20, 53:19, 54:4, 63:22, 67:9, 67:15
**NEWMAN** [1] - 1:2
**Newman's** [7] - 34:9, 34:10, 36:8, 47:24, 49:18, 54:1, 59:11
**next** [1] - 35:4
**Ninth** [3] - 27:12, 27:16, 27:18
**nobody** [1] - 50:9

**noncooperation** [1] - 41:24
**none** [1] - 26:20
**nonjudicial** [1] - 18:24
**Note** [2] - 54:16, 54:17
**noted** [1] - 55:13
**notes** [1] - 69:5
**nothing** [10] - 10:9, 11:20, 21:10, 24:7, 40:24, 40:25, 41:22, 45:3, 55:11, 58:13
**notice** [2] - 28:8, 48:15
**noting** [2] - 41:16, 41:24
**notwithstanding** [1] - 44:11
**November** [5] - 5:13, 33:10, 33:14, 55:9, 59:14
**novo** [1] - 59:10
**number** [3] - 33:7, 33:10, 35:2
**NW** [3] - 1:14, 1:17, 1:24

**O**

**object** [1] - 35:5
**objections** [1] - 66:6
**obtained** [1] - 56:1
**obvious** [2] - 41:3, 41:5
**Obviously** [1] - 30:16
**obviously** [47] - 4:1, 5:21, 6:13, 7:1, 9:3, 10:1, 11:4, 11:11, 11:13, 11:17, 12:8, 13:12, 14:7, 14:24, 15:11, 15:12, 15:17, 15:22, 15:24, 16:1, 17:9, 18:11, 18:12, 20:2, 20:12, 20:13, 21:4, 22:15, 23:24, 26:15, 27:11, 29:8, 31:7, 44:12, 55:18, 55:23, 56:25, 57:11, 58:17, 59:13, 63:6, 64:12, 64:25, 65:22, 66:5, 68:9, 68:21
**occur** [2] - 6:18, 7:6, 32:9
**odd** [3] - 48:24, 51:8, 59:8
**OF** [3] - 1:1, 1:9, 69:1
**offend** [1] - 31:1
**offhand** [1] - 60:6
**office** [10] - 9:10, 25:21, 26:4, 27:7, 27:25, 28:1, 41:22,

43:7, 49:12, 49:13
**Office** [1] - 63:7
**OFFICIAL** [1] - 69:1
**Official** [2] - 1:23, 69:10
**old** [5] - 6:20, 35:3, 35:4, 54:21
**once** [12] - 7:10, 20:2, 20:15, 27:8, 28:19, 35:19, 45:19, 59:25, 61:11, 61:12, 62:22
**one** [44] - 5:14, 5:24, 6:11, 7:17, 9:25, 11:21, 15:6, 16:5, 18:25, 20:20, 22:7, 23:9, 26:19, 26:25, 28:7, 31:3, 33:25, 37:1, 38:2, 39:11, 41:15, 42:7, 43:4, 43:8, 45:16, 47:4, 48:9, 50:3, 50:7, 50:17, 51:4, 51:5, 51:19, 53:22, 55:15, 58:20, 63:13, 63:21, 64:7, 64:9, 66:12
**one-day** [2] - 26:19, 47:4
**one-sitting** [1] - 26:19
**one-year** [2] - 26:25, 63:21
**onerous** [1] - 57:23
**ones** [2] - 30:3, 30:4
**ongoing** [2] - 52:2, 52:3
**open** [1] - 42:7
**operate** [1] - 67:21
**operated** [1] - 68:14
**opined** [1] - 39:8
**opinion** [6] - 16:6, 18:12, 22:1, 38:13, 50:15, 54:1
**opinions** [5] - 34:14, 34:15, 50:9, 53:20, 53:21
**opposed** [2] - 3:3, 61:7
**opposing** [3] - 33:15, 33:17, 33:22
**opposition** [1] - 15:21
**option** [1] - 48:17
**order** [55] - 3:7, 4:1, 4:9, 5:4, 5:13, 5:14, 5:16, 6:13, 13:18, 13:19, 14:17, 14:24, 15:9, 15:13, 17:14, 18:4, 25:3, 31:20, 32:8, 32:12, 32:14, 32:16, 32:23, 33:1, 33:3, 33:6, 33:7, 33:10, 33:14, 33:16,

39:18, 40:9, 40:17, 48:5, 48:15, 52:17, 52:18, 54:19, 55:1, 55:2, 55:4, 55:6, 57:6, 58:15, 59:2, 59:5, 59:9, 59:14, 59:22, 62:14, 64:15, 64:21

**ordered** [2] - 20:19, 49:20

**orders** [19] - 8:4, 8:14, 9:7, 9:9, 9:21, 11:18, 18:18, 20:11, 23:23, 25:20, 25:23, 32:18, 32:20, 42:5, 46:18, 49:23, 60:13, 61:3, 62:10

**organized** [1] - 2:20

**original** [18] - 3:1, 10:2, 11:25, 13:13, 15:14, 20:4, 20:17, 22:7, 23:19, 30:17, 42:8, 42:10, 44:3, 46:13, 56:22, 59:18, 60:20, 66:13

**otherwise** [2] - 3:1, 18:23

**ought** [1] - 48:21

**outset** [1] - 46:15

**outside** [2] - 11:22, 23:10

**overcome** [2] - 4:12, 27:2

**overly** [2] - 35:2, 49:22

**override** [1] - 15:2

**overturn** [1] - 67:15

**own** [11] - 2:21, 20:11, 32:25, 34:7, 34:25, 36:11, 40:15, 40:25, 41:12, 49:18, 54:16

## P

**pace** [2] - 67:21, 67:22

**paced** [1] - 48:9

**package** [1] - 43:8

**page** [5] - 12:3, 13:19, 28:17, 54:15, 54:16

**pages** [2] - 28:17, 30:22

**paint** [1] - 18:9

**panel** [3] - 50:9, 52:12, 67:16

**paper** [1] - 48:7

**papers** [1] - 49:22

**paragraph** [6] - 25:20, 35:1, 46:17, 46:21, 47:1

**parallel** [1] - 23:5

**parse** [1] - 49:2

**part** [4] - 17:19, 37:20, 37:21, 45:10

**particular** [3] - 28:19, 52:5, 52:12

**particularly** [1] - 36:23

**parts** [1] - 2:20

**party** [1] - 21:21

**past** [6] - 16:13, 39:3, 60:23, 66:5, 66:13, 66:14

**PAULINE** [1] - 1:2

**Pauline** [1] - 2:3

**pay** [2] - 38:24, 42:5

**pen** [1] - 5:23

**penalty** [1] - 41:25

**pending** [4] - 32:21, 51:25, 52:6, 52:25

**people** [1] - 19:23

**percent** [1] - 34:21

**perform** [3] - 3:15, 28:9, 40:14

**performing** [1] - 22:18

**perhaps** [3] - 19:22, 50:15, 52:24

**period** [1] - 39:22

**permanent** [1] - 39:14

**permanently** [1] - 51:22

**person** [2] - 41:23, 42:23

**personally** [1] - 57:23

**petition** [1] - 56:23

**petitioned** [1] - 67:14

**petitions** [1] - 37:18

**physician** [3] - 40:10, 40:11, 40:13

**physicians** [1] - 40:13

**PI** [1] - 51:15

**picture** [1] - 18:10

**piece** [1] - 20:1

**piecemeal** [1] - 58:9

**Pitch** [7] - 16:6, 17:7, 18:7, 60:21, 61:14, 61:16, 63:1

**place** [4] - 16:5, 22:20, 56:15, 57:12

**plain** [1] - 11:18

**Plaintiff** [2] - 1:3, 1:12

**plaintiff** [16] - 2:6, 2:15, 9:2, 9:5, 9:10, 9:15, 12:2, 12:13, 12:19, 14:10, 17:5, 20:21, 25:9, 25:21, 28:19, 31:16

**plaintiff's** [4] - 8:21, 10:5, 27:5, 29:25

**plaintiffs** [3] - 14:17, 14:18, 31:13

**plan** [1] - 3:7

**plant** [1] - 32:2

**play** [1] - 21:1

**pleading** [2] - 25:24, 29:24

**pleadings** [1] - 38:3

**pled** [7] - 8:2, 8:3, 8:9, 8:13, 9:6, 9:20, 25:19

**point** [56] - 5:9, 5:11, 10:2, 11:21, 13:18, 14:2, 14:5, 14:7, 15:15, 16:5, 18:21, 20:8, 20:24, 21:11, 21:20, 21:23, 22:7, 26:10, 26:11, 31:3, 31:5, 32:13, 33:11, 33:15, 40:8, 40:9, 40:12, 41:14, 44:4, 46:15, 47:7, 47:19, 47:21, 51:7, 53:11, 53:19, 54:15, 55:12, 57:15, 58:1, 58:11, 58:20, 60:1, 60:20, 63:4, 63:12, 63:13, 65:10, 65:16, 65:23, 67:9, 67:12, 67:13, 68:3

**pointed** [7] - 14:11, 32:22, 33:2, 33:8, 50:21, 58:22, 67:4

**points** [5] - 29:19, 33:25, 45:8, 63:20, 67:8

**police** [1] - 45:10

**policies** [1] - 16:13

**policing** [2] - 19:6, 68:11

**political** [1] - 19:5

**poorly** [1] - 49:23

**portion** [1] - 45:23

**Portland** [1] - 63:15

**position** [9] - 7:25, 8:7, 17:18, 22:10, 42:23, 43:1, 61:19, 64:2, 68:21

**possible** [5] - 3:15, 14:21, 39:14, 39:16, 57:19

**possibly** [2] - 39:23, 39:24

**post** [1] - 55:18

**posture** [1] - 68:4

**power** [9] - 16:2, 25:15, 27:8, 32:2, 34:8, 40:18, 42:14, 42:15, 50:4, 51:1, 52:6, 55:3, 69:6

**powers** [2] - 11:9, 41:15

**practical** [1] - 43:4

**precedent** [2] - 17:9, 63:16

**precisely** [1] - 53:11

**preclude** [1] - 12:6

**precluding** [1] - 12:12

**predecessor** [1] - 10:7

**predict** [1] - 53:24

**preliminary** [6] - 2:15, 30:5, 30:10, 51:13, 65:25, 66:17

**Prentis** [1] - 61:14

**prepared** [1] - 66:19

**present** [8] - 16:13, 16:16, 16:20, 16:23, 17:4, 35:10, 41:20, 42:17

**presentation** [1] - 48:7

**presented** [1] - 13:3

**presumptively** [1] - 33:19

**pretty** [8] - 11:16, 17:13, 18:2, 18:10, 18:19, 20:15, 26:2, 45:24

**prevent** [2] - 40:24, 41:1

**prevented** [1] - 52:10

**prevents** [1] - 49:11

**prickly** [1] - 49:23

**principle** [1] - 4:20

**principles** [2] - 20:21, 21:16

**private** [1] - 40:2

**proactively** [1] - 6:24

**problem** [5] - 27:3, 30:17, 30:18, 54:20, 66:14

**problems** [2] - 15:11, 51:6

**Procedure** [2] - 16:10, 35:1

**procedures** [2] - 36:2, 53:6

**proceed** [3] - 31:20, 46:11, 53:8

**proceeding** [5] - 13:22, 13:23, 16:8, 48:10, 61:23

**proceedings** [18] - 8:25, 12:21, 13:21, 15:20, 16:4, 17:8, 17:12, 31:9, 35:20, 38:11, 41:10, 41:13, 42:15, 50:4, 51:1, 52:6, 55:3, 69:6

**process** [32] - 10:13, 10:18, 10:23, 14:9, 16:18, 21:1, 21:3, 21:15, 22:19, 24:21, 30:4, 30:11, 30:15, 30:23, 31:1, 32:9,

**precisely** [1] - 53:11

33:11, 38:18, 38:22, 38:25, 40:20, 44:5, 45:19, 46:5, 51:24, 52:2, 53:10, 55:7, 66:16, 68:7, 68:16

**processed** [1] - 48:25

**production** [1] - 34:11

**Programs** [2] - 1:17, 1:20

**progress** [2] - 9:25, 59:13

**prohibition** [1] - 45:19

**prong** [2] - 6:1, 6:10

**prongs** [1] - 5:7

**proper** [3] - 35:24, 45:6, 55:25

**properly** [1] - 15:13

**proposition** [1] - 12:11

**prosecuted** [1] - 27:21

**prosecution** [1] - 27:13

**prosecutions** [1] - 26:7

**provide** [1] - 28:8

**provided** [1] - 36:1

**provision** [5] - 29:4, 32:24, 37:8, 40:21, 41:10, 41:13

**provisions** [1] - 29:1

**prudential** [2] - 21:9, 22:3

**Pryor** [1] - 17:9

**Pryor's** [1] - 16:6

**psychiatric** [1] - 49:21

**PTO** [1] - 37:10

**public** [6] - 14:3, 40:2, 52:22, 52:25, 53:15, 67:25

**publicly** [1] - 48:15

**punishment** [1] - 41:7

**pure** [1] - 58:11

**purely** [1] - 6:16

**purpose** [2] - 19:2, 19:25

**purposes** [3] - 55:21, 66:4, 66:22

**push** [1] - 59:4

**put** [4] - 8:15, 18:21, 34:11, 47:20

**putting** [2] - 23:20, 52:20

## Q

**quagmire** [1] - 45:2

**queried** [1] - 36:19

**questions** [10] - 7:22, 11:14, 18:25, 19:9, 19:24, 24:4, 24:25,

26:10, 36:16, 68:17
**quibble** [2] - 25:18, 63:2
**quick** [1] - 63:19
**quickly** [3] - 51:16, 66:19, 67:7
**quite** [2] - 11:13, 39:16
**quo** [1] - 64:21
**quote** [2] - 12:7, 37:10

## R

**raise** [4] - 18:25, 19:24, 39:5, 60:4
**raised** [4] - 30:5, 59:25, 67:8, 67:13
**raising** [1] - 24:21
**Ralls** [1] - 56:14
**ran** [1] - 38:18
**rather** [1] - 68:22
**re** [1] - 37:18
**re-examination** [1] - 37:18
**reach** [5] - 15:11, 29:3, 40:20, 59:16, 67:11
**reached** [4] - 15:1, 24:12, 26:1, 44:19
**reaching** [1] - 38:21
**react** [1] - 33:24
**read** [2] - 46:22, 54:16
**ready** [1] - 14:4
**real** [2] - 14:15, 14:18
**really** [11] - 7:11, 10:16, 10:25, 11:2, 11:16, 19:14, 23:7, 24:14, 51:7, 62:20
**reason** [7] - 5:14, 28:4, 39:5, 39:8, 54:17, 55:1, 62:12
**reasonable** [7] - 6:9, 7:5, 34:2, 56:3, 57:2, 57:15, 58:18
**reasons** [17] - 5:19, 7:14, 9:23, 12:2, 12:16, 13:19, 14:13, 14:23, 15:24, 16:8, 18:16, 22:2, 23:21, 28:16, 29:16, 57:7, 64:16
**reassigning** [1] - 18:12
**reassigns** [2] - 18:6, 62:8
**recalcitrance** [1] - 41:7
**recalcitrant** [1] - 50:24
**receive** [1] - 27:7
**recognize** [1] - 61:12

**recognized** [1] - 5:6
**reconsider** [1] - 63:23
**reconsideration** [1] - 55:5
**record** [9] - 2:3, 2:6, 14:16, 32:7, 32:11, 34:6, 34:15, 35:1, 51:4
**records** [1] - 9:15
**redressability** [1] - 15:10
**reduction** [1] - 34:22
**reference** [1] - 18:22
**referenced** [1] - 38:13
**references** [1] - 27:18
**referred** [1] - 55:6
**referring** [1] - 17:21
**reflected** [1] - 49:23
**refused** [1] - 29:20
**refuses** [1] - 50:24
**regard** [1] - 48:9
**reimpose** [2] - 5:23, 6:3
**reincorporates** [1] - 46:25
**reinstate** [1] - 57:18
**reiterate** [2] - 25:5, 30:13
**rejected** [2] - 12:16, 27:16
**rejects** [1] - 26:16
**related** [5] - 8:25, 11:5, 15:19, 17:12, 18:8
**relief** [7] - 8:15, 11:3, 11:5, 35:23, 43:23, 52:15, 52:19
**relitigate** [1] - 43:22
**relying** [1] - 21:4
**remaining** [1] - 9:3
**remedied** [1] - 11:10
**remedy** [1] - 35:22
**removal** [5] - 26:4, 26:25, 27:4, 27:9, 47:22
**remove** [2] - 9:10, 25:21
**removed** [1] - 27:14
**renders** [1] - 28:9
**renew** [1] - 39:19
**renewable** [3] - 39:19, 63:21, 64:14
**renewal** [1] - 48:17
**reoccur** [1] - 6:9
**repeatedly** [1] - 16:4
**repetition** [5] - 5:25, 32:4, 33:16, 33:21, 55:22
**reply** [7] - 8:21, 12:3, 21:20, 28:17, 30:21,

54:16, 61:24
**report** [1] - 27:6
**reported** [1] - 41:2
**Reporter** [3] - 1:22, 1:23, 69:10
**reporter** [1] - 4:4
**REPORTER** [1] - 69:1
**reprimand** [1] - 40:2
**request** [2] - 15:7, 59:11
**requested** [2] - 55:4, 55:5
**requests** [1] - 40:6
**require** [2] - 47:9, 59:21
**requirement** [1] - 12:5
**requirements** [1] - 9:14
**requires** [1] - 36:5
**reservation** [1] - 67:2
**reserve** [1] - 40:18
**reserved** [2] - 25:15, 40:22
**resolution** [1] - 3:20
**resolve** [2] - 10:1, 52:16
**respect** [3] - 44:20, 47:18, 50:10
**respectful** [1] - 3:19
**respectfully** [1] - 50:10
**responded** [2] - 20:22, 48:13
**responding** [1] - 30:20
**response** [1] - 59:24
**restore** [1] - 39:17
**restored** [1] - 27:8
**result** [1] - 51:23
**results** [1] - 53:1
**retains** [1] - 41:22
**retire** [1] - 53:8
**retirement** [1] - 40:3
**reverse** [1] - 21:24
**reversed** [2] - 36:24, 54:1
**review** [41] - 5:25, 8:24, 10:12, 10:13, 10:14, 10:15, 11:5, 11:19, 12:6, 12:12, 13:24, 15:25, 16:1, 18:24, 19:15, 19:23, 20:11, 20:13, 21:2, 21:18, 24:4, 31:6, 32:5, 33:17, 33:18, 33:20, 37:8, 37:13, 37:22, 42:7, 52:2, 55:24, 55:25, 56:1, 56:16, 61:3, 62:10, 62:12, 62:16

**reviewing** [1] - 22:18
**reviving** [1] - 7:8
**riff** [1] - 29:14
**rights** [4] - 16:16, 16:20, 42:17, 52:11
**rises** [1] - 17:3
**risk** [1] - 31:9
**RMR** [2] - 1:22, 69:9
**roll** [1] - 65:7
**Room** [3] - 1:20, 1:23, 69:10
**round** [1] - 36:12
**route** [1] - 22:3
**Rule** [2] - 14:6, 21:6
**rule** [7] - 12:21, 13:1, 14:6, 23:1, 32:2, 35:5, 66:18
**rules** [4] - 34:25, 36:2, 39:6, 68:15
**Rules** [1] - 16:9
**run** [1] - 38:22
**running** [1] - 40:20
**runs** [2] - 28:25, 67:5

## S

**S.Ct** [1] - 37:5
**salary** [1] - 27:7
**San** [1] - 1:21
**sanction** [5] - 5:3, 5:23, 6:3, 38:17, 39:2
**sanctions** [3] - 36:12, 39:11, 45:1
**SAS** [7] - 36:25, 37:5, 37:15, 37:19, 42:1, 59:20
**saw** [2] - 43:14, 66:23
**scenario** [1] - 62:15
**scenarios** [1] - 4:25
**scheme** [3] - 10:12, 10:15, 19:2
**schizophrenia** [1] - 53:12
**seat** [1] - 41:20
**second** [5] - 2:23, 20:1, 23:12, 24:8, 44:22
**Second** [1] - 42:19
**second-guessing** [1] - 24:8
**section** [2] - 21:5, 28:7
**Section** [4] - 2:25, 7:21, 28:9, 37:14
**security** [1] - 63:10
**Security** [1] - 49:7
**see** [9] - 5:2, 14:16, 28:18, 33:16, 39:20, 42:5, 48:2, 52:17,

60:12
**seeing** [1] - 23:6
**seek** [1] - 43:23
**seeking** [1] - 52:14
**seem** [1] - 16:17
**SEFRANEK** [1] - 69:3
**Sefranek** [3] - 1:22, 69:9, 69:9
**Senate** [3] - 25:16, 27:22, 27:23
**senator** [2] - 27:19, 27:20
**senior** [1] - 41:19
**sense** [6] - 10:24, 13:20, 18:17, 18:19, 26:8, 29:17
**sentencing** [2] - 43:8, 43:10
**separate** [5] - 19:13, 42:14, 57:5, 57:9, 58:2
**September** [3] - 13:18, 39:18, 48:4
**serious** [5] - 5:6, 18:25, 55:19, 67:18, 67:19
**served** [1] - 3:18
**serving** [1] - 38:12
**set** [4] - 26:12, 26:18, 30:14, 57:19
**sets** [1] - 63:5
**setting** [3] - 18:18, 19:8, 24:1
**settles** [1] - 27:11
**settling** [1] - 19:15
**shall** [2] - 15:3, 52:7
**shifted** [1] - 21:13
**short** [5] - 6:25, 19:10, 19:12, 26:4, 26:13
**show** [8] - 6:8, 26:12, 34:1, 42:1, 46:23, 51:2, 65:13, 68:10
**showing** [1] - 50:8
**shown** [1] - 3:14
**shows** [2] - 33:14, 68:11
**sic]** [1] - 31:13
**side** [6] - 8:10, 21:24, 31:21, 46:16, 54:25, 65:10
**sides** [1] - 68:20
**signs** [1] - 3:14
**similar** [4] - 18:17, 18:18, 34:4, 37:8
**simply** [12] - 14:21, 27:4, 36:20, 39:20, 40:15, 44:23, 44:25, 45:2, 45:6, 45:14, 46:21, 53:16
**simultaneously** [1] -

21:7

**sit** [5] - 43:9, 52:4, 52:9, 52:12, 64:1
**sits** [1] - 35:15
**sitting** [11] - 7:3, 7:4, 26:19, 35:4, 35:7, 52:25, 57:9, 57:16, 58:10, 67:10, 67:16
**sittings** [1] - 35:7
**situated** [1] - 2:13
**situation** [4] - 3:19, 7:2, 13:14, 38:20
**situations** [1] - 50:17
**six** [1] - 35:3
**Sixth** [3] - 38:19, 49:19, 50:1
**SJ** [1] - 66:19
**skipping** [1] - 37:7
**slightly** [1] - 16:9
**slow** [2] - 4:3, 67:21
**small** [1] - 33:6
**so-called** [1] - 53:21
**Social** [1] - 49:6
**solve** [2] - 11:23, 11:24
**someone** [2] - 5:2, 41:20
**sometimes** [1] - 18:5
**somewhat** [3] - 13:2, 41:6, 48:24
**somewhere** [2] - 35:15, 65:16
**soon** [1] - 52:18
**sooner** [2] - 64:9, 68:22
**sorry** [4] - 37:1, 55:15, 56:5, 62:6
**sort** [22] - 2:20, 5:7, 5:24, 6:10, 8:21, 12:1, 13:5, 13:8, 16:14, 17:21, 21:5, 21:9, 24:14, 24:17, 29:3, 29:14, 48:8, 49:6, 50:24, 57:19, 58:9, 65:17
**sorts** [1] - 8:14
**sought** [1] - 52:19
**sound** [1] - 28:13
**sounds** [2] - 25:16, 49:25
**space** [1] - 63:10
**speaking** [1] - 44:21
**special** [9] - 8:5, 9:11, 10:11, 10:14, 11:9, 28:10, 29:2, 32:19, 68:13
**specific** [4] - 9:11, 17:1, 25:22, 63:8
**specifically** [9] - 19:4, 21:17, 25:19, 26:17,

39:18, 47:1, 54:19, 62:9, 62:11
**speculate** [2] - 7:9, 7:11
**speculating** [2] - 7:12, 58:10
**speculation** [2] - 35:16, 58:12
**speculative** [6] - 6:16, 6:18, 35:18, 36:10, 36:11, 58:6
**speed** [2] - 34:10, 36:8
**spell** [1] - 37:3
**split** [1] - 44:8
**sponte** [1] - 55:10
**square** [1] - 18:6
**squarely** [6] - 26:2, 30:16, 30:24, 31:2, 60:5, 63:14
**staff** [1] - 41:2
**staffed** [1] - 42:25
**stage** [1] - 29:24
**standard** [5] - 15:1, 16:11, 17:10, 51:3, 66:11
**standing** [2] - 16:24, 46:21
**stands** [1] - 12:11
**start** [10] - 2:17, 2:19, 3:17, 3:24, 12:3, 25:3, 54:11, 57:8, 57:9
**started** [2] - 21:15, 57:16, 57:18, 58:4, 58:5
**starting** [1] - 2:6
**starts** [1] - 53:11
**state** [1] - 23:4
**statements** [1] - 23:7
**States** [4] - 1:23, 42:14, 43:19, 63:7
**STATES** [2] - 1:1, 1:10
**status** [2] - 14:1, 64:21
**statute** [32] - 10:8, 12:11, 12:19, 12:20, 15:25, 24:6, 37:16, 37:23, 38:5, 39:10, 39:21, 39:24, 40:1, 41:17, 41:22, 42:4, 45:25, 46:23, 46:24, 47:10, 47:13, 49:5, 49:15, 49:16, 49:17, 50:18, 51:19, 52:7, 53:15, 59:21, 60:16, 63:5
**statutes** [1] - 68:15
**statutory** [6] - 8:1, 10:11, 10:14, 19:2, 36:19, 60:11

**stay** [1] - 35:15
**stenographic** [1] - 69:5
**step** [1] - 49:18
**Stephen** [2] - 2:10, 3:11
**STEPHEN** [1] - 1:16
**still** [17] - 11:17, 21:16, 22:11, 22:22, 23:1, 28:1, 36:5, 39:5, 41:1, 41:2, 47:11, 48:25, 51:25, 59:12, 62:19, 64:19, 66:13
**stop** [1] - 19:12
**stopped** [1] - 19:10
**stopping** [1] - 18:13
**stops** [1] - 41:18
**straight** [1] - 20:5
**strategic** [2] - 5:1, 32:14
**strategically** [1] - 33:14
**Street** [2] - 1:14, 1:17
**stroke** [1] - 5:23
**strong** [2] - 21:14, 51:18
**structured** [1] - 11:7
**sua** [1] - 55:10
**subject** [3] - 34:2, 34:4, 57:5
**submit** [4] - 50:24, 50:25, 60:2, 60:19
**submits** [1] - 25:9
**submitted** [2] - 14:4, 59:24
**subpoenas** [1] - 16:3
**subset** [1] - 3:2
**substance** [1] - 25:14
**subtracting** [1] - 50:6
**success** [1] - 67:12
**sued** [1] - 32:22
**suggest** [1] - 16:18
**suggested** [2] - 44:9, 59:20
**Suite** [1] - 1:14
**summary** [1] - 66:6
**superseded** [1] - 59:10
**supplemental** [3] - 4:12, 60:8, 67:20
**supposed** [1] - 9:8
**Supreme** [21] - 17:9, 20:5, 22:24, 27:17, 27:19, 27:24, 32:1, 32:3, 36:24, 37:11, 38:1, 43:6, 43:24, 45:5, 45:16, 53:22, 56:8, 56:12, 56:18, 67:15

**surmounted** [1] - 25:1
**surreply** [1] - 39:15
**survived** [1] - 45:17
**suspect** [2] - 34:22, 53:16
**suspects** [1] - 35:9
**suspend** [6] - 34:18, 35:19, 40:19, 47:3, 47:14, 51:22
**suspended** [9] - 26:19, 32:15, 32:21, 38:15, 38:21, 39:7, 48:17, 51:24, 57:13
**suspending** [1] - 38:10
**suspension** [41] - 5:16, 6:12, 6:21, 6:25, 15:22, 17:3, 26:19, 26:25, 38:12, 39:12, 39:13, 39:15, 39:19, 39:21, 40:4, 40:5, 41:4, 47:4, 47:16, 47:19, 47:25, 48:1, 48:18, 54:13, 54:18, 54:24, 55:5, 57:5, 57:10, 57:12, 58:2, 58:14, 59:13, 63:21, 63:24, 64:3, 64:4, 64:21, 65:11
**suspensions** [5] - 26:17, 27:4, 47:6, 51:20
**suspicion** [2] - 40:19, 51:18
**suspicions** [1] - 41:1
**symptoms** [1] - 53:12
**system** [1] - 57:20

**T**

**table** [1] - 47:17
**tactic** [1] - 54:22
**talks** [4] - 9:9, 9:11, 25:19, 26:23
**TAMARA** [1] - 69:3
**Tamara** [3] - 1:22, 69:9, 69:9
**temperature** [1] - 3:22
**temporary** [4] - 39:12, 39:13, 39:22, 40:4
**ten** [1] - 33:3
**term** [4] - 31:25, 47:6, 48:1, 48:18
**termed** [1] - 25:4
**terms** [5] - 16:15, 17:10, 31:25, 49:10, 59:4
**test** [2] - 57:17, 58:3
**tests** [3] - 29:20, 50:25, 51:1

**text** [1] - 11:18
**THE** [89] - 1:1, 1:1, 1:9, 2:2, 2:9, 2:12, 3:21, 4:3, 4:7, 4:20, 4:23, 5:22, 7:16, 7:19, 7:23, 8:7, 8:17, 8:19, 10:5, 12:18, 13:5, 14:1, 15:3, 15:16, 16:15, 17:15, 19:10, 21:8, 22:7, 22:10, 22:23, 23:16, 24:5, 25:8, 25:11, 25:13, 28:6, 29:1, 29:13, 29:24, 31:13, 31:16, 31:18, 31:22, 32:6, 34:1, 34:19, 36:5, 36:14, 36:17, 37:1, 37:3, 37:6, 38:2, 39:1, 40:5, 42:8, 43:2, 44:6, 44:14, 46:2, 46:5, 46:9, 47:4, 47:23, 49:3, 49:10, 51:11, 51:14, 52:20, 54:6, 54:8, 55:15, 56:5, 56:8, 56:18, 57:21, 59:19, 60:7, 61:2, 61:16, 61:25, 64:3, 64:9, 64:18, 64:24, 65:4, 66:8, 68:19
**themselves** [2] - 38:24, 48:19
**theory** [1] - 62:21
**therefore** [7] - 9:24, 20:17, 20:22, 34:4, 43:20, 47:25, 66:9
**they've** [8] - 14:9, 21:13, 30:20, 39:7, 59:3, 63:11, 65:15, 66:10
**thinker** [1] - 50:13
**thinks** [3] - 8:11, 51:7, 63:6
**third** [1] - 3:1
**thirds** [1] - 27:22
**threats** [3] - 9:9, 25:20, 46:18
**three** [6] - 17:24, 17:25, 20:6, 23:7, 34:14, 57:1
**threshold** [4] - 13:12, 20:19, 29:8, 30:22
**throughout** [7] - 6:20, 14:9, 32:16, 32:17, 32:20, 33:11, 50:4
**tick** [3] - 9:13, 9:16, 11:15
**ticks** [1] - 17:9
**tied** [1] - 58:3
**timeline** [1] - 65:6

**tips** [3] - 51:18, 52:13, 53:15
**title** [1] - 46:8
**titled** [1] - 46:9
**today** [4] - 3:13, 7:4, 47:24, 62:2
**tomorrow** [3] - 6:15, 40:5, 58:5
**ton** [1] - 30:12
**took** [5] - 6:19, 36:24, 42:3, 42:12, 65:2
**top** [2] - 33:15, 35:21
**total** [1] - 38:15
**touch** [2] - 51:15, 51:16
**touched** [1] - 57:14
**towards** [1] - 52:13
**track** [2] - 24:17, 48:11
**tracks** [2] - 24:17, 24:23
**TRANSCRIPT** [1] - 1:9
**transcript** [2] - 69:4, 69:6
**transfer** [9] - 13:16, 13:20, 14:6, 14:11, 14:21, 15:7, 15:10
**transferred** [2] - 12:22, 18:15
**transferring** [1] - 13:1
**travel** [1] - 35:14
**treated** [2] - 35:10, 36:10
**treating** [1] - 35:25
**trial** [1] - 18:18
**tried** [3] - 9:6, 9:18, 52:15
**trilogy** [1] - 42:1
**true** [12] - 23:14, 23:18, 24:1, 24:5, 29:18, 29:21, 29:25, 49:25, 68:12, 69:4, 69:5
**truly** [1] - 33:9
**try** [8] - 11:1, 15:1, 49:2, 52:16, 56:12, 58:8, 59:4
**trying** [4] - 8:11, 21:21, 60:12, 67:2
**turn** [2] - 3:22, 7:20
**turns** [1] - 37:18
**two** [19] - 17:24, 21:6, 22:6, 24:17, 24:23, 27:22, 31:25, 33:19, 35:3, 35:7, 36:22, 38:9, 42:14, 45:8, 53:23, 59:24, 62:18, 63:19, 66:12
**two-thirds** [1] - 27:22
**type** [1] - 60:16

## U

**U.S** [3] - 1:16, 1:19, 37:4
**U.S.C** [1] - 37:9
**ultra** [11] - 9:15, 13:5, 37:22, 38:4, 38:8, 39:20, 47:12, 52:5, 58:21, 59:4, 59:22
**unanimously** [2] - 7:10, 59:1
**unappealable** [1] - 37:10
**unconstitutional** [5] - 9:16, 47:7, 48:1, 57:23, 65:11
**unconstitutionally** [1] - 11:7
**under** [29] - 4:1, 6:12, 8:2, 8:4, 9:21, 9:24, 10:6, 10:23, 12:22, 13:11, 14:5, 19:7, 23:14, 23:24, 28:18, 29:16, 30:16, 30:25, 33:8, 33:9, 33:18, 40:24, 41:13, 53:14, 58:15, 58:24, 59:5, 67:5, 68:22
**undermine** [2] - 10:7, 33:12
**understandable** [1] - 5:2
**undertake** [1] - 61:4
**undiminished** [1] - 27:7
**unduly** [1] - 52:14
**unfit** [1] - 28:9
**unique** [2] - 38:12, 38:20
**UNITED** [2] - 1:1, 1:10
**United** [4] - 1:23, 42:14, 43:19, 63:7
**unlawfully** [2] - 9:10, 25:22
**unless** [8] - 7:21, 24:25, 26:9, 36:15, 46:1, 46:12, 64:4, 68:17
**unlikely** [1] - 36:8
**unlimited** [1] - 50:19
**unprecedented** [1] - 38:20
**unreasonable** [1] - 39:6
**unrecorded** [1] - 32:15
**unreported** [1] - 32:16
**up** [16] - 5:8, 6:5, 6:15, 6:19, 14:5, 16:1, 19:15, 20:12, 22:4, 22:5, 24:20, 54:12, 57:19, 62:12, 62:16, 68:5
**upset** [1] - 64:20
**Usher** [1] - 7:6

## V

**vacate** [1] - 54:18
**vacated** [11] - 5:14, 5:16, 32:2, 32:8, 32:12, 33:1, 33:4, 33:5, 54:13, 54:23, 59:14
**vacatur** [2] - 32:9, 55:11
**vague** [1] - 28:19
**vagueness** [5] - 28:7, 28:18, 28:23, 65:23, 66:20
**value** [1] - 3:18
**varied** [1] - 34:11
**various** [2] - 46:18, 49:20
**VECCHIONE** [1] - 1:13
**vehicle** [1] - 45:6
**venue** [1] - 18:15
**versus** [2] - 34:14, 60:24
**veterans** [1] - 53:23
**view** [10] - 6:10, 9:18, 17:6, 22:3, 23:12, 24:23, 26:1, 40:25, 43:2, 55:25
**vindicated** [1] - 54:1
**violate** [3] - 12:25, 47:5, 59:21
**violated** [2] - 12:20, 12:25
**vires** [11] - 9:15, 13:5, 37:22, 38:4, 38:8, 39:20, 47:12, 52:6, 58:21, 59:4, 59:22
**Virginia** [1] - 55:19
**voluntarily** [2] - 32:5, 53:7
**voluntary** [5] - 4:14, 5:8, 31:23, 40:3, 55:16
**vs** [1] - 1:4

## W

**waived** [1] - 60:1
**Walton** [2] - 5:9, 55:18
**wants** [3] - 31:11, 35:13
**Washington** [5] - 1:6, 1:15, 1:18, 1:24, 69:11

**water** [1] - 7:18
**ways** [1] - 9:25
**weaker** [3] - 21:10, 21:12, 21:13
**website** [1] - 48:16
**well-argued** [1] - 68:20
**well-briefed** [1] - 68:20
**well-known** [1] - 43:25
**West** [1] - 55:19
**whole** [1] - 61:23
**win** [1] - 55:20
**wishes** [1] - 51:12
**withdraw** [3] - 5:3, 37:12
**witnesses** [2] - 14:18, 14:22
**word** [1] - 54:8
**works** [1] - 34:17
**worth** [2] - 41:16, 41:24
**writing** [5] - 34:13, 34:14, 50:15, 53:20, 54:16
**written** [1] - 54:2

## Y

**year** [14] - 3:14, 26:25, 35:3, 39:23, 39:24, 47:16, 48:17, 54:2, 63:21, 63:23, 64:7, 64:9, 64:18
**years** [9] - 26:24, 33:19, 34:11, 34:14, 34:16, 47:14, 47:15, 65:18, 68:9
**yesterday** [1] - 43:13
**yourself** [1] - 2:6

## Z

**ZEE** [1] - 1:19
**zero** [1] - 51:23