COMMITTEE ON JUDICIAL CONDUCT AND DISABILITY
OF THE JUDICIAL CONFERENCE OF THE UNITED STATES
————————

C.C.D. No. 23-01
————————

IN RE COMPLAINT NO. 23-90015
————————

PROCEEDING IN REVIEW OF THE ORDER AND MEMORANDUM
OF THE JUDICIAL COUNCIL OF FEDERAL CIRCUIT
J.C. No. FC-23-90015
————————

MEMORANDUM OF DECISION
————————

(Filed February 7, 2024)

Present:    Judges William B. Traxler, Jr., Chair, Patricia A. Gaughan, Phyllis J. Hamilton,
M. Margaret McKeown, D. Brooks Smith, Carl E. Stewart, Sarah S. Vance.

## MEMORANDUM OF DECISION

This matter is before the Judicial Conduct and Disability Committee on a petition of Judge Pauline Newman for review of the Judicial Council of the U.S. Court of Appeals for the Federal Circuit's Order of September 20, 2023. The Judicial Conduct and Disability Committee considers this petition for review under 28 U.S.C. § 357 and Rules 21(a) and 21(b)(1)(A) of the Rules for Judicial-Conduct and Judicial-Disability Proceedings ("Rules"). Specifically, the Federal Circuit Judicial Council unanimously found that Judge Newman committed misconduct by refusing to cooperate, without good cause, with the Special Committee's investigation by failing to undergo a medical examination conducted by a physician selected by the Special Committee to determine whether she has a disability that renders her unable to discharge the duties of office. The Judicial Council found that Judge Newman's refusal, without good cause shown, to undergo a medical examination, produce relevant medical records, and participate in an interview with the Special Committee was misconduct because it prevented the Judicial

1

Council from being able to determine whether Judge Newman has a "temporary or permanent impairment . . . rendering [her] unable to discharge the duties of the particular judicial office." Rule 4(c).

Judge Newman's Petition for Review argues that the Federal Circuit Judicial Council abused its discretion by failing to transfer the complaint to another circuit; that Judge Newman had good cause to refuse to submit to the medical evaluation ordered by the Special Committee; and that the sanction imposed is contrary to the Judicial Conduct and Disability Act ("the Act") and the JC&D Rules.  For the reasons explained below, we deny the petition for review.

## I.    Procedural History

On March 24, 2023, the Chief Circuit Judge of the Federal Circuit identified a complaint against Judge Newman based on information that Judge Newman may be unable to discharge the duties of office due to disability.  28 U.S.C. § 351(b); Rule 5(a).  The order identifying a complaint stated that Judge Newman was hospitalized for a heart attack and underwent coronary stent surgery in the summer of 2021 and fainted after an oral argument on May 3, 2022.  Order Identifying a Complaint, No. 23-90015, p. 1 (Fed. Cir. Ch. J. Mar. 24, 2023).  According to the order, as a result of these health concerns, Judge Newman's workload was reduced.  *Id*.  In spite of the reduced workload, concerns had been raised about Judge Newman's "extensive delays in processing and resolution of cases" and that Judge Newman "may suffer from impairment of cognitive abilities (i.e., attention, focus, confusion, and memory) that render [her] unable to function effectively in discharging case-related and administrative duties."  *Id*. at 2.  The order further stated that Judge Newman "routinely makes statements in open court and during deliberative proceedings that demonstrate a clear lack of awareness over the issues in the cases," and that there were allegations that Judge Newman failed to appropriately manage her chambers by allowing one of her law clerks to behave unprofessionally and inappropriately.  *Id*. at 2 and 5.

The order explained that before identifying the complaint against Judge Newman, the Chief Circuit Judge and several Federal Circuit judges attempted to work with Judge Newman to informally resolve the concerns about Judge Newman's fitness and avoid the formal process set forth by the Act.  *Id.* at 2.  These attempts at informal resolution were unsuccessful and a complaint was therefore identified.[1]  A special committee was appointed to investigate the complaint on the same day that the complaint was identified.

On March 8, 2023, before the complaint was identified, the Federal Circuit Judicial Council unanimously voted to stop assigning new cases to Judge Newman based on "concerns raised about Judge Newman's mental fitness by court staff and Judge Newman's abnormally large backlog in cases and her apparent inability to issue opinions in a timely fashion."  June 5, 2023 Judicial Council Order at 1.  The March 8 order was not reduced to writing.  *See* April 6, 2023 Chief Circuit Judge Order at 4 (reproducing an email from the Chief Circuit Judge to Judge Newman confirming that the Federal Circuit Judicial Council's decision had already been communicated to Judge Newman).  After Judge Newman's counsel requested that she be restored to the rotation of new case assignments, the Special Committee referred the request to the Judicial Council.  As discussed below, the Judicial Council considered the matter *de novo* and issued an order on June 5, 2023 determining that Judge Newman should not be assigned new cases.

---

[1] Rule 5(a) provides that "[a] chief judge who finds probable cause to believe that misconduct has occurred or that a disability exists may seek an informal resolution that he or she finds satisfactory. If no informal resolution is achieved or is feasible, the chief judge may identify a complaint and, by written order stating the reasons, begin the review provided in Rule 11."  In the order identifying the complaint, the Chief Circuit Judge found that based on the concerns cited in the order, "there is probable cause to believe that Judge Newman's health has left her without the capacity to perform the work of an active judge and that her habitual delays are prejudicial to the efficient administration of justice."  Order Identifying a Complaint at 5.

As part of its investigation, the Special Committee retained the services of a medical expert pursuant to Rule 13(a) and (c), and began interviewing court staff.  Based on the Special Committee's investigation to that point and "direct observations of Judge Newman's behavior," and after consulting with the medical expert, the Special Committee determined that it was necessary for Judge Newman to undergo a neurological exam and a complete neuro-psychological battery of tests to determine whether Judge Newman suffers from a disability, and, if so, the nature and extent of the disability.  April 7, 2023 Special Committee Order at 1.  The order gave Judge Newman until 3:00pm on April 11 to inform the Special Committee whether she would comply.  *Id.*  The order warned that refusal to comply without good cause shown could result in the Special Committee expanding its investigation to determine whether the failure to cooperate constitutes misconduct.  *Id.*  Judge Newman did not respond to the order by the deadline and, on April 13, the scope of the investigation was expanded pursuant to Rule 13(a) to include whether Judge Newman's failure to cooperate with the April 7 Order constituted misconduct.[2]

On April 17, the Special Committee issued an order directing Judge Newman to provide "hospital records, medical, psychiatric or psychological, and other health-professional records" relating to the medical incidents cited in the March 24 order identifying the complaint.  April 17 Order at 1.  The Special Committee further requested medical records from the last two years concerning "attention, focus, confusion, memory loss, fatigue or stamina."  *Id.* at 2.  The Special Committee also requested that Judge Newman participate in a recorded interview with the

---

[2] The scope of the investigation was also expanded on April 6, 2023 to determine whether Judge Newman's alleged violation of the confidentiality provisions of the Federal Circuit's EDR plan constituted misconduct; and on April 20, 2023 to determine whether Judge Newman's alleged conduct towards chambers staff, potential retaliation to chambers staff, and allegedly inappropriate statements to court staff about a member of her chambers staff constituted misconduct.

Special Committee.  *Id*.  The order gave Judge Newman until 9:00am on April 21, 2023 to inform the Special Committee in writing whether she planned to provide the requested records and participate in the interview.  The order warned that refusal to comply without good cause shown could result in the Special Committee expanding its investigation to determine whether the failure to cooperate constitutes misconduct.  On April 21, 2023, newly-retained counsel for Judge Newman responded to the Special Committee requesting that the matter be transferred, explaining that Judge Newman would respond to the April 7 and April 17 orders once the transfer request had been resolved; arguing that the deadlines given to comply with the orders were unreasonable; and requesting that Judge Newman be immediately restored to the Court's calendar.

      On May 3, 2023, the Special Committee reissued its request that Judge Newman undergo a medical evaluation and provide relevant medical records and denied Judge Newman's request to transfer the matter.  As to the request that Judge Newman undergo medical testing and provide medical records, the Special Committee explained that it determined that based on its investigation to date, which included "more than a dozen interviews with court staff" and discussions with the medical expert retained by the Special Committee, there is "a reasonable basis to conclude that Judge Newman might suffer a disability that interferes with her ability to perform the responsibilities of her office."  May 3, 2023 Order at 3.  In support of this conclusion, the Special Committee explained that court staff, including some of Judge Newman's chambers staff, have noticed that Judge Newman "has experienced significant mental deterioration including memory loss, lack of focus, confusion, and the inability to understand and execute simple tasks she was once capable of completing."  *Id*. at 4.  As to the request for transfer, the Special Committee denied the request without prejudice, noting that the request could be renewed once Judge Newman complies with the medical evaluation and has provided

the requested medical records.  *Id*. at 9.  The Special Committee also referred Judge Newman's request for transfer to the Judicial Council, which issued its own order on May 3, 2023, denying the transfer without prejudice to renewal upon Judge Newman's cooperation with the Committee's order.  May 3, 2023 Judicial Council Order.  The Special Committee issued a separate order on May 3 directing Judge Newman and her counsel to "refrain from publicly disclosing information" about the Special Committee's investigation.  May 3, 2023 Confidentiality Order at 4.  The order warned Judge Newman that failure to comply with the order could result in the Special Committee expanding its investigation to determine whether violation of the order and/or Rule 23(b) constitutes misconduct and that violation of the order and/or Rule 23(b) by counsel could result in sanctions.  *Id*. at 4-5.

Judge Newman's counsel responded to the May 3 order and objected to the request for medical records, arguing that they are not relevant to a determination of Judge Newman's fitness to serve as a judge.  Counsel indicated that Judge Newman was willing to discuss the possibility of being seen by a medical provider of her choosing and submit those records instead.  Judge Newman also requested, pursuant to JC&D Rule 23(b)(7), permission to disclose materials related to the investigation.  The letter further objected to the Special Committee's denial of the request for transfer and urged the Special Committee and the Judicial Council to restore Judge Newman to her full caseload.

On May 16, 2023, the Committee issued an order responding to Judge Newman's objections and clarifying details about the duration and scope of the requested testing.  As to Judge Newman's concerns about privacy, the Special Committee agreed to allow Judge Newman to provide the requested medical records directly to the neurologist selected by the Special Committee.  May 16, 2023 Order at 6.  The order warned that refusal to comply with the requested medical testing and provision of relevant medical records without good cause shown

could result in the Special Committee expanding its investigation to determine whether the failure to cooperate constitutes misconduct. *Id*. The order also denied the request to reconsider the transfer request. *Id*. The Special Committee also issued a separate order on confidentiality that granted Judge Newman's request to publicly release prior orders of the Special Committee, with appropriate redactions to protect witnesses; prohibited Judge Newman and her counsel from publicly disclosing the names of witnesses; and reminded Judge Newman and counsel that they remain bound by the May 3 confidentiality order and Rule 23 as to future orders and filings that have not been publicly disclosed by the Court. *Id*. at 12. The order further notified Judge Newman's counsel that violation of the May 3 confidentiality order, the present confidentiality order, and/or Rule 23 could result in the Special Committee's issuance of an order to show cause why counsel should not be held in contempt. *Id*. at 13.

On May 25, 2023, after receiving a brief extension from the Special Committee, Judge Newman's counsel responded and objected to the Special Committee's requests and asked that Judge Newman be immediately restored to her full caseload.[3] Counsel explained that Judge Newman would be willing to agree to the requests if she were "immediately restored to her rights and duties as a judge" and if the matter were immediately transferred to another circuit. May 25, 2023 Letter at 3. The letter warned that if the Special Committee "persist[s] in its unlawful actions and demands, Judge Newman will be forced to seek her remedies in federal district court." *Id*.

---

[3] On May 16, 2023, counsel for Judge Newman wrote to the chair of this Committee seeking the Committee's review of the recent orders entered by the Special Committee. The Committee denied review, explaining that it had no jurisdiction to review the interim order. May 24, 2023 Order of the JC&D Committee.

On May 26, 2023, the Chief Circuit Judge issued an order finding "sufficient cause to believe that Judge Newman has failed to cooperate" with the investigation by refusing to undergo the ordered medical testing, refusing to provide the requested medical records, and refusing to meet with the Special Committee for a recorded interview.[4]  May 26, 2023 Order at 2-3.  The order expanded the scope of the Special Committee's investigation to include an investigation into whether Judge Newman's failure to cooperate with the investigation constitutes misconduct.  *Id*. at 3.

On June 1, 2023, the Special Committee issued an order narrowing the focus of the Special Committee's investigation to the question of whether Judge Newman's refusal to undergo a medical evaluation, provide relevant medical records, and participate in a recorded interview with the Special Committee constituted misconduct.  While noting that the Special Committee has "strong evidence" suggesting that Judge Newman may suffer from a disability that prevents her from discharging the duties of her office, the Special Committee "believes it important, in order to make a formal finding concerning a disability, to obtain the input it has specified from independent medical professionals after they have actually examined Judge Newman."  June 1, 2023 Order at 2-3.  The order requested briefing from Judge Newman by July 5, 2023, addressing the question of whether Judge Newman's failure to cooperate constitutes misconduct.  The Special Committee announced that it would hear oral argument on this question from Judge Newman's counsel on July 13, 2023.  The Special Committee found, and by letter of June 15, 2023, Judge Newman's counsel agreed, that a Rule 14 evidentiary hearing was not necessary on the narrow issue before the Special Committee, because it could be decided on

---

[4] The order explained that pursuant to Rule 13(a), the Special Committee requested that the scope of the investigation be expanded to investigate whether Judge Newman had failed to cooperate with the investigation and, if so, whether that failure to cooperate constitutes misconduct.  May 26 Order at 2.

the paper record showing Judge Newman's response to the Special Committee's order, and because there were "no percipient fact witnesses to additional events that [were] relevant to the misconduct determination." *See* June 1, 2023 Special Committee Order at 4; June 15, 2023 Letter at 3 ("We agree with this assessment."). To ensure that Judge Newman had access to the relevant evidence from the Special Committee's investigation, the Special Committee provided Judge Newman with all of the affidavits and deposition transcripts it had gathered, with an express caution to respect the confidentiality obligations imposed by the Rules. *Id*. at 5-6.

On June 5, 2023, the Federal Circuit Judicial Council issued an order considering *de novo* Judge Newman's request to be restored to the rotation of new case assignments. The Judicial Council's order explained that when it met on March 8, 2023, concerns had been raised about Judge Newman's backlog and ability to issue opinions "in a timely fashion." June 5, 2023 Judicial Council Order at 2. The Judicial Council stated that since March 8, its concerns about Judge Newman's backlog had increased and that it was "particularly concerned that Judge Newman has been unable to make any significant progress on addressing her opinion backlog despite having three law clerks, having no new cases assigned for April, May, June or July, and not sitting on motions panels since January 2021." *Id*. at 4. Based on the continued backlog, the Judicial Council concluded *de novo* that Judge Newman was not "expeditiously carrying out the work of the Court, that assigning her new cases will only further interfere with expeditious execution of the work of the Court, and that an order precluding Judge Newman from new case assignments is warranted." *Id*. The Judicial Council explained that its suspension of new case assignments to Judge Newman was a proper exercise of the Judicial Council's authority under 28 U.S.C. § 332(d)(1) to "make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit." *Id*. at 4-5. (Also citing *Chandler v. Jud. Council of Tenth Cir. of U. S.*, 388 U.S. 74, 85 (1970) for the proposition that the Supreme Court

has recognized that a judicial council's rules suspending new case assignments until a judge resolves a backlog of cases "are reasonable, proper, and necessary rules;" and *U.S. v. Colon-Munoz*, 318 F.3d 348, 354-55 (1st Cir. 2008) for the proposition that a Judicial Council's order reassigning cases to address judicial delays falls within the authority under 28 U.S.C. § 332(d)(1)).  The Judicial Council noted that it had a reasonable basis for concern that Judge Newman may suffer from a disability that prevents her from discharging the duties of office and issuing opinions more promptly based on the information contained in the Special Committee's May 16, 2023 order.  *Id*. at 5.  The Judicial Council further noted that the information the Special Committee had publicized, which raises a "legitimate concern that Judge Newman may suffer from a cognitive impairment," "may justify refraining from assigning litigants to a judge when there are substantial grounds (made public at the judge's request) to doubt the judge's fitness to decide cases" pursuant to the Judicial Council's authority under 28 U.S.C. § 332(d)(1).  *Id*. at 6.  Accordingly, the Judicial Council excluded Judge Newman from the rotation of new case assignments.  *Id*.

On June 15, 2023, Judge Newman's counsel requested clarification on the scope of the briefing requested by the Special Committee and asked that the hearing be open to the public.  On June 20, 2023, the Special Committee issued an order clarifying the scope of the requested briefing, explaining that notwithstanding the narrow scope of the requested briefing and the focus of the upcoming oral argument, "[n]o part of the investigation has been terminated," and denying Judge Newman's counsel's request to make the July 13 oral argument open to the public.[5]  June 20, 2023 Order at 3; 5-8.

---

[5] The Special Committee explained that proceedings under the JC&D Act carry a strong presumption of confidentiality pursuant to 28 U.S.C. § 360(a) and JC&D Rule 23(b)(1).  The Special Committee explained that opening the July 13 oral argument to the public would carry "a grave risk of . . . inadvertent disclosure of both witnesses' identities and confidential details of

On July 5, 2023, Judge Newman's counsel filed a letter brief arguing that Judge Newman had not failed to cooperate by refusing to undergo a medical evaluation, provide relevant medical records, and participate in a recorded interview with the Special Committee.  The letter brief also objected to the Judicial Council's removal of Judge Newman from the rotation of new case assignments, requested that the matter be transferred to another circuit, and objected to the Special Committee's decision to close the July 13 oral argument to the public.  Judge Newman's counsel noted that Judge Newman had recently been evaluated by Ted L. Rothstein, MD, a neurologist, and that based on the examination Dr. Rothstein concluded that Judge Newman's "cognitive function is sufficient to continue her participation in her court's proceedings."  July 5, 2023 Letter Brief at 2.

On July 7, 2023, the Special Committee issued an order directing Judge Newman to provide an unredacted copy of the report from Dr. Rothstein; a copy of the actual Montreal Cognitive Assessment (MOCA) test given to Judge Newman, complete with all notations of scores on each subpart; and a list and copy of all written materials provided to Dr. Rothstein in connection with his evaluation of Judge Newman.  July 7, 2023 Order at 4.

On July 13, 2023, the Special Committee heard oral argument from Judge Newman's counsel on the question of whether Judge Newman's refusal to undergo a medical evaluation, provide relevant medical records, and participate in a recorded interview with the Special Committee constituted misconduct.  Counsel for Judge Newman argued that Judge Newman had not failed to cooperate because she would be willing to cooperate with an investigation if it were transferred to another circuit and once she is restored to her active caseload.  Significantly, Judge

---

witness statements and impairing the investigative process."  June 20, 2023 Order at 6.  The Special Committee noted that making the oral argument public would risk disclosure of non-public information and "simultaneously impair the usefulness of the argument as the participants attempt to avoid making such disclosures."  *Id*.

Newman's counsel argued that "cooperate" simply means "work together," rather than compliance with the Special Committee's orders. *See* July 13 Hearing Transcript at 6:2-6:5; 7:5-7:20; 9:11-9:18.

On July 31, 2023, the Special Committee issued its unanimous Report and Recommendation to the Federal Circuit Judicial Council, which provided the Committee's factual findings and conclusions on legal issues raised by its investigation.[6]  The Special Committee concluded that: (1) it had a reasonable basis for requesting that Judge Newman undergo a medical evaluation and provide relevant medical records; (2) that Judge Newman had not shown good cause for refusing to undergo a medical evaluation, provide relevant medical records, and participate in a recorded interview with the Special Committee; and (3) that her failure to cooperate with the Special Committee's investigation constituted misconduct under JC&D Rule 4(a)(5).  Special Committee Report at 59-60.  The Special Committee recommended that Judge Newman not be assigned any new cases for a period of one year, or until she agrees to cooperate with the Special Committee's investigation, "whichever comes sooner." *Id*. at 111.

Judge Newman filed a response to the Special Committee's Report with the Judicial Council on August 31, 2023.  Judge Newman argued that: (1) the Special Committee did not have a reasonable basis for requesting that Judge Newman undergo a medical evaluation (Response at 23-39); (2) that the medical reports provided by Judge Newman confirm that she does not suffer from a disability (Response at 55-59); (3) that Judge Newman had offered to cooperate throughout the proceeding (Response at 61-66) and had good cause for refusing to cooperate (Response at 66-69); and (4) that the recommended sanction is excessive and not authorized by the JC&D Act (Response at 105-119).  Judge Newman also argued that the

---

[6] A copy of the Special Committee's Report was transmitted to Judge Newman pursuant to JC&D Rule 15(b).

Judicial Council has a conflict of interest in considering the matter; that Judge Newman should not have been removed from hearing cases; and that the matter should be transferred to another circuit.

On September 20, 2023, the Federal Circuit's Judicial Council issued a unanimous order, finding that: (1) based on the evidence it had gathered, the Special Committee had "reasonable concerns" that Judge Newman suffers from a disability that prevents her from discharging the duties of office and that the Special Committee therefore had a reasonable basis for requesting that Judge Newman undergo a medical evaluation, provide relevant medical records, and participate in an interview with the Special Committee; (2) the Judicial Council could not make a fully informed determination as to whether Judge Newman suffers from a disability that prevents her from discharging the duties of office because of her refusal to cooperate with the investigation; (3) Judge Newman had not shown good cause for failing to cooperate; and (4) Judge Newman's refusal to cooperate without good cause shown "constitutes serious misconduct, as it has prejudiced the effective and expeditious administration of the business of the courts." September 20, 2023 Judicial Council at 72. In support of this conclusion, the Judicial Council explained that Judge Newman's misconduct was serious because it prevented the Special Committee from "making an *informed* assessment . . . about whether Judge Newman suffers from a disability" and because it "brings the statutory mechanism for addressing disability to a grinding halt and thereby undermines the interests of litigants, employees, the public, and the judiciary in having that mechanism work." *Id.* (emphasis in original). The Judicial Council ordered that Judge Newman is not permitted to hear any cases[7] for a period of

---

[7] On November 9, 2023, the Federal Circuit Judicial Council issued an order *sua sponte* vacating its June 5, 2023 order preventing Judge Newman from receiving new case assignments because, as of November 8, 2023, she had cleared her backlog of opinions. November 9, 2023

one year, subject to "consideration of renewal" if Judge Newman's failure to cooperate

continues, and subject to "modification or rescission" if her refusal to cooperate ends. *Id*. at 72-

73.

## II.    Discussion

We review circuit judicial council orders for errors of law, clear errors of fact, or abuse of

discretion.  Rule 21(a); see also *In re Complaint of Judicial Misconduct*, 747 F.3d 869, 872 (U.S.

Jud. Conf. 2014) (finding that the circuit judicial council did not abuse its discretion); *In re*

*Complaint of Judicial Misconduct*, 664 F.3d 332, 334–35 (U.S. Jud. Conf. 2011) (deferring to

findings of circuit judicial council and overturning them only if clearly erroneous).  Our review

necessarily depends on the record before us and gives deference to the circuit judicial council's

consideration of the special committee's review of the evidence.  See *In re of Decision of*

*Judicial Conference Comm. on Judicial Conduct & Disability*, 517 F.3d 563, 569 (U.S. Jud.

Conf. 2008) ("[W]e will defer to the findings of the Judicial Council and the special committee,

and will overturn those findings only if, upon examination of the record, they are clearly

erroneous.").

Judge Newman argues that: (1) the Chief Circuit Judge and/or the Judicial Council

abused their discretion by refusing to request that the investigation be transferred to another

circuit; (2) the Judicial Council's alleged "violations" of the JC&D Act, the JC&D Rules, and the

Fifth Amendment constitute "good cause" for Judge Newman's refusal to submit to medical

testing; and (3) the sanction imposed by the Judicial Council is contrary to the Constitution, the

JC&D Act, and the JC&D Rules.  For the reasons explained below, we deny the petition for

review and affirm the Judicial Council's order.

---

Judicial Council Order at 2.  The order further explained that the Judicial Council's September
20, 2023 order was not affected by the November 9 order.  *Id*. at n1.

**A.  No Abuse of Discretion in Refusing a Transfer at This Stage**

Judge Newman argues that the Chief Circuit Judge and the Judicial Council abused their discretion by refusing to transfer the complaint to another circuit under Rule 26.  In Judge Newman's view, the Judicial Council was obligated to request that the Chief Justice transfer the complaint because all of the members of the Judicial Council were required to recuse, and that failing to request a transfer was an abuse of discretion.  Petition for Review at 3, 11.  In support of this argument, Judge Newman avers that all members of the Judicial Council either have "personal knowledge" of disputed facts, or have bias against her, or may be witnesses against her in anticipated proceedings before the special investigating committee.  Relying on 28 U.S.C. § 455, Judge Newman concludes that recusal in this matter is "both constitutionally and statutorily required."  Petition at 11.  For the reasons explained below, we conclude that neither the Chief Circuit Judge nor the Judicial Council abused their discretion by not requesting transfer to another circuit council.

Disqualification in judicial conduct and disability proceedings is governed by JC&D Rule 25.  Under the general rule for disqualification "[a]ny judge is disqualified from participating in any proceeding under these Rules if the judge concludes that circumstances warrant disqualification."  JC&D Rule 25(a).  The Commentary to Rule 25 further explains that "a judge is not disqualified simply because the subject judge is on the same court."  The disqualification standard under the Rules relies heavily on the individual judge's discretion and judgment as to whether the circumstances require disqualification.  This Committee has rejected the argument that a judicial council member's "personal knowledge" requires recusal.  In *In re: Complaint of Judicial Misconduct*, C.C.D. 09-01, pp 20-21 (U.S. Jud. Conf. Oct. 26, 2009), the Committee held that:

> The fact that the judge has prior, even intimate, knowledge of the subject matter of the complaint, and has even formulated an opinion of the subject judge's conduct is of no

moment.  By the same token, a judge who is a witness to the events upon which a complaint is based, but who has no personal interest in its disposition, need not recuse himself from the determination of that complaint at one or more levels of review.

While Rule 25(a) permits disqualification "if the judge, in his or her discretion, concludes that circumstances warrant disqualification," the appropriate standard for exercising discretion in this context should reflect the administrative nature of the proceeding.  If under all of the circumstances, including prior knowledge of the case and even a previously held opinion, the judge believes that he or she can be "fair-minded in his or her participation, see Rule 25(h), recusal is not warranted and the judge should fulfill his or her duty to participate."

Additionally, the Committee has made clear that: "[t]he rules for recusal that pertain to judges performing their ordinary judicial function, 28 U.S.C. § 455, are not a template for recusals in misconduct proceedings.  Misconduct proceedings are administrative, and not judicial, in nature."  *Id.* at 20.  This is supported by a close reading of 28 U.S.C. § 455.  Section 455(a) requires recusal "in any proceeding in which [the judge's] impartiality might reasonably be questioned."  Section 455(d)(1) defines "proceeding" as including "pretrial, trial, appellate review, or other stages of litigation."  The judicial complaint process does not fall within the definition of a "proceeding" under § 455(d)(1), as the judicial complaint process cannot fairly be characterized as litigation.  As explained in the Commentary to Rule 3, the Act "establishes an administrative, inquisitorial process," rather than an adversarial process akin to litigation.  *See also* Commentary to Rule 4, describing a judge's dismissal of a judicial misconduct complaint as an "administrative determination" that "does not concern the judge's rulings in Article III litigation."

Judge Newman's argument that members of the judicial council were required to recuse from consideration of the complaint is without merit.  As explained above, the standard for recusal under 28 U.S.C. § 455(a) does not apply to judicial conduct and disability proceedings.  Disqualification under JC&D Rule 25(a) is highly discretionary and only requires disqualification where the judge "concludes that the circumstances warrant disqualification."

Contrary to Judge Newman's assertions, members of the Judicial Council were not required to recuse themselves under Rule 25(a) because they may have "personal knowledge" of disputed facts. *See In re: Complaint of Judicial Misconduct*, C.C.D. 09-01, pp 20-21 (U.S. Jud. Conf. Oct. 26, 2009). Nor were they necessary fact witnesses at this initial, narrow stage of the proceedings. The Special Committee made clear that, in light of Judge Newman's refusal to undergo a medical evaluation, provide relevant medical records, and participate in an interview with the Special Committee, the Special Committee, and subsequently, the Judicial Council, was considering only the narrow question of whether the failure to cooperate constituted misconduct. Thus, the narrow question before the Judicial Council was whether Judge Newman's failure to cooperate with the Special Committee's investigation constituted misconduct under 28 U.S.C. § 351(a) and Rule 4(a)(5).[8] As consideration of this narrow question did not require members of the Judicial Council to serve as witnesses, Judge Newman's argument that members of the Judicial Council were required to recuse themselves is unavailing. Indeed, Judge Newman, through counsel, agreed that no evidentiary hearing under Rule 14 was necessary to decide this narrow issue, precisely because no witness testimony was necessary to the misconduct determination. Similarly, Judge Newman has not presented evidence of actual bias or the appearance of bias of members of the Judicial Council. The orders issued by the Judicial Council were unanimous decisions by all of the eleven other judges in active service on the Federal Circuit. The fact that members of the Judicial Council took actions during the complaint proceedings with which Judge Newman disagrees, including concurring with the Special Committee's finding that there was a reasonable basis for asking Judge Newman to undergo a medical evaluation, does not constitute recusable bias.

---

[8] In fact, the Special Committee requested briefing from Judge Newman on this narrow question and heard oral argument from Judge Newman's counsel on this narrow question.

As to Judge Newman's argument that the Chief Circuit Judge and the Judicial Council abused their discretion by refusing to request a transfer of the proceeding, the Rules provide that in "exceptional circumstances, a chief circuit judge or a judicial council may ask the Chief Justice to transfer a proceeding . . . to the judicial council of another circuit."  JC&D Rule 26; *see also* Implementation of the Judicial Conduct and Disability Act of 1980, Report to the Chief Justice of the Judicial Conduct and Disability Act Study Committee, 239 F.R.D. 116, 214 (Sept. 2006) (Breyer Committee Report) ("Transfers should not be a regular occurrence.").  A request for transfer can be made at any time before the proceeding is either referred to the Judicial Conference under Rule 20(b)(1)(C) or 20(b)(2) or a petition for review is filed under Rule 22. *Id*.  After receiving a request for transfer, the Chief Justice "may refuse the request or select the transferee judicial council, which may then exercise the powers of a judicial council under these Rules."  *Id*.  The Commentary to Rule 26 explains that transfer may be appropriate:

> [I]n the case of a serious complaint where there are multiple disqualifications among the original judicial council, where the issues are highly visible and a local disposition may weaken public confidence in the process, where internal tensions arising in the council as a result of the complaint render disposition by a less involved council appropriate, or where a complaint calls into question policies or governance of the home court of appeals. The power to effect a transfer is lodged in the Chief Justice to avoid disputes in a judicial council over where to transfer a sensitive matter and to ensure that the transferee council accepts the matter.

Commentary to JC&D Rule 26.

The Judicial Council's September 20 Order addressed the decision not to request a transfer in detail.  *See* September 20 Order at pp. 40-50.  As the Judicial Council explained, there are several considerations suggesting a transfer is not warranted at this stage:

> Although an investigation into a discrete incident or set of incidents that occurred entirely in the past could potentially be pursued from afar without serious detriment, this case, by contrast, involved ongoing behavior that was having ongoing effects on the functioning of court staff in the court's building and the functioning of this court.  As a result, ready access to the Committee was vitally important both for ensuring that all relevant information was captured in the investigation and for providing court staff confidence that they were being heard.  The importance of that access is underscored by one of the

18

> Breyer Committee Report's factors counseling against transfer—i.e., "outside judges' relative ignorance of local circumstances and personalities."

September 20 Order at 42, citing Breyer Committee Report, 239 F.R.D. 116, 215 (Sept. 2006.), and Special Committee Report at 87-88. The Judicial Council further explained that transfer is not required because members of the Judicial Council may have "personal knowledge" concerning the matter, or simply because all the judges of the Federal Circuit "know and work with" Judge Newman. *See* September 20 Order at 42-45.

We find that the Chief Circuit Judge and the Federal Circuit Judicial Council did not abuse their discretion by declining to request a transfer under Rule 26. Rule 26 permits, but does not require, a chief circuit judge or judicial council to request, in "exceptional circumstances," that the Chief Justice transfer a matter to another circuit.[9] The Chief Circuit Judge and the Judicial Council exercised their discretion and made a reasoned determination as to the absence of "exceptional circumstances" to justify a transfer request at this stage of the proceedings. Declining to transfer the matter at this stage of the proceedings was within the discretion of the Chief Circuit Judge and the Judicial Council, was arrived at after thorough consideration, and should not be reversed. Additionally, we reject Judge Newman's argument that it was permissible to condition her cooperation with the investigation on the granting of her request for

---

[9] Judge Newman's petition for review incorrectly states the standard for requesting a transfer. Petition for Review at 4 ("The rule governing transfers provides that, when multiple members of a judicial council are disqualified, the investigation should be transferred."). Rule 26 provides that "[i]n exceptional circumstances, a chief circuit judge or judicial council can request a transfer." The Commentary to Rule 26 explains that a transfer "may be appropriate, for example, in the case of a serious complaint where there are multiple disqualifications among the original judicial council." A situation where there are multiple disqualifications on the judicial council is included in a list of scenarios where a transfer may be appropriate – not where a transfer is required. The Rules do not require that transfer be requested in any circumstance, and, instead, permit a request "[i]n exceptional circumstances." Moreover, no members of the judicial council have disqualified themselves, so the example provided in the Commentary is inapplicable at present.

transfer.  *See* Petition for Review at 2 ("Contrary to the Judicial Council's allegation, Judge Newman has not refused to cooperate with the investigation.  Rather, she conditioned her willingness to provide additional information on an entirely reasonable request to transfer this matter to another circuit.").  The Rules provide that failure to cooperate with a special committee's investigation without good cause shown constitutes misconduct.  JC&D Rule 4(a)(5).  Under the Rules, no party to a complaint is entitled to a transfer, whether as a subject judge or complainant.  The Rules rest the decision to request a transfer within the discretion of a chief circuit judge or judicial council.  The denial of a subject judge's request for transfer does not constitute good cause for failure to cooperate with a special committee's investigation.

Additionally, we note that the Judicial Council's order acknowledges that the transfer request can be renewed if Judge Newman chooses to cooperate with the Special Committee's investigation.  September 20 Order at 50.  Judge Newman's cooperation with the investigation would allow the Special Committee to squarely address the question of whether Judge Newman suffers from a disability that prevents her from discharging the duties of office.  If, at a later stage of the proceedings, the Special Committee were to hold a Rule 14 hearing on the question of disability, Judge Newman would have the right to, *inter alia*, present evidence and compel the attendance of witnesses.[10]  JC&D Rule 15(c).  As it is possible that Judge Newman may wish to

---

[10] In its Report, the Special Committee explained that Judge Newman's right to call witnesses at a Rule 14 hearing of the Special Committee would "be limited by principles of relevance and cumulativeness," and that even if it were relevant for her to call one or two judge witnesses to testify about her mental state, calling the entire Judicial Council as witnesses would be "unnecessarily cumulative" and therefore would be rejected by the Special Committee. Special Committee Report at 71, citing to *In re: Complaint of Judicial Misconduct*, C.C.D. No. 17-01, 12 n.5 (U.S. Jud. Conf. Aug. 14, 2017).  The Special Committee further explained that it would be especially inclined to reject an effort to call the entire Judicial Council as witnesses "to force recusals in order to hobble the ability of the Committee or the Judicial Council to decide this matter."  *Id*.

call members of the Judicial Council as witnesses at such hearing, the Chief Circuit Judge and the Judicial Council should give due consideration as to whether this constitutes "exceptional circumstances" and, therefore, warrants a request for transfer under Rule 26 at a later stage of the proceedings in this matter.

**B.  Judge Newman Has Not Shown Good Cause for Her Refusal to Cooperate**

Judge Newman argues that the Judicial Council's "repeated failures" to follow the procedures under the JC&D Act and the JC&D Rules and its "repudiation of a 'cooperative' process constitute 'good cause'" for Judge Newman's refusal to cooperate with the Special Committee's investigation.  Petition for Review at 6.  Judge Newman contends she was fundamentally denied due process and had no opportunity to "test the evidence."  Petition for Review at 14.  She also argues that the Special Committee did not have a reasonable basis for requesting that she undergo a medical examination, and that the Judicial Council erred in discounting the reports she provided from two doctors who examined her.  We address each argument in turn.

**i.    Judge Newman Was Not Denied Due Process**

Judge Newman argues that she was not permitted to "test the evidence in possession of key eyewitnesses," was not given an opportunity to cross examine or depose "anyone," and was not permitted to observe depositions of employees questioned by the Special Committee.  The Rules do not give a subject judge the right to independently interview witnesses.  Instead, the Rules state that the subject judge will be provided: the opportunity to compel the attendance of witnesses at a Rule 14 hearing; the opportunity to cross examine any witnesses that testify at a special committee hearing; the opportunity to suggest additional witnesses to the special committee; the opportunity to attend a hearing held under Rule 14; the names of witnesses who will testify at a Rule 14 hearing and the text of any statements that have been taken from those

witnesses; and the opportunity to respond to the Special Committee's report.  *See generally* Rule

15.  The Commentary to Rule 15 clearly states that the subject judge does not have a right to

attend all proceedings of the Special Committee, including "meetings at which the special

committee is engaged in investigative activity, [or] interviewing persons to learn whether they

ought to be called as witnesses."

Here, Judge Newman was afforded all the process she was due under the Rules.  In fact,

the Special Committee provided Judge Newman with more information than required by the

Rules.  Although it did not hold a Rule 14 hearing,[11] and therefore was not required to provide

Judge Newman with the text of any witness statements (see JC&D Rule 15(a)(1)(C)), the Special

Committee gave Judge Newman access to all of the evidence upon which it had based its

conclusions.  June 1, 2023 Order at 5.  This included providing Judge Newman with "all

affidavits and deposition transcripts that the Committee had gathered to date." *Id*.  As the Special

Committee afforded Judge Newman more process than she was due under the Rules, her

argument that she was not afforded the process she was due under the Rules as to testing

evidence and access to witnesses is without merit.

> **ii.    The Special Committee had a Reasonable Basis for the Request to Submit to a Medical Examination**

Judge Newman argues that the Special Committee did not have a reasonable basis for

requesting that she undergo a medical examination.  The Judicial Council's order addresses these

arguments in detail.  First, the order explains the voluminous evidence that provided a basis for

the May 16 order directing Judge Newman to undergo medical testing and provide medical

---

[11] The July 13, 2023 hearing was conducted pursuant to Rule 15(d), which requires the Special Committee to give the subject judge an opportunity to present oral argument, rather than Rule 14.

records to the special committee.  September 20, 2023 Order at 19-37.  The September 20 Order

summarizes:

> Affidavits prepared after more than 20 interviews with Court staff reflect consistent
> reports of deeply troubling interactions with Judge Newman that suggest significant
> mental deterioration including memory loss, confusion, lack of comprehension, paranoia,
> anger, hostility, and severe agitation. Critically, these reports are not isolated incidents of
> occasional forgetfulness based on a few interactions with only one or two staffers. To the
> contrary, they come from interactions with staff members across a broad range of
> departments from the Clerk's Office to Information Technology (IT), to Human
> Resources (HR), to the General Counsel Office, to Judge Newman's own chambers staff.
> And contrary to Judge Newman's assertions, the reports indicate that the behaviors
> suggesting that Judge Newman may have a disability emerged over two years and
> increased in frequency and severity. Judge Newman has never specifically disputed any
> of the staff accounts, many of which are independently substantiated by Judge Newman's
> own emails attached as exhibits.

September 20 Order at 19.  The September 20 Order further explains that Judge Newman was

given numerous opportunities to contest the basis upon which the Special Committee determined

that a medical evaluation was necessary:

> The Committee detailed much of the evidence in its May 3 Order, then again in its May
> 16 Order and its June 1 Order. And in none of her responses did she challenge any of the
> evidence.  In its June 1 Order, the Committee recognized that Judge Newman might wish
> to contest the Committee's recited bases for its Order [that, *inter alia*, Judge Newman
> undergo a medical evaluation] and for that very reason provided Judge Newman all the
> affidavits and the deposition transcript[s] on which the Committee had relied.  June 1
> Order at 5.  She chose not to challenge them.  Instead, in her July 5 Brief she made the
> choice not to "delv[e] into the minutia[e] of these affidavits," but instead [chose] to
> dismiss them as reflecting "petty grievances" and to argue that "even assuming" the
> information in them was true, it "doesn't even approach probable cause to believe that
> Judge Newman is mentally and/or physically disabled." July 5 Br. 15.

September 20 Order at 35-36.  Additionally, the record in this case makes clear that Judge

Newman declined several offers to be interviewed by the Special Committee and to correct any

errors of fact in the Special Committee's investigation:

> [T]he Committee made clear in its May 16 Order that it wanted to interview Judge
> Newman so that "she could provide the Committee with information relevant to the
> Committee's investigation, *including correcting any error of fact.*" May 16 Order at 23–
> 24 (emphasis added). Judge Newman refused to take that opportunity to contest any
> information the Committee had gathered. In fact, at the end of the oral argument on July
> 13, the Committee offered Judge Newman's counsel extra time to address any topics he

wished to, and he declined to use that time to challenge the affidavits. Oral Arg. Tr. at
39:22–40:6.

September 20 Order at 36 n.16.

The Act provides that a special committee "shall conduct an investigation as extensive as
it considers necessary." 28 U.S.C. § 353(c).[12]  The Commentary to Rule 13 explains that a
special committee can request that a subject judge undergo a mental or physical examination
when there is cause to believe the judge may be unable to discharge the duties of office because
of a mental or physical disability.  The Commentary to Rule further explains that where a special
committee has requested that the subject judge undergo a medical examination, "the special
committee may enter into an agreement with the subject judge as to the scope and use that may
be made of the examination results.  In addition or in the alternative, the special committee may
ask to review existing records, including medical records."

We conclude that the Special Committee had a reasonable basis for requesting that Judge
Newman undergo a medical evaluation based on the substantial evidence it had gathered that
suggested that Judge Newman may suffer from a disability that prevents her from discharging
the duties of office.  The Committee has previously explained that "[i]t is axiomatic that the
work of a lifetime appointed federal judge is demanding and requires the highest degree of
functionality." *In re: Complaint of Judicial Misconduct*, C.C.D. No. 17-01, p. 29 (U.S. Jud.
Conf. Aug. 14, 2017).  The record contains evidence that supports the Special Committee's
concerns that Judge Newman may suffer from a disability that prevents her from discharging the
duties of office, including affidavits and her own emails illustrating interactions that suggest
memory loss, confusion, lack of comprehension, paranoia, anger, hostility, severe agitation, and

---

[12] *See also* JC&D Rule 13(a): "A special committee should determine the appropriate
extent and methods of its investigation in light of the allegations in the complaint and the
committee's preliminary inquiry."

an inability to perform tasks that Judge Newman previously could perform with ease. *See* September 20 Order at 19-33. This evidence supports the reasonableness of the Special Committee's request that Judge Newman undergo a medical examination. Judge Newman's arguments to the contrary are unpersuasive.

Based on the facts before us, we conclude that the evidence that Judge Newman may suffer from a disability that prevents her from discharging the duties of office is sufficient to justify the reasonable requirement that she undergo a medical examination. 28 U.S.C. § 351(a); JC&D Rule 4(a)(5). Judge Newman's arguments to the contrary do not overcome the reasonableness of the basis for requesting the examination or justify her failure to cooperate with the investigation. Accordingly, we find no error in the Judicial Council's conclusion that, based on the evidence gathered by the Special Committee, there was a reasonable basis for requesting that Judge Newman undergo a medical evaluation.

### iii.    The Judicial Council Did Not Err in Rejecting the Reports from Judge Newman's Doctors

Judge Newman argues that the Judicial Council abused its discretion in rejecting the reports of two medical examinations that Judge Newman submitted. Judge Newman argues that throughout the investigation, she attempted to "work cooperatively with the Judicial Council to resolve the question of medical testing and the identity of persons conducting the tests." Petition for Review at 25 n.17.

This Committee has rejected the argument that a subject judge is entitled to be evaluated by an expert of his or her choosing. In *In re: Complaint of Judicial Misconduct*, C.C.D. No. 17-01, p. 29 (U.S. Jud. Conf. Aug. 14, 2017), we concluded that:

> While [the subject judge] has expressed a preference for being evaluated by an expert of his choosing and an opportunity to direct to some extent the nature of the examination, we conclude that the Special Committee and the Judicial Council appropriately exercised their discretion in determining that an examination by an independent expert is necessary to ensure the accuracy and reliability of the procedures and examination results.

As the Judicial Council's September 20 Order explains, "it is settled precedent that a subject judge may not circumvent the investigation process by submitting tests of her own choosing in lieu of those ordered by the Committee." September 20 Order at 50-51 (citing *In re: Complaint of Judicial Misconduct*, C.C.D. No. 17-01 (U.S. Jud. Conf. Aug. 14, 2017). We conclude that neither the Special Committee nor the Judicial Council erred in rejecting Judge Newman's request to be evaluated by an expert of her choosing, or in deciding that the evaluations of Judge Newman by physicians of her choosing did not carry sufficient probative value to undermine the basis for the Special Committee's concerns that Judge Newman may suffer from a disability that prevents her from discharging the duties of office.

### C. The Sanction Does Not Exceed the Judicial Council's Authority Under the Act

Lastly, Judge Newman argues that the sanction imposed by the Judicial Council, a suspension from new case assignments for a period of a year, subject to renewal if her refusal to cooperate with the investigation persists and subject to reconsideration if she cooperates with the investigation, exceeds the Judicial Council's statutory authority for three reasons. First, she argues that the sanction was an abuse of discretion because it "exceeds almost every other suspension imposed on every other judge in the history of the Disability Act" and does not account for the "six months preceding the September 20 Order during which Judge Newman was improperly barred from hearing cases." Petition at 28. Second, she suggests that the Judicial Council's suspension of her cases is "indefinite because it authorized its renewal *ad infinitum*" and therefore deprives her of "all functions of her office." *Id*. Finally, Judge Newman argues that the Judicial Council cannot prohibit her from participating in the Court's *en banc* sessions because "neither the Disability Act nor the Conduct Rules can be read as authorizing the suspension of Judge Newman's right and duty to participate in *en banc* matters." *Id*. at 27-28.

The JC&D Act provides that if a complaint is not dismissed, the judicial council "shall take such action as is appropriate to assure the effective and expeditious administration of the business of the courts within the circuit." 28 U.S.C. § 354(a)(1)(C); *see also* JC&D Rule 20(b)(1)(D). Such action may include "ordering that, on a temporary basis for a time certain, no further cases be assigned to the judge whose conduct is the subject of a complaint." 28 U.S.C. § 354(a)(2)(A)(i); *see also* JC&D Rule 20(b)(1)(D)(ii). This Committee "generally defer[s] to a judicial council's judgment with respect to an appropriate sanction so long as the council has fully considered all the relevant options." *In re Complaint of Judicial Misconduct*, C.C.D. 08-02, p. 12 (U.S. Jud. Conf. Jan. 14, 2008).

We find that the sanction is consistent with sanctions imposed in a variety of contexts under the Act, and a one-year suspension of cases is not grossly in excess of other suspensions imposed under the Act. The Act and the Rules vest significant discretion in a judicial council investigating and resolving a conduct and disability complaint, including through temporarily suspending new case assignments. Here, the Judicial Council concluded that Judge Newman's failure to cooperate with the investigation prejudiced the effective and expeditious administration of the business of the courts by depriving the Judicial Council of necessary information in order to make an informed decision about whether Judge Newman suffers from a disability that prevents her from discharging the duties of office. Suspension of new case assignments for a period of one year, subject to renewal if the failure to cooperate persists or reconsideration if Judge Newman cooperates with the investigation, was an appropriate sanction. Moreover, there are numerous examples of suspensions of similar length that have been issued by Judicial Councils. *See, e.g.*, *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053, 07-18-90067 (7th Cir. Jud. Council May 14, 2019) (one-year suspension of cases involving U.S. Attorney where special committee found that the subject judge had frequent ex parte contacts

with the U.S. Attorney's Office); *In re: Complaint of Judicial Misconduct Against United States District Judge Walter S. Smith, Jr., Under the Judicial Improvements Act of 2002*, No. 05-14-90120 (5th Cir. Jud. Council Dec. 3. 2015) (one year suspension of all case assignments where special committee found that the subject judge made inappropriate and unwanted sexual advances towards a court employee); *In re Complaint of Judicial Misconduct*, Nos. 99-6-372-48, 00-6-372-66 (6th Cir. Jud. Council Nov. 2, 2001) (A judge who engaged in a pattern of "intemperate and abusive" treatment of lawyers was suspended from all judicial duties for six months, barred for three years thereafter from participating in any cases involving specified lawyers, and barred permanently from participating in any case involving a particular lawyer); and *In re: Matters Involving United States District Judge John H. McBryde, Under the Judicial Conduct & Disability Act of 1980*, No. 95-5-372-0023 (5th Cir. Jud. Council Dec. 31, 1997) (One year suspension of cases for judge who engaged in a "continuing pattern" of abusive conduct towards lawyers, fellow judges and others.)  *See also, McBryde v. Committee*, 264 F.3d 52, 66-67 (D.C. Cir. 2001) (A one-year suspension of new case assignments was among the sanctions imposed by the circuit council, in an order affirmed by the Judicial Conference Committee to Review Circuit Council Conduct and Disability Orders.  Rejecting a "core assumption that judicial independence requires absolute freedom from . . . sanctions" short of removal from the bench, the court rejected the judge's argument that the Act's authorization of judiciary-imposed sanctions was in derogation of the Impeachment clause and that it therefore rendered the Act facially unconstitutional.).

       In addition, although the sanction is subject to renewal, unlike other suspensions, Judge Newman has the power to trigger reconsideration or modification if she decides to cooperate.[13]

_____

[13] *See* September 20 Order at 72-73: ("Judge Newman shall not be permitted to hear any cases, at the panel or *en banc* level, for a period of one year beginning with the issuance of this

As to the duration and renewability of the sanction, the Judicial Council explained that the sanction was intended to "convey the seriousness of the misconduct that has prevented the proper functioning of the self-policing mechanism that Congress created for the judiciary." September 20 Order at 69. The Judicial Council further explained that the renewable character of the sanction is essential to "put the Act process back in motion rather than leave it thwarted in the face of reasonable concerns about disability." *Id.*

Finally, as to the contention that Judge Newman cannot be suspended from participating in *en banc* sessions, the Judicial Council's analysis of this issue is consistent with the purposes of the Act. *See* September 20 Order at 70-71 (noting that the Act provides that the Judicial Council may order that "no further cases be assigned" under 28 U.S.C. § 354(a)(2)(A)(i), and that "[t]he general directive in 28 U.S.C. § 46(c) that the court *en banc* "shall consist of all circuit judges in regular active service" cannot trump that more specific authority and obligation granted to the Council for addressing situations of misconduct or disability."). Accordingly, we affirm the sanction issued by the Judicial Council.

### III.    Conclusion

For the above reasons, we deny Judge Newman's petition for review and affirm the Federal Circuit Judicial Council's order.[14]

---

Order, subject to consideration of renewal if Judge Newman's refusal to cooperate continues after that time and to consideration of modification or rescission if justified by an end of the refusal to cooperate.").

[14] Judge Newman's request to stay the enforcement of the Judicial Council's September 20 order during the consideration of the petition for review is denied as moot. Judge Newman's request to disclose the petition for review under Rule 23(b)(7) is denied.