# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

HON. PAULINE NEWMAN,

             Plaintiff,

      v.

HON. KIMBERLY A. MOORE, *et al.*,

            Defendants.

Case No. 1:23-cv-01334-CRC

# MEMORANDUM IN SUPPORT OF
# DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

LEGAL STANDARDS ....................................................................................... 4

ARGUMENT ...................................................................................................... 5

I.     Plaintiff's "facial" challenges under the Fourth Amendment (Counts VIII and IX)
       fail as a matter of law. ............................................................................... 5

       A.     Counts VIII and IX fail as facial claims because they do not even purport to
              identify a provision of the Act, or any language within
              a provision, that is unconstitutional in *every* application. ................................ 6

       B.     Even if the Court applies facial invalidity standards to the categories of
              investigative orders specified in Counts VIII and IX, the claims still fail. ........ 8

              1.     The Fourth Amendment Does Not Require a Warrant on Probable
                     Cause for All Demands for Medical Records or Medical or
                     Psychiatric Examinations Under the Act. .......................................... 8

              2.     Plaintiff's Argument for Facial Invalidity Based on Asserted
                     Lack of a Reasonableness Requirement Also Fails. ......................... 13

II.    Plaintiff's facial vagueness challenges (Counts V & VII) fail as a matter of law. ..... 16

       A.     The statutory standard for judicial disability (Count V) is not
              unconstitutionally vague. ............................................................................. 16

       B.     The investigations provision of the Act is not unconstitutionally vague. ....... 23

              1.     Plaintiff's facial challenge fails under the vagueness doctrine. .......... 24

              2.     The vagueness doctrine does not even apply to the investigation
                     provision. ...................................................................................... 27

CONCLUSION ................................................................................................ 29

TABLE OF AUTHORITIES

**Cases**

*Aponte v. Calderon,*
     284 F.3d 184 (1st Cir. 2002) ......................................................................... 25

*Arnett v. Kennedy,*
     416 U.S. 134 (1974) ..............................................................................*passim*

*Becker v. Kroll,*
     494 F.3d 904 (10th Cir. 2007) .................................................................... 25

*Beckles v. United States,*
     580 U.S. 256 (2017) ...............................................................................3, 28

*Bell Atl. Corp. v. Twombly,*
     550 U.S. 544 (2009) .................................................................................. 13

*Bowling v. McDonough,*
     38 F.4th 1051 (Fed. Cir. 2022) .................................................................. 22

*Brennan v. Dickson,*
     45 F.4th 48 (D.C. Cir. 2022) ....................................................................... 6

*City of Lakewood v. Plain Dealer Publ'g Co.,*
     486 U.S. 750 (1988) ................................................................................5, 16

*City of Los Angeles v. Patel,*
     576 U.S. 409 (2015) .................................................................................... 6

*City of Ontario v. Quon,*
     560 U.S. 746 (2010) .................................................................................... 9

*Connally v. Gen. Constr. Co.,*
     269 U.S. 385 (1926) .................................................................................. 27

*Courser v. Mich. House of Representatives,*
     404 F. Supp. 3d 1125 (W.D. Mich. 2019) ................................................. 28

*Crooks v. Mabus,*
     845 F.3d 412 (D.C. Cir. 2017) ...............................................................20, 22

*Down v. Ann Arbor Pub. Sch.,*
     29 F. Supp. 3d 1030 (E.D. Mich. 2014) .................................................11, 12

*Engquist v. Or. Dept. of Agric.*,
    553 U.S. 591 (2008) ................................................................ 9

*Florida v. Bostick*,
    501 U.S. 429 (1991) ................................................................ 7

*Fraternal Ord. of Police, Lodge No. 5 v. City of Philadelphia*,
    812 F.2d 105 (3d Cir. 1987) .................................................... 10

*Giaccio v. Pennsylvania*,
    382 U.S. 399 (1966) ................................................................ 28

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ........................................................ 18, 27

*Harmon v. City of Norman*,
    61 F.4th 779 (10th Cir. 2023) .................................................. 21

*Hastings v. Judicial Conference of the United States*,
    593 F. Supp. 1371 (D.D.C. 1984), *vacated on other grounds in* 770 F.2d 1093
    (D.C. Cir. 1985) ...................................................................... 21

*Jimenez v. McAleenan*,
    395 F. Supp. 3d 22 (D.D.C. 2019) ............................................ 4

*Johnson v. United States*,
    576 U.S. 591 (2015) ................................................................ 22

*Kincaid v. Gov't of District of Columbia*,
    854 F.3d 721 (D.C. Cir. 2017) .................................... 24, 25, 26, 28

*Kolbe v. Hogan*,
    849 F.3d 114 (4th Cir. 2017) .................................................. 18

*Lanier v. City of Woodburn*,
    518 F.3d 1147 (9th Cir. 2008) ............................................ 7, 16

*Manuel v. City of Joliet*,
    580 U.S. 357 (2017) ................................................................ 25

*Matter of Certain Complaints Under Investigation by an Investigating Committee of the Judicial Council of the Eleventh Circuit*,
    783 F.2d 1488 (11th Cir. 1986) ................................................ 21

*Maxwell v. Rubin*,
    3 F. Supp. 2d 45 (D.D.C. 1998) .............................................. 28

*McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*,
  264 F.3d 52 (D.C. Cir. 2001) ........................................................................ 7

*McComb v. Comm'n on Judicial Performance*,
  564 P.2d 1 (Cal. 1977) .............................................................................. 20

*Moseley v. Price*,
  300 F. Supp. 2d 389 (E.D. Va. 2004)............................................................. 25

*Murray v. Pittsburgh Bd. of Educ.*,
  759 F. Supp. 1178 (W.D. Pa. 1991).......................................................... 11, 12

*NASA v. Nelson*,
  562 U.S. 134 (2011) ................................................................................... 7

*Nat'l Treasury Employees Union v. Von Raab*,
  489 U.S. 656 (1989).......................................................................... 8, 9, 12

*Nat'l Treasury Employees Union v. Yeutter*,
  918 F.2d 968 (D.C. Cir. 1990)................................................................. 9, 13

*Nyeholt v. Sec'y Of Veterans Affs.*,
  298 F.3d 1350 (Fed. Cir. 2002) .................................................................. 28

*O'Connor v. Ortega*,
  480 U.S. 709 (1987)................................................................................. 8, 9

*Ohio State Bar Ass'n v. Mayer*,
  377 N.E.2d 770 (Ohio 1978) ...................................................................... 20

*Popovic v. United States*,
  997 F. Supp. 672 (D. Md. 1998), *aff'd*, 175 F.3d 1015 (4th Cir. 1999) ............... 25

*Rush v. Obledo*,
  756 F.2d 713 (9th Cir. 1985) ....................................................................... 5

*SEC v. Jerry T. O'Brien, Inc.*,
  467 U.S. 735 (1984)................................................................................. 25

*Sessions v. Dimaya*,
  138 S. Ct. 1204 (2018) .............................................................................. 22

*Setliff v. Mem'l Hosp. of Sheridan Cnty.*,
  850 F.2d 1384 (10th Cir. 1988)................................................................... 25

*Singhal v. Lee*,
   2016 WL 1305294 (E.D. Va. Mar. 28, 2016) ............................................................. 28

*Skinner v. Railway Labor Executives' Ass'n*,
   489 U.S. 602 (1989)............................................................................9, 12, 13, 15

*Sloan v. Dep't of Hous. & Urb. Dev.*,
   231 F.3d 10 (D.C. Cir. 2000) ............................................................................. 25

*U.S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*,
   413 U.S. 548 (1973)............................................................................18, 24

*U.S. Telecom. Ass'n v. FCC*,
   825 F.3d 674 (D.C. Cir. 2016)............................................................................. 22

*United States v. Askew*,
   529 F.3d 1119 (D.C. Cir. 2008) ............................................................................. 9

*United States v. Bailey*,
   No. CR 19-156-1 (CKK), 2023 WL 2139365 (D.D.C. Feb. 21, 2023) ..................... 17, 22

*United States v. Batchelder*,
   442 U.S. 114 (1979)............................................................................. 25

*United States v. Bronstein*,
   849 F.3d 1101 (D.C. Cir. 2017)............................................................................2, 17, 18

*United States v. David H.*,
   29 F.3d 489 (9th Cir. 1994) ............................................................................. 28

*United States v. Hairston*,
   495 F.2d 1046 (D.C. Cir. 1974) ............................................................................. 5

*United States v. Matchett*,
   837 F.3d 1118 (11th Cir. 2016)............................................................................. 28

*United States v. Mitchell*,
   652 F.3d 387 (3d Cir. 2011) ............................................................................5, 14

*United States v. Morrison*,
   529 U.S. 598 (2000)............................................................................. 5

*United States v. Salerno*,
   481 U.S. 739 (1987)............................................................................1, 5

*United States v. Wright*,
   937 F.3d 8 (1st Cir. 2019) ..................................................................... 7, 16

*Vernonia Sch. Dist. 47J v. Acton*,
   515 U.S. 646 (1995) ................................................................................. 9

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982) ............................................................................ 17, 18

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) ............................................................................... 1, 6

*Winters v. New York*,
   333 U.S. 507 (1948) ................................................................................. 17

*Witzke v. Idaho State Bar*,
   2023 WL 3394925 (D. Idaho May 11, 2023) ......................................... 28

*Woodhull Freedom Found. v. United States*,
   72 F.4th 1286 (D.C. Cir. 2023) ............................................................ 2, 18

*Yin v. California*,
   95 F.3d 864 (9th Cir. 1996) .............................................. 8, 10, 11, 12

**Constitutional Provisions**

U.S. Const. amend. XXV ................................................................................. 19

U.S. Const. art. II, § 1 .................................................................................... 19

**Statutes**

7 U.S.C. § 87e ................................................................................................ 26

26 U.S.C. § 8023 ............................................................................................ 27

28 U.S.C. § 351 ..................................................................................... *passim*

28 U.S.C. § 352 ...................................................................................... 14, 24

28 U.S.C. § 353 ..................................................................................... *passim*

28 U.S.C. § 357 ................................................................................................ 7

30 U.S.C. § 1717 ............................................................................................ 27

33 U.S.C. § 546 .............................................................................................. 27

42 U.S.C. § 5161 ........................................................................................ 27

Act of Aug. 4, 1790, ch. 35, § 8 1 Stat. 145 ...................................................... 19

Act of Feb. 13, 1801, ch. 4, § 25, 6 Stat. 89 ..................................................... 19

Act of Feb. 25, 1919, Pub. L. No. 265, ch. 29, § 6, 65 Stat. 1156 ..................................... 20

Act of March 1, 1792, ch, 8, § 9, 1 Stat. 239..................................................... 19

Act of May 8, 1792, ch. 36, § 10, 1 Stat. 275 ............................................. 19, 20

**Rules**

Fed. R. Civ. P. 12 ......................................................................................... 4

**Other Authorities**

*Disability*, Samuel Johnson, Dictionary of the English Language (1755) ........................... 19

Memorandum of Decision at 31, *In re: Complaint of Judicial Misconduct*, C.C.D. 17-01
   (Comm. on Jud. Conduct & Disability Aug. 14, 2017) ("*Adams*") ...............10, 11, 15, 23

Rules for Judicial-Conduct and Judicial-Disability Proceedings .................................*passim*

S. Rep. No. 95-1035 (1978) .............................................................................. 20

S. Rep. No. 96-362 (1979), *reprinted in* 1980 U.S.C.C.A.N. 4215 ...................................... 20

## INTRODUCTION

After the Court's ruling on the motion to dismiss, all that remains of Plaintiff's First Amended Complaint, ECF No.10, ("FAC") is a handful of facial constitutional challenges to certain provisions of the Judicial Conduct and Disability Act of 1980 ("Act"). Such claims are "the most difficult . . . to mount successfully"; success would require Plaintiff to "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In other words, Plaintiff must show that a challenged provision of the Act is "unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449 (2008). Plaintiff challenges certain provisions under the Fourth Amendment and asserts that certain provisions are unconstitutionally vague under the Due Process Clause. All of these claims fail as a matter of law.

Under the Fourth Amendment, Plaintiff complains, in Counts VIII and IX, that the Act is unconstitutional "to the extent" it authorizes demands for medical records or medical or psychiatric examinations without requiring either (1) a warrant based on probable cause, or (2) a showing of constitutional reasonableness. This challenge fails as a facial challenge for at least two reasons.

First, the complaint does not state a meritorious facial challenge, because it does not even assert that any provision of the Act is unconstitutional in *all* of its applications. Plaintiff asserts only that *certain types of orders* issued under the Act (those requiring medical or psychiatric exams or production of medical records) would violate the Fourth Amendment—*if* they were issued without findings that satisfy Fourth Amendment requirements. But even if Plaintiff could show that *some* orders would violate the Fourth Amendment (under *some* circumstances), that would not establish facial invalidity of the investigation provision of the Act, or of any language in the provision, under the *Salerno* standard. That alone suffices to reject Plaintiff's facial challenges in Counts VIII and IX.

Second, even if the Court were to apply facial invalidity analysis to the categories of orders Plaintiff attacks in these counts, the Fourth Amendment claims would still fail.

1

Contrary to Plaintiff's theories, the Fourth Amendment does not require a warrant based on probable cause for all such orders in this context.  And the Act obviously can be implemented in a fashion that satisfies the Fourth Amendment, which does not require more than a reasonable suspicion that a judge suffers from a disability for all the investigative demands in the categories Plaintiff challenges.  Indeed, the Act and its implementing rules effectively require such a "reasonable suspicion" before there can be any demand for medical records or a medical or psychiatric exam under the Act.  Plaintiff's facial challenges thus necessarily fail.

Under the Due Process Clause, Plaintiff claims, in Counts V and VII, that the "disability" provision of the Act and the investigation provision allowing a special committee to demand medical records and medical or psychiatric examinations are unconstitutionally vague.  Those claims also fail.

The disability provision roots the assessment of disability in the concrete determination whether a judge has been rendered "unable to discharge all the duties of office."  28 U.S.C. § 351(a).  That is not "the type of subjective or wholly discretionary or indiscernible judgmen[t] that courts have struck down as constitutionally vague."  *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1303 (D.C. Cir. 2023).  It sets a more definite standard than many statutes that readily survive vagueness scrutiny, and it cannot be said that it provides "no standard of conduct at all."  *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).  Rather, it uses standards that are familiar in law and whose meaning is readily understood, requiring case-specific application based on familiar, reliable types of evidence.  This is not vagueness.

As for the investigative provision of the Act, Plaintiff's challenge also fails.  For one thing, because Plaintiff attacks only *certain types of investigative orders*, this facial challenge cannot succeed under the *Salerno* standard for the Fifth Amendment than for the Fourth Amendment.  In any event, the statutory standard for choice of investigative tools here is not vague.  It is merely flexible, embodying discretion to choose tools based on particular facts, which is the widespread norm for authority to investigate.  There is no constitutional vagueness

problem (much less a facial-invalidity problem) for such an authorization at least where, as here, the statutory definition of the issue being investigated is not vague and identifying relevant evidence is a familiar task.   Finally, rejection of the vagueness challenge is bolstered by judicial recognition that there is no general due process right protecting individuals from being investigated and by the fact that the investigative provision does not regulate conduct—or even set a substantive standard that is applied to make any determination about a judge's misconduct or disability—and so does not implicate the primary concern of the vagueness doctrine.  *See generally Beckles v. United States*, 580 U.S. 256, 266 (2017).

The Court should grant judgment for defendants on all remaining claims and terminate the case.

## BACKGROUND

The Court is familiar with this case.  *See*  Mot. to Dismiss Order ("Order") at 4–10, ECF No. 43.  Under the Judicial Conduct and Disability Act, a three-judge Special Committee, appointed to investigate an identified complaint, amassed significant evidence that 96-year-old Judge Pauline Newman suffers from a disability that renders her unable perform the duties of an active circuit judge.  *See id.*  As relevant here, the Special Committee required Judge Newman to undergo specified neurological and neuro-psychological testing and provide specified medical records to enable a fully informed decision of the disability question. Judge Newman refused to do so, and the Special Committee therefore recommended that Judge Newman not be permitted to hear new cases "for the fixed period of one year or at least until she ceases her misconduct and cooperates such that the Committee can complete its investigation, whichever comes sooner."  *Id.*  The Judicial Council of the Federal Circuit unanimously agreed with that recommendation, and the Judicial Council decision was unanimously affirmed in full by the Judicial Conference's Judicial Conduct & Disability Committee.  *Id.* at 9.

"While the Judicial Council proceedings were still ongoing, Judge Newman filed this federal lawsuit."  *Id.*  After the parties briefed and argued their respective cross motions, this

Court granted much of Defendants' motion to dismiss the First Amended Complaint. *See id.* at 11–36. Of Plaintiff's eleven counts, the Court dismissed six (Counts II–IV, VI, and X–XI) because they were as-applied challenges precluded by the Act's judicial-review bar. *Id.* at 25. As for the purportedly facial challenges to the Act, the Court dismissed two (Count I and part of Count VII) on the merits. *Id.* at 32–36. Four claims (Count V, part of Count VII, and Counts VIII and IX) remain in this case:

- A Fifth Amendment vagueness challenge to the disability provision, which can trigger an investigation under the Act if there is evidence that a "judge is unable to discharge all the duties of office by reason of mental or physical disability," 28 U.S.C. § 351(a); FAC ¶ 103;

- A Fifth Amendment vagueness challenge to the investigation provision, which directs a special committee to "conduct an investigation as extensive as it considers necessary," 28 U.S.C. § 353(c); FAC ¶ 112; *Newman*, 2024 WL 551836, at *16 n.13; and

- Two Fourth Amendment challenges to the investigation provision, FAC ¶¶ 118, 124.

The Court noted that if "Defendants wish to argue that the remaining counts fail to state a claim, they may do so in a motion for judgment on the pleadings." Order at 32 n.14. This motion follows.

## LEGAL STANDARDS

In dismissing most of the FAC, the Court explained that Defendants may use a Rule 12(c) motion "to argue that the remaining counts fail to state a claim." *Newman*, 2024 WL 551836, at *16 n.14; Fed. R. Civ. P. 12(h)(2)(B) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)."). "A movant is entitled to judgment on the pleadings under Rule 12(c) if it demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 30 (D.D.C. 2019) (Cooper, J.) (citations omitted). In making that determination, the Court "may rely on the pleadings, the exhibits to the pleadings, and any judicially notice-able facts." *Id.* (citations omitted).

## ARGUMENT

As the Court explained in dismissing the bulk of the FAC, the only counts that now survive involve facial challenges to particular provisions in the Act.  *See* Order at 24–25.  "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  *Salerno*, 481 U.S. at 745; *accord* Order at 24, 33 (quoting same standard).  Under that standard, it is not enough for Plaintiff to identify *some* applications of the challenged provisions that would be unlawful.  Instead, Plaintiff must show that there is *no scenario* in which those provisions could be applied constitutionally.

Plaintiff's burden is made even more difficult because, like any federal statute, the Act enjoys a "presumption of constitutionality," and this Court may strike down portions of the Act only on a "plain showing that Congress exceeded its constitutional bounds."  *United States v. Morrison*, 529 U.S. 598, 607 (2000).  In assessing a facial challenge, the Court must apply canons of statutory construction to adopt any narrowing construction of the Act that would permit it to survive constitutional scrutiny.  *See, e.g.*, *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 n.11 (1988); *see also United States v. Hairston*, 495 F.2d 1046, 1052 (D.C. Cir. 1974) ("In general terms, the presumption of the constitutional validity of legislation enacted by Congress raises a corollary presumption that constructions calling statutes into serious constitutional question are erroneous and, in any event, are to be avoided whenever possible.").  And the Court also should take into account any implementing regulations narrowing the application of the statute that would eliminate constitutional infirmities.  *See, e.g.*, *United States v. Mitchell*, 652 F.3d 387, 415 (3d Cir. 2011); *Rush v. Obledo*, 756 F.2d 713, 722 (9th Cir. 1985).

Under these standards, all of Plaintiff's facial challenges fail.

## I.    Plaintiff's "facial" challenges under the Fourth Amendment (Counts VIII and IX) fail as a matter of law.

Plaintiff's facial challenges based on the Fourth Amendment suffer from multiple fatal flaws.  As with other facial constitutional challenges, to succeed with a facial challenge under the Fourth Amendment, "a plaintiff must establish that a 'law is unconstitutional in all of its applications.'"   *City of Los Angeles v. Patel,* 576 U.S. 409, 418 (2015) (quoting *Wash. State Grange,* 552 U.S. at 449); *see also Brennan v. Dickson,* 45 F.4th 48, 61 (D.C. Cir. 2022) (describing a facial challenge as "an unusual but not unheard-of type of Fourth Amendment claim" and applying *Salerno*'s "no set of circumstances" test).   Here, Plaintiff complains that the Act is facially unconstitutional "to the extent" it authorizes a "compelled medical or psychiatric examination," FAC ¶ 118 (Count VIII), or "compelled surrender of private medical records," *id.* ¶ 123 (Count IX), without requiring either (1) a warrant based on probable cause, or (2) "a demonstration of constitutional reasonableness."  *Id.* ¶¶ 118, 124.  These claims fail as facial challenges.

### A.    Counts VIII and IX fail as facial claims because they do not even purport to identify a provision of the Act, or any language within a provision, that is unconstitutional in *every* application.

Plaintiff's "facial" claims fail first and foremost because they do not actually assert that a particular provision of the statute, or particular language within a provision, is unconstitutional in all its applications.  As noted above, Plaintiff claims that the Act is unconstitutional "to the extent" it authorizes a "compelled medical or psychiatric examination," FAC ¶ 118 (Count VIII), or "compelled surrender of private medical records," *id.* ¶ 124 (Count IX), without requiring either (1) a warrant based on probable cause, or (2) "a demonstration of constitutional reasonableness."  *Id.* ¶¶ 118, 124.  But the statutory provision at issue in these challenges is section 353(c), which simply and broadly authorizes a special committee under the Act to "conduct an investigation as extensive as it considers necessary."  28 U.S.C. § 353(c).

6

It is plain on the face of the complaint that Plaintiff does not even purport to assert that section 353(c), or any language within that provision, is unconstitutional in *all* of its applications.  Instead, Plaintiff's limited claim is that it would violate the Fourth Amendment for a special committee to use the authority granted under section 353(c) to issue *certain types of investigative orders*—namely, orders demanding medical records or a medical or psychiatric examination.  Neither the provision as a whole nor any language in the provision is limited to such orders.  Accordingly, even if Plaintiff proved what she alleges in these counts, she would not have established invalidity of all applications of the provision or of any language within it.  Her facial challenges to Counts VIII and IX therefore fail.

Indeed, it is obvious that the investigative authority granted under section 353(c) can be invoked in multiple ways that create no Fourth Amendment issue whatsoever.  Section 353(c) confers on special committees the authority to "conduct an investigation as extensive as it considers necessary" and to file a report with the judicial council.  A special committee could conduct that investigation without ever using any investigative tools that potentially implicate the Fourth Amendment.  For example, a special committee could seek to interview a court employee to ascertain relevant information about a judge.  *See Florida v. Bostick*, 501 U.S. 429, 434 (1991) (mere questioning is not a Fourth Amendment seizure).  Or a special committee could ask a judge to fill out a questionnaire relevant to the investigation.  *Cf. NASA v. Nelson*, 562 U.S. 134, 151 (2011) (employment related questionnaire raises no Fourth Amendment issue).  In short, the fact that the investigative authority granted in section 353(c) can be used in myriad ways that plainly raise no constitutional infirmity squarely forecloses any facial constitutional challenge.  *See, e.g.*, *United States v. Wright*, 937 F.3d 8, 17 (1st Cir. 2019) (facial Fourth Amendment challenge fails where statute "can be constitutionally applied in some cases"); *Lanier v. City of Woodburn*, 518 F.3d 1147, 1150 (9th Cir. 2008) (same).[1]

---

[1] The plain mismatch between the Plaintiff's allegations in Count VIII and Count IX and facial-invalidity standards defeats the claims if treated as facial challenges.  Defendants

**B.    Even if the Court applies facial invalidity standards to the categories of investigative orders specified in Counts VIII and IX, the claims still fail.**

Even if the Court analyzes the particular categories of investigative orders specified in Counts VIII and IX for facial invalidity, Plaintiff's claims still fail.  Not all orders within the challenged categories (that is, orders for medical records or medical or psychiatric examinations) would be unconstitutional on either of the two grounds asserted by Plaintiff: the absence of "a warrant based on probable cause" and an insufficient basis for "constitutional reasonableness," FAC ¶¶ 118, 124.  First, the Fourth Amendment simply does not require a warrant on probable cause for such orders in the present setting, which involves assessments of fitness for positions of trust.  *See, e.g.*, *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665-66 (1989); *O'Connor v. Ortega*, 480 U.S. 709, 725–26 (1987); *Yin v. California*, 95 F.3d 864, 869 (9th Cir. 1996).  Second, given restrictions imposed by the Act and its implementing rules, constitutional reasonableness standards will plainly be met for orders within these categories not just sometimes (which suffices for the facial challenges to fail under *Salerno*), but in the ordinary course.  The most that the Fourth Amendment requires in this context is reasonable suspicion that a judge suffers from a disability rendering the judge incapable of performing the duties of his or her office, so the Fourth Amendment is satisfied when Special Committees have such a basis for orders in these categories.  Under the requirements of the Act and its implementing rules, such a reasonable suspicion is assured.

**1.    The Fourth Amendment Does Not Require a Warrant on Probable Cause for All Demands for Medical Records or Medical or Psychiatric Examinations Under the Act.**

Plaintiff's theory that the Act is facially unconstitutional because it does not require a warrant supported by probable cause is wrong as a matter of law.  "As the text of the Fourth

---

respectfully suggest that the mismatch also supports not treating the counts as facial challenges at all, but instead as as-applied challenges to particular exercises of authority under the Act subject to the bar on judicial review in 28 U.S.C. § 357(c) as interpreted in *McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S.*, 264 F.3d 52, 62-63 (D.C. Cir. 2001).  Defendants preserve the latter point here, in light of this Court's discussion of the point in its Order at 24.

Amendment indicates, the ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995).  And it is well settled that "a warrant is not required to establish the reasonableness of *all* government searches," *id.* at 653, and that "neither a warrant nor probable cause . . . is an indispensable component of reasonableness in every circumstance," *Von Raab*, 489 U.S. at 665.  Instead, "where a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant." *Id.* at 665.

Of importance here, the Supreme Court has held that the special needs of the government as employer to investigate "misconduct" or potential "incompetence" of government employees—especially employees in positions of particular trust and responsibility—justify dispensing with a warrant-on-probable-cause requirement and evaluating Fourth Amendment intrusions instead "by the standard of reasonableness under all the circumstances." *O'Connor*, 480 U.S. at 724, 725–26 (plurality).[2]  The plurality in *O'Connor* explained key aspects of the relevant balancing of interests.  The government has a strong interest in "ensuring that [its] agencies operate in an effective and efficient manner," and "the work of these agencies inevitably suffers from the inefficiency, incompetence, mismanagement, or other work-related misfeasance of its employees." *Id.* at 724.  The government's interest is amplified in situations

---

[2] *See O'Connor*, 480 U.S. at 732 (Scalia, J., concurring) (agreeing with view that the context of government employment involves "special needs" that call for balancing government interests and expectations of privacy to determine whether search was "reasonable" under the Fourth Amendment and may result in conclusion that the "warrant and probable cause requirement [is] impracticable") (citation omitted).  The aspects of the *O'Connor* plurality relevant here are in accord with subsequent precedent.  *See, e.g.*, *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 599 (2008); *City of Ontario v. Quon*, 560 U.S. 746, 756 (2010); *Von Rabb*, 489 U.S. at 665–66; *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 619–20 (1989); *see also United States v. Askew*, 529 F.3d 1119, 1135 (D.C. Cir. 2008); *Nat'l Treasury Emps. Union v. Yeutter*, 918 F.2d 968, 974–75 (D.C. Cir. 1990).

where "public employees are entrusted with tremendous responsibility," because "the consequences of their misconduct or incompetence to both the agency and the public interest can be severe." *Id.*

The same balancing of interests described in *O'Connor* shows that the Fourth Amendment does not impose a warrant requirement here. At issue are orders for medical records and medical or psychiatric examinations in a proceeding under the Act that has reached the stage of a Special Committee investigation. In this context, certain facts relevant to the balancing are evident. Federal judges are entrusted with enormous responsibility to determine the rights of litigants who appear before them. As the JC&D Committee of the Judicial Conference of the United States has recognized in upholding the reasonableness of a warrantless demand for a medical examination of a judge under the Act, "a federal judge's sound mental health is essential to his or her fulfillment of all judicial duties," and "[p]ublic confidence in the Judiciary turns in major ways on the judges' ability to address and vindicate the parties' rights with fairness, efficiency, and sound decisionmaking." Memorandum of Decision at 31, *In re: Complaint of Judicial Misconduct*, C.C.D. 17-01 (Comm. on Jud. Conduct & Disability Aug. 14, 2017) ("*Adams*"), *available* here. Accordingly, the Judiciary and the public it serves have a particularly strong interest in investigative standards and procedures under the Act that do not hinder or delay prompt inquiries into potential disabilities of federal judges where the requirements for appointing a Special Committee have been met.

Congress recognized the strength of this interest, authorizing "an investigation as extensive as it considers necessary," 28 U.S.C. § 353(c), and placed the decision in the Special Committee, within an institutional self-policing regime with carefully defined means of judicial review (through the Judicial Council and JC&D Committee of the Judicial Conference). The Judicial Conference has reconfirmed the strength of the interest: Since 2015, the commentary to the Rules implementing the Act have expressly provided special committees the authority to seek "a medical or psychological examination." Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 13(a) cmt. Such a statutory and regulatory mandate has

been recognized as strengthening the government's legitimate interest in access to information. *See, e.g.*, *Yin*, 95 F.3d at 872; *Fraternal Ord. of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 110 (3d Cir. 1987).

On the other side of the balance, federal judges' expectations of privacy in this context are necessarily qualified. By taking on the responsibility of a life-tenured position in the judiciary, federal judges necessarily accept restrictions on their privacy. As the JC&D Committee has noted, federal judges must file financial disclosure reports that ordinary citizens would find intrusive. *See Adams* at 31. The Act, moreover, has long placed federal judges on notice that investigations into potential disability are a requirement that comes with the job of a federal judge. *See Yin*, 95 F.3d at 871-72 (finding that existence of statute authorizing compelled medical examination reduced government employee's privacy interest in avoiding examination). In addition, some forms of medical or psychiatric examination that may be required under the Act involve only limited intrusions on privacy. As other courts have observed, psychological testing is properly considered a minimal intrusion in the context of employees holding sensitive positions because "psychological testing and psychiatric interviews are routine feature of occupations which involve stress and sensitive interpersonal contact." *Murray v. Pittsburgh Bd. of Educ.*, 759 F. Supp. 1178, 1181-82 (W.D. Pa. 1991); *accord Down v. Ann Arbor Pub. Schs.*, 29 F. Supp. 3d 1030, 1039-40 (E.D. Mich. 2014) (adopting *Murray*'s reasoning). There is no reason to distinguish between employees and judicial officers when evaluating the government's interest. If anything, the government has even more paramount interests in assuring that judges can carry out their duties than it has with ordinary civil servants.

Counts VIII and IX could not succeed as facial challenges to the Act unless there were *no* circumstances under which *any* form of medical or psychiatric examination—even the least intrusive—could be ordered (or the production of *any* form of medical records be required) without probable cause and a warrant. Multiple decisions from the Supreme Court permitting physically intrusive medical examinations without probable cause and a warrant for other

11

federal employees in sensitive positions necessarily foreclose that theory.  The Supreme Court has repeatedly held that even medical examinations of a physically intrusive nature—such as urinalysis for drug testing—may be compelled not only without a warrant but also, in some cases, without any individualized suspicion.  *See, e.g.*, *Von Raab*, 489 U.S. at 665-66, 677; *see also Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 631–33 (1989).  Especially for employees in positions involving safety concerns or particular positions of trust, the Court has characterized even blood draws, urinalysis, and breathalyzer tests as "limited" intrusions on privacy. *Skinner*, 489 U.S. at 624–25.  Such decisions foreclose Plaintiff's facial claims demanding probable cause and a warrant here.

Lower courts have consistently held that government employers investigating the possibility that employees suffer from a medical or cognitive condition rendering them unable to do their jobs do not need probable cause and a warrant before demanding that the employees undergo a medical or psychological examination.  *See, e.g.*, *Yin*, 95 F.3d at 866, 868–69 (no probable cause or warrant required to compel employee with history of absenteeism and fainting spells to undergo a "fitness-for-duty medical examination" to "determine whether [she]was capable of doing her job"); *Down*, 29 F. Supp. 3d at 1039–40 (compelled psychological examination for school teacher does not require warrant and probable cause); *Murray*, 759 F. Supp. at 1181 (same).  As the Ninth Circuit explained in *Yin*, "[m]edical examinations and medical tests that are not conducted as part of a criminal investigation are generally subject to the balancing test, not the warrant/probable cause requirement."  95 F.3d at 869.

As one court concluded in addressing a compelled psychological examination of a school teacher, "[t]here is no requirement that before a school administrator seeks a medical examination of a teacher, the administrator must hold a (federal) probable cause hearing." *Murray*, 759 F. Supp. at 1183.  The same analysis properly applies to federal judges, who (like the teacher in *Murray*) occupy positions of particular trust.  And that analysis forecloses Plaintiff's facial challenges based on the absence of a warrant and probable cause requirement in the Act.

### 2. Plaintiff's Argument for Facial Invalidity Based on Asserted Lack of a Reasonableness Requirement Also Fails.

Plaintiff also asserts that the Act is facially unconstitutional because it authorizes compelled medical or psychiatric examinations and compelled production of medical records without a "demonstration of constitutional reasonableness." FAC ¶¶ 118, 124. Where, as here, the Fourth Amendment does not require a warrant on probable cause, it demands, at most, a "reasonable suspicion" to justify the intrusion on Fourth Amendment protected interests. *See, e.g.*, *Skinner*, 489 U.S. at 624 ("When the balance of interests precludes insistence on a showing of probable cause, we have usually required some quantum of individualized suspicion before concluding that a search is reasonable." (quotation omitted)); *cf. Nat'l Treasury Emps. Union v. Yeutter*, 918 F.2d 968, 974 (D.C. Cir. 1990) (compelled drug testing of government employees permissible based on reasonable suspicion). Plaintiff, however, cannot possibly show that the Act fails to meet that "reasonable suspicion" standard in *all* its applications, even all its applications to demands for medical records or medical or psychiatric examinations. As a result, Plaintiffs' facial claims fail.

Plaintiff apparently intends to argue that the Act is facially unconstitutional because it does not *expressly impose* a requirement that a demand for medical records or a medical or psychiatric examination must be supported by a reasonable suspicion that a judge suffers from a disability. But that argument is wrong on its face because, even if the Act and regulations did not impose a requirement of reasonable suspicion, a facial challenge fails under *Salerno* unless all demands for such records or examinations under the Act would be issued without reasonable suspicion. A wholly voluntary adoption of such a standard in practice would suffice to defeat the facial challenge. In any event, the argument is wrong in its premise, because it disregards what the Act (and its implementing regulations) actually provide—a matter on which this Court need not accept Plaintiffs legal characterizations. *See* Order at 34 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Act and regulations make clear that

reasonable suspicion will undergird the type of investigative orders challenged in Counts VIII and IX.

When "[a]ny person" files a complaint under 28 U.S.C. § 351(a), the Act requires the chief judge to "expeditiously review [the] complaint," and it sets out criteria under which a chief judge may dismiss a complaint—which is authorized if the complaint is "frivolous," it is "lacking sufficient evidence to raise an inference" of misconduct or a disability, or the allegations "lack any factual foundation." 28 U.S.C. § 352(b)(1). The chief judge can appoint a special committee under section 353 only if the chief judge decides *not* to dismiss the complaint under the criteria set out in section 352. 28 U.S.C. § 353(a). The dismissal criteria will limit special committee investigations of a complaint to those matters in which the chief judge has determined, in effect, that there is "sufficient evidence to raise an inference"—and so there is reasonable suspicion—of a disability or misconduct.

The implementing rules, which the Court must also take into account, *see, e.g.*, *Mitchell*, 652 F.3d at 415, reinforce the conclusion that at least a "reasonable suspicion" of a disability is assured before a special committee seeks medical records or a medical or psychiatric examination. One such Rule concerns situations (such as this case) in which the chief judge "identifies" a complaint under 28 U.S.C. § 351(b) where no person has filed a complaint under § 351(a). Rule 5 imposes an even more demanding threshold requirement before there can be any demand for medical records or a medical or psychiatric examination. Rule 5 first specifies that the chief judge's ability to "conduct an inquiry" preliminary to identifying a complaint is triggered when the chief judge "has information constituting reasonable grounds for inquiry into whether a covered judge has engaged in misconduct or has a disability." Rule 5(a). It then states that the chief judge "may identify a complaint" only where, after an inquiry, the chief judge "finds probable cause to believe that misconduct has occurred or that a disability exists." *Id.* Thus, under Rule 5, a special committee's investigation cannot even begin until the chief judge has found that there is probable cause to conclude that the subject judge suffers from a disability. "Probable cause" is a higher threshold than "reasonable suspicion." *See,*

*e.g.*, *Skinner*, 489 U.S. at 624.  These matters thus arrive at the special committee with a probable cause finding from the chief judge.

The Rules also address the special committee's decision about making demands for the records or examinations at issue here.  That decision, of course, is not limited to evidence handed to the committee when the committee is formed.  It is the function of a special committee to investigate, and the committee's own investigation will often turn up evidence that could supply new bases of reasonable suspicion of disability that justifies ordering a medical or psychiatric examination or demanding medical records.  Regardless, the commentary to Rule 13 makes clear that a special committee's ability to "request the [subject] judge to undergo a medical or psychological examination" is limited to situations where "the special committee has *cause to believe* that the subject judge may be unable to discharge all the duties of office by reason of mental or physical disability."  Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 13(a) cmt. (emphasis added).  The "cause to believe" standard is indistinguishable from a "reasonable suspicion" standard and ensures that any demand for medical records or a medical or psychiatric examination under the Act satisfies Fourth Amendment requirements.

Indeed, that is how the Act *has* been applied, in cases such as *Adams*.  As the JC&D Committee explained in *Adams*, before ordering a judge to undergo a medical examination in that case, a special committee in the Sixth Circuit developed substantial evidence that supplied a "reasonable basis for concluding that a judicial colleague might suffer from a disability," and thus satisfied Fourth Amendment requirements.  *Adams* at 29.  Where the seven federal judges on the JC&D Committee have already rejected an *as applied* Fourth Amendment challenge to the use of section 353(c) in ordering a medical examination, it would be wholly illogical for this Court to conclude that Plaintiff can succeed on a *facial* challenge that requires showing that the Act is unconstitutional in *all* its applications.  Because the Act readily may be applied in a manner that fully satisfies the Fourth Amendment—as the *Adams*

15

decision shows—Plaintiff's facial challenges necessarily fail.  *See Wright*, 937 F.3d at 17; *Lanier*, 518 F.3d at 1150.[3]

## II.   Plaintiff's facial vagueness challenges (Counts V & VII) fail as a matter of law.

Plaintiff's facial vagueness challenges to the disability and investigation provisions of the Act fail as a matter of law.  Dispositively, each provision provides a clear standard that fully satisfies due process requirements.  For the investigation provision, moreover, the Count VII challenge, limited to standards for demanding medical records or medical or psychiatric examinations, does not even assert vagueness of the provision, or of any language in the provision, in all its applications.  Finally, the very fact that the investigation provision merely governs the investigation choices—rather than setting a standard for Plaintiff's conduct or for assessing fitness for duty—confirms that there can be no due process vagueness problem with the provision.

### A.   The statutory standard for judicial disability (Count V) is not unconstitutionally vague.

Plaintiff claims that the Act "fails to provide adequate notice of what constitutes a mental disability that renders a judge 'unable to discharge all the duties of office.'"  FAC ¶ 103.[4]  But the statutory terms tying a disability to a judge's concrete lack of capacity to

---

[3] Indeed, if it were necessary to save the Act from a constitutional infirmity, the Court would likely be required to construe to the Act to require at least a reasonable suspicion that a judge suffered from a disability before there could be a demand for medical records or a medical or psychiatric examination.  *See, e.g.*, *City of Lakewood*, 486 U.S. at 770.

[4] The assertion in Count V that the Act is unconstitutionally vague because "it lacks minimal enforcement guidelines identifying when an Article III judge may be subject to a disability investigation," FAC ¶ 103, collapses into the same facial attack on the disability standard.  As explained above, under the Act and implementing rules, an investigation begins only after a screening by the chief judge effectively to determine whether there is "sufficient evidence to raise an inference" of a disability (or, when the chief judge "identifies" a complaint, a finding of probable cause to believe that a judge suffers from a disability).  The grounds for when a judge may be "subject to a disability investigation" thus turn on the same definition of disability.

perform the duties of his or her office provide an unambiguous standard that fully satisfies the Due Process Clause.

The test for finding a statute facially unconstitutional under the vagueness doctrine is a "stringent" one. *United States v. Bailey*, 2023 WL 2139365, at *4 (D.D.C. Feb. 21, 2023). A vagueness challenge cannot succeed where the statutory standard is "imprecise but comprehensible," that is, where a conclusion whether the standard has been met "may vary depending upon whom you ask." *Bronstein*, 849 F.3d at 1107 (citations omitted). Thus, a "statutory term is not rendered unconstitutionally vague because it does not mean the same thing to all people, all the time, everywhere." *Id.* (alterations omitted). Instead, a "statute is unconstitutionally vague if, applying the rules for interpreting legal texts, . . . [it] specifies no standard of conduct at all." *Id.* (cleaned up). Importantly, the vagueness doctrine "is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing . . . statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning." *Arnett v. Kennedy*, 416 U.S. 134, 159–60 (1974). Accordingly, a law is not unconstitutionally vague if it "call[s] for the application of a qualitative standard to real-world conduct." *Bronstein*, 849 F.3d at 1108. In addition, where (as here) the statute does not involve a criminal prohibition, the standard of specificity demanded by the Due Process Clause is more relaxed. *See, e.g.*, *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 504 (1982) (noting "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe"); *accord Winters v. New York*, 333 U.S. 507, 515 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement.").

Under those standards, the disability provision of the Act readily survives scrutiny. Section 351(a) allows for a judicial council to take action where a "judge is unable to discharge all the duties of office by reason of mental or physical disability." 28 U.S.C. § 351(a). By tying the disability standard to the concrete and objective assessment of whether a judge has

been rendered "unable" to perform "all the duties of office," the statute necessarily provides a clear standard.  As this Court observed at oral argument on the motion to dismiss, "federal judges know better than anybody else what the duties of their office are."  Jan. 25, 2024 Hr'g Tr. 49:12-13.  And determining whether a judge is "unable" to perform those duties is not "the type of subjective or wholly discretionary or indiscernible judgment[t] that courts have struck down as constitutionally vague."  *Woodhull Freedom Found.*, 72 F.4th at 1303.  To the contrary, precisely because it requires a relatively concrete assessment, it is more definite than the sort of "application of a qualitative standard to real-world conduct" that routinely survives scrutiny under the vagueness doctrine.  *Bronstein*, 849 F.3d at 1108; *compare, e.g.*, *Arnett v. Kennedy*, 416 U.S. 134, 158-160 (rejecting vagueness challenge to statute that permitted firing federal employee "for such cause as will promote the efficiency of the [civil] service").

In addition, the disability standard is further defined by rules implementing the Act.[5] The rules explain that a disability is "a temporary or permanent impairment, physical or mental, rendering a judge unable to discharge the duties of the particular judicial office."  JC&D Rule 4(c).  That rule makes the definition of disability even more concrete by tying it to the duties of the *particular* judicial officer involved, rather than relating it to an abstract standard. The rule also goes on to further clarify the standard by explaining that examples of disability "include substance abuse, the inability to stay awake during court proceedings, or impairment of cognitive abilities that renders the judge unable to function effectively."  *Id.*  Especially in light of that guidance, it cannot be said that the disability provision "specifies no standard . . . at all," as would be required to strike it down as unconstitutional.  *Bronstein*, 849 F.3d at 1108.

---

[5] The Court may look to the JC&D Rules—which the Judicial Conference promulgated to implement the Act—in assessing whether the Act is void for vagueness.  *See, e.g.*, *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 504 (1982); *U.S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 572–81 (1973); *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972); *Kolbe v. Hogan*, 849 F.3d 114, 149 (4th Cir. 2017).

That conclusion is further buttressed by the fact that Congress did not simply make up the terminology used in the Act in a vacuum.  As the Supreme Court has explained, when Congress does not write on a "clean slate," but instead uses terminology with historical usage in the law, that usage provides context giving more concrete meaning to the term.  *Arnett*, 416 U.S. at 160.

Here, Congress has been using the term "disability"—even without further clarifying language—in statutes since the Founding, including in statutes providing for judicial disability.[6]  There was no ambiguity in the term: a disability was the "want of power to do any thing; weakness; impotence."  *See Disability*, Samuel Johnson, Dictionary of the English Language (1755).  The Constitution as originally ratified even used the term "disability" interchangeably with the "Inability to discharge the Powers and Duties of the said Office."  *See* U.S. Const. art. II, § 1, *superseded by id.* amend. XXV.  And the Twenty-Fifth Amendment uses language almost identical to the Act's disability provision to allow the President to be removed from office if the Vice President and a majority of the principal officers of the executive departments declare that he is "unable to discharge the powers and duties of his office." U.S. Const. amend. XXV.  If those terms convey sufficient meaning for the grave step of removing the President from office, they are certainly definite enough in the context of the Act.

---

[6] *See, e.g.*, Act of Aug. 4, 1790, ch. 35, § 8, 1 Stat. 145, 155 ("[I]n case of the disability or death of a collector, the duties and authorities vested in him shall devolve on his deputy, if any there be at the time of such disability or death."); Act of March 1, 1792, ch, 8, § 9, 1 Stat. 239, 240 ("[I]n case of the removal, death, resignation, or inability of both the President and Vice President of the United States, the President of the Senate pro tempore, and in case there shall be no President of the Senate, then the Speaker of the House, for the time being shall act as President of the United States until the disability be removed or a President be elected."); Act of May 8, 1792, ch. 36, § 10, 1 Stat. 275, 278 ("[I]t shall and may be lawful for the clerks of the district and circuit courts, in the absence or in the case of the disability of the judges, to [take certain ministerial acts]."); Act of Feb. 13, 1801, ch. 4, § 25, 6 Stat. 89, 97 (authorizing, upon a finding by the circuit court of the "inability of the district judge . . . to perform the duties of his office," a circuit judge to "perform the duties of said district judge, . . . during the continuance of his disability").

In addition, in crafting the disability standard, Congress chose to paraphrase "existing statutory language found in section 372(b) of title 28," which was a decades-old provision providing for the appointment of an additional judge where a sitting judge has become disabled but fails to retire. *See* S. Rep. No. 96-362 at 9 (1979), *reprinted in* 1980 U.S.C.C.A.N. 4215, 4322-23; Act of Feb. 25, 1919, Pub. L. No. 265, ch. 29, § 6, 65 Stat. 1156, 1158 (requiring a presidential finding that the sitting judge "is unable to discharge efficiently all the duties of his office by reason of mental or physical disability of permanent character"). Indeed, judicial disability laws date back to the Second Congress. *See* Act of May 8, 1792, ch. 36, § 10, 1 Stat. 275, 278. Existing state laws also informed the drafting of the Act's conduct and disability standards. Members of Congress recognized that the legislation incorporated "terms which have been in use in several states which have existing judicial disability and disciplinary systems," and that the "body of case law" addressing state laws with "the same or similar language" would "aid the judicial councils" in "applying federal law to specific cases as they arise." S. Rep. 96-362 at 9; *see also* S. Rep. No. 95-1035, at 45 (1978) (discussing state cases involving involuntary retirement of judges for disability). Just as in *Arnett*, "common usage and already existing statutory understanding" inform the meaning of the conduct and disability standards. S. Rep. 96-362, at 9.[7]

Precedent under the vagueness doctrine also clearly establishes that standards far less defined than the disability provision survive constitutional scrutiny. For example, in *Arnett* the Supreme Court rejected a former federal employee's vagueness challenge to a statute allowing removal or suspension of civil servants "for such cause as will promote the efficiency of the service." 416 U.S. at 158 (plurality opinion by Rehnquist, J., joined by Burger, C.J., and Stewart, J.); *see also id.* at 164 (Powell, J., joined by Blackmun, J., concurring in the plurality's reasoning as to vagueness); *id.* at 177 (White, J., same). As the Court explained in

---

[7] Vagueness challenges to similar state laws governing judicial disability have likewise failed. *See Ohio State Bar Ass'n v. Mayer*, 377 N.E.2d 770, 775 (Ohio 1978); *McComb v. Comm'n on Judicial Performance*, 564 P.2d 1, 7–8 (Cal. 1977).

*Arnett*, "[t]here are limitations in the English language with respect to being both specific and manageably brief." *Id.* at 159. Accordingly, Congress is permitted to use terms "general enough to take into account a variety of human conduct" and is not bound to "enact[] a detailed code." *Id.* at 159, 160. Identical analysis supports the constitutionality of the functional definition used in the Act, tying disability to the inability to perform the duties of office. Similarly, the D.C. Circuit has rejected a vagueness challenge to a provision allowing the Navy to revoke the instructor certification of a Junior ROTC instructor if "continued certification . . . is not in the best interests of the program." *Crooks v. Mabus*, 845 F.3d 412, 414–15, 416–18 (D.C. Cir. 2016) (citation omitted). [8] If that provision survives vagueness scrutiny, so does the disability provision of the Act.

Courts have also rejected vagueness challenges to the misconduct provision in the same section of the Act. The misconduct provision allows a judicial council to take action if a "judge has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts." 28 U.S.C. § 351(a). That provision, calling for an assessment of what is "prejudicial" to "effective and expeditious administration," invokes a standard that is less precise than the relatively concrete assessment of whether a judge is "unable" to perform the duties of office. Every court to address the issue has squarely rejected a facial vagueness challenge to the misconduct provision. *See Matter of Certain Compls. Under Investigation by an Investigating Comm. of the Jud. Council of the Eleventh Circuit*, 783 F.2d 1488, 1513 n.21 (11th Cir. 1986); *Hastings v. Jud. Conf. of U.S.* 593 F. Supp. 1371, 1381–83 & n.25 (D.D.C. 1984) (same), *vacated on other grounds in* 770 F.2d 1093 (D.C. Cir. 1985). In asking this Court to strike down the disability provision, Plaintiff asks the Court to adopt a position flatly incompatible with precedent addressing the adjacent provision in the same Act.

---

[8] *See also, e.g.*, *Harmon v. City of Norman*, 61 F.4th 779, 799 (10th Cir. 2023) (rejecting a vagueness challenge to an ordinance that prohibits "loud or unusual sounds").

Finally, Plaintiff plainly cannot come close to satisfying the requirement that she "must show that the law in question is impermissibly vague in all of its applications to succeed on a facial challenge." *Crooks*, 845 F.3d at 417 (citation omitted).[9]   Although no one wishes to contemplate such scenarios, there are plainly situations in which the disability provision would apply without any ambiguity.   A judge who has suffered an accident and is left in a coma or permanent vegetative state or who has suffered an extraordinary cognitive impairment from a traumatic brain injury certainly cannot "perform the duties of office."   The obvious application of the statute in such cases is sufficient in itself to foreclose Plaintiff's facial vagueness challenge.

To the extent Count V asserts that the Act is unconstitutionally vague because it "lacks minimal enforcement guidelines" identifying "when an Article III judge may be *disciplined*" for refusing an order for a medical examination or providing medical records, FAC ¶ 103 (emphasis added), it cannot be construed as mounting a separate facial challenge to the Act's

---

[9] Several courts have observed that the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), "raise a question about the continuing scope of the *Salerno* principle" in vagueness doctrine cases, because those decisions state that "a provision may be void for vagueness even though 'some conduct . . . clearly falls within the provision's grasp.'" *Bowling v. McDonough*, 38 F.4th 1051, 1061 n.4, 1062 (Fed. Cir. 2022) (quoting *Johnson*, 576 U.S. at 602; citing other decisions recognizing question). *Johnson* and *Dimaya*, however, expressly recognize their distinctive circumstance— an unusual double layer of vagueness: provisions that required a court to (i) imagine an abstract, idealized "ordinary" version of a particular offense and then (ii) apply a poorly defined threshold to determine whether that idealized offense was categorically a crime of violence, where years of court experience proved the fatal inability to identify the standard. *Johnson*, 576 U.S. at 597, 604; *Dimaya*, 138 S. Ct. at 1213–16. In the wake of *Johnson*, the D.C. Circuit in *Crooks* continued to apply the requirement that a plaintiff making a facial challenge must show that a statute is impermissibly vague in all its applications, while flagging the special circumstances present in *Johnson*. *See Crooks*, 845 F.3d at 417; *cf. U.S. Telecom. Ass'n v. FCC*, 825 F.3d 674, 736 (D.C. Cir. 2016) (declining to decide "the full implications of *Johnson*"). For the reasons described in text, Plaintiff's claim fails even if she is not required to show that the disability provision is unconstitutionally vague in all its applications. Under *Crooks*, however, this Court should apply that standard, because the statutes at issue here are nothing like those at issue in *Johnson* and *Dimaya*. *See, e.g.*, *United States v. Bailey*, 2023 WL 2139365, at *4 (D.D.C. Feb. 21, 2023).

misconduct standard.    Count V announces that it challenges solely the "Unconstitutional Vagueness of the Act's Disability Provision."  FAC at 25 (Count V heading).  In any event, any purported vagueness challenge to the misconduct standard would fail as a matter of law. To start, Plaintiff complains about the standard solely with the respect to a particular type of misconduct—refusing to cooperate with an order for a medical examination or medical records—a complaint that does not establish facial invalidity (and is not really a facial challenge). *See* Section I.A., *supra*.  In addition, not only do the rules make clear that "refusing, without good cause shown, to cooperate in the investigation of a complaint" constitutes misconduct, Rule 4(a)(5), but also the decision of the JC&D Committee in the *Adams* case has made it crystal clear since 2017 that, when a special committee has a "reasonable basis" to believe a judge may suffer from a disability, refusing an order for a medical examination is misconduct. *See Adams* at 23-33.  Any assertion that it is unclear when a judge may be subject to a finding of misconduct for refusing an order for medical records or a medical or psychiatric examination is frivolous.

### B.    The investigations provision of the Act is not unconstitutionally vague.

Plaintiff's facial challenge to the investigations provision of the Act (Count VII) also fails. Plaintiff contends that the investigations provision, which authorizes a special committee to conduct an investigation "as extensive as it considers necessary," 28 U.S.C. § 353(c), is impermissibly vague because it "lacks minimal enforcement guidelines identifying the circumstances under which an Article III judge may be compelled to undergo mandatory medical or psychiatric examination or surrender her private medical records."  FAC ¶ 112.[10]

---

[10] The Court has already held that the assertion in the first sentence of Count VII that the "Act is unconstitutionally vague to the extent it purports to authorize compelled medical or psychiatric examinations of Article III judges or demands from Special Committees for an Article III judge to surrender their private medical records," FAC ¶ 112, collapses into the claim in the second sentence of Count VII, which is quoted in text.  *See* Order at 32 n.13.  To the extent Plaintiff intends to focus on an alleged lack of standards restricting when compliance with the challenged investigative steps may be "compelled," the Court has already

23

Plaintiff's complaint, in essence, is that the provision allows a special committee too much unguided discretion in determining when to use the investigative step of demanding medical records or medical examinations.  That facial challenge fails for several reasons.

    **1. Plaintiff's facial challenge fails under the vagueness doctrine.**

   Plaintiff's challenge is flawed first for the same reasons discussed in Section I.A *supra*, addressing the Fourth Amendment challenge to the investigation provision.  Plaintiff challenges only the issuance of *certain types of orders* under the investigations provision—orders for medical records and medical examinations—not the provision as a whole or any language in it.  This challenge cannot succeed as a facial claim.

   Second, contrary to Plaintiff's assertions, the Act and its implementing rules provide an unambiguous standard limiting when requests for medical records or medical examinations can be made. As a threshold matter, such requests are limited by the screening that the Act contemplates before a disability investigation can even begin, a screening keyed to whether there is "sufficient evidence to raise an inference" of a disability or (in some cases) probable cause.  *See* 28 U.S.C. §§ 352(a)–(b), 353(a); *see supra* Section I.  And the commentary to Rule 13 makes clear that a special committee's ability to "request the [subject] judge to undergo a medical or psychological examination" is properly limited to situations where "the special committee has cause to believe that the subject judge may be unable to discharge all the duties of office by reason of mental or physical disability."  Quoted *supra* 15; *see also Nat'l Ass'n of Letter Carriers*, 413 U.S. at 572–81 (courts may look to implementing rules to clarify scope of statutes).  This evidentiary foundation standard, amounting to at least reasonable suspicion, is not unconstitutionally vague.  Nor is the directive to decide what investigative steps are "necessary" (in this context in its broad sense) to properly evaluate the disability issue when.  "The fact that the" investigation provision grants special committees "discretion

---

rejected that theory in dismissing the claim encompassed in the third sentence of Count VII. *See id.* at 34–35.

to select" their investigatory methods "does not render the statute unconstitutionally vague." *Kincaid v. Gov't of District of Columbia*, 854 F.3d 721, 730 (D.C. Cir. 2017). Such standards for assessing investigatory tools for particular issues are pervasive in the law, and adjudicators, investigators, lawyers, and others understand what they mean. These readily intelligible standards limiting when medical records and medical or psychiatric examinations may be sought fully satisfy any applicable due process constraint.

Indeed, given that these standards satisfy the reasonableness requirement of the Fourth Amendment, *see supra* Part I.B.2, that should end any constitutional inquiry. The Due Process Clause does not provide more stringent standards than the Fourth Amendment when it comes to authorizing investigative steps. To the contrary, numerous courts have stated that there is no due process right not to be investigated. *See, e.g.*, *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984) (an investigation by the SEC into possible violations of securities laws does not implicate the Due Process Clause); *Aponte v. Calderon*, 284 F.3d 184, 193 (1st Cir. 2002) ("[I]nvestigations, alone, do not trigger due process rights."); *Sloan v. Dep't of Hous. & Urb. Dev.*, 231 F.3d 10, 18 (D.C. Cir. 2000) (finding no due process violation because the "law is clear [ ] that there is no constitutional right to be free of investigation" (citation omitted)); *Setliff v. Mem'l Hosp. of Sheridan Cnty.*, 850 F.2d 1384, 1395 n.16 (10th Cir. 1988) (same); *Moseley v. Price*, 300 F. Supp. 2d 389, 397 (E.D. Va. 2004) ("The desire not to be investigated . . . is not a fundamental right protected by the due process clause."); *Popovic v. United States*, 997 F. Supp. 672, 678 (D. Md. 1998) (the idea that there is "a property or liberty right not to be investigated . . . or to have the investigation conducted in a particular way" has "no foundation in law"), *aff'd,* 175 F.3d 1015 (4th Cir. 1999).[11]

---

[11] *Cf. Manuel v. City of Joliet,* 580 U.S. 357, 364-69 (2017) (explaining that the Fourth Amendment, not the Due Process Clause, sets constitutional protections in the context of pretrial detention); *Becker v. Kroll*, 494 F.3d 904, 918-19 (10th Cir. 2007) (holding, in the context of pretrial restraints on liberty, that "[t]he more general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment").

Third, Plaintiff's theory that too much discretion in selecting investigative steps raises a due process concern is also foreclosed by settled law rejecting vagueness challenges to broad grants of discretion covering even more consequential decisions in a government enforcement process. The D.C. Circuit recently explained the relevant principles in *Kincaid v. Gov't of District of Columbia*, 854 F.3d 721 (2017). There, the court faced a vagueness challenge to a D.C. statute that effectively gave police complete discretion to decide whether to offer a person arrested on certain misdemeanor charges an opportunity to pay a small fine and have the charged resolved without any criminal record. *See id.* at 724–25. In rejecting that challenge, the court explained that, critically, the discretion given to police did not amount to discretion to "decide what activities constitute criminal offenses." *Id.* at 729 (citation omitted). Instead, it was essentially enforcement discretion, and "Supreme Court precedent teaches that the presence of enforcement discretion alone does not render a statutory scheme unconstitutionally vague." *Id.* at 729. For example, in *United States v. Batchelder*, 442 U.S. 114 (1979), the Supreme Court rejected a vagueness challenge to a law that allowed prosecutors discretion to prosecute "the same offense" under either of two statutes, "one carrying a five-year prison term and one carrying a two-year prison term." *Kincaid*, 854 F.3d at 729. Despite the consequences for the defendant, such discretion raised no issue under the Due Process Clause. As *Kincaid* explained, were it otherwise, "a countless number of [ ] discretionary decisions—from whether to make an arrest to whether to offer a plea to whether to enforce a statute against a regulated party—would run afoul of the vagueness doctrine." *Id.* at 730. That "theory is not the law." *Id.* (collecting cases for the proposition that the "Supreme Court has long allowed discretionary decisions by police, prosecutors, and regulators as part and parcel of the exercise of executive power").

If the broad discretion at issue in *Kincaid* did not raise a constitutional problem—even though it permitted the police effectively absolute discretion to decide who would be permitted to pay a small fine and avoid a criminal record—it follows *a fortiori* that a provision merely granting discretion concerning the *investigative steps* to use in pursuing a non-criminal inquiry

cannot offend the Due Process Clause.  Indeed, if the investigative provision in the Act were unconstitutional, then numerous statutes authorizing government officials to investigate could also be called into question,[12] and federal and state prosecutors would be inundated with vagueness challenges to the discretion afforded them concerning when to seek search warrants and use other investigative tools.  This Court should not be the first to endorse an unprecedented application of the vagueness doctrine at odds with the principles recently reinforced in *Kincaid*.

> ### 2.    The vagueness doctrine does not even apply to the investigation provision.

Plaintiff's vagueness challenge to the investigation provision suffers from an even more fundamental flaw.  The vagueness doctrine does not even apply to that provision.

The fundamental principle underpinning the vagueness doctrine is the recognition that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).  In other words, to satisfy the Due Process Clause, a law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  As these cases suggest, the "root of the vagueness doctrine is a rough idea of fairness." *Arnett*, 416 U.S. at 159.  The Supreme Court has explained the dual fairness principles behind the doctrine in terms of fairness to individuals whose conduct is regulated by the law: "Vague laws may trap the innocent

---

[12] *See, e.g.*, 7 U.S.C. § 87e ("The Secretary [of Agriculture] is authorized to conduct such investigations . . . as the Secretary deems necessary to effectuate the purposes or provisions of this chapter."); 26 U.S.C. § 8023(a) (authorizing the Chief of Staff of the Joint Committee on Taxation "to secure directly from the" IRS certain information "as the Chief of Staff deems necessary for such investigation"); 30 U.S.C. § 1717(a) ("[T]he Secretary [of the Interior] may conduct any investigation or other inquiry necessary and appropriate."); 33 U.S.C. § 546 (allowing "investigations of the watersheds as may be necessary for preparation of plans of improvement"); 42 U.S.C. § 5161(a) ("[T]he President shall conduct audits and investigations as necessary to assure compliance with this chapter.").

by not providing fair warning" about what conduct they may engage in, *Grayned*, 408 U.S. at 108; and vague laws may lead to arbitrary enforcement by leaving government actors "free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Beckles*, 580 U.S. at, 266  (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966)).

The central focus of the vagueness doctrine on regulation of conduct is reflected in various judicial holdings.  For example, the Supreme Court in *Beckles* stressed this focus in holding the doctrine inapplicable to a provision of the Sentencing Guidelines used by judges to make choices within a statutory range for punishment.  *Id.* at 265-66.  Judge Pryor, surveying cases, wrote in 2016 that "the vagueness doctrine applies only to laws that regulate private conduct—laws that define crimes, laws that fix sentences, laws that restrict speech, and laws that regulate businesses."  *United States v. Matchett*, 837 F.3d 1118, 1122 (11th Cir. 2016) (en banc) (Pryor, J., concerning the denial of rehearing en banc) (citations omitted) (collecting cases).  Earlier, the Federal Circuit, rejecting application of the vagueness doctrine to a veterans' benefits standard, wrote that it was "unable to find . . . any controlling precedent holding or any case in any other jurisdiction supporting the notion that a statute or regulation that does not purport to define the lawfulness or unlawfulness of either conduct or speech can be challenged under the void-for-vagueness doctrine."  *Nyeholt v. Sec'y Of Veterans Affs.*, 298 F.3d 1350, 1356 (Fed. Cir. 2002);[13] *cf. Kincaid*, 854 F.3d at 729 (reserving the question whether the

---

[13] *See also, e.g.*, *United States v. David H.*, 29 F.3d 489, 491 (9th Cir. 1994) (stating that the "void-for-vagueness doctrine is probably inapplicable" to a provision that "does not prohibit or sanction conduct"); *Witzke v. Idaho State Bar*, 2023 WL 3394925, at *5 (D. Idaho May 11, 2023) ("The void-for-vagueness doctrine only applies to statutes which proscribe conduct and are punishable with civil or criminal penalties."); *Courser v. Mich. House of Representatives*, 404 F. Supp. 3d 1125, 1141 n.6 (W.D. Mich. 2019) (explaining that "the void-for-vagueness doctrine has no application" when the challenged provision "does not impose criminal liability, does not have a civil penalty provision, and does not regulate speech in any manner"); *Singhal v. Lee*, 2016 WL 1305294, at *1 (E.D. Va. Mar. 28, 2016) (holding that the "'void for vagueness' doctrine does not even apply to statutes" that "do not attempt to prohibit certain conduct or speech"); *Maxwell v. Rubin*, 3 F. Supp. 2d 45, 49 (D.D.C. 1998) (finding vagueness

void for vagueness doctrine applies outside the context of laws that "define criminal offenses" or "fix the permissible sentences for criminal offenses").

Under these principles, the vagueness doctrine does not even apply to the section of the Act granting investigative authority.  That provision simply directs a special committee to "conduct an investigation as extensive as it considers necessary."  28 U.S.C. § 353(c).  By its terms, that provision also has nothing to do with regulating conduct.  Indeed, it does not even describe any standard about a judge's condition or fitness for duty that could trigger any substantive consequences under the Act.  It merely provides discretion to a special committee in choosing investigative steps to *find out* about a judge's condition.  And the provision similarly raises no concerns about arbitrary enforcement—because it merely provides discretion in determining the investigative steps that may be used *before* any decision about applying the Act is made.  The provision simply granting the ability to pursue investigative steps does not implicate the vagueness doctrine.  For that reason as well, Plaintiff's vagueness challenge fails as a matter of law.

## CONCLUSION

The Court should grant judgment for defendants on all remaining claims and terminate the case.

---

inapplicable where a statute "does not prohibit any type of conduct and does not provide for any civil or criminal penalties").

DATED:  March 8, 2024     Respectfully submitted,

                BRIAN M. BOYNTON
                Principal Deputy Assistant Attorney General

                CHRISTOPHER R. HALL
                Assistant Director, Federal Programs Branch

                */s/  Stephen Ehrlich*
                STEPHEN EHRLICH
                M. ANDREW ZEE
                Attorneys
                U.S. Department of Justice
                Civil Division, Federal Programs Branch
                Peter W. Rodino, Jr. Federal Building
                970 Broad Street, 7th Floor
                Newark, NJ 07102
                Phone:  (202) 305-9803
                Email:  stephen.ehrlich@usdoj.gov

                *Attorneys for Defendants*