## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HON. PAULINE NEWMAN,

        Plaintiff,

    v.

HON. KIMBERLY A. MOORE, *et al.*,

        Defendants.

Case No. 1:23-cv-01334-CRC

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 2

I.      Plaintiff's facial challenges under the Fourth Amendment (Counts VIII and IX)
fail as a matter of law. ............................................................................... 2

      A.    Plaintiff cannot show that 28 U.S.C. § 353(c) is unconstitutional
in all of its applications. ................................................................... 2

      B.    Even as limited to certain applications of § 353(c), Plaintiff's challenges in
Counts VIII and IX fail. ................................................................... 4

II.     Plaintiff's facial vagueness challenges (Counts V & VII) fail as a matter of law. ..... 12

      A.    The Act's disability provision (Count V) is not unconstitutionally vague. ..... 13

      B.    The Act's investigation provision (Count VII) is not unconstitutionally
vague. ............................................................................................. 16

CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Arnett v. Kennedy,*
    416 U.S. 134 (1974) .................................................................................. 13, 14

*Bennett v. Kentucky Dep't of Educ.,*
    470 U.S. 656 (1985) ...................................................................................... 15

*Brennan v. Dickson,*
    45 F.4th 48 (D.C. Cir. 2022) ......................................................................... 2

*Chandler v. Miller,*
    520 U.S. 305 (1997) ....................................................................................... 9

*City of Los Angeles v. Patel,*
    576 U.S. 409 (2015) ..............................................................................*passim*

*Crooks v. Mabus,*
    845 F.3d 412 (D.C. Cir. 2017) ..................................................................... 12

*Gen. Elec. Co. v. Jackson,*
    610 F.3d 110 (D.C. Cir. 2010) ....................................................................... 7

*Guffey v. Duff,*
    330 F. Supp. 3d 66 (D.D.C. 2018) ............................................................... 10

*Guffey v. Mauskopf,*
    45 F.4th 442 (D.C. Cir. 2022) ..................................................................... 10

*Harris v. Mayorkas,*
    2022 WL 3452316 (D.D.C. Aug. 18, 2022) ................................................... 8

*Holt v. Walsh Grp.,*
    316 F. Supp. 3d 274 (D.D.C. 2018) ............................................................... 8

*In re: Complaint of Judicial Misconduct,*
    C.C.D. 17-01 (Comm. on Jud. Conduct & Disability Aug. 14, 2017), *available* here ........ 7

*Indianapolis v. Edmond,*
    531 U.S. 32 (2000) ......................................................................................... 4

*Johnson v. United States,*
    576 U.S. 591 (2015) ..................................................................................... 12

*Kincaid v. District of Columbia*,
  854 F.3d 721 (2017) ........................................................................................ 16

*McBryde v. Committee to Review Circuit Council Conduct and Disability Orders of Judicial
  Conf. of U.S.*,
  264 F.3d 52 (D.C. Cir. 2001) ......................................................................... 11

*National Treasury Employees Union v. Von Raab*,
  489 U.S. 656 (1989) ................................................................................ 4, 5, 10

*Nebraska v. EPA*,
  331 F.3d 995 (D.C. Cir. 2003) ........................................................................ 10

*New Jersey v. T.L.O.*,
  469 U.S. 325 (1985) .......................................................................................... 4

*Newman v. Moore*,
  2024 WL 551836 (D.D.C. Feb. 12, 2024) ..................................................... 1, 7

*O'Connor v. Ortega*,
  480 U.S. 709 (1987) ....................................................................................... 5, 8

*Skinner v. Railway Labor Executives' Ass'n*,
  489 U.S. 602 (1989) .......................................................................................... 5

*Texas Educ. Agency v. U.S. Dep't of Educ.*,
  992 F.3d 350 (5th Cir. 2021) ......................................................................... 15

*United States v. Batchelder*,
  442 U.S. 114 (1979) ........................................................................................ 16

*United States v. Bronstein*,
  849 F.3d 1101 (D.C. Cir. 2017) ..................................................................... 14

*United States v. Kaczynski*,
  551 F.3d 1120 (9th Cir. 2009) ....................................................................... 13

*United States v. Place*,
  462 U.S. 696 (1983) .......................................................................................... 5

*United States v. Salerno*,
  481 U.S. 739 (1987) ........................................................................................ 1, 4

*Vernonia School Dist. 47J v. Acton*,
  515 U.S. 646 (1995) .......................................................................................... 4

*Wash. State Grange v. Wash. State Republican Party,*
  552 U.S. 442 (2008) ........................................................................... 2

*Yin v. California,*
  95 F.3d 864 (9th Cir. 1996) ............................................................... 9

**Statutes**

28 U.S.C. § 152 ................................................................................... 10

28 U.S.C. § 331 ..................................................................................... 6

28 U.S.C. § 332 ............................................................................... 11, 12

28 U.S.C. § 351 ...................................................................... 1, 8, 10, 13

28 U.S.C. § 352 ................................................................................... 11

28 U.S.C. § 353 ............................................................................ *passim*

28 U.S.C. § 354 .......................................................................... 6, 11, 12

28 U.S.C. § 355 ............................................................................... 11, 12

28 U.S.C. § 356 ............................................................................... 11, 12

28 U.S.C. § 357 .............................................................................. 6, 7, 11

28 U.S.C. § 372 ................................................................................... 16

28 U.S.C. § 631 ................................................................................... 10

**Rules**

Fed. R. Crim. P. 41 ............................................................................. 10

**Other Authorities**

S. Rep. No. 96-362, reprinted in 1980 U.S.C.A.A.N. at 4325 ........................... 11

U.S. Courts, Judicial Conduct & Disability Rules (JC&D Rules),
  available here .................................................................................. 6, 7

## INTRODUCTION

The only matters remaining before this Court are several facial constitutional chal-
lenges to certain provisions of the Judicial Conduct and Disability Act of 1980. In response
to Defendants' motion for judgment on the pleadings, which argues that Plaintiff's facial
Fourth and Fifth Amendment claims fail as a matter of law, *see* Defs.' Mot. 1, ECF No. 45,
Plaintiff asks the Court to examine only those applications of the statute relevant to her par-
ticular case. *See generally* Pl.'s Opp'n 1–4, 19–23, ECF No. 47. But to prevail on her remaining
facial challenges to the Act, Plaintiff must show that "'no set of circumstances exists under
which'" the Act may be constitutionally applied—a "demanding standard" that Plaintiff can-
not satisfy. *Newman v. Moore*, 2024 WL 551836, at *12 (D.D.C. Feb. 12, 2024) (quoting *United
States v. Salerno*, 481 U.S. 739, 745 (1987)). Plaintiff's Fourth Amendment challenges to the
Act's investigation provision, 28 U.S.C. § 353(c), fail because she has not demonstrated (and
cannot demonstrate) that all applications of the Act are unconstitutional. A special commit-
tee may take any number of investigative steps that rely on § 353(c)'s authority that do not
implicate, let alone violate, the Fourth Amendment. Nor could Plaintiff prevail even if the
Court examines only the narrower subset of medical-related investigative orders Plaintiff asks
the Court to focus on. The statutory scheme ensures that orders issued in the ordinary course
of investigations will be reasonable, the touchstone of the Fourth Amendment inquiry. Plain-
tiff's Fifth Amendment challenges to the Act's disability and investigation provisions, *id.*
§§ 351(a), 353(c), are equally without merit. Plaintiff largely fails to respond to Defendants'
arguments establishing that both provisions satisfy the requirements of the Due Process
Clause. Defendants disagree with many of Plaintiff's assertions related to the underlying facts
of this case, but those assertions are irrelevant to the only claims still before the Court, which
fail as a matter of law. Defendants are entitled to judgment on all remaining claims.

**ARGUMENT**

I.   **Plaintiff's facial challenges under the Fourth Amendment (Counts VIII and IX) fail as a matter of law.**

A.   **Plaintiff cannot show that 28 U.S.C. § 353(c) is unconstitutional in all of its applications.**

As Defendants explained, there are multiple applications of 28 U.S.C. § 353(c)'s investigation provision that are undisputedly constitutional, and Plaintiff's facial challenges therefore necessarily fail. That provision on its face authorizes a special committee to "conduct an investigation as extensive as it considers necessary"—language that is in no sense limited to the type of orders regarding "medical examinations and private medical records" to which Plaintiff asks this Court to limit its facial-invalidity inquiry. Plaintiff suggests that the Supreme Court in *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), rejected the *Salerno* no-set-of-circumstances test in the context of Fourth Amendment facial challenges. *See* Pl.'s Opp'n 5–6. That is incorrect. *Patel* instead reiterated that in order to prevail on a facial Fourth Amendment challenge, a plaintiff "must establish that a 'law is unconstitutional in *all of its applications*.'" 576 U.S. at 418 (quoting *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449 (2008)) (emphasis added); *see* Defs.' Mot. 6. Accordingly, a facial challenge based on the Fourth Amendment is subject to *Salerno*'s "no set of circumstances" test just like any other facial challenge to the constitutionality of a statute. *See, e.g.*, *Brennan v. Dickson*, 45 F.4th 48, 61 (D.C. Cir. 2022) (describing a facial challenge as "an unusual but not unheard-of type of Fourth Amendment claim" and applying *Salerno*'s "no set of circumstances" test).

*Patel* explained that a plaintiff must establish the unconstitutionality of all actions that the challenged "law actually authorizes, not those for which it is irrelevant." 576 U.S. at 418. That meant putting aside situations in which a search might be authorized by consent or by other law permitting a search in exigent circumstances in asking whether all the applications of the challenged statute were unconstitutional. *See id.* at 418–19. But Defendants here have not relied on circumstances in which the challenged investigation provision "do[es] no work" or has no "actual application." *Id.* Defendants instead pointed to concrete exercises of a

2

special committee's authority to "conduct an investigation as extensive as it considers neces-sary," 28 U.S.C. § 353(c).  *See* Defs.' Mot. 7 (pointing to special-committee interviews and questionnaires).  These examples are unquestionable instances of a special committee exer-cising its authority under the investigation provision.  Indeed, in the absence of § 353's au-thority, a special committee cannot even exist.  Plaintiff does not identify some alternative authority supporting either the existence or activities of a special committee, let alone point to another statute permitting the members of the committee to assert a right to, for example, question another judge's law clerk.  The present case is therefore unlike *Patel*, where the city, to show the existence of constitutional applications of the challenged statute, invoked inves-tigative steps it could have taken even in the absence that statute.  *See* 576 U.S. at 418–19.  To prevail in her facial challenge, Plaintiff must prove that all investigative steps a special com-mittee could take—certainly all coercive investigative steps—are unconstitutional.

Plaintiff's attempt to rebut Defendants' examples of constitutional applications of the Act confirms that her challenges must fail.  *See* Pl.'s Opp'n 7 n.5.  First, Plaintiff does not contest that these exercises of investigative authority would not violate the Fourth Amend-ment.  Indeed, she concedes that some of the investigative steps the government cited "simply do not implicate the Fourth Amendment at all," *id.*—a concession that defeats her claim of facial invalidity.  Second, Plaintiff's assertion that a chief judge "can always interview the Court's employees," *id.*—as if there is *another* source of authority for such an investigative step even without the Act—is misplaced.  Even assuming that Plaintiff's assertion about a chief judge's authority is accurate, that says nothing about the authority of a special commit-tee.  Special committees are created entirely by the Act. The only source of authority for a special committee to take any investigative step, including requiring an employee to appear for questioning or to answer written interrogatories, is the investigative authority provided under § 353(c).  Plaintiff has not argued that such investigative actions, undertaken by the special committee pursuit to its § 353(c) authority, would violate the Fourth Amendment, and she therefore cannot prevail on her facial challenge.

Because Plaintiff cannot show that the investigation provision is unconstitutional in all of its applications, her facial challenges in Counts VIII and IX fail.  *See Patel*, 576 U.S. at 418; *Salerno*, 481 U.S. at 745.

**B.    Even as limited to certain applications of § 353(c), Plaintiff's challenges in Counts VIII and IX fail.**

Even if this Court reviews Counts VIII and IX by examining § 353(c) solely "to the extent" it authorizes certain *types* of investigative orders, Am. Compl., ¶¶ 118, 124, ECF No. 10—*i.e.*, orders regarding "a medical examination or the production of medical reports," Pl.'s Opp'n 7—Plaintiff still cannot prevail.

1.    Plaintiff's arguments rest on a fundamental misunderstanding of both Fourth Amendment precedent and the statutory scheme that Congress crafted for the judiciary to investigate allegations of misconduct or disability within its ranks.  The Supreme Court has explained that "the ultimate measure of the constitutionality of a governmental search is 'reasonableness,'" *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995)—not any sort of rigid checklist regarding warrants and exceptions.  *Cf.* Pl.'s Opp'n 7–9.  "[W]hat is reasonable depends on the context within which a search takes place."  *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985).  "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant" issued upon a showing of probable cause that a crime has been committed.  *Id.* at 653.  But outside the "crime control" context, the Court has explained how a variety of measures taken to advance other governmental purposes can satisfy the Fourth Amendment's reasonableness requirement without a warrant.  *Patel*, 576 U.S. at 420  (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 44 (2000)); *see, e.g.*, *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 679 (1989) (upholding aspects of drug-testing program "not designed to serve the ordinary needs of law enforcement" as reasonable "without reference to [the] usual presumption in favor of the procedures specified in the Warrant Clause").

Whether such governmental "special needs" beyond the law-enforcement realm justify a particular measure under the reasonableness inquiry "requires 'balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *O'Connor v. Ortega*, 480 U.S. 709, 719–20 (1987) (plurality op.) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). This balancing test is not subject to a "threshold requirement" that the government must first demonstrate that obtaining a warrant would be "impracticable." Pl.'s Opp'n 8. Rather, finding a warrant requirement impracticable in a particular context is a possible *result*—not a necessary *precondition*—of an assertion of special needs and the ensuing balancing inquiry. *See Von Raab*, 489 U.S. at 665–66 ("[I]t is necessary to balance the individual's privacy expectations against the Government's interests *to determine whether it is impractical* to require a warrant." (emphasis added)); *Patel*, 576 U.S. at 420 ("Search regimes where no warrant is ever required may be reasonable where 'special needs . . . *make the warrant and probable-cause requirement impracticable*'") (quoting *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) (emphasis added)).

Contrary to Plaintiff's suggestion (Pl.'s Opp'n 8), the Supreme Court in *Patel* did not set out a rule of "per se" unreasonableness any time a statute either authorizes a search without a warrant issued on probable cause or deviates from the particulars of a prior example of a reasonable special-needs search. In *Patel*, the Court examined a law that compelled hotel operators to allow the police access to records about guests without any suspicion, much less a warrant; the Court assumed that the measure "serve[d] a 'special need' other than conducting criminal investigations." 576 U.S. at 420. The Court held the law facially unconstitutional because the "administrative search[es]" that statute authorized failed to "afford[]" "the subject of the search . . . an opportunity to obtain precompliance review before a neutral decisionmaker" before any penalty attached for failing to comply. *Id.* at 420–21. It did not suggest that a warrant was required. *See id.* Rather, the Court explained that a constitutionally adequate opportunity for precompliance review "can be provided without imposing

onerous burdens on those charged with an administrative scheme's enforcement," such as through an "administrative subpoena" "issued by the individual seeking the record," subject to review "before any search takes place" by "[a] neutral decisionmaker, including an administrative law judge." *Id.* at 421–22; *see id.* at 422 (noting that "[p]rocedures along these lines are ubiquitous"). And the Court made clear the Fourth Amendment imposed no inflexible requirements as to the form of precompliance review, explaining that "administrative subpoenas are only one way in which an opportunity for [such] review can be made available." *Id.* at 423.

Here, the statute affords the subjects of § 353(c) investigative orders the same type of constitutionally permissible, non-warrant-based procedures that the Supreme Court expressly endorsed in *Patel*. Contrary to Plaintiff's suggestion that the special committee itself can compel or require compliance with its § 353(c) investigative orders (Pl.'s Opp'n 3, 4, 7, 13), only a judicial council may impose any form of consequence on a judge who declines to comply with a special committee's order. *See* 28 U.S.C. § 353(c) (permitting the Special Committee only to file a report with "the committee's recommendations for necessary and appropriate action by the judicial council"); *id.* § 354(a) (authorizing Judicial Council to "take such action as is appropriate to assure the effective and expeditious administration of the business of the courts within the circuit"). A judge subject to a special committee's investigative order under § 353(c) thus has ample "opportunity to obtain precompliance review" of that order by challenging it before the "neutral decisionmaker[s]" of the judicial council prior to the imposition of any penalty for noncompliance. *Patel*, 576 U.S. at 421–22; *see* Rules for Judicial-Conduct and Judicial-Disability Proceedings, Rule 20(a) (requiring that a "subject judge" of a special-committee report be permitted to "send a written response to the members of the judicial council" and "given an opportunity to present argument"). And even if the subject judge considered judicial-council review insufficient, the statute and implementing rules make clear that any judicial-council orders imposing consequences could be vacated if the judge availed herself of the opportunity for Judicial Conference review by the judges drawn from across the

country.  *See* 28 U.S.C. § 331; *id.* § 357(a) (permitting a "judge aggrieved by an action of the judicial council under section 354" to petition the Judicial Conference); Rule 21(b)(1) (permitting a subject judge to petition the Judicial Conference's Committee on Judicial Conduct and Disability to review judicial council actions such as censures or suspensions); *see* Memorandum of Decision at 40, *In re: Complaint of Judicial Misconduct*, C.C.D. 17-01 (Comm. on Jud. Conduct & Disability Aug. 14, 2017) ("*Adams*") (vacating "the portion of the Judicial Council's Order" prohibiting the assignment of new cases to Judge Adams for two years and transferring Judge Adams's current cases to other judges); *Newman*, 2024 WL 551836, at *17 (explaining that "the judicial council, and ultimately the Judicial Conference, decide whether the [subject] judge had good cause to refuse" to comply with a special committee investigation).  While the opportunity for neutral review of a special-committee order may not take the form Plaintiff prefers, Plaintiff is incorrect that a subject judge is "denied *both ex ante* and *ex post* judicial review of any search" under the statute.  Pl.'s Opp'n 15; *see* 28 U.S.C. § 357(c) (barring "judicial review" "[e]xcept as expressly provided in this section and section 352(c)").

These opportunities for precompliance review of a special committee's § 353(c)'s orders by neutral adjudicators render the statute consistent with the Fourth Amendment's requirements especially for § 353(c) orders that (as was true of the orders Plaintiff focuses on) are issued *with* individualized suspicion that the subject of the search had triggered the governmental need at issue.  *See Patel*, 576 U.S. at 412–13 (discussing the challenged law's terms permitting police access "on demand").  Under the statutory scheme as Congress established it and the Judicial Conference has implemented it, a special committee's order will be supported by "reasonable suspicion" in the ordinary course under the Act—a point Plaintiff does not dispute.  *See* Defs.' Mot. 13–15; *see also Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 118–19 (D.C. Cir. 2010) (holding that a facial challenge fails when a statutory scheme allows for constitutionally adequate safeguards).  Nor does Plaintiff contest that where the chief judge identifies the complaint—such as this case—no § 353(c) investigation can even begin absent a finding of "probable cause" that the subject judge suffered from a disability within the

meaning of the Act.  Rule 5(a); Defs.' Mot. 14. Because Plaintiff nowhere rebuts these points, the Court should "treat those arguments as conceded." *Harris v. Mayorkas*, 2022 WL 3452316, at *13 (D.D.C. Aug. 18, 2022) (quoting *Holt v. Walsh Grp.*, 316 F. Supp. 3d 274, 278 (D.D.C. 2018)); *see* Defs.' Reply Supp. Mot. to Dismiss 11–12 (collecting cases deeming arguments conceded by a litigant's failure to respond).  The individualized suspicion accompanying the types of investigative orders under § 353(c) that Plaintiff challenges strongly reinforces the reasonableness of searches conducted per such orders.  *See* Defs.' Mot. 13–16.

2.  Plaintiff's challenge to § 353(c) also disregards the weighty interests Congress sought to vindicate through its thoughtfully crafted measures to address judicial misconduct or disability.  Plaintiff does not dispute that the government possesses a strong interest in "ensuring that [its] agencies operate in an effective and efficient manner" by guarding against "inefficiency, incompetence, mismanagement, or other work-related misfeasance of its employees," and therefore has special needs to investigate personnel "misconduct" or potential "incompetence."  *O'Connor*, 480 U.S. at 724 (plurality op.); *see* Defs.' Mot. 9–10.  Nor does Plaintiff dispute that federal judges hold the types of positions of significant trust and responsibility that the Supreme Court has previously recognized can justify intrusions on privacy interests.  Indeed, Plaintiff emphasizes the importance of Article III judges within the federal system.  Pl.'s Opp'n 1–2, 14–15.  There thus appears to be no disagreement regarding the significance of the core interest Defendants advanced: ensuring that judges entrusted with the power to render decisions profoundly affecting the public in both immediate and lasting ways—*e.g.*, issuing bail decisions, depriving individuals of liberty or property, making factual findings subject only to deferential review—do not suffer from disabilities that render them "unable to discharge all the duties of office" (or that they have not "engaged in conduct

prejudicial to the effective and expeditious administration of the business of the courts"). 28 U.S.C. § 351(a); *see* Defs.' Mot. 10.[1]

On the other side of the ledger, while judges certainly have privacy interests in their medical information, those interests are qualified by the acceptance of a life-tenured judicial position. *See* Defs.' Mot. 11. Federal judges' lives and careers are routinely scrutinized during the confirmation process, and the same goes for their financial arrangements throughout their judicial tenure. *See id.* Judges have long taken the bench subject to the knowledge that investigations into misconduct or potential disability are fully authorized by the Act, and thus an established component of life tenure on the federal bench. *See id.* (citing *Yin v. California*, 95 F.3d 864, 871–72 (9th Cir. 1996) (finding that existence of statute authorizing compelled medical examination reduced government employee's privacy interest in avoiding examination)). Plaintiff does not dispute that certain types of medical examination that may be required under the statute work only a limited intrusion on privacy. *See id.* Rather, Plaintiff makes only a cursory—and case-specific—reference to the "invasive searches" she alleges she faces, Pl.'s Opp'n 2, and a suggestion that the Court "would have to give weight" to a judge's privacy interests, *id.* at 17. Defendants agree such interests are entitled to weight, but they do not categorically trump the legitimate and significant objectives advanced by the statute, as they would have to do for Plaintiff to prevail in her facial challenge.

Plaintiff contends that it is irrelevant that the Supreme Court has recognized that warrantless searches are constitutionally permissible in a variety of circumstances involving

---

[1] Plaintiff's suggestion that Defendants must identify a "risk to public safety" in order to render a search reasonable under the balancing inquiry is without merit. Pl.'s Opp'n 10 (quoting *Chandler v. Miller*, 520 U.S. 305, 323 (1997)). While such risks may justify warrantless searches, they are not the only "special need" that can be "important enough to override the individual's acknowledged privacy interest" in a given context. *Chandler*, 520 U.S. at 318; *see* Defs.' Mot. 9; *see, e.g.*, *Patel*, 576 U.S. at 420–24 (explaining constitutionally adequate, non-warrant safeguards premised on the "special need" to "ensure [hotels'] compliance with [a] recordkeeping requirement, which in turn deters criminals from operating on the hotels' premise"). And in any event, as noted, the actions of federal judges, particularly in criminal cases, do have both immediate and longer-term effects on public safety.

positions of public trust, observing that Article III judges have a "special constitutional status" and are not "employees" with a "supervisor" in the ordinary sense of the term.  Pl.'s Opp'n 9, 13–15.  As an initial matter, § 353(c) is not confined to investigations of Article III judges; it applies equally to magistrate judges and bankruptcy judges who do not enjoy life tenure or the constitutional status on which Plaintiff rests her argument.  *See* 28 U.S.C. § 351(d)(1); *see also id.* § 152(e) (providing for removal of bankruptcy judges); *id.* § 631(i) (providing for removal of magistrate judges).  These judicial officers enjoy similar tenure protections to civil servants who may be subjected to medical tests without a warrant.  *See Von Raab*, 489 U.S. at 665–78.  If the statute may be applied constitutionally to persons other than the plaintiff, a facial challenge fails.  *See Nebraska v. EPA*, 331 F.3d 995, 998 (D.C. Cir. 2003).

More fundamentally, the fact that the Constitution endows the Judicial Branch with significant independence from the political branches does not diminish the public interest in ensuring that Article III judges are capable of "discharg[ing] all the duties of office" and fulfilling their constitutional role.  28 U.S.C. § 351(a).  Indeed, if anything, the absence of the usual mechanisms for terminating an employee who cannot fulfill their duties underscores the importance of having investigatory means like those in the Act—which were deliberately designed to respect the special independence of the Judicial Branch—to uncover and address disability or misconduct among Article III judges.  Similarly, Plaintiff's observation that such judges play a more critical role than ordinary civil servants makes investigating judges' capabilities more critical, not less.  *See* Pl.'s Opp'n 12; *Adams*, Mem. of Decision at 31 ("[A] federal judge's sound mental health is essential to his or her fulfillment of all judicial duties."); *cf. Guffey v. Duff*, 330 F. Supp. 3d 66, 80 (D.D.C. 2018) (Cooper, J.) (citing the "paramount importance of public trust in the courts"), *rev'd in part on other grounds and remanded sub nom. Guffey v. Mauskopf*, 45 F.4th 442 (D.C. Cir. 2022).

Plaintiff also errs in her view (Pl.'s Opp'n 9–10) that requiring special committees to seek a warrant before issuing orders for medical records would not be "impracticable" or "unworkable."  The purpose of an investigation under § 353(c) is not to seek evidence of a crime,

so it is not clear how, or even whether, a special committee could obtain a warrant—separate from the order it would have already issued—for the types of searches at issue here. *Cf.* Fed. R. Crim. P. 41(d)(1) (criminal search warrants issue based on probable cause that a search will reveal contraband or evidence of a crime). More important, Congress's central objective in the Act was allowing "the judiciary the power to 'keep its own house in order'" through an internal, self-contained system that provided for investigations and review of decisions without external interference. Expedition is an important feature of that system. *See* 28 U.S.C. § 352(a) (directing "expeditious[] review" of disability or misconduct complaints); *id.* § 353(c) (requiring a special committee to investigate and "expeditiously file a comprehensive written report"). Another important feature is the set of provisions that "limit[] the potential for disruption" for example by barring as-applied challenges to investigatory orders. *McBryde v. Committee to Review Circuit Council Conduct and Disability Orders of Judicial Conf. of U.S.*, 264 F.3d 52, 61–62 (D.C. Cir. 2001) (quoting S. Rep. No. 96-362, at 11, reprinted in 1980 U.S.C.C.A.N. at 4325); 28 U.S.C. § 357(c) (barring judicial review of "all orders and determinations" "[e]xcept as expressly provided in this section").

Those features would be undermined if special committees, judicial councils, or the Judicial Conference—each of which has investigatory powers under the Act, *see* 28 U.S.C. §§ 353(c), 354(a)(1)(A), 355(a)—were required to resort to outside judicial officers to conduct even basic investigatory steps. Requiring resort to judicial officers outside the congressionally defined judicial conduct and disability mechanism would functionally constitute the type of outside as-applied challenge that Congress has plainly and constitutionally deemed inconsistent with the Act's streamlined judicial "housekeeping" mechanisms. *See McBryde*, 264 F.3d at 63 (upholding the Act's "reserv[ation] to the Judicial Conference committee exclusive authority over as applied constitutional challenges," as fulfilling "the presumption in favor of access to Article III review of constitutional claims . . . at the same time as it prevents undue prolongation of the disciplinary process").

11

Finally, the Act's vesting of a subpoena power in special committees and judicial councils provides no support for the proposed warrant requirement. *See* Pl.'s Opp'n 10 (citing 28 U.S.C. §§ 332(d), 356(a)). Indeed, that power supports Defendants' point: a special committee or judicial council may issue a subpoena on its own without the "blessing" of an outside court. Pl.'s Opp'n 10; *see* 28 U.S.C. §§ 332(d), 356(a). A judicial council must go to court only for contempt proceedings *after* it issues a subpoena and the recipient fails to comply. *Id.* § 332(d)(2). Such contempt proceedings are a key enforcement mechanism over *third parties* who fail to heed a special committee's or judicial council's investigative efforts, and who otherwise might evade any consequence for noncompliance. But such proceedings in no way suggest there is a statutory or constitutional mandate that would force Article III judges to seek a warrant from another judicial officer in the first instance or to forgo the Act's means of penalizing a subject judge for noncompliance. *See* 28 U.S.C. §§ 354(a), 355(a). And in any event, Plaintiff's argument on this score appears to concede (Pl.'s Opp'n 10 & n.6) that a special committee could constitutionally exercise its investigative authority under § 353(c) by using its subpoena power under § 356(a)—another indication that there are undisputedly constitutional applications of § 353(c) that defeat this facial challenge.

## II.    Plaintiff's facial vagueness challenges (Counts V & VII) fail as a matter of law.

Plaintiff's facial vagueness challenges to the disability and investigation provisions of the Act also fail. As under the Fourth Amendment, Plaintiff "must show that the law in question is impermissibly vague in all of its applications to succeed on a facial challenge." *Crooks v. Mabus*, 845 F.3d 412, 417 (D.C. Cir. 2017) (citation omitted). Plaintiff disputes that standard, primarily relying on *Johnson v. United States*, 576 U.S. 591 (2015). Pl.'s Opp'n 3–4. But Defendants already explained why *Johnson* is inapposite and cited post-*Johnson* cases applying the proper standard. Defs.' Mot. 22 n.9. And Plaintiff does not engage with Defendants' discussion or otherwise address the post-*Johnson* cases that use the vague-in-all-applications standard. In any event, Defendants' motion should succeed regardless of which

facial-challenge standard applies.  Each provision provides a clear standard that fully satisfies due process requirements.

### A.   The Act's disability provision (Count V) is not unconstitutionally vague.

The disability provision allows for a judicial council to take action where a "judge is unable to discharge all the duties of office by reason of mental or physical disability."  28 U.S.C. § 351(a).  As Defendants explained, that provision is far from vague.  While even the term "disability" would be clear in isolation, by tying the disability standard to the concrete assessment of whether a judge has been rendered "unable" to perform "all the duties of office," the statute necessarily provides a clear standard.  *See* Defs.' Mot. 17–18.  Congress paraphrased "existing statutory language found in section 372(b) of title 28," a decades-old provision, and Congress (and the Constitution itself) has used the term "disability" since the Founding.  *See id.* at 19–20.  As the Supreme Court has explained, when Congress does not write on a "clean slate," but instead uses terminology with historical usage in the law, that usage helps give meaning to the term.  *Arnett v. Kennedy*, 416 U.S. 134, 160 (1974).  And precedent confirms that the disability provision is not vague: if the statutes in *Arnett* (allowing removal or suspension of civil servants "for such cause as will promote the efficiency of the service") or *Crooks* (allowing the Navy to revoke an instructor's certification if continued certification "is not in the best interests of the program") are not vague, then neither is the disability provision.  Defs.' Mot. 20–21.  Indeed, courts have repeatedly rejected vagueness challenges to the misconduct provision in the very same section of the Act, which invokes a standard that is arguably less precise than the relatively concrete assessment of whether a judge is "unable" to perform the duties of office.  *Id.* at 21 (collecting cases).

Plaintiff offers no meaningful response to these arguments.  Instead, she recounts her (contested) characterization of her own Act-related proceedings and other examples to argue

that the disability provision may not dictate a clear result in some fact-specific circumstances.[2] *See* Pl.'s Opp'n 19–22.  But Plaintiff never grapples with the vagueness standard or explains how the *statute* fails to meet that standard.  As Defendants explained, a vagueness challenge cannot succeed where the statutory standard is "imprecise but comprehensible," that is, where a conclusion whether the standard has been met "may vary depending upon whom you ask." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citations omitted).  Put differently, a statutory term is "not rendered unconstitutionally vague because it does not mean the same thing to all people, all the time, everywhere." *Id.* (citations and alterations omitted).  And a law is certainly not unconstitutionally vague because it "call[s] for the application of a qualitative standard to real-world conduct." *Id.* at 1108.  After all, the vagueness doctrine is not "designed to convert into a constitutional dilemma the practical difficulties in drawing . . . statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning." *Arnett*, 416 U.S. at 159–60.

Applying the usual rules for textual interpretation, the disability provision passes muster under vagueness doctrine for all the reasons Defendants previously explained and Plaintiff has failed to address.  *Compare* Defs.' Mot. 16–23, *with* Pl.'s Opp'n 19–27.  Plaintiff does not engage with Defendants' argument that the disability provision was not written on a clean slate but used well-understood language from other contexts.  Defs.' Mot. 19–20.  She does not rebut Defendants' arguments that less-clear statutes—including the neighboring misconduct standard—have survived vagueness challenges.  *Id.* at 20–21.  And she does not explain how her facial claim can succeed when there are plainly situations in which the disability provision would apply beyond any dispute (for example, a judge in a long-term coma).  *Id.* at 22.  Plaintiff's reference to her own underlying Act proceedings (and other examples) proves

---

[2] Again, in a facial challenge, the circumstances of Plaintiff's own case have no bearing on the inquiry.  *See, e.g.*, *United States v. Kaczynski*, 551 F.3d 1120, 1124 (9th Cir. 2009) (defendant's claim was not a "purely facial legal challenge" when he essentially sought "an advisory opinion that [the statute at issue] would be invalid *if applied to him* in particular ways in the future").

only that the disability provision relies on a fact-specific assessment that sometimes requires investigation.  *See* Pl.'s Opp'n 19–22.  But precedent establishes that statutes that rely on such fact-specific inquiries are not for that reason vague; such statutes routinely survive scrutiny under the vagueness doctrine.  *Bronstein*, 849 F.3d at 1108; Defs.' Mot. 17–18.

In trying to distinguish her situation for vagueness purposes, Plaintiff stresses that she enjoys constitutional protections from removal.  *Contra* Pl.'s Opp'n 24–25 & n.14.  But her status in this respect does not make the "disability" standard itself insufficiently comprehensible.  The disability standard, which has been used since the Founders' era and in many contexts, and whose application is tied to the ability to perform the duties of the particular position at issue, meets constitutional requirements, even for those with life tenure protection. Moreover, the challenged disability provision applies to bankruptcy judges and magistrate judges, who do not enjoy constitutionally protected life tenure.  *See supra*, p.10.  To the extent that Plaintiff concedes that the standard suffices for those without life tenure protection, her concession is enough to defeat her facial challenge.

In the end, Plaintiff has no viable argument that the disability provision is unconstitutionally vague on its face.[3]  If she were correct that a statute is facially invalid every time it sets out a general standard to be applied in fact-specific circumstances, then large swaths of the U.S. Code (and the Constitution itself) could not be reconciled with the Fifth Amendment. *See* Defs.' Mot. 19 (noting that "the Twenty-Fifth Amendment uses language almost identical to the Act's disability provision to allow the President to be removed from office").  And cases

---

[3] The Court may also look to the JC&D Rules in determining whether the disability provision is unconstitutionally vague.  Defs.' Mot. 18 & n.5.  While Plaintiff resists (Pl.'s Opp'n 23) this conclusion, she cites two cases that have no application here: one involving abrogation of state sovereign immunity, *Texas Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350 (5th Cir. 2021), and one involving the Spending Clause, *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656 (1985).  Neither case says that courts cannot review implementing regulations in determining whether a statute is unconstitutionally vague under the Fifth Amendment, and Plaintiff does not address Defendants' cited cases saying the opposite.  Regardless, the disability provision passes constitutional muster with or without considering the JC&D Rules.

15

like *Arnett* and *Crooks* would have come out the other way.  Plaintiff cannot meet her burden in her facial challenge to the disability provision.

**B.    The Act's investigation provision (Count VII) is not unconstitutionally vague.**

Plaintiff also continues to press her argument that the investigation provision—which allows a special committee to "conduct an investigation as extensive as it considers necessary"—is unconstitutionally vague.  Pl.'s Opp'n 27–30; 28 U.S.C. § 353(c).  But she offers no reason to doubt the sufficiency of this familiar standard for investigation, as Defendants have explained.  Defs.' Mot. 24–27.  Nor does she confront the fact that investigation for disability is especially far afield from the regulation of private conduct that is the focus of the vagueness doctrine.  Defs.' Mot. 27–29.  Yet Plaintiff seems to recognize that focus in much case law when she distinguishes 28 U.S.C. § 372(b)—which uses disability of a subject judge as a standard for recommending presidential appointment of an extra judge (but not effecting an imposition on the subject judge)—on the ground that it "d[oes] not demand any standard of behavior from the subject judge," Pl.'s Opp'n 25–26 (emphasis omitted).

Plaintiff's theory that the discretion in selecting investigative steps renders § 353(c) unconstitutionally vague is foreclosed by settled law.  As Defendants explained, the Supreme Court rejected a vagueness challenge to a law that allowed prosecutors discretion to prosecute "the same offense" under either of two statutes, "one carrying a five-year prison term and one carrying a two-year prison term."  *Kincaid v. District of Columbia*, 854 F.3d 721, 729 (2017) (discussing *United States v. Batchelder*, 442 U.S. 114 (1979)).  And the D.C. Circuit recently rejected a vagueness challenge to a D.C. statute that effectively gave police complete discretion to decide whether to offer a person arrested on certain misdemeanor charges an opportunity to pay a small fine and have the charge resolved without any criminal record.  *See id.* at 728–30.  If the broad discretion over criminal charges and sentences at issue in those cases did not raise a constitutional problem, it follows that a provision merely granting *investigative* discretion cannot offend the Due Process Clause.  Defs.' Mot. 26–27.  Plaintiff does not

respond to this argument, nor does she address either *Batchelder* or *Kincaid*.  Plaintiff's vagueness challenge to the investigation provision is meritless.

## CONCLUSION

For the reasons explained above and in Defendants' prior brief, the Court should grant judgment for Defendants on all remaining claims and terminate the case.

DATED:  April 18, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Director, Federal Programs Branch

/s/ *M. Andrew Zee*
M. ANDREW ZEE
STEPHEN EHRLICH
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Avenue, 7th Floor
San Francisco, CA 94102
Phone:  (415) 436-6646
Email:  m.andrew.zee@usdoj.gov

*Attorneys for Defendants*