UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HON. PAULINE NEWMAN**, <br><br> Plaintiff, <br><br> v. <br><br> **HON. KIMBERLY A. MOORE**, *et al.*, <br><br> Defendants. | Case No. 23-cv-01334 (CRC) |

## MEMORANDUM OPINION

In 2021, the Chief Judge of the U.S. Court of Appeals for the Federal Circuit, Kimberly A. Moore, received reports from court staff that raised concerns about whether veteran Federal Circuit Judge Pauline Newman remained fit to carry out her judicial duties. The reports prompted Chief Judge Moore to exercise her authority under the Judicial Conduct & Disability ("JC&D") Act to convene a special committee of the court's judges to conduct an investigation. See 28 U.S.C. §§ 353(a), (c). Judge Newman declined to cooperate with the investigation, however, objecting especially to the committee's requests that she undergo independent neurological testing and provide it relevant medical records. In the face of Judge Newman's recalcitrance, the Federal Circuit Judicial Council, on the recommendation of the special committee, suspended her from receiving new case assignments until she acquiesced to the special committee's demands.

Fighting fire with fire, Judge Newman brought this lawsuit against Chief Judge Moore, the two other members of the special committee, and the Federal Circuit Judicial Council, which is comprised of every member of the court (collectively, "Defendants"). Her eleven-count complaint raised both facial and as-applied challenges to provisions of the JC&D Act, as well as

to 28 U.S.C. § 332, which governs the authority of circuit judicial councils. Following an unsuccessful Court-ordered mediation, the Court denied Judge Newman's request for a preliminary injunction and granted Defendants' motion to dismiss most counts of the complaint. The Court determined that it lacked jurisdiction over Judge Newman's as-applied claims and that two of her facial challenges failed to state a claim. Defendants now move for judgment on the pleadings as to the remaining facial challenges, which allege that certain provisions of the JC&D Act violate the Fourth Amendment and are unconstitutionally vague. Because Judge Newman cannot prevail on these counts either, the Court will grant judgment for Defendants and dismiss the case.

## I. Background

The Court has already detailed the background of this case, including the relevant statutory frameworks. See Newman v. Moore, No. 23-cv-01334 (CRC), 2024 WL 551836, at *2–5 (D.D.C. Feb. 12, 2024). It need not replow the same ground here. After dismissing most of the counts in Judge Newman's complaint, the Court directed Defendants to answer the remaining counts: Counts Eight and Nine, which present facial challenges to the JC&D Act under the Fourth Amendment, and Counts Five and Seven, which allege that provisions of the Act are unconstitutionally vague. Defendants did so and simultaneously moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. Judge Newman opposed, and the motion is fully briefed and ripe for review.

## II. Legal Standards

### A. Motion for Judgment on the Pleadings

Parties may move for judgment on the pleadings after the pleadings are closed but early enough so as not to delay trial. Fed. R. Civ. P. 12(c). Movants are entitled to judgment on the

2

pleadings under Rule 12(c) if they "demonstrate[] that no material fact is in dispute and that [they are] entitled to judgment as a matter of law." Schuler v. PricewaterhouseCoopers, LLP, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (quoting Peters v. Nat'l R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992)).  Though there are some differences between a Rule 12(b) and Rule 12(c) motion, "[t]he appropriate standard for reviewing a motion for judgment on the pleadings is virtually identical to that applied to a motion to dismiss under Rule 12(b)(6)." Maniaci v. Georgetown Univ., 510 F. Supp. 2d 50, 58 (D.D.C. 2007); see also Tapp v. Washington Metro. Area Transit Auth., 306 F. Supp. 3d 383, 391–92 (D.D.C. 2016) (noting that the "focus of a motion to dismiss lies with the plaintiff's inability to proceed on his claim," while "a motion for judgment on the pleadings centers upon the substantive merits of the parties' dispute").  "When evaluating a motion for judgment on the pleadings, the [C]ourt may rely on the pleadings, the exhibits to the pleadings, and any judicially noticeable facts . . . ." Jimenez v. McAleenan, 395 F. Supp. 3d 22, 30 (D.D.C. 2019) (cleaned up) (alteration in original).  And while the Court must construe the factual allegations in the light most favorable to the non-moving party, it is not bound by that party's legal conclusions.  See Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014).

**III.  Analysis**

      Defendants have moved for judgment as to Counts Five, Seven (in part), Eight, and Nine.  Again, Counts Eight and Nine allege that the JC&D Act facially violates the Fourth Amendment of the Constitution, and the other two counts allege that provisions of the Act are unconstitutionally vague.  The Court will start with the Fourth Amendment claims before tackling the vagueness challenges.

A.  Counts Eight and Nine: Unconstitutional Searches

As detailed in the Court's prior opinion, following receipt of a judicial misconduct or disability complaint, the chief judge of a circuit may convene a special committee to investigate the complaint.  See Newman, 2024 WL 551836, at *2; see also 28 U.S.C. §§ 353(a), (c).  Here, Chief Judge Moore appointed a special committee to investigate such a complaint against Judge Newman.  Id. at *4.  Under the JC&D Act's "investigation" provision, the special committee was authorized to "conduct an investigation as extensive as it consider[ed] necessary."  28 U.S.C. § 353(c).  Counts Eight and Nine attempt to mount facial attacks to this provision.  Specifically, they allege that § 353(c) "violates the Fourth Amendment to the extent it authorizes a compelled medical or psychiatric examination of an Article III judge" (Count Eight) or "a compelled surrender of medical records belonging to an Article III judge" (Count Nine) "without a warrant based on probable cause."  FAC ¶¶ 118, 124.

To prevail on a facial attack, Judge Newman must show that § 353(c) "is unconstitutional in all of its applications."  Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008).  Although such a challenge is "the most difficult . . . to mount successfully," in "assessing whether a statute meets this standard," a court must consider "only applications of the statute in which it actually authorizes or prohibits conduct."  City of Los Angeles, Calif. v. Patel, 576 U.S. 409, 415, 418 (2015) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

The relevant question therefore is:  Does section 353(c) authorize special committees to engage in conduct that does not run afoul of the Fourth Amendment?  It does.  In "conduct[ing] an investigation as extensive as it considers necessary," a special committee is authorized to undertake action that falls outside the Fourth Amendment.  28 U.S.C. § 353(c).  For example, under the aegis of § 353(c), a special committee could interview court employees, request and

4

receive third-party witness statements, or collect relevant communications from the court's email server, none of which necessarily constitutes a search or seizure. See Florida v. Bostick, 501 U.S. 429, 434 (1991) ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions . . . . [s]o long as a reasonable person would feel free to disregard the police and go about his business." (cleaned up)); United States v. Miller, 425 U.S. 435, 443 (1976) ("[T]he Fourth Amendment does not prohibit the obtaining of information . . . conveyed by [a third party] to Government authorities . . . ."); United States v. Simons, 206 F.3d 392, 395–96, 398 (4th Cir. 2000) (government employee lacked a reasonable expectation of privacy in the "record or fruits of his [i]nternet use" in light of agency's policy that it would monitor employees' internet use and that internet was for official government business only).

Judge Newman concedes that some of § 353(c)'s "investigative tools" "do not implicate the Fourth Amendment." Pl.'s Opp'n at 7 n.5. She nonetheless maintains that the use of these tools does not defeat her facial claim for two other reasons. First, she argues that § 353(c) does "no work" and "is therefore irrelevant" in the context of interviewing a court employee because "the Chief Judge can always interview the Court's employees even in the absence of any complaint against any other judge." Id. But a *special committee* has no power to interview an employee in the absence of § 353(c)'s grant of authority. Indeed, a special committee exists only once a complaint is initiated against a judge, see 28 U.S.C. § 353(a)(1) (permitting the chief judge to appoint a special committee), and its authority to investigate is wholly derived from § 353(c). Thus, a special committee's power to interview a court employee is an "application[] of the statute in which [the statute] actually authorizes . . . conduct." Patel, 576 U.S. at 418 (cleaned up).

5

Second, Judge Newman contends that Patel's standard for facial challenges limits the inquiry only to "investigative conduct" that "implicate[s] the Fourth Amendment"—as opposed to all conduct authorized by the statute. Pl.'s Opp'n at 7 n.5. But that approach reads Patel too broadly. In Patel, a group of hotel proprietors challenged a provision of the Los Angeles Municipal Code that compelled "[e]very operator of a hotel to keep a record" of certain information about guests and to make this record "available to any officer of the Los Angeles Police Department for inspection" on demand. 576 U.S. at 412 (alteration in original) (quoting Los Angeles Municipal Code §§ 41.49(2), (3)(a), (4) (2015)). In upholding the plaintiffs' facial challenge, the Supreme Court did not question that the only conduct authorized by this provision constituted a search within the meaning of the Fourth Amendment.[1] The Supreme Court thus characterized the statute as one "authorizing warrantless searches," and explained that, "when addressing a facial challenge to [such] a statute," "the proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant"—for example, when "exigency or a warrant justifies an officer's search." Id. at 418. But because § 353(c) authorizes conduct that, as Judge Newman admits, does not implicate the Fourth Amendment, this case presents a different kind of statute. And nothing in Patel suggests that the Court must

---

[1] Before Patel reached the Supreme Court, the parties disputed—and the lower courts considered—"whether a police officer's non-consensual inspection of hotel guest records under [the provision] constitute[d] a Fourth Amendment 'search.'" Patel v. City of Los Angeles, 738 F.3d 1058, 1061 (9th Cir. 2013) (en banc), aff'd sub nom. City of Los Angeles, Calif. v. Patel, 576 U.S. 409 (2015). The Ninth Circuit sitting *en banc* found that such an inspection did implicate the Fourth Amendment. Id. And, only after having made that determination, the circuit concluded that the searches authorized by the provision were unreasonable and—as the final hurdle for a facial challenge—were unreasonable in "all" instances. Id. at 1064–65 ("Because [the] procedural deficiency affects the validity of all searches authorized by § 41.49(3)(a), there are no circumstances in which the record-inspection provision may be constitutionally applied."). But as this order of analysis suggests, the first step in the inquiry is to determine whether all the conduct authorized by the law is a search or seizure—not whether the searches or seizures authorized by the law are constitutional.

narrow its analysis of a facial challenge to conduct that falls within the Fourth Amendment's ambit when the statute also authorizes conduct beyond the amendment's reach.

The D.C. Circuit confirmed as much in Brennan v. Dickson, which challenged a Federal Aviation Administration ("FAA") rule regulating drones. 45 F.4th 48 (D.C. Cir. 2022). The FAA promulgated a "Remote Identification" rule that required "drones in flight to emit publicly readable radio signals reflecting certain identifying information." Id. at 53. The circuit rejected a facial Fourth Amendment challenge to the rule because it found the rule "generally" did not implicate privacy rights. Id. at 61 ("Brennan's facial Fourth Amendment challenge fails because drone pilots generally lack any reasonable expectation of privacy in the location of their drone systems during flight."). And though the court noted that future applications of the rule might "violate a pilot's constitutionally cognizable privacy interest," the plaintiff's facial challenge failed because he had "not shown that [] data collection offends the Fourth Amendment *in every application of the Rule* to the typically very public activity of drone piloting." Id. at 64 (emphasis added). The same is true for § 353(c). Though some investigative conduct might trigger Fourth Amendment concerns, and even constitute violations of an individual's privacy rights, Judge Newman has not shown that every application of the provision offends the Fourth Amendment. Her facial challenges in Counts Eight and Nine therefore fail.

B. Counts Five and Seven: Vagueness

Counts Five and Seven meet the same fate. In these counts, Judge Newman contends that two sections of the JC&D Act are unconstitutionally vague and violate the Due Process Clause of the Fifth Amendment. Count Five challenges § 351(a), which provides that someone may initiate a JC&D complaint against a judge who "is unable to discharge all the duties of office by reason of mental or physical disability." 28 U.S.C. § 351(a). Judge Newman alleges that this

7

provision "fails to provide adequate notice of what constitutes a mental disability that renders a judge 'unable to discharge all the duties of office.'" FAC ¶ 103 (citing 28 U.S.C. § 351(a)). And in Count Seven, she claims that § 353(c)—the investigation provision also challenged in Counts Eight and Nine—"lacks minimal enforcement guidelines." Id. ¶ 112 (citing 28 U.S.C. § 353(c)).[2] The Court will take up these two challenges in turn.

   1. *Count Five*

"A vague law denies due process by imposing standards of conduct so indeterminate that it is impossible to ascertain just what will result in sanctions." Hastings v. Jud. Conf. of U.S., 829 F.2d 91, 105 (D.C. Cir. 1987). Statutes are not impermissibly vague, however, merely because they "require[] a person to conform his conduct to an imprecise but comprehensible normative standard, whose satisfaction may vary depending upon whom you ask." United States v. Bronstein, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (cleaned up). "Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning 'specifie[s]' 'no standard of conduct . . . at all.'" Id. (quoting Coates v. Cincinnati, 402 U.S. 611, 614 (1971)); see also Fed. Express Corp. v. United States Dep't of Com., 39 F.4th 756, 773 (D.C. Cir. 2022) ("The Due Process Clause's fair notice requirement generally requires only that the government make the requirements of the law public and afford the citizenry a reasonable

---

[2] A reminder on how the Court reads Count Seven. As described in the Court's previous opinion, the count makes three allegations: (1) the JC&D Act is "unconstitutionally vague to the extent it purports to authorize compelled medical or psychiatric examinations . . . or demands for . . . Article III judges to surrender their private medical records," (2) § 353(c), "which authorizes a Special Committee to conduct an investigation 'as extensive as it considers necessary' lacks minimal enforcement guidelines," and (3) the act "vests virtually complete discretion in the hands of a Special Committee." FAC ¶ 112; see also Newman, 2024 WL 551836, at *16 n.13. The Court has already dismissed the third allegation. See id. at *17–18. And the first allegation collapses into the second as the provision purportedly authorizing the Special Committee to compel medical examinations and the production of records is § 353(c).

opportunity to familiarize itself with its terms and to comply." (cleaned up)). As the Supreme Court has cautioned, the vagueness doctrine "is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing [] statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." Colten v. Kentucky, 407 U.S. 104, 110 (1972).

Given the text, legislative history, and implementing rules of the JC&D Act, section 351(a) is not unconstitutionally vague. First, the text. Section 351(a) provides that someone may initiate a JC&D complaint against a judge who "is unable to discharge all the duties of office by reason of mental or physical disability." 28 U.S.C. § 351(a); see also id. § 354(2)(A) (providing that judicial councils may impose penalties based on valid complaints). The statute's standard of conduct is thus defined in reference to the "duties of [judicial] office." And judges, the only individuals against whom § 351(a) can be enforced, are well aware of their duties. Indeed, before taking office, all judges must swear an oath to "faithfully and impartially discharge and perform all the duties incumbent upon" them. 28 U.S.C. § 453. Because the provision is pegged to "knowable criteria," it is not impermissibly vague. United States v. Ragen, 314 U.S. 513, 523 (1942) (cleaned up); see also Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 247–48 (2010) (rejecting a vagueness challenge to a Bankruptcy Code provision because the individuals against whom the provision would be enforced— "[a]ttorneys and other professionals who give debtors bankruptcy advice"—"must know" of other provisions in the Code that impose similar standards).

The legislative history of the JC&D Act provides further color to § 351(a)'s standard. See United States v. Poindexter, 951 F.2d 369, 379 (D.C. Cir. 1991) (suggesting that clear legislative history can render a "facially vague" provision constitutional). As the D.C. Circuit

9

held in the context of an overbreadth challenge to a related provision of the JC&D Act, the "legislative history demonstrates that the Act was directed against serious judicial transgressions." Hastings, 829 F.2d at 106; see also id. at 106 n.59 ("It is worth pointing out that federal judges, the individuals to whom the Act is directed, are unusually well qualified to interpret statutes in light of their legislative history."). The Act "[wa]s not designed," by contrast, "to assist the disgruntled litigant who is unhappy with the result of a particular case." S. Rep. No. 96-362, 96th Cong., 1st Sess., 8 (1979), reprinted in 1980 U.S. Code Cong. & Ad. News 4315, 4323.[3]

Congress also supplied several reference points for interpreting § 351(a). See Arnett v. Kennedy, 416 U.S. 134, 160 (1974) (finding no vagueness issue when a statute "was not written upon a clean slate"). The Senate Report noted that § 351(a) was "a paraphrase of [the] existing statutory language" of 28 U.S.C. 372(b). S. Rep. No. 96-362, 9. Section 372(b), which was enacted in 1957, permits the president to appoint an additional judge when a sitting judge, who is eligible to retire but does not do so, becomes "unable to discharge efficiently" her duties "by reason of permanent mental or physical disability." 28 U.S.C. § 372(b); see also P.L. 85-261, September 2, 1957, 71 Stat. 586. The Senate Report further counseled that the JC&D Act's standards should be informed by the Code of Judicial Conduct and the Canons of Judicial Ethics of the American Bar Association, resolutions of the Judicial Conference related to judicial

---

[3] Under the version of the statute then before the Senate Judiciary Committee, what is now § 351(a) was located at § 372(c)(1)(a) and had a slightly different formulation. Then-section 372(c)(1)(a) permitted any person to file a written complaint alleging that a "judge is or has been unable to discharge efficiently all the duties of his or her office by reason of mental or physical disability." S. Rep. No. 96-362, 8.

conduct, and acts of Congress about judicial conduct.  S. Rep. No. 96-362, 9; see also Hastings, 829 F.2d at 106 (citing same).[4]

Finally, the Rules for Judicial-Conduct and Judicial-Disability Proceedings ("JC&D Rules"), promulgated by the Judicial Conference of the United States, clarify the meaning of disability in § 351(a).  See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc., 455 U.S. 489, 504 (1982) (noting that the adoption of "administrative regulations" can "sufficiently narrow potentially vague or arbitrary interpretations" of a local ordinance).[5]  The rules list as "[e]xamples of disability" "substance abuse, the inability to stay awake during court proceedings, or impairment of cognitive abilities that renders the judge unable to function effectively."  JC&D R. 4(c).  Given these definitions, § 351(a) "provides a discernable standard."  Bronstein, 849 F.3d at 1107.

Judge Newman offers two main rebuttals.  First, she claims that the "history of enforcement of [§ 351(a)]," and in particular the proceedings against her, "illustrate[] how standardless [the provision] is."  Pl.'s Opp'n at 19.  But at most, her examples suggest that the statute is subject to multiple interpretations.  See, e.g., id. at 21 (claiming that aspects of the Federal Circuit's investigation "confirm[] the latent subjectivity at play"); id. 24 ("'[E]ffectiveness' is in the eye of the beholder.").  A subjective statute is not an unconstitutional

---

[4] The commentary to the Code of Judicial Conduct reflects this purpose.  It notes that the code "may [] provide standards of conduct for application in proceedings under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980."  Code of Conduct for United States Judges, Canon 1, Commentary, https://perma.cc/JW2B-99GU.

[5] Judge Newman claims the "needed clarity" cannot come from the JC&D Act's implementing rules.  Pl.'s Opp'n at 23.  But neither of the cases she draws on for support concerns a Fifth Amendment vagueness challenge.  See Texas Educ. Agency v. United States Dep't of Educ., 992 F.3d 350, 361 (5th Cir. 2021) (state waivers of sovereign immunity); Bennett v. Kentucky Dep't of Educ., 470 U.S. 656, 666 (1985) (limits on state uses of federal funding).

one. See Bronstein, 849 F.3d at 1107 ("[A] statutory term is not rendered unconstitutionally vague because it do[es] not mean the same thing to all people, all the time, everywhere." (cleaned up) (second alteration in original)).  Second, she suggests that any subjectivity in § 351(a) is impermissible because it undermines judicial independence.  See, e.g., Pl.'s Opp'n at 25 ("[B]ecause an Article III judge is not subject to 'supervision' by any of her colleagues, an Article III judge need not meet any other judge's . . . definition of 'effectiveness.'").  But, as the D.C. Circuit (and this Court) have held, "Article III's grant of 'judicial independence'" does not give "judges 'absolute freedom from' discipline or sanctions that fall short of removal or salary diminution."  Newman, 2024 WL 551836, at *18 (quoting McBryde v. Comm. to Rev. Cir. Council Conduct & Disability Ords. of Jud. Conf. of U.S., 264 F.3d 52, 65 (D.C. Cir. 2001)).  Nor does the Constitution "exclude[] discipline of judges *by* judges."  Id. (quoting McBryde, 264 F.3d at 65).  Given these accepted limits on judicial independence, there is no reason to believe that Article III imposes a heightened standard of clarity on statutes affecting judicial authority.  Accordingly, the Court grants Defendants' motion as to Count Five.

    2. Count Seven

Section 353(c) is not unconstitutionally vague either.  The vagueness doctrine "prevents the government from imposing criminal and, to a lesser extent, civil penalties if the statute or regulation specifying the prohibited conduct is not sufficiently specific to provide fair notice" or, as Judge Newman alleges with respect to § 353(c), "fair enforcement."  Maxwell v. Rubin, 3 F. Supp. 2d 45, 49 (D.D.C. 1998); see also Beckles v. United States, 580 U.S. 256, 265 (2017) ("[T]win concerns underly[] vagueness doctrine—providing notice and preventing arbitrary enforcement.").  But "the vagueness doctrine applies only to laws that regulate the primary conduct of private citizens"—*i.e.*, "laws that define crimes," "laws that fix sentences," "laws that

restrict speech," and "laws that regulate businesses." United States v. Matchett, 837 F.3d 1118, 1119, 1122 (11th Cir. 2016) (en banc); see also El-Shifa Pharm. Indus. Co. v. United States, 607 F.3d 836, 856 n.4 (D.C. Cir. 2010) (en banc) (Kavanaugh, J., concurring) ("If a statute regulating private conduct provides no discernible standards and therefore insufficient notice of what actions are prohibited, the statute might be void for vagueness under the Due Process Clause."). The Supreme Court has found that a statute can lead to arbitrary enforcement in one of two scenarios: "[I]f it leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case, . . . or permits them to prescribe the sentences or sentencing range available." Beckles, 580 U.S. at 266 (cleaned up); see also id. at 262.

The JC&D's investigation provision does not fall into either category. It does not vest a special committee with authority to decide what judicial conduct is or is not permissible, nor does it allow a committee to choose the proper penalty for such conduct. Instead, it merely sets the outer boundaries for how a special committee may investigate once a JC&D complaint has been initiated. It also bears noting that § 353(c) is not unusual. Federal prosecutors and some federal agencies enjoy similarly broad investigative authority. See, e.g., Justice Manual 9-2.001 ("The statutory duty to prosecute for all offenses against the United States (28 U.S.C. § 547) carries with it the authority necessary to perform this duty. The [U.S. Attorney] is invested by statute and delegation from the Attorney General with the broadest discretion in the exercise of such authority."); 15 U.S.C. § 78u ("The [Securities and Exchange] Commission may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of this chapter.").

Judge Newman does not address whether the vagueness doctrine applies to § 353(c) as a threshold matter. She does offer two tangential arguments. Neither succeeds. First, she claims that "[b]ecause there is no defined reference point" for § 351(a)'s disability standard, "it necessarily follows that any inquiry into whether that standard has been met will itself be hopelessly vague." Pl.'s Opp'n at 28. As explained above, however, 351(a) has defined reference points. Second, she repackages an argument that she made—and the Court rejected— in the last round of motions. She claims that the "issue" with § 353(c) is that "Defendants can *compel* Judge Newman to turn over private documents and then *directly sanction* her for declining to do so." Pl.'s Opp's at 28 (emphasis in original). It is difficult to see how this is a vagueness challenge. In any event, this point confuses the authority of special committees with that of circuit judicial councils. Though a special committee can issue orders to subject judges, the JC&D Act "does not give [it] enforcement power." Newman, 2024 WL 551836, at *17. Instead, the Act "directs special committees to present a report to the judicial council with 'recommendations for necessary and appropriate action by the judicial council.'" Id. (quoting 28 U.S.C. § 353(c)). The JC&D Rules also divest the special committee of enforcement power. They "allow subject judges to refuse to comply with investigations for 'good cause,'" and empower "the judicial council, [or] ultimately the Judicial Conference [of the United States]," but not the special committee, to "decide whether the judge had good cause to refuse." Id. (quoting JC&D R. 4(a)(5)). Finally, to the extent judicial councils (as opposed to special committees) have the power to both compel and sanction, the D.C. Circuit has found no constitutional defect in that arrangement. See Newman, 2024 WL 551836, at *17 ("[In Hastings,] [t]he circuit held that the JC&D Act's vesting of both investigative and adjudicatory functions in the same body did not violate due process." (citing Hastings, 829 F.2d at 104–05)).

In sum, § 353(c) is not unconstitutionally vague, and Defendants are therefore entitled to judgment on the pleadings as to Count Seven.

## IV. Conclusion

For these reasons, the Court will grant Defendants' motion for judgment on the pleadings and dismiss this case as to all remaining claims. A separate Order shall accompany this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: July 9, 2024